Oliver J. Pancheri, Esq. (Nevada Bar No. 7476)
Jessica M. Lujan, Esq. (Nevada Bar No. 14913)
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3400
Fax: (702) 938-8648
Email: opancheri@spencerfane.com
        jlujan@spencerfane.com

Jean-Paul Ciardullo, Esq. (*pro hac vice*)
  California Bar No. 284170
**FOLEY & LARDNER LLP**
555 Flower Street, Suite 3300
Los Angeles, California 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
Email: jciardullo@foley.com

Robert T. Stewart, Esq. (Nevada Bar No. 13770)
Stewart Ray Nelson, Esq. (*pro hac vice*)
Hannah L. Andrews, Esq. (*pro hac vice*)
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, Utah 84111
Tel.: (801) 401-8900
Email: rtstewart@foley.com
        srnelson@foley.com
        handrews@foley.com

*Attorneys for Plaintiffs/Counterdefendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PARADISE ENTERTAINMENT LIMITED, a Bermuda corporation; and LT GAME, INC., a Nevada corporation, | Case No. 2:24-cv-00428-JCM-BNW |
| Plaintiffs/Counterdefendants, | **PLAINTIFFS' MOTION TO COMPEL RECORDS FROM DEFENDANTS AND MR. FENG'S SUBPOENAED COMPANIES** |
| vs. | |
| EMPIRE TECHNOLOGICAL GROUP LIMITED, a Nevada corporation; GAMING SPECIALIZED LOGISTICS LLC, a Nevada limited liability company; LINYI FENG, an individual; ROY KELCEY ALLISON, an individual; and DARYN KIELY, an individual, | [ORAL ARGUMENT REQUESTED] |
| Defendants/Counterclaimants. | |

# CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTUAL BACKGROUND ..................................................................................... 3

III.    PLAINTIFFS' MEET AND CONFER EFFORTS ................................................... 4

IV.     TEXT OF DISCOVERY REQUESTS AND RESPONSES AT ISSUE ................... 6

        A.    Category 1: Defendants' Regulatory Submissions And Communications ..................... 6

        B.    Category 2: Financial Information About Empire And The Non-Party Companies ....... 8

        C.    Category 3: Other Information Relating to Mr. Feng's Non-Party Companies ............ 12

        D.    Category 4: Information Relating to Card Shoes & Source Code ................................. 18

        E.    Category 5: Communications With Commerce Casino And Its CEO, Jeff Harris ........ 20

V.      LEGAL ARGUMENT .............................................................................................. 22

        A.    Category 1: Defendants Should Produce All Written Communications With Gaming Regulators, And They Should Be Complete And Unredacted (RFPs 67-70, 121) ....................................................................................................................... 23

        B.    Category 2: Defendants Should Produce Complete Financials For Empire, And Transactions Records With Feng's Non-Party Companies (RFPs 93, 25; Non-Party Request 4; Empire Rogs 1 and 13; Feng Rog 10) ................................................. 24

        C.    Category 3: Defendants Must Produce Other Information About Mr. Feng's Non-Party Companies (Feng Rog 9, 11; Empire Rog 6, RFP 117; Non-Party Request 1-5) ........................................................................................................................... 25

        D.    Category 4: Defendants Must Provide Complete Information Relating To The Card Shoes They Have Developed, Sold, or Leased (Kiely Rog 9, RFPs 101, 104, 125) ............................................................................................................................ 28

        E.    Category 5: Defendants Should Produce Communications With Commerce Casino And Its CEO, Jeff Harris (RFPs 8-10; Non-Party Request 6) .......................... 30

VI.     CONCLUSION ......................................................................................................... 31

1

**TABLE OF AUTHORITIES**

2

**Federal Cases**                                                                                    **Page(s)**

3

*Amaya v. Menzies Aviation USA, Inc.*,
   No. 2:22-cv-05915-HDV-MAR, 2024 U.S. Dist. LEXIS 220642 (C.D. Cal. Dec. 4, 2024) ............... 5

4

*Blankenship v. Hearst Corp.*,
   519 F.2d 418 (9th Cir. 1975) ......................................................................................................... 22

5

*F.T.C. v. AMG Servs., Inc.*,
   291 F.R.D. 544 (D. Nev. 2013) ............................................................................................... 22, 26

6

7

*Food Mkt. Merch., Inc. v. California Milk Processor Bd.*,
   215CV01083DADCKD, 2023 WL 1070546 (E.D. Cal. Jan. 27, 2023) ........................................... 5

8

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ...................................................................................................... 22, 26, 28

9

10

*Shoen v. Shoen*,
   5 F.3d 1289 (9th Cir. 1993) ......................................................................................................... 22

11

*U.S. E.E.O.C. v. Caesars Ent.*,
   237 F.R.D. 428 (D. Nev. 2006) .................................................................................................... 22

12

13

*Voggenthaler v. Maryland Square, LLC*,
   208CV01618RCJGWF, 2010 WL 11579075 (D. Nev. Mar. 2, 2010) ............................................ 5

14

15

16

**Federal Statutes**

17

Fed. R. Civ. P. 26(b) ..................................................................................................................... 22

18

Fed. R. Civ. P. 26-6(b) .................................................................................................................. 22

19

Fed. R. Civ. P. 37(a)(3)(B) ........................................................................................................... 22

20

Fed. R. Civ. P. 37(a)(4) ................................................................................................................. 22

21

Fed. R. Civ. P. 45(d)(2)(B)(i) ....................................................................................................... 22

22

23

24

25

26

27

28

1    Plaintiffs Paradise Entertainment Limited ("Paradise") and LT Game Inc. ("LT Game," formerly

2  LT Game (Canada) Ltd.) hereby move to compel Defendants Empire Technological Group Limited

3  ("Empire"); Gaming Specialized Logistics LLC ("GSL"); Mr. Linyi "Frank" Feng ("Feng"); Mr. Roy

4  Kelcey Allison ("Allison"); and Mr. Daryn Kiely ("Kiely") (collectively, "Defendants") pursuant to Fed.

5  R. Civ. P. 37(a)(1) and LR 26-6 to produce the five categories of documents and information set forth

6  herein (the "Motion"). This Motion is also made pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i) to compel

7  various subpoenaed non-party companies controlled by Feng who are represented by the same counsel as

8  Defendants. This Motion is made and based upon the papers and pleadings on file herein, the following

9  points and authorities, the accompanying Declaration of Jean-Paul Ciardullo, Esq. (**Exhibit 1**), the

10  Declaration of Chan Kin Man ("Leo Chan") (ECF No. 54-4 at 712–721, **Exhibit 2**), the Declaration of

11  Marcos Medero (ECF No. 54-4 at 779–784, **Exhibit 3**), any additional exhibits attached hereto, and any

12  oral argument at the hearing on this matter.

DATED:  February 25, 2025

*/s/ Jessica M. Lujan*
OLIVER J. PANCHERI, ESQ.
Nevada Bar No. 7476
JESSICA M. LUJAN, ESQ.
Nevada Bar No. 14913
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400
Fax: (702) 938-8648
Email: opancheri@spencerfane.com
        jlujan@spencerfane.com

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs' Complaint contains sweeping allegations of Defendants' wrongdoing – including fraud, breach of fiduciary duty, racketeering, conversion, and intellectual property misappropriation – stemming from virtually all aspects of Defendants' business dealings for almost a decade. By this Motion, Plaintiffs seek to compel Defendants and their related non-party companies to produce five categories of documents and information as set forth, *infra*.

The parties to this case are in the business of supplying gaming equipment to casinos. Paradise is a large and well-known Macau-based company led by Dr. Jay Chun, Paradise's Chairman. As detailed in the Complaint, many years ago, Dr. Chun appointed his brother-in-law – Defendant Feng – to help run various subsidiaries for the purpose of expanding Paradise's business into North America. Despite Feng's lack of prior experience in the gaming industry, Dr. Chun trusted him as a close family member. Feng was ultimately assigned the role of President of Paradise's subsidiary LT Game in Las Vegas, while also simultaneously serving as the President of another company – Defendant Empire – which was intended to be the long-term exclusive distributor of LT Game. Until 2023, LT Game and Empire overlapped significantly, sharing the same employees and working out of the same offices. As of 2023, Plaintiffs had invested millions of dollars in LT Game and Empire, including payment of Empire's legal fees for obtaining gaming licenses.

However, unbeknownst to Plaintiffs, starting in 2017 and escalating by 2020, Feng – with the assistance of former LT Game managers Allison and Kiely – embarked on a secret plan to leverage Plaintiffs' money, employees, and reputation to build an entirely separate and competing business under Empire that was intended to usurp LT Game. Defendants began covertly forming other companies – including F2 TPS, Akkadian, Playful Interactive, and Solution Gaming – all aimed at creating a conglomerate under Empire's control to supplant LT Game. This plan was deliberately concealed from Plaintiffs to induce them to continue unwittingly supporting Defendants' new business venture. Today, LT Game has been left a shell, its employees having been poached for Empire, while Empire has expanded into Macau to compete directly with Paradise. Feng, Allison, and Kiely engaged in this fraud while serving as fiduciaries of LT Game. Notably, during hearings in 2023 to determine whether to approve a limited

two-year gaming license, the Nevada Gaming Commission was suspicious of Defendants' past conduct regarding Plaintiffs.[1] No information was sought from Plaintiffs for those proceedings, which advanced on an incomplete record. Plaintiffs only uncovered Defendants' misconduct after the fact, having been unaware of the Commission hearings.

Plaintiffs now seek recovery not only for the millions of dollars of lost investment in LT Game and Empire, but also for millions more in lost business opportunities that have been appropriated by Defendants, among other things.

The present Motion seeks to compel 5 categories of key records in support of Plaintiffs' claims:

Category 1)    Complete records of Defendants' submissions to, and communications with, gaming regulators, including unredacted financials that were provided.

Category 2)    Complete company financials for Empire, as well as records of financial transactions with Feng's related businesses ("Non-Party Companies"),[2] all of whom were subpoenaed, and all of whom are represented by Defendants' counsel.

Category 3)    The balance of records requested concerning Mr. Feng's Non-Party Companies.

Category 4)    Complete information about Defendants' Electronic Card Shoe products that were appropriated from Plaintiffs, and any others Defendants may have developed.

