Patrick J. Reilly
Nevada Bar No. 6103
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, 16th Floor
Las Vegas, Nevada 89106
Telephone: 702.382.2101
Facsimile: 702.382.8135 preilly@bhfs.com

Mark Oakes (*pro hac vice*)
Zach McHenry (*pro hac vice*)
Ethan Glenn (*pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone: (512) 474-5201
Facsimile: (512) 536-4598
mark.oakes@nortonrosefulbright.com
zach.mchenry@nortonrosefulbright.com
ethan.glenn@nortonrosefulbright.com

*Attorneys for Defendants/Counterclaimants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PARADISE ENTERTAINMENT LIMITED, a Bermuda corporation; and LT GAME INC., a Nevada corporation; and LT GAME LIMITED, a British Virgin Islands corporation, | Case No. 2:24-cv-00428-JCM-BNW |
| *Plaintiffs*, | |
| v. | **SECOND AMENDED ANSWER AND COUNTERCLAIMS of EMPIRE TECHNOLOGICAL GROUP LIMITED, a Nevada corporation; GAMING SPECIALIZED LOGISTICS LLC, a Nevada limited liability company; LINYI FENG, an individual; ROY KELCEY ALLISON, an individual; and DARYN KIELY** |
| EMPIRE TECHNOLOGICAL GROUP LIMITED, a Nevada corporation; GAMING SPECIALIZED LOGISTICS LLC, a Nevada limited liability company; LINYI FENG, an individual; ROY KELCEY ALLISON, an individual; DARYN KIELY, an individual; and YI ZHAO, an individual, | |
| *Defendants.* | **JURY TRIAL DEMANDED** |

**SECOND AMENDED ANSWER AND COUNTERCLAIMS**

Defendants Empire Technological Group Limited ("Empire"), Mr. Linyi Feng ("Mr. Feng"), Gaming Specialized Logistics LLC ("GSL"), Roy Kelcey Allison ("Mr. Allison"), and Daryn Kiely ("Mr. Kiely") (collectively, "Defendants"), by and through their undersigned counsel, answer the claims of Plaintiffs Paradise Entertainment Limited ("Paradise"), LT Game, Inc. (formerly called LT Game (Canada) Limited) ("LT Game" or "LTGC"), and LT Game Limited ("LTG Limited") (collectively, "Plaintiffs") as follows:

**RESPONSE TO ALLEGATIONS IN FIRST AMENDED COMPLAINT[1]**

1. Defendants admit the general description in Paragraph 1, but deny any allegations therein.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Defendants dispute that Plaintiffs are entitled to any relief but do not dispute the Court's subject matter jurisdiction over the parties (with the exception of Ms. Zhao) for the purposes of this case (as Ms. Zhao has not been served and has not appeared in this case, Defendants cannot admit or deny whether jurisdiction over her is proper); to the extent an answer is required, Defendants lack knowledge sufficient to form a belief as to the truth of the remaining allegations, and thus deny them.

12. Defendants dispute that Plaintiffs are entitled to any relief but do not dispute the Court's

---

[1] Each numbered paragraph in this Answer corresponds to the same numbered paragraph in the First Amended Complaint.

personal jurisdiction over the parties (with the exception of Ms. Zhao) for the purposes of this case (as Ms. Zhao has not been served and has not appeared in this case, Defendants cannot admit or deny whether jurisdiction over her is proper); to the extent an answer is required, Defendants lack knowledge sufficient to form a belief as to the truth of the remaining allegations, and thus deny them.

13. Defendants dispute that Plaintiffs are entitled to any relief but do not dispute venue (with the exception as pertaining to Ms. Zhao) for the purposes of this case (as Ms. Zhao has not been served and has not appeared in this case, Defendants cannot admit or deny whether venue is proper); to the extent an answer is required, Defendants lack knowledge sufficient to form a belief as to the truth of the remaining allegations, and thus deny them.

14. Admitted that Paradise is a supplier of electronic gaming equipment and systems, and is listed on the Honk Kong stock exchange. The remaining allegations are denied.

15. Admitted that Paradise has developed gaming equipment technology, and that Paradise and its subsidiaries have developed, sold, and leased electronic gaming products. The remaining allegations are denied.

16. Admitted that LTGC is a subsidiary of Paradise. Defendants lack knowledge sufficient to form a belief as to the truth of the remaining allegations, and thus deny them.

17. Defendants deny that the electronic gaming equipment and systems business is a highly competitive industry. Defendants lack knowledge sufficient to form a belief as to the truth of the remaining allegations, and thus deny them.

18. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

19. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

20. Denied.

21. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

22. Admitted that Dr. Jay Chun ("Dr. Chun") leads Paradise. It is further admitted that Dr. Chun

has experience in the gaming industry. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

23. Admitted.

24. Admitted that, prior to 2008, Mr. Feng had no employment experience in the gaming industry. The remaining allegations set forth in Paragraph 24 are denied.

25. Denied.

26. Admitted that, in February 2008, Paradise incorporated LTGC in Ontario, Canada, to explore the North American market for its electronic gaming products, and that LTGC is now a Nevada corporation. Defendants lack knowledge sufficient to form a belief as to the truth of the remaining allegations, and thus deny them.

27. Admitted that Mr. Feng. Served as LTGC's president, secretary, treasurer, and sole director from February 19, 2008, until to February 28, 2022. The remaining allegations are denied.

28. Admitted that Mr. Feng, in his capacity as LTGC's president, secretary, treasurer, and director, had access to information concerning LTGC's business. The remaining allegations set forth in Paragraph 28 are denied.

29. Admitted that LT Game International Limited was incorporated in the British Virgin Islands in 2012 and Mr. Wang Tao Feng ("Mr. Wang") was the sole shareholder of the company. The remaining allegations set forth in Paragraph 29 are denied.

30. Admitted that, shortly after the company was incorporated, LT Game International Limited changed its name to LT Game International (US) Limited; and, in May 2016, after Mr. Feng acquired the company, he changed LT Game International (US) Limited's name to "Empire Technological Group Limited" ("Empire"). The remaining allegations are denied.

31. Admitted that, from 2014 until February 2022, Mr. Feng served as a consultant for LifeTec with respect to casino gaming equipment sales and services, and received some compensation for his work under that arrangement. The remaining allegations are denied.

32. Admitted that, in 2015, Mr. Feng acquired Empire (then known as LT Game International (US) Limited) from Mr. Wang for $1. The remaining allegations are denied.

33. Denied.

34. Denied.

35. Denied.

36. Admitted that Empire has had a business relationship with Paradise over the years that was intended to be mutually beneficial. The allegations set forth in Paragraph 36 mischaracterize the business relationship between Empire and Paradise, and therefore are denied.

