Oliver J. Pancheri, Esq. (Nevada Bar No. 7476)
Jessica M. Lujan, Esq. (Nevada Bar No. 14913)
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3400
Fax: (702) 938-8648
Email: opancheri@spencerfane.com
        jlujan@spencerfane.com

Robert T. Stewart, Esq. (Nevada Bar No. 13770)
Stewart Ray Nelson, Esq. (*pro hac vice*)
Hannah L. Andrews, Esq. (*pro hac vice*)
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, Utah 84111
Tel.: (801) 401-8900
Email: rtstewart@foley.com
        srnelson@foley.com
        handrews@foley.com
*Attorneys for Plaintiffs/Counterdefendants*

Jean-Paul Ciardullo, Esq. (*pro hac vice*)
 California Bar No. 284170
**FOLEY & LARDNER LLP**
555 Flower Street, Suite 3300
Los Angeles, California 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
Email: jciardullo@foley.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| PARADISE ENTERTAINMENT LIMITED, a Bermuda corporation; LT GAME, INC., a Nevada corporation; and LT GAME LIMITED, a British Virgin Islands corporation, <br><br> Plaintiffs/Counterdefendants, <br><br> vs. <br><br> EMPIRE TECHNOLOGICAL GROUP LIMITED, a Nevada corporation; GAMING SPECIALIZED LOGISTICS LLC, a Nevada limited liability company; LINYI FENG, an individual; ROY KELCEY ALLISON, an individual; DARYN KIELY, an individual; and YI ZHAO, an individual, <br><br> Defendants/Counterclaimants. | Case No. 2:24-cv-00428-JCM-BNW <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT YI ZHAO'S MOTION TO DISMISS UNDER FRCP 12(b)(2) FOR LACK OF PERSONAL JURISDICTION** |

## Contents

I.     INTRODUCTION ................................................................................................. 1

II.    Ms. ZHAO's ACCUSED MISCONDUCT ........................................................ 2

    A.    Plaintiff's Allegations Against Ms. Zhao ............................................... 2

    B.    Ms. Zhao's Sparse Declaration Omits Key Information And Fails To Address The Allegations ........................................................................... 7

III.   PROCEDURAL BACKGROUND ..................................................................... 8

IV.    LEGAL STANDARD ......................................................................................... 8

V.     THE COURT HAS PERSONAL JURISDICTION UNDER THE FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT ............................................................. 9

    A.    The Court Has Specific Personal Jurisdiction Over Ms. Zhao ............... 9

        1.    Ms. Zhao Purposefully Directed Her Misconduct Towards Nevada ....................................................................... 10

        2.    Plaintiffs' Claims Against Ms. Zhao Arise From Her Contacts In Nevada ....................................................................... 16

        3.    The Court's Exercise of Jurisdiction Over Ms. Zhao Is Not Unreasonable ................................................................... 17

    B.    Additionally Or Alternatively, A Conspiracy Theory Of Jurisdiction Applies ............ 20

VI.    IN THE ALTERNATIVE, PLAINTIFFS REQUST LEAVE TO AMEND ............................ 22

VII.   CONCLUSION ................................................................................................. 23

## I.   **INTRODUCTION**

Plaintiffs Paradise Entertainment Limited ("Paradise"), LT Game, Inc. ("LT Game"), and LT Game Ltd. ("LTG Limited") (collectively "Plaintiffs") hereby oppose the Rule 12(b)(2) motion to dismiss the First Amended Complaint (ECF No. 69, "FAC") for lack of personal jurisdiction filed by Defendant Yi "Betty" Zhao ("Ms. Zhao").

The reason the Court has personal jurisdiction over Ms. Zhao is simple: she conspired with the other Defendants – all based in Nevada – to defraud and misappropriate from Plaintiff LT Game – a Nevada company located in Las Vegas[1] – while she was the sole Director and Chief Operating Officer for LT Game in Nevada. That Ms. Zhao may have perpetrated some or all of this misconduct over phone and internet lines from Macau is of no moment: Nevada's long arm statute reaches those who "beam in" to the state to cause harm.  Further, Nevada's long-arm statute encompasses a conspiracy theory of personal jurisdiction: personal jurisdiction exists where, as here, the acts of co-conspirators meet minimum contacts with the forum and the co-conspirators could have reasonably expected that their actions would have consequences in the forum state.

Ms. Zhao's Motion rests on the misleading assertions that her sole job prior to November 2023 was COO of LTG Limited in Macau and that she did all of her work in Macau. In fact, Ms. Zhao fails to inform the Court that she was the sole Director of LT Game in Las Vegas, such that her breach of fiduciary duty to that Nevada company in and of itself should confer personal jurisdiction. Having engaged in extensive misconduct in Nevada – and now currently working as a manager of a Nevada company (Empire) that is a co-defendant in this case – Ms. Zhao should have readily expected to be called to court here.

Plaintiffs believe that the detailed allegations of the FAC are sufficient to establish personal jurisdiction. But if the Court were to deem the FAC's allegations inadequate, Plaintiffs request leave to amend to so that they may include additional facts supporting jurisdiction.

---

[1] LT Game is the subsidiary of LTG Limited and Paradise, and are all collectively referred to as the "Paradise Group." The names of the LT entities are similar, so Plaintiffs emphasize here that "LT Game" refers to the Nevada entity based in Las Vegas whereas "LTG Limited" refers to the British Virgin Islands entity operating in Macau.

## II.    MS. ZHAO'S ACCUSED MISCONDUCT

### A.    Plaintiff's Allegations Against Ms. Zhao

The majority of the following background summary is based on the express allegations of the First Amended Complaint. While Plaintiffs consider those allegations sufficient to establish personal jurisdiction, the below timeline also cites additional evidence – including the Declaration of Chan Kin Man, Chief Financial Officer and Company Secretary of Paradise ("Chan Dec."), the Declaration of Jie "Jason" Wu ("Wu Dec."), and a series of documents produced by Defendants – to support Plaintiffs' request in the alternative for leave to amend the pleadings. Allegations derived from the FAC are identified as such below by citation.

The parties to this case are in the business of supplying gaming equipment and systems to casinos. (FAC ¶ 15.) Paradise is a large and well-known Macau-based company led by Dr. Jay Chun, who is the controlling shareholder, executive and managing director, and chairman of Paradise. (FAC ¶ 22.) LTG Limited is a Macau-based subsidiary of Paradise incorporated in the British Virgin Islands, and LT Game is another Paradise subsidiary – a Nevada company located in Las Vegas. (FAC ¶¶ 2-3.) As detailed in the FAC, many years ago, Dr. Chun appointed his brother-in-law – Defendant Feng – to help run various subsidiaries for the purpose of expanding Paradise's business into North America. (FAC ¶¶ 23, 25.) Mr. Feng was ultimately assigned the role of President of Paradise's subsidiary LT Game in Las Vegas, while also simultaneously serving as the President of another company – Defendant Empire, a Nevada company – which was intended to be the long-term exclusive distributor of LT Game. (FAC ¶¶ 27, 33, 37.) Until 2023, LT Game and Empire had a substantial connection, sharing the same employees and working out of the same offices. (FAC ¶ 44.) As of 2023, Plaintiffs had invested millions of dollars in LT Game and Empire, including payment of Empire's legal fees for obtaining gaming licenses. (FAC ¶ 74.)