Category 5)    Defendants' communications with their business partners at Commerce Casino.

The Parties have met and conferred extensively on these subjects over the past several months, and while the Non-Party Companies may yet provide certain limited further productions, it is apparent from the meet and confers that Defendants are not willing to provide most of the records Plaintiffs seek, and in any event have yet to make any further productions. The discovery period is nearing an end, and Plaintiffs need these records for use ahead of forthcoming depositions.

---

[1] See March 2023 hearing at 2:50:00 to 3:45:00 [https://www.youtube.com/watch?v=T5Ryqm8bzX8 ] ("March 2023 Commission Hearing") and July 23, 2023 hearing at 1:55:00 to 2:27:00 [ https://www.youtube.com/watch?v=0cmV2NjPpFU ] ("July 2023 Commission Hearing").

[2] Plaintiffs subpoenaed the following: (1) Akkadian Enterprises; (2) Ephesus Holdings; (3) F2 TPS, LLC; (4) F&T LV Holdings, LLC; (5) F&T LV Real Estate 1, LLC; (6) F&T LV Real Estate 2, LLC; (7) F&T LV Real Estate 3, LLC; (8) Playful Interactive, Inc.; (9) Pro-Tek Limited; (10) Solution Gaming Technologies; and (11) Victorian Investment Holdings.

## II.    FACTUAL BACKGROUND

As is pertinent to the instant Motion, Plaintiffs allege, among other things: (a) that Defendants maintained the façade that they were operating Empire—with Plaintiffs' funding and support—for the exclusive benefit of Plaintiffs while covertly building up Empire and numerous non-party companies controlled by Feng ("Non-Party Companies") to supplant Plaintiffs in the market, Complaint ¶¶ 30–34, 36, 180–81, 184–85, 227;  (b) that Defendants utilized the Non-Party Companies to engage in frequent, fraudulent self-dealing contrary to their respective fiduciary duties, *id.* ¶¶ 96–98, 100, 104–12, 119, 237; (c) that Defendants misappropriated trade secrets and infringed copyrighted material, including source code, relating to Plaintiffs' smart card shoes, which are software-controlled playing card dispensing machines ("Card Shoes"), *id.* ¶¶ 53–55, 129, 149, 170–72; (d) that Defendants fraudulently represented that Plaintiffs' Smart Card Shoes were removed from Commerce Casino, when in fact Feng and Empire unlawfully retained dominion over Plaintiffs' Card Shoes and converted the cash flow from their lease, *id.* ¶¶ 73–77, 115–118, 183, 213; and (e) Defendants and the Non-Party Companies have otherwise received funding from Commerce Casino's CEO Jeff Harris (though Plaintiffs have not determined the extent of Mr. Harris' understanding of Defendants' misconduct), *id.* ¶117.

Plaintiffs' allegations are further supported by the concurrently filed Declarations of Plaintiffs' representatives, Chan Kin Man ("Leo Chan"), and Marcos Medero. Mr. Chan confirms that Plaintiffs invested millions of dollars in both LT Game and Empire on the understanding that Messrs. Feng, Allison, and Kiely were fiduciaries working to advance LT Game, and that Empire was obtaining licensing to act as the exclusive distributor for LT Game. Both Messrs. Chan and Medero confirm that LT Game and Empire shared employees and resources, with Defendants serving simultaneously as managers of both companies. Mr. Chan and Paradise management were kept in the dark about Defendants' true activities in furtherance of their plan to supplant LT Game and build a competing business under Empire, causing Plaintiffs to continue unwittingly support the venture. The damages to Plaintiffs are measured not only in their stolen investment, but in the loss of the potential business that LT Game might have had if its corporate opportunities had not been usurped. In this regard, Plaintiffs deem Defendants' profits under Empire and its related companies to constitute unjust enrichment subject to disgorgement.

### III. <u>PLAINTIFFS' MEET AND CONFER EFFORTS</u>

Plaintiffs served their First Set of Interrogatories and Requests for Production on Defendants on June 11, 2024. Defendants served their responses on August 2, 2024, objecting to a multitude of Plaintiffs' discovery requests on the grounds of relevance and burden and generally seeking to limit discovery to narrow issues explicitly raised in the pleadings. (Ciardullo Dec., ECF No. 54-1 at 6–145.) Seeking to avoid discovery motion practice, Plaintiffs provided Defendants with a September 11, 2024 Letter summarizing Defendants' deficiencies and Plaintiffs' positions. (Ex. 1-A.)[3] Defendants responded with an October 1, 2024 Letter. (Ex. 1-B.) Plaintiffs responded with additional Letters on October 15, 2024, and November 4, 2024. (Ex. 1-C, 1-D.) Defendants replied with a December 2, 2024 Letter. (Ex. 1-E.)

The parties met and conferred on several lengthy phone calls to discuss discovery issues raised by Plaintiffs, including on October 8 and 23, 2024, and November 6 and 8, 2024, with the most recent meet and confer phone call occurring on January 30, 2025. (Ex. 1, ¶ 8.) Although several issues were resolved though the parties' exchange of letters and the meet and confer process, there are still several important issues that the parties were unable to resolve. Plaintiffs detail what they understand to be Defendants' current positions in Section V, *infra*. As a general proposition, Defendants have told Plaintiffs that they believe their current document production to have already been adequate, and Plaintiffs understand Defendants to not be planning to produce more records relevant to this Motion beyond certain Non-Party Company records. (Ex. 1, ¶ 8.) Plaintiffs have not been able to locate the records that are the subject of this Motion in Defendants' productions to-date. (*Id*.)

With respect to Feng's Non-Party Companies, Plaintiffs note that Feng, being a defendant in this case, is obliged to produce responsive documents from those companies to the extent that he is personally in possession of them. However, applying a belt-and-suspenders approach, Plaintiffs also issued subpoenas to some of these other companies. Defendants' counsel indicated that they would represent the subpoenaed Non-Party Companies[4] and, on August 21, 2024, the parties conferred about the scope of the

---

[3] "Ex. 1- __" refers to exhibits to the Ciardullo Declaration.

[4] With the exception of F2, which is a California company, all the subpoenaed Non-Party Companies are Nevada companies. However, F2 is managed by Feng from this District, and Plaintiffs have understood Feng to have agreed to roll up the F2 production as part of his and the other companies' responses that are being provided in this District, making it appropriate for the Court to compel F2 under Rule 45.

subpoenas. Plaintiffs served their subpoenas on September 27, 2024 (ECF No. 54-1 at 146–186), and the Non-Party Companies served their objections on October 29, 2024 (ECF No. 54-1 at 187–194). Although the companies interposed various objections, they generally agreed to produce at least some responsive documents within 60 days. (*Id., see* responses.) However, the companies have not yet made their production, and the present Motion is proper in order to secure that production. (Ex. 1, ₱ 10.) *See Amaya v. Menzies Aviation USA, Inc*., No. 2:22-cv-05915-HDV-MAR, 2024 U.S. Dist. LEXIS 220642, *11-12 (C.D. Cal. Dec. 4, 2024) (motion to compel appropriate where documents were not produced despite prior assurances).

With respect to Commerce Casino and its CEO, Jeff Harris, Plaintiffs served subpoenas on them in September and October 2024. (Ex. 1, ₱ 11.) At the end of December 2024, Commerce Casino conducted a keyword search in its email system for communications with Defendants and references to Plaintiffs, returning (to Plaintiffs' surprise) what they said was roughly 22,000 communications with Defendants. (*Id*.) By contrast, Defendants' production to Plaintiffs appears to only contain about 200 communications with Commerce Casino and Mr. Harris. (*Id*.) Plaintiffs have raised this with Defendants, but Defendants have declined to make any further productions, and Commerce Casino and Mr. Harris have so far refused to produce the records. (*Id*.) It is Plaintiffs' belief that many or most of the communications relate to the Non-Party Companies, including F2, as well as the other topics in Categories 1-4 over which the parties appear at an impasse.

Of course, if Defendants produce any of the categories of requested documents during the pendency of this Motion, Plaintiffs will so note that fact to the Court so as to narrow the remaining issues in dispute. But with the close of discovery approaching, and in view of the positions Plaintiffs understand Defendants to have taken regarding the scope of their objections discussed further, *infra*, it is appropriate for Plaintiffs to seek relief. *See Voggenthaler v. Maryland Square, LLC*, 208CV01618RCJGWF, 2010 WL 11579075, at *2 (D. Nev. Mar. 2, 2010) (appropriate to compel following meet and confers even if Defendants might produce more documents at uncertain later date); *Food Mkt. Merch., Inc. v. California*

---

Alternatively, the Court may simply compel Feng as a defendant in this case to produce records of F2 in his possession, custody, or control.

*Milk Processor Bd*., 215CV01083DADCKD, 2023 WL 1070546, at *2 (E.D. Cal. Jan. 27, 2023) (same).

## IV.    <u>TEXT OF DISCOVERY REQUESTS AND RESPONSES AT ISSUE</u>

Pursuant to Local Rule 26-6(b), the full text of the discovery originally sought and Defendants' responses are set forth below. Note that Plaintiffs served identical Requests for Production on each Defendant, and Defendants have each made the same objections to them. Plaintiffs served different (though partially overlapping) Interrogatories on each Defendant. Plaintiffs served identical document subpoenas on each of the Non-Party Companies, and each responded the same.

### A.    **Category 1: Defendants' Regulatory Submissions And Communications**

<u>REQUEST FOR PRODUCTION NO. 67</u> *(to all Defendants)*

All documents and communications concerning Gaming Licenses, including but not limited to all documents and communications concerning the application for and acquisition of Gaming Licenses.

RESPONSE: Defendants object to this Request as overbroad and unduly burdensome. The substantive allegations in Plaintiffs' complaint related to Empire's gaming licenses concern the source of funds used to obtain those licenses – namely, the allegation that Plaintiffs paid for expenses related to Empire obtaining gaming licenses. To the extent Plaintiffs paid such expenses, this conduct would have ceased in February 2022, when Mr. Feng resigned from LT Game. Accordingly, "[a]ll documents and communications concerning Gaming Licenses" subsequent to February 2022 are irrelevant to any of the issues in dispute, and the burden and expense of identifying, collecting, reviewing, processing, and producing such documents far outweighs the needs of this case. Lastly, Defendants object to this Request to the extent that it is duplicative of other Requests, including, but not limited to, Request No. 31, and incorporate all objections to those Requests by reference. Without waiving and subject to these objections, Defendants will produce non-privileged responsive documents through February 2022.