37. Admitted that, while Mr. Feng operated Empire, he continued to hold the titles of president, secretary, treasurer, and director of LTGC, until February 28, 2022, when he resigned from LTGC. The remaining allegations are denied.

38. Denied.

39. Admitted that Mr. Feng and Mr. Allison would have had discussions regarding the slot machine business at various points in time. It is further admitted that, in 2018, Mr. Allison was the sole owner and operator of GSL, which is a company that provides consulting services relating to the gaming industry. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

40. Admitted that Mr. Allison previously worked for Aruze Gaming America in various capacities, including serving as the CEO of that company for roughly one year.

41. Admitted that Empire engaged GSL to provide consulting services to Empire with respect to distributing Paradise and/or LTGC's products. Defendants further admit that Empire discussed this arrangement with Paradise. The remaining allegations are denied.

42. Denied.

43. Denied.

44. Admitted that LTGC provided Empire warehouse space for a certain period of time, and that this arrangement was governed by, and memorialized in, a written "Shared Services Agreement" signed by Empire and LTGC. It is further admitted that Empire later moved to a new facility and terminated the Shared Services Agreement. The remaining allegations are denied.

45. Denied.

46. Admitted that Paradise and/or LTGC paid for some of the required certifications of its own

gaming equipment, which Empire distributed. The remaining allegations are denied.

47. Admitted that, for the benefit of LTGC, certain LTGC employees had Empire email accounts. The remaining allegations are denied.

48. Admitted that Mr. Kiely served as the Executive Director of Engineering and the VP of Engineering for LTGC from February 2016 until 2019, at which time Mr. Kiely's titled changed to Chief Technology Officer. It is further admitted that Mr. Kiely began working concurrently for Empire in February 2019. The remaining allegations are denied.

49. Admitted that, in 2019, Mr. Feng considered assigning approximately 5% of shares in Empire to Mr. Kiely. The remaining allegations are denied.

50. Admitted that Kiely was the Chief Technology Officer for LTGC.  The remaining allegations are denied.

51. Defendants deny the characterizations of the content of Exhibit A, as the document speaks for itself. The remaining allegations are denied.

52. Admitted that, as Chief Technology Officer of LTGC, Mr. Kiely managed LTGC's technical teams, worked with only a subset of Paradise's research and development teams on certain projects, and reported to Mr. Feng. The remaining allegations are denied.

53. Admitted that Mr. Kiely, as LTGC's Chief Technology Officer, had access to information concerning LTGC's business. The remaining allegations are denied.

54. Admitted that Mr. Kiely, as LTGC's Chief Technology Officer, had access to a gaming platform licensed from Aspect Group Limited. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

55. Admitted that Mr. Kiely, as LTGC's Chief Technology Officer, had access to a computer program called "LTShoe," including that program's source code, which was used in smart card shoes. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

56. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

57. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus

deny them.

58. Denied that LTG Limited designed and developed "Paradise Golden Frog Baccarat." Admitted that Mr. Kiely, as LTGC's Chief Technology Officer, had access to a "Paradise Golden Frog" computer program. Defendants lack knowledge sufficient to form a belief as to the truth of the remaining allegations, and thus deny them.

59. Defendants lack knowledge sufficient to form a belief as to the truth of remaining the allegations, and thus deny them.

60. Denied.

61. Defendants deny the characterizations of the content of Exhibit A, as the document speaks for itself. The remaining allegations are denied.

62. Denied.

63. Admitted.

64. Defendants deny the characterizations of the content of Exhibit D, as the document speaks for itself. The remaining allegations are denied.

65. Defendants deny the characterization of Mr. Allison's duties. Defendants admit that Mr. Allison's January 1, 2020 Employment Contract purports to describe his job duties, but deny that this description reflects his actual duties. Defendants admit that Mr. Allison reported to Mr. Feng. The remaining allegations are denied.

66. Admitted that, as Senior Vice President of Operations and Business Development of LTGC, Mr. Allison had access to limited information concerning LTGC's business. The remaining allegations are denied.

67. Admitted that, in 2022, LTGC entered into an agreement with GSL. Defendants deny the characterizations of Exhibit E, as the document speaks for itself. The remaining allegations are denied.

68. Admitted that, in 2022, LTGC entered into an agreement with GSL, the terms of which speak for themselves. The remaining allegations are denied.

69. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

70. Admitted.

71. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

72. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

73. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them

74. Denied.

75. Denied.

76. Admitted that, in certain instances, Paradise and/or LTGC reimbursed expenses incurred by Empire to obtain product approvals for Paradise and LTGC products, as required by applicable gaming regulators. The remaining allegations are denied.

77. Admitted that a Nevada gaming license is expensive to obtain. The remaining allegations are denied.

78. Denied.

79. Denied.

80. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

81. Admitted that, on November 1, 2018, Empire entered into an agreement with Commerce Casino to lease Smart Card Shoes owned by LTGC to Commerce Casino containing the LTShoe program, which was signed by Mr. Feng for Empire and by Jeffrey Harris for Commerce Casino. Defendants further admit that Smart Card Shoes are software-controlled playing card dispensing machines used by card dealers. The remaining allegations are denied.

82. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

83. Defendants are unable to admit or deny that Paragraph 83 is an accurate representation of the alleged communication; however, Defendants admit that Mr. Feng sent a similar communication to Dr. Chun on or around January 21, 2022.

84. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

85. Admitted that, in February 2022, Mr. Feng resigned as President of LTGC. The remaining allegations are denied.

86. Defendants have been unable to locate the communication referenced in Paragraph 86 and therefore lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

87. Defendants deny the allegations, except admit that Mr. Feng remained President of Empire.

88. Denied.

89. Admitted that Mr. Kiely's final day of employment at LTGC was March 31, 2023. It is further admitted that Mr. Kiely's public LinkedIn profile indicates that he was working concurrently at Empire and LTGC. The remaining allegations are denied.

90. Denied.

91. Denied.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

98. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

99. Denied.

100.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, an thus deny them.

101.    Denied as to the allegation that Ms. Zhao used misappropriated Confidential Business Information and Trade Secrets to benefit Empire; Defendants lack knowledge sufficient to form

a belief as to the truth of the remaining allegations, and thus deny them.

102.    Denied.

103.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them, except that Empire purchased certain Aruze assets.

104.    Denied.

105.    Denied.

106.    Admitted that Mr. Feng has maintained that he had no obligations to Paradise or LTGC with respect to Empire. The remaining allegations are denied.

107.    Admitted.

108.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

113.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

114.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

115.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

116.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

117.    Admitted that on December 14, 2019, Empire filed a trademark application with the United States Patent and Trademark Office for "GOLDEN FROG BACCARAT," U.S. Serial No. 88727507. The remaining allegations are denied.

118.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and

1    thus deny them.

2    119.    Denied.

3    120.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and

4        thus deny them.