However, unbeknownst to Plaintiffs, starting in 2017 and escalating by 2020, Mr. Feng – with the assistance of the other Defendants – embarked on a secret plan to leverage Plaintiffs' money, employees, and reputation to build an entirely separate and competing business under Empire that was intended to usurp LT Game. (FAC ¶¶ 112-158.) This plan was deliberately concealed from Plaintiffs to induce them to continue unwittingly supporting Defendants' new business venture. (FAC ¶ 109.) Today, LT Game has been left a shell, its employees having been poached for Empire, while Empire has expanded into Macau

OPPOSITION TO MOTION TO DISMISS
Case No. 2:24-cv-00428-JCM-BNW

1  to compete directly with Paradise. (FAC ¶¶ 156, 164.)

2  Plaintiff's FAC alleges that Ms. Zhao was a co-conspirator with the other Defendants. (FAC

3  ¶ 152.) Ms. Zhao resides in Macau. (FAC ¶ 10.) She is also the cousin of Defendant Feng. (Chan Dec.

4  ¶ 5.) In prior years, Paradise appointed her to serve as the Chief Operating Officer of Paradise's electronic

5  gaming business, and she held this role with respect to not only LTG Limited, but also LT Game in Las

6  Vegas. (FAC ¶ 72; *see also* Chan Dec. ¶ 5.) Although Ms. Zhao worked remotely from Macau, she was a

7  manager of LT Game in Las Vegas, and was involved in managing LT Game in Las Vegas. (FAC ¶ 72;

8  *see also* Chan Dec. ¶ 5.) Ms. Zhao worked closely with Defendants Feng, Kiely and Allison (who at that

9  time were the local management team at LT Game in Las Vegas), as well as with game development

10  teams in other jurisdictions, to ensure that projects were delivered on time and met quality standards.

11  (Chan Dec. ¶ 9.) For example, around June 2021, Ms. Zhao served as a point person for procuring gaming

12  equipment for Empire, which Plaintiffs believed to be LT Game's exclusive distributor. (Chan Dec. ¶ 6.)

13  Additionally, Ms. Zhao's management of LT Game in Las Vegas required her to be in close contact with

14  Mr. Feng, Mr. Kiely and Mr. Allison, and to participate in regular management meetings with them. (Chan

15  Dec. ¶ 6.)

16  It is important to note that until 2023, LT Game and Empire had a substantial connection, with Mr.

17  Feng simultaneously serving as President of both LT Game and Empire until February 2022, and the

18  companies sharing the same employees and office space. (FAC ¶¶ 37, 44.) Ms. Zhao was involved in this

19  sharing of personnel between the two companies, as demonstrated by, for example, her sourcing of gaming

20  equipment for Empire, and her de facto management role at Empire. (Chan Dec.¶ 6; *see also* Wu Dec.

21  ¶ 3.) Depositions of former LT Game and Empire employees have revealed that many struggled to

22  distinguish between the two companies, often considering them a single enterprise. Even after Mr. Feng

23  resigned as President of LT Game in February 2022, he continued to utilize LT Game personnel like Ms.

24  Zhao, Mr. Kiely, and Mr. Allison to work on Empire projects. (FAC ¶ 85; *see also* Chan Dec. ¶ 7; *see also*

25  Wu Dec. ¶ 3.)

26  Upon Mr. Feng's resignation from LT Game, Paradise appointed Ms. Zhao to be the sole Director

27  of LT Game in Las Vegas, effective March 1, 2022. (Chan Dec. ¶ 8, Ex. A.) In her first official act as LT

28  Game's Director, Ms. Zhao appointed Mr. Kiely to be the new President of LT Game. (Chan Dec. ¶ 8, Ex.

OPPOSITION TO MOTION TO DISMISS
Case No. 2:24-cv-00428-JCM-BNW

A- note Ms. Zhao's signature at the bottom.) Each of these corporate acts was done under Nevada law as advised by Plaintiffs' Las Vegas counsel at Lewis Roca.

Plaintiffs now believe that by the time Ms. Zhao became the sole Director of LT Game in March 2022, she had already long since been an active co-conspirator in the other Defendants' plot to leverage LT Game's resources to build up Empire, thereby undermining LT Game in violation of their fiduciary duties as managers of LT Game. (Chan Dec. ¶ 13.) ███████████████████████

███████████████████████ (Ciardullo Ex. A.) Plaintiffs believe that this ███████████████████████

███████████████████████

███████████████████████

Evidence to-date indicates that at least as of December 2022, Ms. Zhao had aligned herself with Mr. Feng and Empire in Las Vegas for the purpose of building up Empire in Las Vegas to supplant LT Game in Las Vegas, all of which was in direct violation of her fiduciary duties as the Director of LT Game in Las Vegas. (FAC ¶¶ 5, 147–56.) Her involvement in furtherance of the conspiracy included, but not limited to, knowingly assisting the other Defendants in Las Vegas with their efforts to expand Empire to the exclusion of LT Game, while running interference as a kind of mole within Paradise to keep Paradise management from finding out what was happening. Thus, Ms. Zhao engaged not only in affirmative acts of misconduct in Nevada, but also fraudulent concealment of those acts and the acts of her co-conspirators. Below are several examples of this discussed in the FAC:

**First**, in December 2022, when one of Paradise Group's employees, Mr. Wu, reported to Ms. Zhao that he had received information from US gaming regulators concerning Empire projects that were unfamiliar with to him (*i.e.*, projects Empire was pursuing covertly), Ms. Zhao caused Mr. Wu's account access to be blocked and tried to dissuade him from investigating further. (FAC ¶ 151; Wu Dec. ¶ 3.) This demonstrates Ms. Zhao knowledge of and participation in Defendants' improper plot as well as her use of managerial control within Empire in Las Vegas in furtherance of the scheme, and to conceal it.

**Second**, Ms. Zhao formatted the hard drive of her Paradise Group computer without seeking her supervisor's approval, erasing all data and files on her computer prior to her departure from the Plaintiffs, in violation of standard procedures or company policy. This raises concerns that she may have exploited

OPPOSITION TO MOTION TO DISMISS
Case No. 2:24-cv-00428-JCM-BNW

her access to LT Game's and Paradise's protected information, sharing it with Mr. Feng and Empire in Las Vegas to be used to build up Empire in Las Vegas. (FAC ¶ 100-101.)

**Third**, Ms. Zhao secretly communicated and performed substantive work for Empire in furtherance of Mr. Feng's plan to supplant LT Game and Paradise in Nevada. (FAC ¶ 111.) She secretly communicated with and handled tasks for Mr. Feng after he exited Paradise and LT Game, ███████ ███████████████████████████████████ (Ciardullo Ex. B, Zhuang Ex. A.)

**Fourth**, in contravention of her fiduciary duties to LT Game and the other Plaintiffs, Ms. Zhao intentionally withheld information from LT Game and Paradise about Mr. Feng and Empire usurping corporate opportunities and forming a competing business in Las Vegas. (FAC ¶¶ 147-56.) For example, in December 2022, Ms. Zhao learned from Mr. Wu that Mr. Feng and Empire developed a competing product to a Paradise product, and the competing product had gameplay similar to a game that had been discussed during an internal Paradise meeting. (FAC ¶ 151.) This showed that Mr. Feng and Empire secretly misappropriated Paradise IP, but Ms. Zhao never informed Paradise or LT Game about this incident. (*Id.*) As another example, Ms. Zhao knew that Paradise had considered purchasing the assets of Aruze Gaming America, Inc. ("Aruze") out of bankruptcy, but when Paradise's management asked Mr. Allison (one of Ms. Zhao's co-conspirators) about that idea, Mr. Allison dodged the inquiry because he wanted Mr. Feng and Empire to be unchallenged in buying the assets. (FAC ¶ 105.) Paradise and LT Game learned that Mr. Feng and Empire wanted to buy the assets only after the sale occurred in or around August 2023. But Ms. Zhao had known all along that Mr. Feng and Empire wanted to buy the assets, having discussed the matter with Mr. Feng in the months before the sale. (Ciardullo Ex. C, Zhuang Ex. B.) Ms. Zhao deliberately concealed that fact from Paradise and LT Game because she was secretly working with Mr. Feng to build up Empire in Nevada. (Chan. Dec. ¶ 13.)