<u>REQUEST FOR PRODUCTION NO. 68</u> *(to all Defendants)*

All documents and communications concerning any gaming authority, gaming commission, or gaming regulator, including but not limited to all communications with such entities or any of their representatives.

RESPONSE: Defendants object to this Request as overbroad and unduly burdensome. The substantive allegations in Plaintiffs' complaint related to Empire's gaming licenses concern the source of

funds used to obtain those licenses – namely, the allegation that Plaintiffs paid for expenses related to Empire obtaining gaming licenses. To the extent Plaintiffs paid such expenses, this conduct would have ceased in February 2022, when Mr. Feng resigned from LT Game. Accordingly, "[a]ll documents and communications concerning any gaming authority, gaming commission, or gaming regulator" subsequent to February 2022 are irrelevant to any of the issues in dispute, and the burden and expense of identifying, collecting, reviewing, processing, and producing such documents far outweighs the needs of this case. Lastly, Defendants object to this Request to the extent that it is duplicative of other Requests, including, but not limited to, Requests Nos. 31 and 67, and incorporate all objections to those Requests by reference. Without waiving and subject to these objections, Defendants will produce non-privileged responsive documents through February 2022.

REQUEST FOR PRODUCTION NO. 69 *(to all Defendants)*

All documents and communications concerning efforts to obtain Gaming Licenses for Empire, including but not limited to all documents and communications concerning investigations performed by any gaming authority, gaming commission, or gaming regulator.

RESPONSE: Defendants object to this Request as overbroad and unduly burdensome. The substantive allegations in Plaintiffs' complaint related to Empire's gaming licenses concern the source of funds used to obtain those licenses – namely, the allegation that Plaintiffs paid for expenses related to Empire obtaining gaming licenses. To the extent Plaintiffs paid such expenses, this conduct would have ceased in February 2022, when Mr. Feng resigned from LT Game. Accordingly, "[a]ll documents and communications concerning efforts to obtain Gaming Licenses for Empire" subsequent to February 2022 are irrelevant to any of the issues in dispute, and the burden and expense of identifying, collecting, reviewing, processing, and producing such documents far outweighs the needs of this case. Lastly, Defendants object to this Request to the extent that it is duplicative of other Requests, including, but not limited to, Requests Nos. 31, and 67-8 and incorporate all objections to those Requests by reference. Without waiving and subject to these objections, Defendants will produce non-privileged responsive documents through February 2022.

REQUEST FOR PRODUCTION NO. 70 *(to all Defendants)*

All documents and communications concerning any investigations into Mr. Feng's tax returns

performed by any gaming authority, gaming commission, or gaming regulator, or performed by Mr. Feng in preparation for or in response to any actions of any gaming authority, gaming commission, or gaming regulator.

RESPONSE: Defendants object to this Request as overbroad and unduly burdensome. The substantive allegations in Plaintiffs' complaint related to Empire's gaming licenses concern the source of funds used to obtain those licenses – namely, the allegation that Plaintiffs paid for expenses related to Empire obtaining gaming licenses. To the extent Plaintiffs paid such expenses, this conduct would have ceased in February 2022, when Mr. Feng resigned from LT Game. Accordingly, "[a]ll documents and communications concerning any investigations into Mr. Feng's tax returns performed by any gaming authority, gaming commission, or gaming regulator" subsequent to February 2022 are irrelevant to any of the issues in dispute, and the burden and expense of identifying, collecting, reviewing, processing, and producing such documents far outweighs the needs of this case. Lastly, Defendants object to this Request to the extent that it is duplicative of other Requests, including, but not limited to, Requests Nos. 31 and 67-70, and incorporate all objections to those Requests by reference. Without waiving and subject to these objections, Defendants will produce non-privileged responsive documents through February 2022.

REQUEST FOR PRODUCTION NO. 121 *(to all Defendants)*

All documents and communications concerning licensing for Empire or any of its affiliated companies to do business in Macau.

RESPONSE: Defendants object to this Request as overbroad and unduly burdensome. Moreover, the substantive allegations in Plaintiffs' complaint do not concern whether Empire or "any of its affiliated companies" do business in Macau, nor does this issue have any apparent relationship to Plaintiffs' claims. Accordingly, producing "[a]ll documents and communications concerning licensing for Empire or any of its affiliated companies to do business in Macau" would not be calculated to lead to the discovery of relevant evidence. Even assuming there was some tangential relevance, the burden and expense of reviewing, processing, and producing such documents far outweighs the needs of this case. Defendants therefore object to producing materials in response to this Request.

**B.    Category 2: Financial Information About Empire And The Non-Party Companies**

REQUEST FOR PRODUCTION NO. 93 *(to all Defendants)*

All financial records for Empire, including but not limited to (a) audited financials, (b) balance sheets, (c) state and federal tax returns, (d) all bank account statements, and (e) profit and loss statements.

RESPONSE TO REQUEST FOR PRODUCTION NO. 93:

Defendants object to this Request as overbroad, unduly burdensome, and not calculated to lead to the discovery of relevant evidence. The substantive allegations in Plaintiffs' complaint concern conduct beginning in or around 2018. Moreover, Plaintiffs have never alleged that any—let alone "all"— "financial records for Empire" have any connection to the issues in this litigation. Such information is therefore irrelevant. Even assuming there was some tangential relevance, the burden and expense of reviewing, processing, and producing such information far outweighs the needs of this case. Defendants therefore object to producing materials in response to this Request.

<u>NON-PARTY COMPANY REQUEST NO. 4</u> *(to all of Feng's Non-Party Companies)*

All documents and communications evidencing or concerning loans or any transfers of money or assets to your company from, or from your company to, any of: Empire Technological Group Limited, Gaming Specialized Logistics LLC, Roy Kelcey Allison, or Daryn Kiely.

OBJECTION: The Non-Party Company objects to this Request as irrelevant, overbroad, and unduly burdensome; it is not tailored to Plaintiffs' claims, defenses, or substantive allegations in this suit or to a relevant Period. Further, there is no evidence or allegation that every loan or transfer of money or assets between the Non-Party Company—an uninvolved third-party—and any Defendant would be relevant to this case; the Request for "all documents and communications" is thus overbroad and the burden to the Non-Party Company of searching for and producing those documents outweighs the needs of the case.

RESPONSE: Without waiving and subject to the above objections, the Non-Party Company will search for any non-privileged responsive documents pertaining to loans or transfers of money or assets between the Non-Party Company and Empire Technological Group Limited during the relevant Period and will produce any responsive documents within 60 days of this response.

<u>EMPIRE INTERROGATORY NO. 1</u>

Identify Empire's revenues and net profits for each year from 2016 through the present.

RESPONSE TO EMPIRE INTERROGATORY NO. 1:

Empire objects to the scope of this Interrogatory. According to Plaintiffs' Complaint, the alleged acts that form the basis for Plaintiffs' claims—and that therefore establish the relevant time period—only concern conduct beginning in or around 2018 through current (the "Relevant Period"). *See, e.g.*, Compl. at ¶¶ 35-36 (Dkt. 1). Because this Interrogatory seeks information outside the Relevant Period, it is overbroad, unduly burdensome, and not calculated to lead to the discovery of relevant evidence. Empire's answer will be limited to the Relevant Period. Empire further objects to this this Interrogatory because it is unduly burdensome and not calculated to lead to the discovery of relevant evidence. The substantive allegations in Plaintiffs' Complaint do not concern "Empire's revenues and net profits." Accordingly, such information is not relevant to Plaintiffs' claims.

<u>EMPIRE INTERROGATORY 13</u>

Identify and Explain in Detail for each year of Empire's operation since its original incorporation, all of Empire's physical facilities (office space, warehouse space, etc.), including as part of your answer what percentage of the expense of each of such facilities was paid for each year by Paradise and/or LT Game.

OBJECTION: Empire objects to this Interrogatory to the extent it seeks information from outside the Relevant Period. For the reasons stated above, Empire's answer will be limited to the Relevant Period. Empire further objects to this Interrogatory because it is unduly burdensome and not calculated to lead to the discovery of relevant evidence. The substantive allegations in Plaintiffs' Complaint concerning Empire's "physical facilities" are limited to facilities that Empire shared with LT Game or which were paid by Paradise and/or LT Game. Information regarding Empire's other facilities is therefore irrelevant. Even assuming there was some tangential relevance, the burden and expense of reviewing, processing, and producing such information far outweighs the needs of this case. Empire's answer will be limited to facilities that Empire shared with LT Game or which were paid by Paradise and/or LT Game. Moreover, the reference to "the expense of each of such facilities" as stated in this Interrogatory is not defined and, as such, is vague and ambiguous, subject to multiple meanings and interpretations, and fails to identify the information sought with sufficient particularity. Empire's answer will be limited to rent expenses.

ANSWER: During the period from approximately 2016 through 2021, Empire shared a facility with LT Game, which was located at 6295 Harrison Dr., Las Vegas, NV 89120. Paradise and/or LT Game

paid 100% of the rent expenses for this facility during the time it was shared with Empire.

<u>MR. FENG INTERROGATORY NO. 10</u>

Identify all transfers of money between You and each of Mr. Feng's Non-Party Companies from 2016 through the present.

MR. FENG'S RESPONSE TO INTERROGATORY NO. 10:

OBJECTION: Mr. Feng objects to this Interrogatory because it seeks information from outside the Relevant Period and because it seeks information regarding non-relevant entities.  For the reasons stated above, Mr. Feng's answer will be limited to the Relevant Period and, with respect to "Mr. Feng's Non-Party Companies," limited to (i) Playful Interactive; (ii) Akkadian; and (iii) Solution Gaming.  Mr. Feng further objects to this Interrogatory because it is unduly burdensome and not calculated to lead to the discovery of relevant evidence.  Plaintiffs have never alleged that any—let alone "all"—"transfers of money" between the three aforementioned companies and Mr. Feng have any connection to the issues in this litigation.  Such information is therefore irrelevant.  Even assuming there was some tangential relevance, the burden and expense of reviewing, processing, and producing such information far outweighs the needs of this case—particularly given that the Interrogatory seeks information regarding numerous companies that Mr. Feng owns.