5    121.    Denied.

6    122.    Denied.

7    123.    Admitted that, in July 2020, a US provisional patent application was filed that later resulted

8        in U.S. Patent No. 11,341,807 entitled "Display Assembly for Relevant Messaging for Gaming

9        Apparatus and Methods Therefor," that Mr. Feng and Mr. Kiely were the inventors listed

10        thereon, and that the patent was assigned to Empire. It is further admitted that, on or about June

11        8, 2022, Empire filed a patent infringement lawsuit against Light & Wonder, Inc. and SG

12        Gaming, Inc. It is further admitted that Mr. Feng and Mr. Kiely are the named inventors on

13        other patents that are assigned to Empire. The remaining allegations are denied.

14    124.    Denied.

15    125.    Defendants lack knowledge sufficient to form a belief as to the truth of the remaining

16        allegations, and thus deny them.

17    126.    Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and

18        thus deny them.

19    127.    Defendants have been unable to locate the communication referenced in Paragraph 127 and

20        therefore lack knowledge sufficient to form a belief as to the truth of the allegations, and thus

21        deny them.

22    128.    Admitted that, in or around August 2020, Playful Interactive released an app called "Golden

23        Frog Baccarat," which was available on the Apple App Store and Android Google Play. The

24        remaining allegations are denied.

25    129.    Defendants deny the allegations set forth in Paragraph 129, except admit that Mr. Feng set

26        up a Nevada company called Akkadian Enterprises ("Akkadian") on May 21, 2021.

27    130.    Admitted that Mr. Allison and Mr. Kiely each own shares in Akkadian.  The remaining

28        allegations are denied.

NORTON ROSE
FULBRIGHT US LLP
ATTORNEYS AT LAW
WASHINGTON DC

131.   Admitted that, in 2021, Akkadian purchased intellectual property from Synergy Blue LLC. The remaining allegations set forth in Paragraph 130 are denied.

132.   Denied

133.   Admitted that LT Game entered into a contract with Akkadian for slot game development. The remaining allegations are denied.

134.   Admitted.

135.   Admitted that Mr. Feng has formed the following companies: (1) Solution Gaming Technologies ("Solution Gaming"); (2) Victorian Investment Holdings; (3) Ephesus Holdings; (4) F&T Holdings LLC; (5) F&T LV Real Estate 1, LLC; (6) F&T LV Real Estate 2, LLC; (7) F&T LV Real Estate 3, LLC; LLC; (8) Montemoro, LLC; (9) F&T Business LLC; (10) F&T Commercial Real Estate LLC; (11) F&T Gaming LLC; (12) F&T Holdings LLC; and (13) F&T Residential Real Estate LLC.  The remaining allegations are denied.

136.   Admitted.

137.   Denied.

138.   Defendants admit the allegations set forth in Paragraph 138, except clarify that Empire indicated on the trademark application that the first use date was at least as early as January 7, 2019, and the first use in commerce date was at least as early as April 16, 2019.

139.   Admitted that Empire entered into an agreement with Sockeye Software, effective February 8, 2022, to license software for computerized slot machines. The remaining allegations are denied.

140.   Denied.

141.   Defendants deny the allegations set forth in Paragraph 141, except admit that LTGC's card shoes were removed from Commerce Casino at the direction of Commerce Casino, and other LTGC card shoes were subsequently placed at Commerce Casino. The remaining allegations are denied.

142.   Denied.

143.   Denied.

144.   Admitted that Empire entered into an agreement with Solution Gaming. The remaining

allegations set forth in Paragraph 144 are denied.

145. Denied.

146. Admitted.

147. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

148. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

149. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

150. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them. All remaining allegations are denied.

151. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

152. Denied.

153. Due to the characterizations of the communications, denied.

154. Due to the characterizations of the communications, denied.

155. Admitted that Mr. Allison and Ms. Zhao still worked for Paradise Group in some capacity during April 2023.  All remaining allegations are denied.

156. Admitted that Empire has a branch in Macau and that Empire obtained gaming licenses to be an electronic gaming machines manufacturer or provider in Macau.  Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

157. Admitted that Mr. Feng and Ms. Qui sent messages to Ms. Zhao on that date.  The remaining allegations are denied.

158. Defendants lack knowledge sufficient to form a belief as to the truth of the allegations, and thus deny them.

159. Admitted that Ms. Zhao and Mr. Feng exchanged messages on that date. The remaining allegations are denied.]

160. Defendants deny the allegations set forth in Paragraph 160, except admit that, since October

2023, Empire has been doing business as Aruze Gaming Global.

161.    Admitted that, at a point in time, the Empire/Aruze website listed Golden Frog Baccarat as one of its electronic table game products. The Golden Frog Baccarat description stated, "Our POWER SHOE and SMRT BOARD allows casinos to eliminate dealer errors and needless keypad entries, while providing valuable gaming data for analytics and game protection." The remaining allegations are denied.

162.    Admitted that the Empire's Golden Frog Baccarat electronic table games were in use at some or all of the following casinos at the time of the filing of the Plaintiffs' original complaint: (1) Durango Station (Las Vegas, NV); (2) Red Rock Resort (Las Vegas, NV); (3) Rampart Casino (Las Vegas, NV); (4) Santa Fe Station (Las Vegas, NV); (5) Agua Caliente (Palm Springs, CA, and Rancho Mirage, CA); (6) Bay 101 (San Jose, CA); (7) Graton Casino (Rohnert Park, CA); (8) Red Hawk Casino (Placerville, CA); (9) Hard Rock Sacramento (Wheatland, CA); (10) Cache Creek Casino (Brooks, CA); (11) Monarch Casino (Black Hawk, CO); and (12) Hard Rock Biloxi (Biloxi, MS). The remaining allegations are denied.

163.    Denied.

164.    Denied.

165.    Denied that Mr. Feng fraudulently used that money to advance his own interests, hired away LT Game's management team even as they were still working as officers of LT Game, and unjustly enriched himself with Empire's business assets and gaming licenses that Plaintiffs had subsidized. Defendants lack knowledge sufficient to form a belief as to the truth of the remaining allegations, and thus deny them.

**RESPONSE TO COUNT ONE[2]**

**(Misappropriation of Trade Secrets Under Defend Trade Secrets Act)**

166.    Defendants incorporate their responses to the foregoing paragraphs as though fully set forth herein.

167.    This paragraph is Plaintiffs' statement of claim and does not require a response. To the

---

[2] Defendants deny any and all other paragraphs, headings, titles, claims for relief, and all other allegations or averments, numbered or unnumbered, not specifically responded to herein.

1    extent it requires a response, Defendants deny the same.

2    168.    This paragraph purports to set forth legal conclusions to which no response is required. To

3    the extent this paragraph contains any factual allegations, those allegations are denied.