**Fifth**, in ██████████ while still employed at Paradise and LT Game, Ms. Zhao and her co-conspirators (Mr. Allison and Mr. Kiely) ████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████ (FAC ¶ 153.) Ms. Zhao did not inform Paradise management about this, (FAC ¶ 155), ███████████████████████████ and misappropriating LT Game's and Paradise's protected, confidential and trade secret information, ████████████████████████████

██████████████████████ (FAC ¶ 156.) The very fact of Ms. Zhao's inclusion in this small group of recipients on this message chain confirms her status as an active co-conspirator at a time when she owed fiduciary duties as the Director of LT Game. Ms. Zhao did not inform Paradise management about this, (FAC ¶ 155), and ████████████████████, misappropriating LT Game's and Paradise's protected, confidential information, █████████████████████████████████████████████ ████████. (FAC ¶ 156.) It was also around this time that Ms. Zhao had physically travelled to Las Vegas to conduct an inspection of LT Game's facilities. (ECF No. 77-1 ¶ 42.) Considered the timeline of events, this trip to Las Vegas was likely primarily used for meetings with Defendants in furtherance of their scheme to undermine LT Game in Las Vegas.

**Sixth,** in a July 2023 message exchange, █████████████████████████████████ ████████████████████. (Ciardullo Ex. B, Zhuang Ex. A.) ██████████████████████ ███████████████████████████████████████████████████████████" (*Id.*) This indicates that Mr. Feng viewed Ms. Zhao as one of his employees and co-conspirators embedded within the Paradise Group, while simultaneously indicating that Ms. Zhao and Mr. Feng had already planned her departure from Plaintiffs.

**Seventh**, on September 19, 2023, Ms. Zhao tendered her resignation from LT Game and Paradise via email to Dr. Chun, which was approved, with her last working day set for October 20, 2023. (FAC ¶ 97.) Ms. Zhao assured Dr. Chun that she would not work for Mr. Feng. (FAC ¶ 98.) But the very next month, Ms. Zhao began formally working at Empire as its Senior Vice President of International Operations. (FAC ¶ 99.) That same month, Mr. Feng and Empire filed a lawsuit against LT Game and Paradise in Nevada State Court.

**Eighth**, before leaving LT Game and Paradise, Ms. Zhao formatted the hard drive of her Paradise computer such that all data on her computer was removed or erased. (FAC ¶ 100.) In doing so, Ms. Zhao deleted company files and data belonging to Plaintiffs, harming LT Game in Nevada. (FAC ¶ 100.) It is also quite likely that Ms. Zhao deleted evidence of her own misconduct and that of her co-conspirators, as formatting her computer was not in accordance with standard procedures or company policy. (FAC ¶ 100.)

In November 2023, Mr. Feng formalized an arrangement that had already been in place by

OPPOSITION TO MOTION TO DISMISS
Case No. 2:24-cv-00428-JCM-BNW

officially hiring Ms. Zhao in a management position at Empire, where she still works today. (ECF No. 77-1 ¶ 47.) Notably, Ms. Zhao does not work for any foreign subsidiary of Empire, but rather directly for Empire itself, a Nevada company based in Las Vegas. (ECF No. 77-1 ¶ 47; FAC ¶ 5.)

In sum, Ms. Zhao conspired with Mr. Feng and the other co-conspirators to build up Empire's business in Nevada to compete with and overtake LT Game in Nevada, all in contravention of her fiduciary duties as a Director of LT Game in Nevada.

**B.    <u>Ms. Zhao's Sparse Declaration Omits Key Information And Fails To Address The Allegations</u>**

Ms. Zhao has provided a brief Declaration with her Motion that it fails to inform the Court of relevant facts and fails to substantively address the allegations against her. Ms. Zhao fails to inform the Court that not only did her role as Chief Operating Officer of the electronic gaming business of Paradise Group, including LT Game in Las Vegas, but that, as of March 2022, she was in fact the sole Director of LT Game in Las Vegas, and owed fiduciary duties to it in Las Vegas. Additionally, while Ms. Zhao claims to have worked in Macau, she fails to explain to the Court that she was performing significant work remotely in Las Vegas.

More generally, Ms. Zhao's Declaration fails to adequately address the allegations, which she could not have meaningfully refuted given her readily apparent involvement in Defendants' scheme. With reference to her trips to Las Vegas, Ms. Zhao states that "I did not, *during any of my trips*, do any of the acts that Plaintiffs accuse me of" (ECF No. 77-1 ¶ 44, emphasis added), which does not engage with the subject of her remote misconduct perpetrated in Las Vegas. Additionally., Ms. Zhao claims that "I was not, and generally am not, aware of Mr. Linyi Feng's, Mr. Daryn Kiely's, or Mr. Kelcey Allison's exact physical locations when communicating with them" (ECF No. 77-1 ¶ 59). This assertion seems disingenuous: it is clear that Ms. Zhao knew that these individual persons lived and worked in Las Vegas for LT Game and Empire, and would have expected to communicate with them there. Ms. Zhao gives no reason why she would have thought they would have been anywhere else.

Finally, Plaintiffs also note that Ms. Zhao's Declaration is improper under 28 U.S.C. § 1746 for failing to recite that it is made under penalty of perjury "under the laws of the United States of America" as required for foreign declarations, a more meaningful omission in the context of a declaration whose

OPPOSITION TO MOTION TO DISMISS
Case No. 2:24-cv-00428-JCM-BNW

1  purpose is to deny connection to the United States.

2  **III.   PROCEDURAL BACKGROUND**

3       The extent of Ms. Zhao's involvement in Defendants' misconduct was not known to Plaintiffs

4  until after they reviewed Defendants' document production. (Chan Dec. ¶ 13.) During the week of

5  February 17, 2025, Plaintiffs conferred with Defendants about their planned amendment to add Ms. Zhao

6  to the case, and provided them a draft of the FAC on February 25. (Ciardullo Dec. ¶ 2.) Given that Ms.

7  Zhao is an employee of Empire and that Defendants were fully aware of her employment history and

8  involvement with LT Game and Empire, one would expect Defendants to raise concerns if they perceived

9  any issues with respect to personal jurisdiction over one of their own managers. To the contrary,

10  Defendants did not express any personal jurisdiction concerns and did not oppose the filing of the FAC.

11  (*Id.*) Furthermore, the parties contemporaneously filed a Joint Stipulation to extend the case schedule in

12  which they jointly contemplated that the requested schedule extension would allow time for Ms. Zhao to

13  appear in the case and participate in discovery prior to the new discovery cutoff date of August 29. (ECF

14  No. 66 at 2:6-9.) Plaintiffs timely filed their FAC on February 27, 2025, the deadline for amending

15  pleadings. (ECF No. 45.) Plaintiffs had no indication from Defendants that personal jurisdiction would be

16  disputed, nor any reason to otherwise think it would be at issue given Ms. Zhao's extensive involvement

17  in the accused misconduct in Nevada.