<u>REQUEST FOR PRODUCTION NO. 25</u> *(to all Defendants)*

Documents sufficient to identify all payments made between, on the one hand (a) any of Mr. Feng's Non-Party Companies; and on the other hand, (b) any of the Defendants.

DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

Defendants object to this Request as overbroad, unduly burdensome, and not calculated to lead to the discovery of relevant evidence.  For the reasons stated above, Defendants' responses with respect to "Mr. Feng's Non-Party Companies" are limited to (i) Playful Interactive; (ii) Akkadian; and (iii) Solution Gaming. Defendants further object to this Request to the extent that it is duplicative of Requests Nos. 15, 17, 19, and 24 and incorporate all objections to those Requests by reference. Moreover, because the substantive allegations in Plaintiffs' complaint related to Playful Interactive, Akkadian, and Solution Gaming are limited to specific issues, producing "[a]ll payments made between" those companies and any Defendants would not be calculated to lead to the discovery of relevant evidence. Even assuming there

was some tangential relevance, the burden and expense of reviewing, processing, and producing such documents far outweighs the needs of this case.

With respect to Akkadian, without waiving and subject to these objections, Defendants will produce responsive documents that pertain to the transaction in 2021 with Synergy Blue referenced in Plaintiffs' complaint. With respect to Solution Gaming, without waiving and subject to these objections, Defendants will produce non-privileged responsive documents that pertain to a transaction in 2022 with Empire referenced in Plaintiffs' complaint. With respect to Playful Interactive, without waiving and subject to these objections, Defendants will produce non-privileged responsive documents that pertain to a mobile app for baccarat referenced in Plaintiffs' complaint.

### C.    Category 3: Other Information Relating to Mr. Feng's Non-Party Companies

MR. FENG INTERROGATORY NO. 11

Describe in Detail all business dealings that You have had relating to Hawaiian Gardens Casino, F2 TPS LLC, and the provision of third-party proposition player services, including as one part of your response an identification of all sources of funding for these endeavors, and all business partners you have worked with on them.

MR. FENG'S RESPONSE TO INTERROGATORY NO. 11:

OBJECTION: Mr. Feng objects to this Interrogatory because it is unduly burdensome and not calculated to lead to the discovery of relevant evidence. Plaintiffs have never alleged that "Hawaiian Gardens Casino," "F2 TPS LLC," or "the provision of third-party proposition player services" have any connection to the issues in this litigation. Such information is therefore irrelevant. Even assuming there was some tangential relevance, the burden and expense of reviewing, processing, and producing such information far outweighs the needs of this case. This is particularly true given the Interrogatory's expansive scope – namely, it seeks information regarding "all business dealings . . . relating to" those endeavors, "all sources of funding for these endeavors," and "all business partners" relating to those endeavors. Moreover, the reference to "business dealings" as stated in this Interrogatory is not defined and, as such, is vague and ambiguous, subject to multiple meanings and interpretations, and fails to identify the information sought with sufficient particularity. Mr. Feng further objects to this Interrogatory to the extent it seeks information from outside the Relevant Period.

EMPIRE INTERROGATORY NO. 6

Describe in Detail all business dealings that Empire and any of its managers have had with any of Mr. Feng's Non-Party Companies, including but not limited to all financial transactions between Empire and any of its managers on one hand, and any of Mr. Feng's Non-Party Companies on the other.

EMPIRE'S RESPONSE TO INTERROGATORY NO. 6:

OBJECTION: Empire objects to this Interrogatory to the extent it seeks information from outside the Relevant Period. For the reasons stated above, Empire's answer will be limited to the Relevant Period. Further, Empire objects to the Interrogatories' definition of "Mr. Feng's Non-Party Companies" because it is unduly burdensome and not calculated to lead to the discovery of relevant evidence. Aside from Empire, the substantive allegations in Plaintiffs' complaint concerning Mr. Feng's companies are limited to the following: (i) Playful Interactive Inc. ("Playful Interactive"); (ii) Akkadian Enterprises ("Akkadian"); and (iii) Solution Gaming Technologies ("Solution Gaming"). Plaintiffs have never alleged a relationship between any of Mr. Feng's other companies and the claims or issues in this case. Accordingly, such information is irrelevant. Even assuming there was some tangential relevance, the burden and expense of reviewing, processing, and producing such information far outweighs the needs of this case—particularly given the numerous additional companies listed in the definition of "Mr. Feng's Non-Party Companies." Empire's responses with respect to Interrogatories concerning "Mr. Feng's Non-Party Companies" are limited to (i) Playful Interactive; (ii) Akkadian; and (iii) Solution Gaming. Moreover, the substantive allegations in Plaintiffs' Complaint related to Playful Interactive, Akkadian, and Solution Gaming are limited to specific issues, and thus information regarding "all business dealings" between those companies and Empire is irrelevant. Even assuming there was some tangential relevance, the burden and expense of reviewing, processing, and producing such information far outweighs the needs of this case. Empire's answer is limited to "business dealings" between Empire and the three aforementioned nonparty companies that pertain to the respective issues regarding each company refenced in Plaintiffs' Complaint.

ANSWER: Akkadian. In or around November 2021, Akkadian acquired certain skill-based gaming assets from Synergy Blue, LLC. Akkadian subsequently licensed the products and intellectual property to Empire so that Empire may manufacture and distribute the Synergy Blue gaming equipment. Pursuant to

Federal Rule of Civil Procedure 33(d), Empire will produce documents sufficient to evidence the remaining answer to this Interrogatory, which consist of the applicable licensing agreement between Empire and Akkadian.

Solution Gaming. Solution Gaming, which was incorporated as an S-Corporation, was formed to facilitate certain federal income tax benefits that Empire, then a C-Corporation, could not afford to its owner (*i.e.*, Mr. Feng). During the period from approximately May 2021 through 2022, Solution Gaming temporarily paid the wages of certain Empire employees. Additionally, on June 6, 2022, Empire entered into an agreement with Solution Gaming for the sale of 208 LT Game "LTS-1" slot machines to Solution Gaming.

Playful Interactive. Playful Interactive was established to market Empire's products by providing social versions of their games online. However, the company was dissolved in or around October 2022.

<u>MR. FENG INTERROGATORY NO. 9</u>

Identify all of Mr. Feng's Non-Party Companies, including as part of that identification an explanation of each company's business, your past and present job function and duties at each company, your ownership stake in the company, and what dealings it has ever had (if any) with Empire, LT Game, and/or Paradise.

MR. FENG'S RESPONSE TO INTERROGATORY NO. 9:

OBJECTION: Mr. Feng objects to this Interrogatory to the extent it seeks information from outside the Relevant Period. For the reasons stated above, Mr. Feng's answer will be limited to the Relevant Period. Further, Mr. Feng objects to the Interrogatories' definition of "Mr. Feng's Non-Party Companies" because it is unduly burdensome and not calculated to lead to the discovery of relevant evidence. Aside from Empire, the substantive allegations in Plaintiffs' complaint concerning Mr. Feng's companies are limited to the following: (i) Playful Interactive Inc. ("Playful Interactive"); (ii) Akkadian Enterprises ("Akkadian"); and (iii) Solution Gaming Technologies ("Solution Gaming"). Plaintiffs have never alleged a relationship between any of Mr. Feng's other companies and the claims or issues in this case. Accordingly, such information is irrelevant. Even assuming there was some tangential relevance, the burden and expense of reviewing, processing, and producing such information far outweighs the needs of this case—particularly given the numerous additional companies listed in the definition of "Mr. Feng's

Non-Party Companies."  Mr. Feng's responses with respect to Interrogatories concerning "Mr. Feng's Non-Party Companies" are limited to (i) Playful Interactive; (ii) Akkadian; and (iii) Solution Gaming. Additionally, Mr. Feng objects to this Interrogatory because it is duplicative in part of Interrogatory No. 6 that Paradise served on Empire, which provides: "Describe in Detail all business dealings that Empire and any of its managers have had with any of Mr. Feng's Non-Party Companies, . . . ." Mr. Feng's answer will be limited to "dealings" between the three aforementioned non-party companies and Paradise/LT Game. Finally, Mr. Feng objects because the reference to "dealings [a company] has ever had (if any) with . . . LT Game, and/or Paradise" as stated in this Interrogatory is not defined and, as such, is vague and ambiguous, subject to multiple meanings and interpretations, and fails to identify the information sought with sufficient particularity.  Mr. Feng's answer is limited to agreements or transactions entered into between the three aforementioned nonparty companies and LT Game, and/or Paradise.

ANSWER: Akkadian.  Akkadian is a research and development company focused on gaming solutions.  The company explores innovative table game systems, slot content systems, financial technology, among other technology.  Mr. Feng is the sole officer and director of Akkadian and, through an intermediary company, he owns 84.4% of Akkadian.  Mr. Feng serves as President of Akkadian, and he oversees the company's business.  In or around April 2022, LT Game engaged Akkadian to assist in developing certain components for enhancements to slot machine games.  In or around May 2022, LT Game engaged Akkadian to assist in developing certain components for the multigame package of slot machine games.  There have been no other agreements or transactions between Akkadian and either LT Game or Paradise.

Solution Gaming.  Solution Gaming, which was incorporated as an S-Corporation, was formed to facilitate certain federal income tax benefits that Empire, then a C-Corporation, could not afford to its owner (*i.e*., Mr. Feng).  Empire subsequently obtained its S-Corporation status and, in 2024, Solution Gaming was dissolved.  Mr. Feng was the sole officer and director of Solution Gaming. Through an intermediary company, Solution Gaming was wholly owned by Mr. Feng.  Mr. Feng served as President of Solution Gaming, and he oversaw the company's business.  Solution Gaming never entered into any agreements or transactions with either LT Game or Paradise.

Playful Interactive.  Playful Interactive was established to market Empire's products by providing

social versions of its games online. The company was dissolved in or around October 2022. Mr. Feng was the sole officer and director of Playful Interactive and, through an intermediary company, he owned 80% of Playful Interactive. Mr. Feng served as President of Playful Interactive, and he oversaw the company's business. Playful Interactive never entered into any agreements or transactions with either LT Game or Paradise.

REQUEST FOR PRODUCTION NO. 117 *(to all Defendants)*

Documents sufficient to show all ownership interests in Mr. Feng's Non-Party Companies.

DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 117:

Defendants object to this Request as overbroad, unduly burdensome, and not calculated to lead to the discovery of relevant evidence. For the reasons stated above, Defendants' responses with respect to "Mr. Feng's Non-Party Companies" are limited to (i) Playful Interactive; (ii) Akkadian; and (iii) Solution Gaming. Plaintiffs have never alleged that any—let alone "all"—"ownership interests" for these three non-party companies have any connection to the issues in this litigation. Such information is therefore irrelevant. Even assuming there was some tangential relevance, the burden and expense of reviewing, processing, and producing such information far outweighs the needs of this case. Defendants therefore object to producing materials in response to this Request.

NON-PARTY COMPANY REQUEST NO. 1

All company documents and company communications (i.e., from any account used to conduct the company's official business, including specifically any email account under the company's domain) referencing or concerning any of Empire Technological Group Limited, Gaming Specialized Logistics LLC, Roy Kelcey Allison, or Daryn Kiely, including all communications and agreements with any of them. This request is inclusive of any documents and communications relating to any business transactions your company had with these entities, regardless of whether those entities are mentioned expressly by name.

OBJECTION: The Non-Party Company objects to this Request as irrelevant, overbroad, and unduly burdensome; it is not tailored to Plaintiffs' claims, defenses, or substantive allegations or to a relevant Period and is thus not reasonably calculated to lead to the discovery of admissible evidence. The burden and expense on the Non-Party Company—an uninvolved third-party— to review, process, and

produce "all" company documents and communications "referencing or concerning" any of the Defendants, including on "any business transactions" the Non-Party Company engaged in with the Defendants, far outweighs the needs of this case. Not every business transaction between the Non-Party Company and a Defendant is relevant to this litigation, particularly when the Request is not limited to specific, relevant subject matter like gaming.

RESPONSE: Without waiving and subject to the above objections, the Non-Party Company will search for any non-privileged responsive documents that pertain or relate to gaming-related agreements or business transactions between the Non-Party Company and any Defendant and will produce any responsive documents within 60 days of this response.

NON-PARTY COMPANY REQUEST NO. 2

All documents and communications referencing or concerning Paradise Entertainment or LT Game, or any of their managers, including Dr. Jay Chun. As part of your search, please run a system-wide keyword search for "Paradise" and "LT Game," or whatever variants thereof you may have used to refer to them.

OBJECTION: The Non-Party Company objects to this Request as irrelevant, overbroad, and unduly burdensome; it is not tailored to Plaintiffs' claims, defenses, or substantive allegations in this suit or to a relevant Period and is thus not reasonably calculated to lead to the discovery of admissible evidence. There has been no allegation that the Non-Party Company took any action involved with or otherwise connected or related to Paradise Entertainment, LT Game, or any of their managers, nor any indication that "all" documents or communications that even reference those parties in the possession of the Non-Party Company would be relevant to this case. Further, the Request to run a "system-wide keyword search" is vague—it is unclear what system the Request refers to—and irrelevant and burdensome standing alone; keyword search term hits, especially for such generic terms as "paradise," are not automatically subject to production nor related to this case.

RESPONSE: Without waiving and subject to the above objections, the Non-Party Company will search for any non-privileged responsive documents that reference Paradise Entertainment, LT Game, or Jay Chun and will produce any responsive documents within 60 days of this response.

NON-PARTY COMPANY REQUEST NO. 3

All agreements your company has with any other of Mr. Feng's Non-Party Companies.

OBJECTION: The Non-Party Company objects to this Request as irrelevant, overbroad, and unduly burdensome; it is not tailored to Plaintiffs' claims, defenses, or substantive allegations in this suit or to a relevant Period. There have been no substantive allegations by Plaintiffs that the Non-Party Company and any of Mr. Feng's Non-Party Companies had any agreements that were relevant to Plaintiffs' claims or to gaming in general, and thus no cognizable foundation on which to base the Request. The Request is also unrestricted in nature and could cover any number of agreements without regarding to any connection to Plaintiffs' claims or defenses. The Request is thus not reasonably calculated to lead to the discovery of admissible evidence.

RESPONSE: Without waiving and subject to the above objections, the Non-Party Company will search for any non-privileged responsive documents pertaining to gaming and will produce any responsive documents within 60 days of this response.

NON-PARTY COMPANY REQUEST NO. 5

Agreements and communications sufficient to show the full extent of any ownership interest or management role your company has in Empire Technological Group.

OBJECTION: None.

RESPONSE: The Non-Party Company will search for any non-privileged responsive documents during the relevant Period and will produce any responsive documents within 60 days of this response.

D.   **Category 4: Information Relating to Card Shoes & Source Code**

KIELY INTERROGATORY NO. 9:

Identify and Explain in Detail all instances where You accessed, copied, or edited any source code relating to card shoes, and in the event you had been tasked and/or told to do the same, identify the person so tasked or told you.

KIELY RESPONSE TO INTERROGATORY NO. 9:

OBJECTION: Mr. Kiely objects to this Interrogatory to the extent it seeks information from outside the Relevant Period.  For the reasons stated above, Mr. Kiely's answer will be limited to the Relevant Period.  Mr. Kiely further objects to the Interrogatory because the substantive allegations in Plaintiffs' Complaint concerning "source code relating to card shoes" are limited to card shoes

manufactured by Paradise and/or LT Game (Canda) Limited ("LT Game").  Information related to card shoes manufactured by third parties is therefore is irrelevant.  Even assuming there was some tangential relevance, the burden and expense of reviewing, processing, and producing such information far outweighs the needs of this case.  Mr. Kiely's answer is limited to source code relating to Paradise/LT Game card shoes.  Mr. Kiely further objects to the Interrogatory because, at times during the Relevant Period, he served as Chief Technology Officer at both LT Game and Empire, and thus routinely worked with source code relating to card shoes.  Accordingly, Mr. Kiely cannot reasonably be expected to "Identify and Explain in Detail all instances where [he] accessed, copied, or edited any source code relating to card shoes."  It is not possible for Mr. Kiely to answer to this Interrogatory as it is currently drafted.

REQUEST FOR PRODUCTION NO. 101 *(to all Defendants)*

All documents and communications referring to or concerning card shoes, including but not limited to all documents and communications referring to or concerning Gaming Equipment, software or code used with card shoes.

DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 101:

Defendants object to this Request as overbroad and unduly burdensome.  The substantive allegations in Plaintiffs' complaint related to card shoes concern a lease agreement with Commerce Casino and source code.  Accordingly, producing "[a]ll documents and communications referring to or concerning card shoes" would not be calculated to lead to the discovery of relevant evidence.  Without waiving and subject to these objections, Defendants will produce non-privileged responsive documents that pertain to a lease agreement with Commerce Casino and source code.

REQUEST FOR PRODUCTION NO. 104 *(to all Defendants)*

Documents sufficient to identify all of Empire's revenue, profit, and costs associated with card shoes.

DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 104:

Defendants object to this Request as overbroad, unduly burdensome, and not calculated to lead to the discovery of relevant evidence.  The substantive allegations in Plaintiffs' complaint relating to "Empire's revenue, profit, and costs associated with card shoes" are limited to card shoes Empire sold or

leased which were manufactured by Paradise/LT Game.  Accordingly, information regarding non-Paradise/LT Game card shoes is irrelevant.  Even assuming there was some tangential relevance, the burden and expense of reviewing, processing, and producing such information far outweighs the needs of this case.  Without waiving and subject to these objections, Defendants will produce non-privileged responsive documents that relate to card shoes manufactured by Paradise/LT Game.

REQUEST FOR PRODUCTION NO. 125 *(to all Defendants)*

Make available for inspection all versions of all source code for card shoes that Empire has developed, sold, or leased.

DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 125:

Defendants object to this Request as overbroad and unduly burdensome.  Moreover, the substantive allegations in Plaintiffs' Complaint concerning "source code for card shoes" are limited to card shoes manufactured by Paradise and/or LT Game.  Source code related to card shoes manufactured by third parties is therefore is [sic] irrelevant.  Even assuming there was some tangential relevance, the burden and expense of reviewing, processing, and producing such source code far outweighs the needs of this case.  Without waiving and subject to these objections, Defendants have identified no source code for third-party card shoes in their possession, custody, or control responsive to this Request.  With respect to card shoes manufactured by Paradise and/or LT Game, Defendants will produce source code responsive to this Request.  Because Defendants will produce the source code, Defendants object to making it available for inspection.

**E.     Category 5: Communications With Commerce Casino And Its CEO, Jeff Harris**

REQUEST FOR PRODUCTION NO. 8 *(to all Defendants)*

All documents and communications concerning or referring to Jeff Harris, including but not limited to all communications with Jeff Harris and all agreements to which Jeff Harris is a party.

RESPONSE: Defendants object to this Request as overbroad and unduly burdensome. The substantive allegations in Plaintiffs' complaint related to Jeff Harris concern a lease agreement with Commerce Casino for card shoes. Though Plaintiffs have alleged that Jeff Harris "supplied a large loan to Empire," Compl. at ¶ 117 (Dkt. 1), there is no reasonably apparent connection between this alleged loan and Plaintiffs' claims. Accordingly, producing "[a]ll documents and communications concerning or

referring to Jeff Harris" would not be calculated to lead to the discovery of relevant evidence. Without waiving and subject to these objections, Defendants will produce non-privileged responsive documents that pertain to the lease of card shoes to Commerce Casino.

REQUEST FOR PRODUCTION NO. 9 *(to all Defendants)*

All documents and communications concerning or referring to Commerce Casino, including but not limited to all communications with any past or present managers, employees, or representatives of Commerce Casino.

RESPONSE: Defendants object to this Request as overbroad and unduly burdensome. The substantive allegations in Plaintiffs' complaint related to Commerce Casino concern a lease agreement for card shoes. Accordingly, producing "[a]ll documents and communications concerning or referring to Commerce Casino" would not be calculated to lead to the discovery of relevant evidence. Without waiving and subject to these objections, Defendants will produce non-privileged responsive documents that pertain to the lease of card shoes to Commerce Casino.

REQUEST FOR PRODUCTION NO. 10 *(to all Defendants)*

All documents and communications reflecting or concerning transfers of money between on the one hand (a) Jeff Harris or anyone at Commerce Casino, and on the other hand (b) any of the Defendants.