4    169.    This paragraph purports to set forth legal conclusions to which no response is required. To

5    the extent this paragraph contains any factual allegations, those allegations are denied.

6    170.    This paragraph purports to set forth legal conclusions to which no response is required. To

7    the extent this paragraph contains any factual allegations, those allegations are denied.

8    171.    This paragraph purports to set forth legal conclusions to which no response is required. To

9    the extent this paragraph contains any factual allegations, those allegations are denied.

10    172.    This paragraph purports to set forth legal conclusions to which no response is required. To

11    the extent this paragraph contains any factual allegations, those allegations are denied.

12    173.    This paragraph purports to set forth legal conclusions to which no response is required. To

13    the extent this paragraph contains any factual allegations, those allegations are denied.

14    174.    This paragraph purports to set forth legal conclusions to which no response is required. To

15    the extent this paragraph contains any factual allegations, those allegations are denied.

16    175.    This paragraph purports to set forth legal conclusions to which no response is required. To

17    the extent this paragraph contains any factual allegations, those allegations are denied.

18    176.    This paragraph purports to set forth legal conclusions to which no response is required. To

19    the extent this paragraph contains any factual allegations, those allegations are denied.

20    177.    This paragraph purports to set forth legal conclusions to which no response is required. To

21    the extent this paragraph contains any factual allegations, those allegations are denied.

22    178.    This paragraph purports to set forth legal conclusions to which no response is required. To

23    the extent this paragraph contains any factual allegations, those allegations are denied.

24    179.    This paragraph purports to set forth legal conclusions to which no response is required. To

25    the extent this paragraph contains any factual allegations, those allegations are denied.

26    180.    This paragraph purports to set forth legal conclusions to which no response is required. To

27    the extent this paragraph contains any factual allegations, those allegations are denied.

28    181.    This paragraph purports to set forth legal conclusions to which no response is required. To

1    the extent this paragraph contains any factual allegations, those allegations are denied.

2    182.    This paragraph purports to set forth legal conclusions to which no response is required. To

3    the extent this paragraph contains any factual allegations, those allegations are denied.

4    183.    This paragraph purports to set forth legal conclusions to which no response is required. To

5    the extent this paragraph contains any factual allegations, those allegations are denied.

6    184.    This paragraph purports to set forth legal conclusions to which no response is required. To

7    the extent this paragraph contains any factual allegations, those allegations are denied.

8    185.    This paragraph purports to set forth legal conclusions to which no response is required. To

9    the extent this paragraph contains any factual allegations, those allegations are denied.

10    **RESPONSE TO COUNT TWO**

11    **(Misappropriation of Trade Secrets Under Nevada Uniform Trade Secrets Act)**

12    186.    Defendants incorporate their responses to the foregoing paragraphs as though fully set forth

13    herein.

14    187.    This paragraph is Plaintiffs' statement of claim and does not require a response. To the

15    extent this paragraph requires a response, Defendants deny the same.

16    188.    This paragraph purports to set forth legal conclusions to which no response is required. To

17    the extent this paragraph contains any factual allegations, those allegations are denied.

18    189.    This paragraph purports to set forth legal conclusions to which no response is required. To

19    the extent this paragraph contains any factual allegations, those allegations are denied.

20    190.    This paragraph purports to set forth legal conclusions to which no response is required. To

21    the extent this paragraph contains any factual allegations, those allegations are denied.

22    191.    This paragraph purports to set forth legal conclusions to which no response is required. To

23    the extent this paragraph contains any factual allegations, those allegations are denied.

24    192.    This paragraph purports to set forth legal conclusions to which no response is required. To

25    the extent this paragraph contains any factual allegations, those allegations are denied.

26    193.    This paragraph purports to set forth legal conclusions to which no response is required. To

27    the extent this paragraph contains any factual allegations, those allegations are denied.

28    194.    This paragraph purports to set forth legal conclusions to which no response is required. To

1    the extent this paragraph contains any factual allegations, those allegations are denied.

2    195.    This paragraph purports to set forth legal conclusions to which no response is required. To

3    the extent this paragraph contains any factual allegations, those allegations are denied.

4    196.    This paragraph purports to set forth legal conclusions to which no response is required. To

5    the extent this paragraph contains any factual allegations, those allegations are denied.

6    197.    This paragraph purports to set forth legal conclusions to which no response is required. To

7    the extent this paragraph contains any factual allegations, those allegations are denied.

8    198.    This paragraph purports to set forth legal conclusions to which no response is required. To

9    the extent this paragraph contains any factual allegations, those allegations are denied.

10    199.    This paragraph purports to set forth legal conclusions to which no response is required. To

11    the extent this paragraph contains any factual allegations, those allegations are denied.

12    200.    This paragraph purports to set forth legal conclusions to which no response is required. To

13    the extent this paragraph contains any factual allegations, those allegations are denied.

14    201.    This paragraph is Plaintiffs' request for damages and does not require a response. To the

15    extent this paragraph requires a response, Defendants deny the same.

16    202.    This paragraph is Plaintiffs' request for damages and does not require a response. To the

17    extent this paragraph requires a response, Defendants deny the same.

18    203.    This paragraph purports to set forth legal conclusions to which no response is required. To

19    the extent this paragraph contains any factual allegations, those allegations are denied.

20    204.    This paragraph purports to set forth legal conclusions to which no response is required. To

21    the extent this paragraph contains any factual allegations, those allegations are denied.

22                              **RESPONSE TO COUNT THREE**

23                                **(Copyright Infringement)**

24    205.    Defendants incorporate their responses to the foregoing paragraphs as though fully set forth

25    herein.

26    206.    This paragraph is Plaintiffs' statement of claim and does not require a response. To the

27    extent this paragraph requires a response, Defendants deny the same.

28    207.    This paragraph purports to set forth legal conclusions to which no response is required. To

the extent this paragraph contains any factual allegations, those allegations are denied. This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

208.     This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

209.     This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

210.     This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

211.     This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

212.     This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

213.     This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

214.     This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

215.     This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

216.     This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

**RESPONSE TO COUNT FOUR**

**(Fraud)**

217.     Defendants incorporate their responses to the foregoing paragraphs as though fully set forth herein.

218.     This paragraph is Plaintiffs' statement of claim and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

219.     This paragraph purports to set forth legal conclusions to which no response is required. To

1    the extent this paragraph contains any factual allegations, those allegations are denied.

2    220.    This paragraph purports to set forth legal conclusions to which no response is required. To

3    the extent this paragraph contains any factual allegations, those allegations are denied.

4    221.    This paragraph purports to set forth legal conclusions to which no response is required. To

5    the extent this paragraph contains any factual allegations, those allegations are denied.

6    222.    This paragraph purports to set forth legal conclusions to which no response is required. To

7    the extent this paragraph contains any factual allegations, those allegations are denied.