18  **IV.   LEGAL STANDARD**

19       When a Rule 12(b)(2) motion to dismiss is based solely on written materials, the plaintiff need

20  only make a prima facie showing of personal jurisdiction, which only requires showing "facts that, if true,

21  would support jurisdiction over the Defendant." *Mattel, Inc. v. Greiner & Hausser GmbH,* 354 F.3d 857,

22  862 (9th Cir. 2003). "Uncontroverted allegations in the complaint must be taken as true, and factual

23  disputes are construed in the plaintiff[s'] favor." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Group*,

24  905 F.3d 597, 602 (9th Cir. 2018).

25       Here, although Ms. Zhao supplied a Declaration with her Motion, that Declaration does not directly

26  address the specific allegations at issue, and she omits key facts such as that she was the sole Director of

27  LT Game in Las Vegas, leaving most of the allegations of the FAC unrefuted. In any event, to the extent

28  the Court might deem them necessary to consider in view of Ms. Zhao's Declaration, Plaintiffs have now

OPPOSITION TO MOTION TO DISMISS
Case No. 2:24-cv-00428-JCM-BNW

supplied affirmative Declarations and additional evidence in support of personal jurisdiction, and the Court should resolve any perceived conflicts between the declarations in Plaintiffs' favor. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) ("[C]onflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.").

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Nevada's long-arm statute, set forth at Nev. Rev. Stat. § 14.065, coincides with federal due process requirements. *Schurr v. Twin Restaurant LV-2, LLC*, No. 2-22-cv-01759-CDS-DJA, 2024 WL 1376985, at *2 (D. Nev. Mar. 31, 2024). Those require that the nonresident defendants have "minimum contacts" with Nevada "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

## V.    THE COURT HAS PERSONAL JURISDICTION UNDER THE FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT

The Court has specific personal jurisdiction under one or both of two analyses applied to the facts alleged in the FAC: (1) the traditional specific jurisdiction test, and (2) a conspiracy theory of personal jurisdiction.

### A.    The Court Has Specific Personal Jurisdiction Over Ms. Zhao

The Ninth Circuit applies a three-part test to decide specific personal jurisdiction:

First, the nonresident defendant must purposefully direct her activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Second the claim must be one which arises out of or relates to the defendant's forum-related activities. Finally, the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schurr*, 2024 WL 1376985, at *2 (citations omitted).

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff satisfies the first two prongs, then the burden shifts to the defendant to show "a compelling case" that exercising jurisdiction would be unreasonable. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023);

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

> **1.    Ms. Zhao Purposefully Directed Her Misconduct Towards Nevada**

With respect to the first prong of the specific personal jurisdiction test, the purposeful direction standard applies where the claims sound in tort, such as here. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023). To determine whether a defendant purposefully directed its activities toward the forum, the *Calder* effects test applies. *See Calder v. Jones*, 465 U.S. 783 (1984). To satisfy the *Calder* effects test, the defendant must have: (1) committed an intentional act; (2) expressly aimed at the forum state; and (3) caused harm that the defendant knew was likely to be suffered in the forum state. *Power Efficiency Corp. v. Resource Energy Systems Technologies*, No. 2:09-cv-01468-LRF-RJJ, 2009 WL 10709764, at *2 (D. Nev. Nov. 23, 2009) (citing *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 233 F.3d 1082, 1087 (9th Cir. 2000). Under the effects test, a defendant does not need to have any physical contact with the forum. *See Schwarzenegger*, 374 F.3d at 803. "Rather, to establish the defendant 'purposefully directed' its conduct toward the forum, the plaintiff usually produces 'evidence of the defendant's actions outside the forum state that are directed at the forum . . . ." *Schurr v. Twin Rest. LV-2, LLC*, No. 2:22-CV-01759-CDS-DJA, 2024 WL 1376985, at *4 (D. Nev. Mar. 31, 2024) (citing *Schwarzenegger*, 374 F.3d at 803).

Here, the *Calder* effects test proves that Ms. Zhao purposefully directed her misconduct towards Nevada.

**(i) Ms. Zhao's intentional acts:** The first element of the test is satisfied because Ms. Zhao committed multiple intentional acts. "As for the first component of the purposeful-direction test, 'the meaning of the term 'intentional act' in our jurisdictional analysis is essentially the same as in the context of intentional torts; namely, the defendant must act with the 'intent to perform an actual, physical act in the real world.'" *E3 Innovation Inc. v. DCL Techs. Inc.*, No. CV-21-01141-PHX-DWL, 2021 WL 5741442, at *7 (D. Ariz. Dec. 2, 2021) (citing *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015)). Stated differently, an intentional act is defined as an "external manifestation of the actor's will and does not include any of its results, even the most direct, immediate, and intended." *Enertrode, Inc. v. Gen. Capacitor Co. Ltd*, No. 16-CV-02458-HSG, 2016 WL 7475611, at *4 (N.D. Cal. Dec. 29, 2016) (citing *Schwarzenegger*, 374 F.3d at 806).

Ms. Zhao intentionally performed multiple actual, physical acts that manifested her will. As detailed above, (1) she accessed and misappropriated confidential business information and trade secrets and ██████████████████████████████████████; (2) she performed substantive work for Empire in furtherance of Mr. Feng's plan to supplant LT Game; (3) she intentionally withheld information from LT Game and Paradise about Mr. Feng and Empire usurping corporate opportunities and forming a competing business in Nevada; (4) she concealed from LT Game and Paradise the ██████ ████████████████████████████████████████████████████████████████ ██████████████████████; (5) she received coaching from Mr. Feng and his wife on how to deceitfully stage her departure from Paradise and LT Game; (6) she misinformed Dr. Chun that she would not work for Mr. Feng and Empire after resigning, and then she immediately accepted the position of senior vice president of international operations for Empire; and (7) she formatted the hard drive of her Paradise computer so that all data on her computer was removed or erased before exiting LT Game and Paradise. Finally, Ms. Zhao did all the above things while she was the sole Director of LT Game in Las Vegas, breaching her fiduciary duties to LT Game in Las Vegas and being fully aware that her misconduct would harm LT Game's interests in Las Vegas.

Accordingly, the first element of the effects test is met.  *See, e.g.*, *Xsolla (USA), Inc. v. Aghanim Inc.*, No. 2:24-cv-02116-ODW, 2025 WL 1222196, at *9 (C.D. Cal. Apr. 28, 2025) (element met where defendant acquired, used, and disclosed the plaintiff's trade secrets through the defendant's access rights and then stole the trade secret information to start a competing company); *Fluke Elecs. Corp. v. CorDEX Instruments, Inc.*, No. C12-2082JLR, 2013 WL 566949, at *4 (W.D. Wash. Feb. 13, 2013) (element met where defendants misappropriated and used plaintiff's confidential information, interfered with plaintiff's business, and attempted to divert plaintiff's business opportunities towards defendants).