RESPONSE: Defendants object to this Request to the extent that it is duplicative of Requests Nos. 8, 9, and 11, and incorporate all objections to those Requests by reference. Without waiving and subject to these objections, Defendants will produce non-privileged responsive documents that pertain to the lease of card shoes to Commerce Casino.

NON-PARTY COMPANY REQUEST NO. 6 *(to all Non-Party Companies)*

All company documents and company communications (i.e., from any account used to conduct the company's official business, including specifically any email account under the company's domain) referencing or concerning any of Commerce Casino or Jeff Harris.

OBJECTION: The Non-Party Company objects to this Request as irrelevant, overbroad, and unduly burdensome; the Request is not tailored nor tethered to Plaintiffs' claims, defenses, or substantive allegations or to a relevant Period and is thus not reasonably calculated to lead to the discovery of admissible evidence. There are no allegations that the Non-Party Company's interactions or

communications with or regarding Commerce Casino or Jeff Harris would be relevant to Plaintiffs' claims or defenses, particularly without any connection to Defendants. Given that, the burden and expense on the Non-Party Company—an uninvolved third-party—of reviewing, processing, and producing "all" company documents and communications "referencing or concerning" Commerce Casino and Jeff Harris far outweighs the needs of this case.

RESPONSE: The Non-Party Company will search for any non-privileged responsive documents during the relevant Period involving or referencing Commerce Casino or Jeff Harris and any Defendant and will produce any responsive documents within 60 days of this response.

## V.    **LEGAL ARGUMENT**

"A party seeking discovery may move for an order compelling an answer [and] production" where "a party fails to answer an interrogatory submitted under Rule 33" and "fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). "[A]n evasive or incomplete . . . response must be treated as a failure to . . . respond." Fed. R. Civ. P. 37(a)(4). Rule 45(d)(2)(B)(i) similarly empowers this Court (under whose authority the Feng Non-Party Company subpoenas were issued) to compel production under a subpoena. The scope of discovery is broad, extending to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" Fed. R. Civ. P. 26(b). The scope of discovery is broad because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (internal quotations omitted). "[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Importantly, as the party seeking to avoid discovery, Defendants bear the heavy burden of showing why that discovery should not be permitted. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Defendants must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and they "may not rely on boilerplate, generalized, conclusory, or speculative arguments." *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013). To provide the required detail, Defendants must support their argument against discovery by "specific examples and articulated reasoning." *U.S. E.E.O.C. v. Caesars Ent.*, 237 F.R.D. 428, 432 (D. Nev. 2006).

**A.      Category 1: Defendants Should Produce All Written Communications With Gaming Regulators, And They Should Be Complete And Unredacted (RFPs 67-70, 121)**

Defendants have given Plaintiffs only partial and/or redacted records of their communications with gaming regulators that appear to omit key attachments and exhibits, and otherwise omit the complete sets of financial records provided to the regulators. (Ex. 1, ₧ 12.) Defendants have been actively seeking licensure in key jurisdictions like Nevada and Pennsylvania since this lawsuit began, yet they have not produced all of their communications with those regulators, including communications that undoubtedly would have attempted to explain away Plaintiffs' lawsuit. (*Id.*) The regulators must have asked Defendants about this case, and Defendants must have told them something to try to exculpate themselves: Plaintiffs are entitled to see those communications. For example, Plaintiffs see that Empire secured licensing in Pennsylvania in October 2024 (including for Commerce Casino's Jeff Harris, F2, and other of the Non-Party Companies), yet Plaintiffs cannot find records concerning Defendants' communications with the Pennsylvania Gaming Control Board in the production. (*Id., see also* PA Gaming Control Board Order, Ex. 1-F.)

These regulatory submissions would have also included comprehensive company financials for Empire and the individual Defendants (including, Plaintiffs believe, comprehensive tax returns), as well as detailed explanations of Defendants' various business activities during the relevant time period (many of which form the basis of Plaintiffs' claims), and also detailed explanations (or mischaracterizations) about Defendants' past involvement with Plaintiffs. In short, Plaintiffs expect the regulatory communications to comprise exactly the kind of information Plaintiffs are looking for to prove liability. With respect to damages, a complete set of financials, bank account records, and tax returns will expose not only how Defendants were using Plaintiffs' money, but also what unjust gains they made from it.

In their 11/4/2024 Letter, Plaintiffs attempted to narrow the scope of subject matter that they had asked Defendants to supply in response to several interrogatories concerning oral communications with regulators, but Plaintiffs still maintained their request for the full universe of written submissions. (Ex. 1-D, p.3, Item (4).) Defendants would not agree to Plaintiffs' request, stating that they believed they had produced sufficient documents. (Ex. 1-E, 12/2/2024 Letter, p.2.) Part of Defendants' objection to making

a complete production has been that the written communications with the regulators are numerous. As to this point, Plaintiffs are willing to forego duplicative content. However, Defendants should otherwise make a fulsome and unredacted production of all of their communications with and submissions to the regulatory authorities, including all communications discussing this lawsuit, and complete unredacted financials, as had been requested in Requests Nos. 67-70 and 121.

**B.    Category 2: Defendants Should Produce Complete Financials For Empire, And Transactions Records With Feng's Non-Party Companies (RFPs 93, 25; Non-Party Request 4; Empire Rogs 1 and 13; Feng Rog 10)**

As discussed, *supra*, it is critical to Plaintiffs' ability to assess liability and calculate damages that Plaintiffs have access to a complete set of company financials, bank records, and tax returns for Empire, as well as complete records of transactions with Feng's Non-Party Companies.

Based on their review of Defendants' production, Plaintiffs seem to have received a summary statement of Empire revenue and profits through 2022 (one of the few documents that Defendants did identify pursuant to Rule 33(d)), but Plaintiffs have not been able to find standard form annual audited financials (*e.g.*, balance sheets, P&L), bank statements, or tax returns, and also have not found any financial records for 2023 or later, all of which were requested in RFP 93 that Defendants objected to. Defendants should produce all such documents so that Plaintiffs can perform fulsome damages calculations as to both lost investments and Defendants' unjust enrichments. (Ex. 1, ¶ 9.)

Regarding Empire Interrogatory No. 1, Defendants agreed "to produce documents sufficient to evidence Empire's revenues and profits for each year from 2018 through the present," presumably relying on Federal Rule of Civil Procedure 33(d). (Defs' Oct. 1, 2024 Letter (Ex. 1-B), at 4.) However, Empire has not supplemented its interrogatory response to provide Bates numbers of responsive documents (if such responsive documents were produced) as required by Rule 33(d)(1).

Regarding Empire Interrogatory No. 13, Defendants provided an incomplete response, only disclosing one of the properties Empire used without disclosing others separately reported by Mr. Medero (ECF No. 54-4 at 779–784, Medero Dec. ¶ 4.) Plaintiffs also do not know whether Defendants may have other properties.

With respect to Request 4 from the Non-Party Company subpoenas, Defendants and the Non-Party

Companies have not produced the records of all their financial transactions as requested. (Ex. 1, ¶ 9.) Defendants generally objected to production of transactions with the Non-Party Companies on the grounds that they deemed them irrelevant, but they are in fact highly relevant. Everything Plaintiffs have learned from this case points to the conclusion that Mr. Feng has operated most (if not all) of his Non-Party Companies as different arms of the same conglomerate enterprise under Empire, using some to hold assets and IP used by Empire, using others to pay certain Empire expenses, and otherwise appearing to move money among them at Mr. Feng's discretion. (*See* more, *infra*, Section V.C.) In order for Plaintiffs to engage in a proper damages assessment, they need to see the transactions among these companies so that Plaintiffs can understand where their money may have been sent, and also what unjust gains Defendants were making from it. In this regard, Plaintiffs intend to show that the Non-Party Companies were fueling unjust enrichment to Empire that should be disgorged to Plaintiffs.

**C.    Category 3: Defendants Must Produce Other Information About Mr. Feng's Non-Party Companies (Feng Rog 9, 11; Empire Rog 6, RFP 117; Non-Party Request 1-5)**

Defendants have objected to providing information relating to Mr. Feng's wholly owned company F2 TPS, LLC ("F2"), a California limited liability company established in January 2020 which serves as the third-party proposition player service ("TPPPS") at the Hawaiian Gardens Casino. Defendants contend that this information is not relevant, but it is apparent that F2 is closely tied to Empire and Defendants.

As it relates directly to Plaintiffs' allegations of misconduct, discovery shows that Feng misused Plaintiffs' funds by investing them in F2 without Plaintiffs' knowledge or approval. A June 13, 2023 memorandum submitted to the Nevada Gaming Control Board ("NGCB") shows that ████████████████████████████████████████████████ (Ex. 1-G at 27-29; ECF No. 54-4 at 712–721, Chan Dec., Ex. 2, ¶ 17(b); ECF No. 54-4 at 779–784, Medero Dec., Ex. 3, ¶ 8.) ███████████████████████████████████████████████████████████████████████ (Ex. 1-G at 29.) F2 has since generated ████████████████████████████████████ (*Id.* at 16.) Tellingly, at his March 2023 hearing before the Nevada Gaming Commission, Feng denied having used any of Plaintiffs funds for the initial F2 investment, but later had to correct the record under scrutiny from the Commission. (March 2023 Commission Hearing, Timestamp 3:22:00 to 3:24:00 - "*By the Commission:*

This $3M investment, I believe [the judge] asked you to confirm [] that the source of this wasn't from [Dr. Jay Chun], and you indicated that it wasn't, that it was from savings. *By Mr. Feng:* Yes ma'am there is no relationship with anybody."). F2 was recently licensed alongside Empire by the Pennsylvania Gaming Control Board. (Ex. 1-F.)

Given the misuse of Plaintiffs' funds by Feng, information relating to F2 is directly relevant to Plaintiff's unjust enrichment and breach of fiduciary duty claims against him. F2 represents a corporate opportunity usurped by Feng and a substantial benefit unknowingly and unjustly conferred upon him. In particular, F2's financial information, including its revenues and net profits for each year from 2020 through the present, is highly relevant to Plaintiffs' calculation of damages and restitution. As such, Plaintiffs request that the Court compel Defendants to answer Feng Interrogatory No. 11 and to produce documents responsive to Request for Production No. 13, including F2's revenues and net profits from 2020 through the present.