8    223.    This paragraph purports to set forth legal conclusions to which no response is required. To

9    the extent this paragraph contains any factual allegations, those allegations are denied.

10    224.    This paragraph purports to set forth legal conclusions to which no response is required. To

11    the extent this paragraph contains any factual allegations, those allegations are denied.

12    225.    This paragraph purports to set forth legal conclusions to which no response is required. To

13    the extent this paragraph contains any factual allegations, those allegations are denied.

14    226.    This paragraph purports to set forth legal conclusions to which no response is required. To

15    the extent this paragraph contains any factual allegations, those allegations are denied.

16    227.    This paragraph purports to set forth legal conclusions to which no response is required. To

17    the extent this paragraph contains any factual allegations, those allegations are denied.

18    228.    This paragraph purports to set forth legal conclusions to which no response is required. To

19    the extent this paragraph contains any factual allegations, those allegations are denied.

20    229.    This paragraph purports to set forth legal conclusions to which no response is required. To

21    the extent this paragraph contains any factual allegations, those allegations are denied.

22    230.    This paragraph purports to set forth legal conclusions to which no response is required. To

23    the extent this paragraph contains any factual allegations, those allegations are denied.

24    231.    This paragraph purports to set forth legal conclusions to which no response is required. To

25    the extent this paragraph contains any factual allegations, those allegations are denied.

26    232.    This paragraph purports to set forth legal conclusions to which no response is required. To

27    the extent this paragraph contains any factual allegations, those allegations are denied.

28    233.    This paragraph purports to set forth legal conclusions to which no response is required. To

the extent this paragraph contains any factual allegations, those allegations are denied.

234.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

235.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

236.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

237.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

238.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

239.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

240.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

241.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

242.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

243.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

244.    This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

245.    This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

246.    This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

1

**RESPONSE TO COUNT FIVE**

2

**(Constructive Fraud)**

3    247.    Defendants incorporate their responses to the foregoing paragraphs as though fully set forth

4        herein.

5    248.    This paragraph is Plaintiffs' statement of claim and does not require a response. To the

6        extent this paragraph requires a response, Defendants deny the same.

7    249.    This paragraph purports to set forth legal conclusions to which no response is required. To

8        the extent this paragraph contains any factual allegations, those allegations are denied.

9    250.    This paragraph purports to set forth legal conclusions to which no response is required. To

10        the extent this paragraph contains any factual allegations, those allegations are denied.

11    251.    This paragraph is Plaintiffs' request for damages and does not require a response. To the

12        extent this paragraph requires a response, Defendants deny the same.

13    252.    This paragraph is Plaintiffs' request for damages and does not require a response. To the

14        extent this paragraph requires a response, Defendants deny the same.

15    253.    This paragraph is Plaintiffs' request for damages and does not require a response. To the

16        extent this paragraph requires a response, Defendants deny the same.

17

**RESPONSE TO COUNT SIX**

18

**(Conspiracy)**

19    254.    Defendants incorporate their responses to the foregoing paragraphs as though fully set forth

20        herein.

21    255.    This paragraph is Plaintiffs' statement of claim and does not require a response. To the

22        extent this paragraph requires a response, Defendants deny the same.

23    256.    This paragraph purports to set forth legal conclusions to which no response is required. To

24        the extent this paragraph contains any factual allegations, those allegations are denied.

25    257.    This paragraph purports to set forth legal conclusions to which no response is required. To

26        the extent this paragraph contains any factual allegations, those allegations are denied.

27    258.    This paragraph is Plaintiffs' request for damages and does not require a response. To the

28        extent this paragraph requires a response, Defendants deny the same.

259.     This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

260.     This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

**RESPONSE TO COUNT SEVEN**

**(Conversion)**

261.     Defendants incorporate their responses to the foregoing paragraphs as though fully set forth herein.

262.     This paragraph is Plaintiffs' statement of claim and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

263.     This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

264.     This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

265.     This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

266.     This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

**RESPONSE TO COUNT EIGHT**

**(Racketeer Influenced and Corrupt Organizations)**

267.     Defendants incorporate their responses to the foregoing paragraphs as though fully set forth herein.

268.     This paragraph is Plaintiffs' statement of claim and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

269.     This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

270.     This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

271.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

272.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

273.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

274.    This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

## RESPONSE TO COUNT NINE

### (Unjust Enrichment)

275.    Defendants incorporate their responses to the foregoing paragraphs as though fully set forth herein.

276.    This paragraph is Plaintiffs' statement of claim and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

277.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

278.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

279.    This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

280.    This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

## RESPONSE TO COUNT TEN

### (Breach of Fiduciary Duty)

281.    Defendants incorporate their responses to the foregoing paragraphs as though fully set forth herein.

282.    This paragraph is Plaintiffs' statement of claim and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

283.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

284.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

285.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

286.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

287.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

288.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

289.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

290.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

291.    This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

292.    This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

293.    This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

### RESPONSE TO COUNT ELEVEN

### (Aiding and Abetting)

294.    Defendants incorporate their responses to the foregoing paragraphs as though fully set forth herein.

295.    This paragraph is Plaintiffs' statement of claim and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

296.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

297.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

298.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

299.    This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

300.    This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

301.    This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

**RESPONSE TO COUNT TWELVE**

**(Breach of Contract)**

302.    Defendants incorporate their responses to the foregoing paragraphs as though fully set forth herein.

303.    This paragraph is Plaintiffs' statement of claim and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

304.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

305.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

306.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

307.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

308.    This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

309. This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

310. This paragraph is Plaintiffs' request for relief and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

311. This paragraph is Plaintiffs' request for relief and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

312. This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

### RESPONSE TO COUNT THIRTEEN

### (Tortious Interference with Contract)

313. Defendants incorporate their responses to the foregoing paragraphs as though fully set forth herein.

314. This paragraph is Plaintiffs' statement of claim and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

315. This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

316. This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

317. This paragraph purports to set forth legal conclusions to which no response is required. To the extent this paragraph contains any factual allegations, those allegations are denied.

318. This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

319. This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

320. This paragraph is Plaintiffs' request for damages and does not require a response. To the extent this paragraph requires a response, Defendants deny the same.

**AFFIRMATIVE AND OTHER DEFENSES**

**FIRST DEFENSE**

**(Failure to State a Claim)**

Plaintiffs' claims fail to state a claim upon which relief may be granted.

**SECOND DEFENSE**

**(Unclean Hands)**

Plaintiffs are barred from obtaining the relief sought in the Complaint by the doctrine of unclean hands.

**THIRD DEFENSE**

**(Retention of Counsel)**

Defendants have been forced to retain counsel to defend against Plaintiffs' claims, and Defendants are entitled to an award of reasonable attorney fees.