**(ii) Ms. Zhao expressly aimed her misconduct at Nevada:** The second element of the effects test is satisfied because Ms. Zhao's misconduct was expressly aimed at Nevada. Under this element, courts analyze "whether the defendant's allegedly tortious action was 'expressly aimed at the forum.'" *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). This inquiry is fact-specific, but the court is guided by the principle that it must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum. *E3 Innovation Inc. v. DCL Techs. Inc.*, No. CV-21-

1    01141-PHX-DWL, 2021 WL 5741442, at *7 (D. Ariz. Dec. 2, 2021). Notably, "the plaintiff cannot be the

2    only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

3        Ms. Zhao's misconduct here was directly aimed at Nevada. As detailed above, Ms. Zhao engaged

4    in the secret scheme to build up Empire's gaming operations, business, and market share *in Nevada*, while

5    knowing that this would injure LT Game *in Nevada*. For example, Ms. Zhao accessed and misappropriated

6    LT Game's and Paradise's confidential business information and trade secrets and ███████████

7    ███████████████████ for the purpose of building up Empire *in Nevada* to the detriment

8    of LT Game and Paradise *in Nevada*. (FAC ¶ 101, 153-156). Additionally, Ms. Zhao and her co-

9    conspirators intentionally withheld information from LT Game and Paradise about Mr. Feng and Empire

10   usurping corporate opportunities and forming a competing business *in Nevada* to the detriment of LT

11   Game and Paradise *in Nevada*. (FAC ¶ 105, 147-56.). Additionally, Ms. Zhao secretly communicated and

12   secretly performed substantive work for Empire and Mr. Feng in furtherance of Mr. Feng's plan to

13   supplant LT Game and Paradise in the Nevada gaming industry. (FAC ¶ 111; Ciardullo Ex. B, Zhuang

14   Ex. A (████████████████████████████████████████

15   ████████████████████████████).) In view of Ms. Zhao purposeful direction

16   of conduct at Nevada, the Court should reject Ms. Zhao's unsupported assertion that the "purpose of the

17   scheme…was to insert Empire into the Macau market to compete against Paradise in China." (Mot. 9.)

18       The fact that Ms. Zhao was not physically located in Nevada when she engaged in the misconduct

19   is not determinative. *See Xsolla (USA), Inc. v. Aghanim Inc.*, No. 2:24-CV-02116-ODW (AGRX), 2025

20   WL 1222196, at *9 (C.D. Cal. Apr. 28, 2025). Rather, as in *Xsolla*, the focal point of the analysis is that

21   Ms. Zhao engaged in the misconduct as part of a scheme to develop and set up a competing company in

22   the forum state, Nevada, to the detriment of LT Game in Nevada. *Id.* In *Xsolla*, the defendant challenging

23   personal jurisdiction was not located in California, and the defendant did not misappropriate the trade

24   secrets in California, and the defendant was not alleged to have used the trade secrets to poach customers

25   in California. *Id.* Nonetheless, the defendant did intend to set up its competing business in California, and

26   that fact alone was sufficient to establish express aiming towards California. *Id.* Here, Ms. Zhao likewise

27   engaged in her misconduct to build up the now-competing business Empire in Nevada, regardless of where

28   she was physically located during the misconduct.

OPPOSITION TO MOTION TO DISMISS
Case No. 2:24-cv-00428-JCM-BNW

Another analogous case to the present one is *Fluke Elecs. Corp. v. CorDEX Instruments, Inc.*, No. C12-2082JLR, 2013 WL 566949 (W.D. Wash. Feb. 13, 2013). There the plaintiff was a company based in Washington that manufactured and distributed electronic test tools. *Id.* at *1–*2. Three of the plaintiff's employees worked and lived outside Washington. *Id.* While employed by the plaintiff, those employees secretly "worked behind the scenes" to create a competing business that offered the same products as the plaintiff. *Id.* They secretly used the plaintiff's protected IP to develop the competing products. *Id.* The three employees then exited their employment with the plaintiff and immediately "officially" joined their competing business, which was neither based in nor did business in Washington. *Id.* The plaintiff then sued the former employees and their competing business in Washington for trade secret misappropriation, tortious interference, and breach of confidentiality and non-compete agreements. The defendants argued that their misconduct was not expressly aimed at Washington because they were not based in Washington during the misconduct. The court rejected that argument, concluding that the defendants expressly aimed their misconduct at Washington because (1) the defendants knew the plaintiff was based and did business in Washington and (2) the defendants "used their former employment" with the Washington plaintiff "to access that company's trade secrets and then use that information *to compete with the same Washington business*." *Id.* at *4. This meant "it was foreseeable that their conduct would harm [the plaintiff] in Washington," so personal jurisdiction existed in Washington. *Id.*

Even assuming Ms. Zhao did not expressly aim her misconduct at Nevada (which she clearly did given that both LT Game and Empire are Nevada companies), her misconduct as a director of LT Game, a Nevada corporation, would nonetheless amount to express aiming at Nevada. In *Consipio Holding, BV v. Carlberg*, 128 Nev. 454, 282 P.3d 751 (2012), the Supreme Court of Nevada held that "a district court can exercise personal jurisdiction over nonresident officers and directors who directly harm a Nevada corporation":

> A corporation that is incorporated in Nevada is a Nevada citizen. When officers or directors directly harm a Nevada corporation, they are harming a Nevada citizen. By purposefully directing harm towards a Nevada citizen, officers and directors establish contacts with Nevada and affirmatively direct conduct toward Nevada. Further, officers or directors cause important consequences in Nevada when they directly harm a Nevada corporation. When a cause of action arises out of an officer's or director's purposeful contact with Nevada, a district court can exercise personal jurisdiction over that officer or director.

OPPOSITION TO MOTION TO DISMISS
Case No. 2:24-cv-00428-JCM-BNW

*Consipio Holding, BV*, 282 P.3d at 755 (internal quotation marks and citations omitted).

A corporate officer's misconduct against the corporation is, by law, expressly aimed at the corporation's home forum. *See id., see also Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 358 (E.D. Pa. 2016). In *Numeric*, the president of a Pennsylvania company, while still working for the company, "schemed to resign and start a competing company" and "poached" several employees of the company "to join her competing enterprise." *Id.* at 353. The president committed this misconduct while residing in Colorado. *Id.* The company sued the president for violating her fiduciary duty to the company "as an officer of the company," as well as for other tort and contract claims. *Id.* The Pennsylvania court concluded that it had personal jurisdiction over the Colorado president because the president had both a fiduciary duty and duty of loyalty to the company, and "a breach of fiduciary duty or duty of loyalty by the President of a company *affects the viability and fortunes of that company and is felt wherever the principal place of business may be*." *Id.* 358 (emphasis added). The court continued, "[The president's] duty as to this claim [breach of fiduciary duty] arises out of her status, not her conduct, and that status is inextricably bound to Pennsylvania, which is where [the company], for corporate purposes, exists." *Id.* Accordingly, "[b]y accepting the responsibility of corporate officership, [the president] distinguished herself from regular employees and *aimed her actions into her company's home state* in a way that the regular employees did not." *Id.* (emphasis added). On those grounds, the *Numeric* court concluded that the president "cannot accept the mantle of corporate officership for a Pennsylvania-based business and then renounce any meaningful contacts with the state where it is headquartered." *Id.* As a result, the court ruled that it had personal jurisdiction over the president "[b]ecause the duty alleged [fiduciary duty] is inherent to the role [the president] played as an officer of the entity, [and the court did] not doubt that plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm alleged." *Id.*

This reasoning in *Numeric* applies here. Ms. Zhao was the sole Director and COO for LT Game in Nevada. In those roles, she owed fiduciary duties to LT Game. Yet, in those roles, she conspired with Defendants to build up Empire to supplant LT Game. By doing so, she breached her duties to LT Game, which felt the harm in Nevada. *See Consipio Holding, BV*, 282 P.3d at 755. Consequently, Ms. Zhao cannot now "renounce" the meaningful contacts that she established with Nevada "when she accepted

[and carried] the mantle of corporate officership" for a Nevada-based business. *Numeric Analytics, LLC*, 161 F. Supp. 3d at 358.