Defendants have likewise objected to producing information relating to Mr. Feng's numerous other Non-Party Companies, agreeing to provide only limited information about three particular companies regarding specific issues. Defendants' rationale for withholding this information is that, because Plaintiffs' Complaint does not contain specific allegations relating to Feng's Non-Party Companies, these companies are irrelevant. *But see* Compl. (ECF No. 1) ¶ 112 (listing Mr. Feng's Non-Party Companies that Plaintiffs had discovered by the time of filing and alleging that "Mr. Feng formed these companies in furtherance of his fraudulent scheme to build up a competing business"). This rationale fails, because "discovery is not limited to issues raised by the pleadings." *Oppenheimer Fund, Inc.*, 437 U.S. at 351. Defendants also claim that responding to these requests would be unduly burdensome, although Defendants fail to articulate why. *See AMG Servs., Inc.*, 291 F.R.D. at 553 (noting that the objecting party "may not rely on boilerplate, generalized, conclusory, or speculative arguments"). Plaintiffs allege that Defendants engaged in frequent, fraudulent self-dealing contrary to their respective fiduciary duties, and utilized the Non-Party Companies to do so. (*See* Compl. (ECF No. 1) ¶¶ 96, 181, 237). Therefore, Feng's other companies, Defendants' involvement or ownership interest in those companies, and the movement of funds between those companies and Defendants are all relevant to Plaintiffs' claims.

Publicly available information, Plaintiffs' records, and Defendants' current production show

Allison and/or Kiely's ownership interests or employment relationships with at least Solution Gaming; Akkadian; Playful Interactive; Renaissance Enterprise LLC; Pro-Tek Limited; and Victorian Investment Holdings. Plaintiffs' investigation further shows that Feng likely operates his various companies as a single, collective enterprise, ███████████████████████████████████████████ ██████████████████████████████████ *(See, e.g.*, June 13, 2023 Mem. to NGCB (Ex. 1-G), at 27–29 ██████████████████████████████████████████████; *id.* at 22 ███████████████████████████████████████████████████████████████████████; July 25, 2022 Mem. to NGCB (Ex. 1-H), at 19–20 ██████████████████████████ ██████████████████████████████████████████████████████████████████████████████ *id.* at 22 (stating that ███████████████████████████████████████████████; (PA Gaming Control Board Order, reflecting F2, Jeff Harris, Ephesus, and Montemoro as being licensed alongside Empire, Ex. 1-F.)

As noted, none of the Non-Party Companies has yet produced documents. Further, because Defendants have not provided a comprehensive identification of Feng's Non-Party Companies, Plaintiffs have continued to uncover various undisclosed companies owned by Feng that are clearly related to the gaming industry,[5] necessitating a burdensome subpoena process absent the Court's intervention. Plaintiffs are entitled to explore the extent to which the Non-Party Companies were involved in, connected to, or otherwise benefited from Defendants' misconduct. To that end, Plaintiffs request that the Court compel Defendants to answer Empire Interrogatory No. 6 and Feng Interrogatories Nos. 9–10 and to produce documents responsive to Requests for Production Nos. 23, 25, and 117, as well as documents responsive to Plaintiffs' subpoenas to the Non-Party Companies.[6]

---

[5] For example, a review of Defendants' communications with the NGCB has revealed the existence of Mr. Feng's Synergy Gaming Financial LLC, a Delaware limited liability company that provides gaming equipment financing. Other entities owned and controlled by Mr. Feng that have yet to be subpoenaed by Plaintiffs include at least the following: (1) F&T Business LLC; (2) F&T Commercial Real Estate LLC; (3) F&T Gaming LLC; (4) F&T Residential Real Estate LLC; (5) Montemoro LLC; (6) Polar Yo, Inc.; and (7) Renaissance Enterprise LLC. (Ex. 1, ¶ 17.)

[6] Requests 1-5 in the Subpoenas are self-explanatory. Request No. 6 seeks documents pertaining to Commerce Casino and its CEO, Jeff Harris. As discussed in the Complaint (ECF No. 1, ¶¶ 73-77, 115-120) Commerce Casino has been a long-time business partner of Empire, and Mr. Harris made a

**D.      Category 4: Defendants Must Provide Complete Information Relating To The Card Shoes They Have Developed, Sold, or Leased (Kiely Rog 9, RFPs 101, 104, 125)**

Plaintiffs already know that Empire misappropriated their Card Shoes, but what remains unclear is whether Empire developed their own shoe, and whether Empire used Plaintiffs' technology to do it. When asked plainly "whether Empire itself has manufactured or developed card shoes," Defendants claimed that "Empire itself has not manufactured card shoes" and that "no source code for third-party card shoes [is] in their possession, custody, or control." (Defs.' Oct. 1, 2024 Letter (Ex. 1-B), at 22.) Yet documents produced by Defendants—including a memorandum submitted to the NGCB—state that Empire ███████████████████████████ (June 13, 2023 Mem. to NGCB, Ex. 1-G, at 15 n.20; *see also* Feb. 8, 2023 Email to NGCB (Ex. 1-I) █████████████████████████████ ████████████

Defendants have not disclosed their purported proprietary Smart Card Shoe when responding to Plaintiffs' request for source code production, instead limiting their production to only source code used in Plaintiffs' products. Upon learning of Empire's apparent undisclosed Card Shoe, Plaintiffs served an additional interrogatory and several requests for production seeking the withheld information.  Relying on Federal Rule of Civil Procedure 33(d), Defendants responded that they would produce a narrow subset of documents (subject to various objections) responsive to Plaintiffs' interrogatory and requests. (*See* Def.'s Objs. & Resps. to Pl.'s 2d Set of Interrogs. (Ex. 1-J, at 6; Defs.' Objs. & Resps. to Pls.' 2d Set of RFPs. (Ex. 1-K, at 11–12.) However, no such production has been made to date—and Plaintiffs nevertheless seek a full, candid response.

Card Shoe products and their associated technology are central to this case. Plaintiffs allege that Defendants misappropriated trade secrets and infringed copyrighted material relating to Plaintiffs' Smart Card Shoes. (*See* Compl. (ECF No. 1) ¶¶ 129, 149, 170–72, 174.)  Plaintiffs further allege that Defendants

---

significant investment in Empire around the time that it acquired assets of Aruze. Plaintiffs have further discovered that Mr. Harris is more broadly involved in Mr. Feng's businesses, including F2. (*See, e.g.,* March 2023 Commission Hearings at 2:50:00-2:50:30, discussing Mr. Harris' investment in Empire, and at 3:20:00-3:21:30, discussing F2's replacement of Commerce Casino management at Hawaiian Gardens Casino; *see also* PA Gaming Control Board Order approving licensure of Jeff Harris alongside Empire, F2, and other of Feng's Non-Party Companies, Ex. 1-F.)

fraudulently and unlawfully retained dominion over Plaintiffs' Smart Card Shoes leased to Commerce Casino, claiming them for Empire and converting the cash flow from their lease. (*See id.* at ¶¶ 183, 213.) Accordingly, any Card Shoes developed, sold, or leased by Defendants are plainly relevant to this case. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (explaining that relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").

Regarding Kiely Interrogatory No. 9, Kiely initially refused to answer, stating that, because "he served as Chief Technology Officer at both LT Game and Empire, and thus routinely worked with source code relating to card shoes," it was not possible for him to answer. Plaintiffs attempted to narrow the interrogatory, asking Mr. Kiely to identify and explain all instances where he accessed, copied, or edited any source code relating specifically to Plaintiffs' Smart Card Shoes for use by any entity ***other*** than Plaintiffs. (Pls.' Sept. 11, 2024 Letter (Ex. 1-A), at 9.) Despite the narrowed request, Kiely again did not answer. (Defs.' Oct. 1, 2024 Letter (Ex. 1-B), at 13.)

In their November 4, 2024 Letter, Plaintiffs responded as follows:
> We are trying to ensure we understand Defendants' position.  Were the only card shoes sold or leased by Empire or Mr. Feng's Non-Party Companies Plaintiffs' card shoes?  If so, does that include card shoes manufactured by Plaintiffs that Empire or Mr. Feng's Non-Party Companies re-branded?  For example, the card shoes in Commerce Casino are branded "Play Synergy."  We are trying to understand what code was on these and what work Mr. Kiely did on them, as well as any other instances of Mr. Kiely working on card shoes sold under a brand other than Plaintiffs' brands.

(Nov. 4, 2024 Letter (Ex. 1-D), at 3–4.) In response, Defendants stated that they would amend Kiely's interrogatory response within thirty days (*i.e.*, by 1/2/2025) to answer (1) whether Empire sold or leased only Plaintiffs' Smart Card Shoes; (2) whether Defendants rebranded Plaintiff's Smart Card Shoes; (3) whether Plaintiffs' source code was used on the "Play Synergy" Smart Card Shoes deployed in Commerce Casino; and (4) what work Mr. Kiely did on any Smart Card Shoes containing Plaintiffs' source code. (Defs' Dec. 2, 2024 Letter (Ex. 1-E), at 2.)  To date, no such amended response has been made.  (Ex. 1, ¶ 20.)

In response to Plaintiffs' request for Empire's revenues and profits relating to Card Shoes regardless of manufacturer or branding, Defendants direct Plaintiffs to "confirm what card shoes Plaintiffs are referring to, and over which period they seek that data, so that Defendants may consider the request."

1  (*Id.*) Yet Defendants have withheld the information they ask Plaintiffs to provide. Further, Defendants

2  suggest that any inquiry regarding Card Shoes sold or leased by Feng's Non-Party Companies "is more

3  properly directed at those entities," despite clearly being information in Mr. Feng's possession, custody,

4  or control. (*Id.*) Moreover, Plaintiffs have subpoenaed several of Feng's Non-Party Companies, all of

5  which have failed to produce any documents. (Ex. 1, ¶ 10.) Finally, in response to Plaintiffs' request for

6  documents concerning the development of Empire's Card Shoe product, Defendants invoke a "trade secret

7  privilege," presumably withholding documents despite having a protective order entered in this case.

8  (Defs.' Objs. & Resps. to Pls.' 2d Set of Reqs. (Ex. 1-K, at 9.)