**FOURTH DEFENSE**

**(Failure to Mitigate Damages)**

Plaintiffs have failed to properly mitigate damages so as to prevent or reduce the extent of damages sustained, if any.

**FIFTH DEFENSE**

**(Voluntary Payment Doctrine)**

Plaintiffs are barred from obtaining the relief sought in the Complaint by the voluntary payment doctrine.

**SIXTH DEFENSE**

**(Statute of Limitations)**

Plaintiffs' claims are barred by the applicable statute of limitations.

**SEVENTH DEFENSE**

**(Laches)**

Plaintiffs' claims are barred by the doctrine of laches.

1

2

**EIGHTH DEFENSE**

**(Affirmative Defenses Pursuant to FRCP 8)**

3          Defendants hereby incorporate those affirmative defenses enumerated in FRCP 8 as if fully

4   set forth herein. Such defenses are herein incorporated by reference for the specific purpose of not

5   waiving any such defense.

6                                    **<u>RESERVATION OF RIGHTS</u>**

7          Defendants reserve the right to amend, supplement, alter, and/or change this Answer,

8   including asserting additional affirmative defenses, upon the revelation of more definite facts

9   during and/or upon the completion of further discovery and investigation.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANT'S COUNTERCLAIMS AGAINST PLAINTIFFS

Empire Technological Group Limited ("Empire"), Mr. Linyi Feng ("Mr. Feng"), Gaming Specialized Logistics LLC ("GSL"), Roy Kelcey Allison ("Mr. Allison"), and Daryn Kiely ("Mr. Kiely") (collectively, "Counterclaimants"), by and through their undersigned counsel, hereby assert the following counterclaims against Paradise Entertainment Limited ("Paradise") and LT Game (Canada) Limited ("LTGC") (collectively, "Counterdefendants") as follows:

## FACTUAL BACKGROUND

1. Counterclaimants incorporate by reference the paragraphs above as if fully set forth herein.

2. Empire develops, manufactures, sells, and leases its own, proprietary gaming products. Empire also serves as a distributor, selling and leasing gaming products on behalf of third-party manufacturers. Empire has distributed gaming products on behalf of various manufacturers, including LTGC. Paradise is LTGC's parent company.

3. Empire's relationship with LTGC and Paradise is governed by numerous written agreements, as well as oral agreements and mutual understandings manifested by their conduct and correspondences. For purposes of this complaint, Empire's relationship with LTGC and Paradise is hereinafter referred to as the "Distributor Relationship." The Distributor Relationship is typical of a traditional, arms-length vender-distributor relationship, and is commonplace in the gaming industry.

4. Pursuant to the Distributor Relationship, Empire was entitled to receive a commission payment for the products it distributed on behalf of LTGC and/or Paradise. As a typical practice, Empire and the customer would execute a sales or lease order/agreement, and then the customer would submit the total amount under that order/agreement to Empire. Empire retained a very small percentage of those funds as its commission payment, and then passed the remaining funds to LTGC/Paradise.

5. LTGC and its parent company Paradise manufacture slot machines, including the hardware (*e.g.*, the physical slot device) and the software, which includes the gaming content. Empire has distributed slot machines, including the associated game content, on behalf of LTGC and/or Paradise.

6.  At all times relevant to this complaint, LTGC and Paradise were aware that casinos and other end users generally would not purchase or lease their slot machines if they believed that LTGC and/or Paradise would be unable to service its software, including by fixing software bugs and providing new gaming content for the slot devices into the future.

### The Royal Sale

7.  On or about April 21, 2021, Empire executed a Sales and Security Agreement (the "Agreement") with Royal Gaming Logistics, LLC ("Royal"), a company that places gaming equipment primarily in the Puerto Rico street market.

8.  Empire was required to obtain the approval of Paradise/LTGC before executing the Agreement. Paradise/LTGC provided their approval to Empire to enter into the Agreement.

9.  The Agreement provided for the sale of 800 slot machines manufactured by Paradise and LTGC to Royal for a fixed price. The agreement also provided that, upon initial installation, the slot machines would be equipped with a game theme "multipack." In other words, the slot machines would be delivered with one set of game content comprised of multiple games.

10. The Agreement further provided that Royal would receive additional gaming content for the slot machines. Specifically, Royal would receive four additional multigame packages over the course of thirty-six months. Those packages would be delivered on a schedule of one multigame package approximately every six-to-eight months following initial installation.

11. Pursuant to the Distributor Relationship, Empire was entitled to commission on the Royal sale. Empire retained a small percentage of the sale proceeds as commission, and remitted most of the proceeds to LTGC/Paradise.

12. Pursuant to the Distributor Relationship, LTGC and/or Paradise were responsible for servicing the software for the slot machines sold to Royal, as well as providing the additional four multigame packages over the course of the following thirty-six months that were due to Royal under the Agreement.

13. By approximately March 2022, the first tranche of slot machines (272 units) had been shipped to Royal. In exchange for the delivered units, Royal submitted payment to Empire. Empire retained its commission percentage and passed the remainder (the vast majority of the funds) to

LTGC/Paradise. Empire performed its obligations to LTGC and Paradise pursuant to the Distributor Relationship with respect to the Royal sale.

14. Immediately upon delivery, the slot machines evidenced significant and recurrent software issues (*i.e.*, software bugs). Because of these defects, the slot machines could not be operated in compliance with Puerto Rico's applicable regulatory gaming standards. Accordingly, Royal could not install, license, and/or operate the slot machines, and thus was forced to keep them in storage until the software issues could be fixed.

15. Consistent with the Distributor Relationship, LTGC and Paradise acknowledged that they were obligated to fix the software defects in the machines that had been delivered to Royal. After becoming aware of the problem, LTGC and Paradise attempted to fix the software defects. Despite their efforts, however, the software issues persisted throughout 2022 and, at least, into early-to-mid 2023.

16. Separate from the defective software, after the initial 272 slot machines had been delivered, LTGC and Paradise agreed to provide Royal with various "enhancements" to the first multigame package (i.e., the games that were delivered along with the slot machines). LTGC and Paradise directed their employees to develop the enhancements to the first multigame package. In or around April 2022, LTGC also engaged Akkadian Enterprises to assist in developing certain components for the enhancements.

17. Additionally, consistent with the Distributor Relationship, LTGC and Paradise acknowledged that they were obligated to develop and provide the four additional multigame packages to Royal. After delivery of the initial slot machines, LTGC and Paradise directed their employees to begin developing the second multigame package. In or around May 2022, LTGC also engaged Akkadian Enterprises to assist in developing certain components for the second multigame package. Despite their efforts, however, LTGC and Paradise never delivered a second multigame package to Royal.

18. LTGC and Paradises' failure to timely fix the software defects affecting the slot machines sold to Royal and their failure to provide any additional game content for those machines are the direct consequences of decisions made by top executives at Paradise, including Dr. Jay Chun,

Paradise's controlling shareholder, executive and managing director, and co-chairman.