In sum, the second element of the effects test is satisfied by the fact that Ms. Zhao was fraudulently building up Empire in Nevada to compete with LT Game and Paradise, especially in Nevada. This conclusion is bolstered by Ms. Zhao's extensive contacts with Nevada while she engaged in the misconduct, including that she (1) managed LT Game and worked remotely for LT Game, which is based in Nevada; (2) acted as the sole director of LT Game for nearly 20 months; (3) traveled to and worked in Las Vegas while the director of LT Game; and (4) provided Mr. Feng, who was based in Las Vegas, with misappropriated information from Paradise and LT Game.

Ms. Zhao mischaracterizes the facts in arguing against this element. She asserts that "Paradise and LT Game Limited did not compete in the United States and did not have a presence there; according to Plaintiffs, that was the entire point of Empire." (Mot. 13.) This is misleading on several levels. First, it is apparent from the FAC that LT Game is the US arm of Paradise and LTG Limited: the FAC states that "Paradise operates its worldwide electronic gaming equipment and systems business under the brand name 'LT Game.'" (FAC ¶ 16.) The complaint further states that Paradise created LT Game, which is incorporated in Nevada, to pursue the North American market, and that Paradise has North American clients. (FAC ¶ 26, 62.) Secondly, setting aside Paradise and LTG Limited, LT Game is obviously a Nevada company and the unrefuted allegations of FAC are that Empire was competing with LT Game in Las Vegas, usurping its corporate opportunities, stealing its card shoes and source code, and poaching its employees. (FAC ¶¶ 3, 5, 12, 26, 74, 78, 110, 136, 160, 162.) In sum, Plaintiffs and Defendants clearly competed in Nevada.

**(iii) Ms. Zhao caused harm that she knew was likely to be suffered in Nevada:** The third element of the effects test is satisfied because Ms. Zhao knew her misconduct would damage Plaintiffs in Nevada given that LT Game – the other Plaintiffs' subsidiary – is in Las Vegas. The Ninth Circuit has "repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business." *Enertrode, Inc. v. Gen. Capacitor Co. Ltd*, No. 16-CV-02458-HSG, 2016 WL 7475611, at *4 (N.D. Cal. Dec. 29, 2016) (citing *CollegeSource, Inc.*, 653 F.3d at 1079); *see also Unify Inc. v. Anthony M. Serra CPA Inc.*, 642 F. Supp. 3d 971, 978 (D. Ariz. 2022) (if the plaintiff

is a resident of the forum, then this element is easily satisfied because the "Defendant should have known that the harm from its alleged [misconduct] would be suffered primarily in the" forum where the plaintiff resides).

Here LT Game incurred economic loss in its home state of Nevada because of Ms. Zhao's misconduct in helping to precipitate LT Game's downfall. Paradise and LTG Limited suffered injury in Nevada through their subsidiary, LT Game. Consequently, the third element of the effects test is satisfied here. *See Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 358 (E.D. Pa. 2016) (non-resident president of company knew harm was likely to be suffered in company's home state); *Enertrode, Inc. v. Gen. Capacitor Co. Ltd*, No. 16-CV-02458-HSG, 2016 WL 7475611, at \*4 (N.D. Cal. Dec. 29, 2016) (this element satisfied where defendant knew the plaintiff was a California company and the plaintiff suffered economic damage in California); *Xsolla (USA), Inc. v. Aghanim Inc.*, No. 2:24-CV-02116-ODW (AGRX), 2025 WL 1222196, at \*9–10 (C.D. Cal. Apr. 28, 2025) (this element satisfied where defendant knew plaintiff was a California company and defendant misappropriated plaintiff's trade secrets and set up a competing company in California); *see also Pray, Inc. v. Christian Care Ministry, Inc.*, No. 2:23-cv-10660-SB (JCx), 2024 WL 3509781, at \*5 (C.D. Cal. June 7, 2024) (holding that *Walden* and its progeny did not overrule *CollegeSource*, as "its effect on the individualized targeting theory goes to the second prong of purposeful direction, not the third").

### 2.    Plaintiffs' Claims Against Ms. Zhao Arise From Her Contacts In Nevada

To satisfy the second element of the specific personal jurisdiction test, the plaintiff's claims must "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). The Ninth Circuit applies a "but for" test to determine whether a particular claim arises out of forum-related activities. *Power Efficiency Corp.*, 2009 WL 10709764, at \*2. Under this test, "a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) (internal quotation marks omitted).

Here all of Plaintiffs' claims against Ms. Zhao arise from her Nevada-aimed activities. *See Xsolla (USA), Inc. v. Aghanim Inc.*, No. 2:24-CV-02116-ODW (AGRX), 2025 WL 1222196, at \*9–10 (C.D. Cal. Apr. 28, 2025). Specifically, Plaintiffs' claims against Ms. Zhao arise from her direct participation in

Defendants' conspiracy to undermine LT Game in Las Vegas as well as her aiding and abetting of co-conspirators Mr. Feng, Mr. Allison, and Mr. Kiely in Las Vegas. The claims also arise from Mr. Zhao's breach of fiduciary duty to her company, LT Game, in Las Vegas, of which she was the sole Director. (FAC ¶ 283, 287-89.) Those duties arise from Nevada law because LT Game is a Nevada corporation.

Thus, this second element of the specific jurisdiction test is satisfied.

### 3. The Court's Exercise of Jurisdiction Over Ms. Zhao Is Not Unreasonable

In determining the reasonableness of exercising specific jurisdiction, a court considers several factors: (1) the extent of a defendant's purposeful availment; (2) the burden on defendant in appearing in the forum; (3) conflicts between the forum state and defendant's home state; (4) the forum's interest in the dispute; (5) judicial efficiency; (6) the plaintiff's interest in the forum; and (7) the existence of an alternate forum. *See Harris Rutsky & Co. Ins. Services v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003). In evaluating these factors, "[n]o one factor is dispositive" and a court "must balance all seven." *Angel Productions Worldwide, Inc. v. Airstage by Effeckt-Technik, GmbH*, 426 F.Supp.3d 630, 635 (D. Nev. 2019) (citing *Panavision*, 141 F.3d at 1323). However, "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* (citing *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 107 (1987)). That is, once it has been decided that a defendant purposefully established minimum contacts with a forum, "[s]he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" in order to defeat personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

On balance, the factors show that exercising personal jurisdiction over Ms. Zhao is reasonable.

### a. Purposeful Availment

This factor considers whether a defendant "purposefully avails [her]self of the privilege of conducting activities or consummates a transaction in the forum, focusing on activities such as delivering goods or executing a contract." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). The Ninth Circuit and this Court have held that this factor parallels the question of minimum contacts, which is met and discussed above. Accordingly, this factor favors exercising personal jurisdiction.

### b.    Burden on Defendant

This factor considers whether the "inconvenience is so great as to constitute a deprivation of due process." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). It must be remembered for this factor that "modern advances in communications and transportation have significantly reduced the burden of litigation in another country." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).