9      Plaintiffs request that the Court compel Defendants to provide accurate, complete responses to

10  Kiely Interrogatory No. 9 and Requests for Production Nos. 101, 104, and 125, including information

11  relating to any and all Card Shoes that Defendants have developed, sold, or leased.

12      **E.**    **Category 5: Defendants Should Produce Communications With Commerce Casino**

13                  **And Its CEO, Jeff Harris (RFPs 8-10; Non-Party Request 6)**

14      As noted in Section III, *supra*, Commerce Casino reports having potentially 22,000

15  communications with Defendants responsive to the keywords that Plaintiffs provided, yet Plaintiffs only

16  seem to have about 200 such emails from Defendants' production. Based on discovery to-date, Plaintiffs

17  would expect these communications to cut across all of Categories 1-4 already discussed, as Mr. Harris

18  has been a key investor in Empire and Feng's Non-Party Companies, including F2. (*See, supra*, n.6.)

19  Indeed, the Pennsylvania Gaming Control Board recently licensed Mr. Harris in his personal capacity

20  alongside Empire, Feng, Allison, Kiely, F2, and other Non-Party Companies, reflecting the fact that Mr.

21  Harris has been one of their close business partners, and undoubtedly privy to Defendants' discussions

22  and plans regarding how to undermine Plaintiffs. (Ex. 1-F.) Furthermore, Commerce Casino and Mr.

23  Harris were directly involved with the Card Shoe episode that underlies many of Plaintiffs' claims in this

24  case. Finally, the very fact that there are apparently 22,000 communications with Commerce Casino and

25  Mr. Harris in and of itself reveals their close relationship with Defendants. If anyone outside of

26  Defendants' companies was going to be aware of the details of Plaintiffs' misconduct, it would be Mr.

27  Harris and his team at Commerce Casino. Plaintiffs have no way of knowing the full scope of deals that

28  Defendants and Commerce/Harris have been involved in, or what topics they discussed with each other,

1   any number of which interactions Plaintiffs might regard as smoking gun evidence of Defendants'

2   misconduct if Plaintiffs only knew of them. Plaintiffs therefore seek a complete production under their

3   Requests for Production 8-10, and their Request 6 to the Non-Party Companies.

4   **VI.    <u>CONCLUSION</u>**

5       For these reasons, Plaintiffs respectfully request that this Court grant the instant Motion to Compel

6   Discovery in its entirety and compel Defendants to supplement their productions and responses.

7

8       DATED: February 25, 2025

9
                        */s/ Jessica M. Lujan*

10                          OLIVER J. PANCHERI, ESQ.
                        Nevada Bar No. 7476

11                          JESSICA M. LUJAN, ESQ.
                        Nevada Bar No. 14913

12                          **SPENCER FANE LLP**

13                          300 South Fourth Street, Suite 1600
                        Las Vegas, Nevada 89101

14                          Tel.: (702) 408-3400
                        Fax: (702) 938-8648

15                          Email: opancheri@spencerfane.com
                                jlujan@spencerfane.com

16
                        JEAN-PAUL CIARDULLO, ESQ.  (*pro hac vice*)

17                          California Bar No. 284170

18                          **FOLEY & LARDNER LLP**
                        S555 Flower Street, Suite 3300

19                          Los Angeles, California 90071
                        Tel: (213) 972-4500

20                          Fax: (213) 486-0065
                        Email: jciardullo@foley.com

21
                        ROBERT T. STEWART, ESQ.

22                          Nevada Bar No. 13770

23                          STEWART RAY NELSON, ESQ. (*pro hac vice*)
                         Utah Bar No. 17286

24                          HANNAH L. ANDREWS, ESQ. (*pro hac vice*)
                         Utah Bar No. 18157

25                          **FOLEY & LARDNER LLP**

26                          95 South State Street, Suite 2500
                        Salt Lake City, Utah 84111

27                          Tel.: (801) 401-8900
                        Email: rtstewart@foley.com

28                                  srnelson@foley.com

handrews@foley.com

*Attorneys for Plaintiffs/Counterdefendants*

Oliver J. Pancheri, Esq. (Nevada Bar No. 7476)
Jessica M. Lujan, Esq. (Nevada Bar No. 14913)
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3400
Fax: (702) 938-8648
Email: opancheri@spencerfane.com
         jlujan@spencerfane.com

Jean-Paul Ciardullo, Esq. (*pro hac vice*)
 California Bar No. 284170
**FOLEY & LARDNER LLP**
555 Flower Street, Suite 3300
Los Angeles, California 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
Email: jciardullo@foley.com

Robert T. Stewart, Esq. (Nevada Bar No. 13770)
Stewart Ray Nelson, Esq. (*pro hac vice*)
Hannah L. Andrews, Esq. (*pro hac vice*)
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, Utah 84111
Tel.: (801) 401-8900
Email: rtstewart@foley.com
         srnelson@foley.com
         handrews@foley.com

*Attorneys for Plaintiffs/Counterdefendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PARADISE ENTERTAINMENT LIMITED, a Bermuda corporation; and LT GAME, INC., a Nevada corporation, <br><br> Plaintiffs/Counterdefendants, <br><br> v. <br><br> EMPIRE TECHNOLOGICAL GROUP LIMITED, a Nevada corporation; GAMING SPECIALIZED LOGISTICS LLC, a Nevada limited liability company; LINYI FENG, an individual; ROY KELCEY ALLISON, an individual; and DARYN KIELY, an individual, <br><br> Defendants/Counterclaimants. | Case No. 2:24-cv-00428-JCM-BNW <br><br> **PLAINTIFFS' MOTION FOR LEAVE TO EXCEED PAGE LIMITATIONS IN MOTION TO COMPEL RECORDS FROM DEFENDANTS AND MR. FENG'S SUBPOENAED COMPANIES** |

Pursuant to LR 7-3, Plaintiffs Paradise Entertainment Limited ("Paradise") and LT Game (Canada) Limited ("LT Game") (collectively, "Plaintiffs") hereby move the Court for leave to exceed page limitations related to their Motion to Compel Records from Defendants and Mr. Feng's Subpoenaed Companies (the "Motion to Compel").

This Motion is made and based on the following memorandum of points and authorities, the Declaration of Jean-Paul Ciardullo, attached hereto as **Exhibit 1**, the papers and pleadings on file herein, any exhibits attached hereto, and any oral argument permitted by the Court.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Local Rule 7-3(b) provides that all motions (other than motions for summary judgment) are limited to 24 pages in length, excluding exhibits. *See* LR 7-3(b). LR 7-3(c) provides that a "motion to file a brief that exceeds these page limits will be granted only upon a showing of good cause." LR 7-3(c).

Here, Plaintiffs are requesting leave to exceed the 24-page limit by 7 pages. Good cause exists to permit Plaintiffs to exceed the 24-page limit related to their Motion to Compel in light of LR 26-6(b), which requires that all "motions to compel discovery or for a protective order must set forth in full the text of the discovery originally sought and any response to it." 26-6(b). *See also* Ex. 1, Ciardullo Dec. at ¶ 2. Despite Plaintiffs' best efforts to draft their Motion to Compel in a concise manner, the sheer number of discovery requests and responses at issue in the Motion to Compel have necessarily caused the Motion to Compel to exceed the 24-page limit, given Plaintiffs' compliance with LR 26-6(b). *Id*. But for the requirement that all discovery requests and responses be set forth in full in the body of any discovery motion, Plaintiffs' Motion to Compel would consist of a mere 15 pages, well within the 24-page limit proscribed by the Local Rules. *Id*.

This Motion complies with the requirements of LR 7-3(c), as it is being filed prior to the Motion to Compel to which it applies, and it is accompanied by the Declaration of Jean-Paul Ciardullo (Ex. 1), which explains the "reasons for, and number of, additional pages requested." *See* LR 7-3(c). Additionally, this Motion is not styled as an *ex parte* or emergency motion, and it is fewer than three pages in length. *Id*.

Based on the foregoing, Plaintiffs respectfully request that the instant Motion be granted, and that the Court enter an order permitting Plaintiffs to exceed the 24-page limit related to their Motion to Compel.

Dated this 25th day of February 2025.

/s/ Jessica M. Lujan
OLIVER J. PANCHERI, ESQ. (NBN 7476)
JESSICA M. LUJAN, ESQ. (NBN 14913)
**SPENCER FANE LLP**
300 S. 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400 / Fax: (702) 938-8648
Email: opancheri@spencerfane.com
          jlujan@spencerfane.com

JEAN-PAUL CIARDULLO, ESQ. (*pro hac vice*)
**FOLEY & LARDNER LLP**
555 Flower Street, Suite 3300
Los Angeles, California 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
Email: jciardullo@foley.com

ROBERT T. STEWART, ESQ. (NBN 13370)
STEWART RAY NELSON, ESQ. (*pro hac vice*)
HANNAH L. ANDREWS, ESQ. (*pro hac vice*)
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, UT 84111
Tel.: (801) 401-8900
Email: rtstewart@foley.com
          srnelson@foley.com
          handrews@foley.com

*Attorneys for Plaintiffs/Counterdefendants*

## **INDEX OF EXHIBITS**

| **Exhibit Description** | **Exhibit No.** |
| --- | --- |
| Declaration of Jean-Paul Ciardullo in Support of Plaintiffs' Motion to Compel Production of Lewis Roca Records | 1 |
| Plaintiffs' September 11, 2024 Letter | 1A |
| Defendants' October 1, 2024 Letter | 1B |
| Plaintiffs' October 15, 2024 Letter | 1C |
| Plaintiffs' November 4, 2024 Letter | 1D |
| Defendants' December 2, 2024 Letter | 1E |
| October 2024 Order from the Pennsylvania Gaming Control Board | 1F |
| June 13, 2023 Memorandum from Mr. Feng to the Nevada Gaming Control Board *(Filed Under Seal)* | 1G |
| July 25, 2022 Memorandum from Mr. Feng to the Nevada Gaming Control Board *(Filed Under Seal)* | 1H |
| February 8, 2023 Email from Mr. Feng to the Nevada Gaming Control Board *(Filed Under Seal)* | 1J |
| Defendants' Objections and Responses to Plaintiffs' Second Set of Interrogatories | 1J |
| Defendants' Objections and Responses to Plaintiffs' Second Set of Requests for Production | 1K |