19. Throughout 2022 and 2023, various LTGC employees informed top Paradise executives, including Dr. Jay Chun, that it was necessary to invest resources into LTGC's slot machine software and game development efforts. The employees explained that additional resources were necessary not only for LTGC and Paradise to fulfill their obligations with respect to the Royal sale, but also to be competitive in the North American slot machine market generally.

20. Despite the information conveyed by LTGC employees, and despite knowing of LTGC and Paradises' ongoing obligations with respect to the slot machines that had been sold to Royal, Dr. Jay Chun and other top Paradise executives directed LTGC to prioritize minimizing expenses, which included laying off employees and contractors responsible for developing slot machine gaming content, and shifted the company's focus to other products and markets.

21. Ultimately, because of LTGC and Paradises' failure to timely fix software defects and failure to provide any additional game packages, Royal sought to terminate the Agreement and threatened legal action against Empire. Empire was therefore unable to collect additional commission payments that it otherwise would have been entitled to. In order to resolve the dispute, Empire and Royal executed a settlement agreement, pursuant to which Empire made a significant monetary payment to Royal that greatly exceeds the commission it earned on the sale. Empire lost money on the Royal sale.

**The Dynamic Sale**

22. On or about August 17, 2022, Empire executed a Customer Order (the "Order") with Dynamic Gaming Solutions, LLC ("Dynamic").

23. The Order provided for the sale of 139 slot machines manufactured by LTGC and Paradise to Dynamic for a fixed purchase price. The Order also provided that, for at least five years, Dynamic would receive game theme conversions for the slot machines at no charge.

24. Pursuant to the Distributor Relationship, Empire was entitled to commission on the Dynamic sale. Empire retained a small percentage of the sale proceeds as commission, and remitted most of the proceeds to LTGC/Paradise.

25. Pursuant to the Distributor Relationship, LTGC and/or Paradise were responsible for servicing

1    the software for the slot machines sold to Dynamic, as well as developing the gaming content

2    needed for the future game theme conversions required by the Order.

3    26. After the Order had been executed, Dynamic submitted payment to Empire. Empire retained its

4    commission percentage and passed the remainder (the vast majority of the funds) to

5    LTGC/Paradise. Empire performed its obligations to LTGC and Paradise pursuant to the

6    Distributor Relationship with respect to the Dynamic sale.

7    27. Dynamic subsequently requested game theme conversions for the slot machines pursuant to the

8    Order. Consistent with the Distributor Relationship, LTGC and Paradise acknowledged they

9    were obligated to develop and provide the gaming content needed for the game theme

10    conversions Dynamic had requested. In light of their obligation, LTGC and Paradise undertook

11    efforts to develop the necessary gaming content.

12    28. Ultimately, however, LTGC and Paradise ceased to provide software support for the slot

13    machines sold to Dynamic, and thus failed to provide the new game theme conversions that

14    were required under the Order.

15    29. As a result of LTGC and Paradises' failure to provide future new game theme conversion

16    support for their slot machines, Dynamic stopped making payments under the Order. Because

17    Dynamic stopped making payments, Empire was unable to collect additional commission

18    payments that it otherwise would have been entitled to.

19    30. In addition to stopping payment on the Order, Dynamic threatened legal action against Empire.

20    In order to resolve this dispute, Empire and Dynamic executed a settlement agreement, pursuant

21    to which Empire provided Dynamic with monetary concessions that greatly exceed the

22    commission it earned on the sale.

23    **COUNT ONE**

24    **Equitable Indemnity**

25    **(Against LTGC and Paradise)**

26    31. Empire incorporates by reference the paragraphs above as if fully set forth herein.

27    32. Empire asserts this claim for equitable indemnity against LTGC and Paradise.

28    33. Empire entered into a April 21, 2021 Sales and Security Agreement with Royal. Under that

NORTON ROSE
FULBRIGHT US LLP
ATTORNEYS AT LAW
WASHINGTON DC

33

Agreement, Empire sold Royal slot machines that were manufactured by LTGC/Paradise. Prior to the Royal Agreement, there was a preexisting legal relationship between Empire and LTGC/Paradise (i.e., the Distributor Relationship). Pursuant to the Distributor Relationship, LTGC and/or Paradise were obligated to both maintain the software for the slot machines that Empire sold to Royal, as well as develop and provide additional gaming content. However, LTGC and Paradise failed to timely fix the software defects affecting the slot machines and failed to provide any additional game content for those machines.

34. Because of LTGC and Paradises' failures, Royal sought to terminate the Sales and Security Agreement and threatened legal action against Empire. Royal could have taken legal action against LTGC and/or Paradise for their failures. Because Royal sought to terminate the Agreement, Empire was unable to collect additional commission payments that it otherwise would have been entitled to. Ultimately, Empire and Royal entered into a settlement agreement, which resulted in Empire making a monetary payment to Royal. The settlement payment Empire paid to Royal far exceeded the modest commission Empire had earned from the deal, as the majority of the funds had been remitted to LTGC and/or Paradise.

35. Empire also entered into a August 17, 2022 Customer Order with Dynamic. Under that Order, Empire sold Dynamic slot machines that were manufactured by LTGC/Paradise. Prior to the Dynamic Order, there was a preexisting legal relationship between Empire and LTGC/Paradise (i.e., the Distributor Relationship). Pursuant to the Distributor Relationship, LTGC and/or Paradise were obligated to develop gaming content needed for the future game theme conversions for the slot machines that Empire sold to Dynamic. However, LTGC and Paradise failed to provide the new game theme conversions that Dynamic requested.

36. Because of LTGC and Paradises' failures, Dynamic sought to terminate the August 17, 2022, Customer Order and threatened legal action against Empire. Dynamic could have taken legal action against LTGC and/or Paradise for their failures. Because Dynamic sought to terminate the Order, Empire was unable to collect additional commission payments that it otherwise would have been entitled to. Ultimately, Empire and Dynamic entered into a settlement agreement, which resulted in Empire providing monetary concessions to Dynamic. The

monetary concessions Empire made to Dynamic far exceeded the modest commission Empire had earned from the deal, as the majority of the funds had been remitted to LTGC and/or Paradise.

37. LTGC and Paradise are directly responsible for the circumstances precipitating Empire's settlement agreements with Royal and Dynamic – namely, that both customers sought to terminate the sales agreements because of software defects and/or failures to deliver additional content. Despite failing to fulfil their obligations under the Distributor Relationship (thus causing the disputes that led to the settlements), LTGC and Paradise did not contribute to the payment or monetary concessions made under the settlement agreements. Rather, Empire was left to bear the full burden of those losses. LTGC and Paradise, not Empire, should be responsible for bearing the costs of the settlement amounts.