Here, there will be little cognizable burden on Ms. Zhao. Plaintiffs are amenable to taking her deposition via Zoom so that she does not need to travel. Because Ms. Zhao's employer, Empire, is located in Las Vegas, Empire can handle most of the heavy lifting. Many or most documents will be collected by Empire from its own accounts, and Empire will handle most other discovery tasks. Presumably Empire will also be paying Ms. Zhao's expenses to appear at trial, which is the only physical visit to the forum that Plaintiffs expect Ms. Zhao will take. In any event, Ms. Zhao is no stranger to traveling to Las Vegas. In her declaration, Ms. Zhao cannot identify any concrete, non-speculative obstacle that would make defending herself in Nevada so gravely difficult. Further, this Court has recognized that travelling to a foreign jurisdiction with a different language and legal system is burdensome but has held that "this is to be expected when conducting international commercial business." *Angel Productions Worldwide Inc.*, 426 F.Supp.3d at 635. Ms. Zhao worked as a director for a Nevada gaming company, and she now works as a VP for another Nevada gaming company, so it should not be unexpected for her to find herself in court in Nevada, especially given her extensive Nevada-aimed misconduct.

### c.    Conflict Between The Forum State And Defendant's State

This factor considers the extent to which the district court's exercise of jurisdiction in Nevada would conflict with the sovereignty of Macau, Ms. Zhao's region of domicile. *See Panavision*, 141 F.3d 1323. Here, the resolution of Plaintiffs' claims will not undermine Macau's sovereignty. Plaintiffs ask the Court only to apply and enforce the laws in the United States, not any laws or rights arising from Macau.

### d.    Nevada's Interest

"[The forum state] maintains a strong interest in providing an effective means of redress for its residents tortiously injured." *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996). Here, LT Game's principal place of business is in Nevada. So, too, is Empire's and the other Defendants'. Thus,

there is no merit to Ms. Zhao assertion that this case is solely between foreign plaintiffs and foreign defendants. (Mot. 17.) Further, Ms. Zhao's conduct involved the theft and misappropriation of confidential business information and trade secrets, and that theft was to benefit one Nevada gaming corporation to the detriment of another Nevada gaming corporation. Nevada has a considerable interest in adjudicating this controversy. *Id*. at 636.

### e.    Efficient resolution

"This factor focuses on the location of the evidence and the witnesses[,]" but "it is no longer weighed heavily given the modern advances in communication and transportation." *Panavision*, 141 F.3d at 1323. Here, a majority of the witnesses are located in Nevada and both LT Game and Empire are Nevada corporations. And, again, while Ms. Zhao is located in Macau, modern technology makes the logistics related to this case much easier. Further, it is also reasonably efficient to convene at the place of the wrongful conduct, which is Nevada. *See Freestream Aircraft*, 905 F.3d at 609. Ms. Zhao does not provide any meaningful support to contradict this but rather points solely to the minority of involved parties that are in China. (Mot. at 17-18.) Ms. Zhao fails to acknowledge that an overwhelming majority of involved parties are in Nevada, that she repeatedly visited Las Vegas for leisure and work, that she was a director of a Nevada gaming corporation, and that she is a VP of another Nevada gaming corporation. Accordingly, this factor favors exercising personal jurisdiction.

### f.    Convenience to Plaintiffs

To date, Plaintiffs have invested significant time and resources in this litigation, which would create great inconvenience should they have to refile elsewhere against Ms. Zhao. Further, if Nevada is not a proper forum for Ms. Zhao, then Plaintiffs would be required to litigate separate suits in two different countries. If this proceeding was brought in Macau, as Ms. Zhao promotes, then a larger number of parties and the majority of witnesses would be significantly inconvenienced in traveling from Nevada to Macau. Again, Nevada is the most convenient and effective forum for Plaintiffs' interests, as well as the interests of a majority of the involved parties. A more convenient forum does not exist. Accordingly, this factor favors exercising personal jurisdiction.

### g.    Alternative forum

Ms. Zhao does not establish that another legal system would be able to provide adequate and

appropriate relief. Plaintiffs brought this case in Nevada because of the Nevada-aimed misconduct by the Defendants, the Nevada-based harm suffered by Paradise and LT Game, and the many defendants and witnesses living in Nevada. No other single alternative forum has subject matter and personal jurisdiction over all parties and all issues. Further, Plaintiffs seek determination and enforcement of its rights against Ms. Zhao under United States law (*e.g.*, Defend Trade Secrets Act, Copyright Act, RICO) and Nevada common-law torts and Nevada-based fiduciary duties. The Ninth Circuit has held that "whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 984 (9th Cir. 2021) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011)). That is not the case here because Nevada is a reasonable and superior forum. Accordingly, this factor favors exercising personal jurisdiction.

**B.    Additionally Or Alternatively, A Conspiracy Theory Of Jurisdiction Applies**

The Nevada Supreme Court recently held that "Nevada's long-arm statute encompasses a conspiracy theory of personal jurisdiction." *Tricarichi v. Coöperative Rabobank, U.A.*, 135 Nev. 87, 96, 440 P.3d 645, 653 (2019). The Supreme Court explained that personal jurisdiction exists where: "(1) there is a conspiracy, (2) the acts of co-conspirators meet minimum contacts with the forum, and (3) the co-conspirators could have reasonably expected at the time of entering into the conspiracy that their actions would have consequences in the forum state." *Id.* All three of these factors are met here.

**First**, the FAC expressly alleges that Ms. Zhao participated in a conspiracy. There are detailed allegations of the conspiracy, and, as has been addressed at length herein, there are detailed allegations concerning Ms. Zhao's specific involvement in that conspiracy and acts she took in furtherance of it, both as affirmative acts, and in concealment to give active cover to the co-conspirators. **Second**, there is no dispute that her co-conspirators (the other Defendants) have adequate contacts with Nevada and purposefully directed their accused conduct to Plaintiffs' interests in Nevada. **Third**, as discussed *supra*, all the co-conspirators — including Ms. Zhao — should have reasonably expected to be called to Nevada for their misconduct. Ms. Zhao cannot plausibly argue that Nevada jurisdiction surprises her in view of her alleged misconduct targeting LT Game in Las Vegas and that she was a director and manager for LT Game — as well as a de facto manager for Empire — in Nevada when the misconduct occurred.

To Plaintiffs' knowledge, the Ninth Circuit Court of Appeals has not yet ruled on the question of

OPPOSITION TO MOTION TO DISMISS
Case No. 2:24-cv-00428-JCM-BNW

a conspiracy theory of personal jurisdiction. In a published 1995 decision, the Ninth Circuit acknowledged the conspiracy theory but did not reach the question of its applicability. *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 364 (9th Cir. 1995). In an unpublished 2002 decision, the court noted in dicta some skepticism of the theory, but again did not reach the issue. *Chirila v. Conforte*, 47 F. App'x 838, 843 (9th Cir. 2002). The *Chirila* court cited *Gutierrez v. Givens*, 1 F. Supp. 2d 1077, 1083 n.1 (S.D. Cal. 1998) as an example of a case that rejected the conspiracy theory, but the determination in that case was based on the idea that a conspiracy theory would not require the defendant to be aware they were causing harm in the forum. In contrast to this, the Nevada Supreme Court's formulation in *Tricarichi* requires that the defendant be aware that they are contributing to harm in Nevada, thus comporting with due process.[2]