38. Empire seeks to be indemnified for those damages and also seeks applicable interest, attorneys' fees, and costs.

### <u>COUNT TWO</u>

**Breach of Implied Contract**

**(Against LTGC and Paradise)**

39. Empire incorporates by reference the paragraphs above as if fully set forth herein.

40. Empire asserts this claim for breach of implied contract against LTGC and Paradise.

41. Pursuant to the Distributor Relationship, LTGC and Paradise were obligated to both maintain the software and develop new game content for the slot machines Empire distributed on their behalf. The Distributor Relationship created an implied contract between LTGC and Paradise on one hand and Empire on the other, requiring LTGC and Paradise to provide these services.

42. This implied contract was effective at the time Empire entered into the April 21, 2021 Sales and Security Agreement with Royal, and when Empire entered into the August 17, 2022, Customer Order with Dynamic. Accordingly, LTGC and Paradise were obligated under the implied contract to both maintain the software for the slot machines that Empire sold to Royal and Dynamic, and to develop and provide additional content for those machines.

43. LTGC and Paradise breached the implied contract by failing to timely fix the software defects

affecting the slot machines Empire sold to Royal and by failing to provide additional game content for the slot machines Empire sold to Royal and to Dynamic.

44. Empire was damaged as a result of the breaches alleged herein.

45. Empire seeks compensation for those damages.

46. As a direct and proximate result of the breaches alleged herein, Empire has been injured and damaged in an amount to be proven at trial plus applicable interest, attorneys' fees pursuant to N.R.S. § 18.010 and common law, and costs.

### COUNT THREE

**Unjust Enrichment**

**(Against LTGC and Paradise)**

47. Empire incorporates by reference the paragraphs above as if fully set forth herein.

48. Empire asserts this claim for unjust enrichment against LTGC and Paradise.

49. Empire paid a large sum of money to LTGC and Paradise as part of the Royal and Dynamic sales.

50. Empire paid these funds to LTGC and Paradise with the understanding that LTGC and/or Paradise would fulfill their obligations pursuant to the Distributor Relationship – namely, maintain the software for the slot machines sold to Royal and Dynamic, and develop and provide the additional game content. LTGC and Paradise, however, failed to timely fix software defects affecting the slot machines and failed to develop additional game content.

51. As a result of LTGC and Paradises' failures, Empire entered into settlement agreements with both Royal and Dynamic, pursuant to which Empire made payments and monetary concessions that far exceeded the modest commissions Empire had earned on the sales, as the majority of the funds had been remitted to LTGC/Paradise.

52. Neither LTGC nor Paradise contributed to the settlements that were caused by their failures.

53. Empire's payment of funds to LTGC and Paradise as part of the Royal and Dynamic sales constitutes unjust enrichment of LTGC and Paradise that they should not equitably be allowed to keep.

54. Empire seeks imposition of a constructive trust to recover all ill-gotten gains of LTGC and

1    Paradise.

2    ## COUNT FOUR

3    **Attorneys' Fees Pursuant to Nev. Rev. Stat. § 600A.060**

4    **(Against Paradise and LTGC)**

5    55. Counterclaimants incorporate by reference the paragraphs above as if fully set forth herein.

6    56. Counterclaimants assert this claim for attorneys' fees against Paradise and LTGC.

7    57. Counterdefendants have claimed that Counterclaimants have misappropriated

8    Counterdefendants' confidential and trade secret information in violation of the Nevada

9    Uniform Trade Secrets Act, Nev. Rev. Stat. §§ 600A, et seq. (Dkt. #1, ¶¶ 147-165).

10   58. As stated herein at paragraphs 147-165, Counterclaimants deny the allegations forming the

11   basis of Counterdefendants' misappropriation of trade secrets claim.

12   59. Counterclaimants are entitled to recover their reasonable and necessary attorneys' fees,

13   expenses and costs incurred in defending against this action pursuant to Nev. Rev. Stat. §

14   600A.060 because Counterdefendants brought and made its misappropriation of trade secrets

15   claim in bad faith. Specifically, Counterdefendants brought and made their misappropriation of

16   trade secrets claim against Counterclaimants with full knowledge that there existed and exists

17   no ground in fact or law to assert any such claims, and such claim is knowingly frivolous and

18   without merit. Counterdefendants' misappropriation of trade secrets claim is groundless,

19   brought in bad faith, and for the improper purpose of harassment, especially considering that

20   each allegation and factual contention asserted in support of Counterdefendants'

21   misappropriation of trade secrets claim lacks evidentiary support.

22   60. For the foregoing reasons, Counterclaimants seek the recovery of their reasonable and

23   necessary attorneys' fees, expenses and costs incurred in defending against this action.

24

25

26

27

28

NORTON ROSE
FULBRIGHT US LLP
ATTORNEYS AT LAW
WASHINGTON DC

1

## **PRAYER FOR RELIEF**

2       WHEREFORE, Defendants and Counterclaimants, respectfully request judgment as

3  follows: (i) Dismissing the Complaint, together with attorneys' fees, costs, and disbursements; and

4  (ii) Awarding Defendants and Counterclaimants such other and further relief to which they may be

5  entitled, both at law and in equity. Defendants and Counterclaimants seek a trial by jury on all

6  issues so triable.

7       DATED this 21st day of March 2025.

8

9                            */s/ Patrick J. Reilly*

                                   Patrick J. Reilly

10                            BROWNSTEIN HYATT FARBER
SCHRECK, LLP

11                            100 North City Parkway, 16th Floor
Las Vegas, Nevada 89106

12

13                            Mark Oakes (*pro hac vice*)
Zach McHenry (*pro hac vice*)

14                            Ethan Glenn (*pro hac vic*)
NORTON ROSE FULBRIGHT US LLP

15                            98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255

16

17                            *Attorneys for Defendants/Counterclaimants*

18

19

20

21

22

23

24

25

26

27

28

NORTON ROSE
FULBRIGHT US LLP
ATTORNEYS AT LAW
WASHINGTON DC

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that the foregoing **SECOND AMENDED ANSWER AND COUNTERCLAIMS OF EMPIRE TECHNOLOGICAL GROUP LIMITED, A NEVADA CORPORATION; GAMING SPECIALIZED LOGISTICS LLC, A NEVADA LIMITED LIABILITY COMPANY; LINYI FENG, AN INDIVIDUAL; ROY KELCEY ALLISON, AN INDIVIDUAL; AND DARYN KIELY - JURY TRIAL DEMANDED** was served via electronic service on the 21st day of March 2025, to all parties on the CM/ECF service list.


*/s/ Dominique Hoskins*
Ethan Glenn

NORTON ROSE
FULBRIGHT US LLP
ATTORNEYS AT LAW
WASHINGTON DC

39