Even prior to the Nevada Supreme Court's decision *Tricarichi,* the District of Nevada had already recognized that the conspiracy theory of personal jurisdiction might apply, explaining that "[t]he Court thus concludes that if a conspiracy theory of jurisdiction is viable, a plaintiff must set forth non-conclusory allegations that the defendant was a member of a conspiracy, that the defendant's or his co-conspirator's acts in furtherance of the conspiracy caused harm in the forum, and that the conspiracy individually targeted a known forum resident." *Arandell Corp. v. Xcel Energy, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.)*, 605 F. Supp. 2d 1118, 1140 (D. Nev. 2009). Now that the Nevada Supreme Court has clarified that the Nevada long-arm statute does encompass the theory, it is appropriate for this Court to apply it. "Where . . . no federal statute authorizes personal jurisdiction, [a] district court applies the law of the state in which the court sits." *CollegeSource, Inc. v. AcademyOne, Inc*., 653 F.3d 1066, 1073 (9th Cir. 2011). Personal jurisdiction analysis under Nevada law parallels that of the Fourteenth Amendment's Due Process Clause because Nevada's long arm statute extends personal jurisdiction over defendants to the limits of the state and federal constitutions. *Buckles v. Green Tree Servicing LLC*, No. 2:15-cv-1581-GMN-CWH, 2016 U.S. Dist. LEXIS 64079, at *3 (D. Nev. May 13, 2016). Many other federal courts around the country, including the Second, Fourth, and Tenth Circuits, have held that a conspiracy theory of personal jurisdiction can comport with due process. *See Schwab Short-Term Bond Mkt. Fund v. Lloyds*

---

[2] In a 1979 case interpreting the venue statutes applicable to antitrust actions, the Ninth Circuit had held that there should be no conspiracy theory of venue in antitrust suits. *Piedmont Label Co. v. Sun Garden Packing Co*., 598 F.2d 491, 495 (9th Cir. 1979). The case did not address the applicable standard for personal jurisdiction, and ample jurisprudence since that time has confirmed that the conspiracy theory of personal jurisdiction – as applied under the analysis set forth in *Tricarichi* – comports with due process.

OPPOSITION TO MOTION TO DISMISS
Case No. 2:24-cv-00428-JCM-BNW

*Banking Grp. PLC*, 22 F.4th 103, 122 (2d Cir. 2021) (applying essentially same test as in *Tricarichi*); *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013) (same); *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007) ("The existence of a conspiracy and acts of a co-conspirator within the forum may, in some cases, subject another co-conspirator to the forum's jurisdiction.") (citing *Lolavar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir. 2005)).

Plaintiffs note that certain district courts within the Ninth Circuit have declined to apply a conspiracy theory of personal jurisdiction if the forum state, like California, has not recognized conspiracy as a basis for personal jurisdiction. *See, e.g.*, *McKay v. Hageseth*, No. C 06 1377 MMC, 2007 WL 1056784, at *2 n.3 (N.D. Cal. Apr. 6, 2007) ("Although this Court previously noted that some jurisdictions recognize a theory of personal jurisdiction based on conspiracy, under which contacts between one defendant and the forum state made in furtherance of the conspiracy are attributed to all members of the conspiracy, defendants correctly point out that California courts have rejected such theory.") (cleaned up). Thus, the case here is distinguishable because the Nevada Supreme Court has now held that the Nevada long-arm statute encompasses the conspiracy theory. As discussed in *Arandell*, the multi-part test for conspiracy-based personal jurisdiction comports with federal due process by requiring non-conclusory pleadings of a conspiracy and purposeful direction to the forum state that was within the reasonable knowledge or expectation of the defendant. All those elements are present here.

## VI.    IN THE ALTERNATIVE, PLAINTIFFS REQUST LEAVE TO AMEND

While Plaintiffs believe that the allegations of the FAC as currently pled are sufficient to establish personal jurisdiction, Plaintiffs respectfully request leave in the alternative to amend their complaint. Plaintiffs also note that Ms. Zhao has seemingly acknowledged the propriety of amendment by only requesting dismissal without prejudice. Here, the additional documents and evidence that have been supplied via the accompanying Declarations (summarized in Section II, *supra*) further cement the conclusion that the Court's exercise of personal jurisdiction is proper.

"Cases should be decided upon their merits whenever reasonably possible." *Liberty Ins. Underwriters Inc. v. Scudier*, 53 F. Supp. 3d 1308, 1318 (D. Nev. 2013). Leave to amend should be readily granted under Fed. R. Civ. P. 15. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038–39 (9th Cir. 2002). Indeed, "Rule 15…is 'to be applied with extreme liberality'" and "a district court should grant leave to

amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Aiello v. Geico Gen. Ins. Co*., 379 F. Supp. 3d 1123, 1129 (D. Nev. 2019).

Here, Plaintiffs timely amended their complaint on February 27, 2025, in an amendment that was unopposed by Defendants, who are Ms. Zhao's employers and would have had every reason to raise personal jurisdiction objections on her behalf. Plaintiffs are not seeking to add any new claims, but rather only seeking to add additional facts in support of the claims that Plaintiffs already timely pled. This is eminently reasonable, particularly in view of Ms. Zhao's acknowledgement that any dismissal be without prejudice.[3]

## VII.    <u>CONCLUSION</u>

Ms. Zhao purposefully directed her tortious conduct to Nevada and has not shown that it would be unreasonable for the Court to exercise jurisdiction over her. The Court should deny her motion to dismiss. Alternatively, if the Court is inclined to grant the motion, then Plaintiffs respectfully ask the Court for leave to amend.

---

[3] While Plaintiffs do not believe that Rule 16(b) applies to an amendment under these circumstances, Plaintiffs nonetheless believe that good cause exists for an amendment. Plaintiffs have been diligent and have not delayed in seeking this amendment, which is being timely requested in opposition to a motion to dismiss that Plaintiffs fairly were not expecting. As discussed in Section III, based on Defendants' non-opposition to the amendment and their stipulation that they expected there would be sufficient time to have Ms. Zhao join the case and complete discovery under the existing schedule, Plaintiffs had not believed personal jurisdiction would be at issue. Now that it has been raised, Plaintiffs are addressing it promptly, and only seek to enhance their allegations that were already timely pled in the FAC – not to add any new causes of action or controversies.

1

2   DATED:  May 27, 2025                    Respectfully submitted,

3
                                           */s/ Jessica M. Lujan*_____
4                                          OLIVER J. PANCHERI, ESQ.
                                           Nevada Bar No. 7476
5                                          JESSICA M. LUJAN, ESQ.
                                           Nevada Bar No. 14913
6                                          **SPENCER FANE LLP**
                                           300 South Fourth Street, Suite 1600
7                                          Las Vegas, Nevada 89101
                                           Telephone: (702) 408-3400
8                                          Fax: (702) 938-8648
                                           Email: opancheri@spencerfane.com
9                                                    jlujan@spencerfane.com
10
                                           JEAN-PAUL CIARDULLO, ESQ.  (*pro hac vice*)
11                                         California Bar No. 284170
                                           **FOLEY & LARDNER LLP**
12                                         S555 Flower Street, Suite 3300
                                           Los Angeles, California 90071
13                                         Tel: (213) 972-4500
                                           Fax: (213) 486-0065
14                                         Email: jciardullo@foley.com
15
                                           ROBERT T. STEWART, ESQ.
16                                         Nevada Bar No. 13770
                                           STEWART RAY NELSON, ESQ. (*pro hac vice*)
17                                             Utah Bar No. 17286
                                           HANNAH L. ANDREWS, ESQ. (*pro hac vice*)
18                                             Utah Bar No. 18157
                                           **FOLEY & LARDNER LLP**
19                                         95 South State Street, Suite 2500
                                           Salt Lake City, Utah 84111
20                                         Tel.: (801) 401-8900
21
                                           Email: rtstewart@foley.com
22                                                 srnelson@foley.com
                                                   handrews@foley.com
23

24

25

26

27

28