Oliver J. Pancheri, Esq. (Nevada Bar No. 7476)
Jessica M. Lujan, Esq. (Nevada Bar No. 14913)
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3400
Fax: (702) 938-8648
Email: opancheri@spencerfane.com
        jlujan@spencerfane.com


Robert T. Stewart, Esq. (Nevada Bar No. 13770)
Stewart Ray Nelson, Esq. (*pro hac vice*)
Hannah L. Andrews, Esq. (*pro hac vice*)
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, Utah 84111
Tel.: (801) 401-8900
Email: rtstewart@foley.com
        srnelson@foley.com
        handrews@foley.com

*Attorneys for Plaintiffs*

Jean-Paul Ciardullo, Esq. (*pro hac vice*)
 California Bar No. 284170
**FOLEY & LARDNER LLP**
555 Flower Street, Suite 3300
Los Angeles, California 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
Email: jciardullo@foley.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PARADISE ENTERTAINMENT LIMITED, a Bermuda corporation; LT GAME, INC., a Nevada corporation; and LT GAME LIMITED, a British Virgin Islands Corporation,<br><br>*Plaintiffs, Counterdefendants*,<br><br>vs.<br><br>EMPIRE TECHNOLOGICAL GROUP LIMITED, a Nevada corporation; GAMING SPECIALIZED LOGISTICS LLC, a Nevada limited liability company; LINYI FENG, an individual; ROY KELCEY ALLISON, an individual; DARYN KIELY, an individual; and YI ZHAO, and individual,<br><br>*Defendants, Counterclaimants*. | Case No. 2:24-cv-00428-JCM-BNW<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF LEWIS ROCA RECORDS**<br><br><br>[ORAL ARGUMENT REQUESTED] |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    **<u>INTRODUCTION</u>**

Plaintiffs Paradise Entertainment Limited ("Paradise"), LT Game, Inc. ("LT Game"), and LT Game Limited ("LTG Limited") (collectively, "Plaintiffs") submit this Reply to Defendants' Opposition (ECF No. 90, "Opposition") to Plaintiffs' Renewed Motion to Compel certain Lewis Roca records withheld under claim of privilege (ECF No. 87, "Motion").

Defendants' Opposition relies on the false premise that LT Game and Empire were unrelated, separate businesses. In fact, this case presents an extreme example of an intertwined dual-company operation wherein LT Game and Empire not only shared the same offices and employees but literally had the same President, Mr. Feng. Defendants do not ultimately dispute these key facts, nor do they dispute that they engaged in various acts of misconduct against Plaintiffs, all while Plaintiffs were paying hundreds of thousands of dollars for Empire's legal bills. Because Mr. Feng and his co-Defendants were fiduciaries of LT Game, they would have been ethically barred from concealing secrets from LT Game affecting its business. That Lewis Roca was unaware that they were being used to advance a fraud is apparent from the simple fact that they did not withdraw as counsel and apparently were satisfied that Mr. Feng could unilaterally and simultaneously waive conflicts on behalf of both LT Game and Empire. Because this case presents a scenario of company managers using the company's attorneys, the *Bevill* case presents the appropriate analysis framework. However, Plaintiffs have also presented a sufficient case in the alternative for application of a joint privilege under *Hall*.

Defendants' privilege waiver is a problem of their own making, directly tied to the misconduct committed against Plaintiffs. If Defendants wanted to maintain a separate privilege as against LT Game, they should have resigned as fiduciary managers of LT Game and founded a separate company instead of deliberately leveraging Plaintiffs' offices, personnel, and money while remaining LT Game's fiduciaries. Having leveraged LT Game's own legal counsel – often using LT Game's own money to pay the legal bill – for the purpose of advancing a fraud against LT Game, Defendants cannot now maintain that those communications should be withheld from Plaintiffs. To the extent the Court has any doubt as to whether there is sufficient evidence to grant the Motion outright, an *in camera* review is highly justified in light of the potentially case-dispositive nature of the records at issue and the millions of dollars at stake in this case.

II.    **ARGUMENT**

A.    **Defendants Do Not Dispute the Key Facts in Plaintiffs' Declarations That Support Granting the Motion.**

The key factual assertions of the affidavits of Messrs. Leo Chan and Marcos Medero have not been rebutted by Defendants, including:

- Messrs. Feng, Allison, and Kiely were managers of LT Game until their respective resignations in 2022 and 2023 and owed fiduciary duties to LT Game during that time. (ECF No. 55-2, at 29, ¶¶ 15-16).

- Empire and LT Game operated under the same roof with the same employees working for both companies simultaneously, with payrolled LT Game employees also working for Empire. (ECF No. 55-2, at 92, ¶ 4-5).

- LT Game had engaged Lewis Roca to advise on a wide range of issues, including those affecting Empire, and Plaintiffs paid for a significant amount of Lewis Roca's legal fees in securing gaming licenses for Empire. (ECF No. 55-2, at 26-28, ¶¶ 5-7).

- Plaintiffs invested millions of dollars towards the combined LT Game-Empire operation. (ECF No. 55-2, at 27, ¶ 10).

- Defendants engaged in various misconduct in violation of their fiduciary duties to LT Game, including misappropriating money from LT Game, concealing important gaming industry business transactions from LT Game, misappropriating valuable gaming equipment from LT Game, defrauding Plaintiffs into selling equipment to Mr. Feng's undisclosed sister company Solution Gaming, and executing various agreements that affected LT Game's rights without Plaintiffs' knowledge. (ECF No. 55-2, at 30, ¶ 17).

- Plaintiffs themselves believed that Plaintiffs and Empire had a shared legal relationship with Lewis Roca, and among the many reasons they had that belief was that Mr. Feng himself presented it that way to them. (ECF No. 55-2, at 26-27, ¶ 7).

Plaintiffs disagree with Defendants' contract interpretation but do not find this issue necessary to resolve the instant motion.

B.    **Defendants' Arguments Collapse Under the Reality That LT Game and Empire**

PLAINTIFFS' REPLY
Case 2:24-cv-00428

**Were Overlapping Operations with Managers Who Had Overlapping Duties.**

Defendants' Opposition asks the Court to ignore that, during the relevant time period, LT Game and Empire were operated under a single roof with overlapping employees and a shared set of managers – Messrs. Feng, Allison, and Kiely – who owed fiduciary duties to LT Game. These were not, as Defendants spin it, unrelated companies doing completely different things. If one keeps these facts in mind, many of Defendants' key arguments become untenable. For example, Defendants argue that they and Lewis Roca expected to maintain confidentiality between LT Game and Empire (ECF No. 90, at 15) and "had attorney-client privileged communications with Empire related to the work that was not shared with other parties" (ECF No. 90-9,[1] ¶9), but this makes little sense: LT Game and Empire were comprised of the same people, and Lewis Roca was speaking with Mr. Feng knowing him to be the President and fiduciary of LT Game. One might look at the situation differently if Mr. Feng had approached Lewis Roca for advice completely unrelated to LT Game (like opening a new restaurant), but it is apparent that the businesses of LT Game and Empire were so intertwined that the individual Defendants' fiduciary duties to LT Game would have precluded them from keeping secrets affecting LT Game's business. Similarly, Defendants argue that privilege is not destroyed in disseminating emails to Empire employees who "simply [hold] a second job," but that argument fails where Defendants knew that their employees' "second job" was not with some unrelated company but rather with LT Game itself – the very company that they claim to have intended to keep secrets from and that was also a co-client with Lewis Roca.

It is clear that Lewis Roca considered Mr. Feng, in his individual capacity, to be their de facto client and had little or no understanding that he was withholding important information to the detriment of the Paradise management team that was ultimately in charge of LT Game. This is evidenced by Mr. Feng being the recipient and signor on every Lewis Roca engagement letter to LT Game and Empire and otherwise being Lewis Roca's primary point of contact for both companies. Because Lewis Roca would have known that Mr. Feng (and Messrs. Kiely and Allison) owed fiduciary duties to LT Game, they necessarily could not have expected to keep secrets from LT Game when speaking with LT Game's own managers concerning matters affecting LT Game's business. While this may have changed after these

---

[1] Plaintiffs note that there is no foundation provided in attorney Kenneth Rossman's declaration as to how he would know about various past facts, such as what other Lewis Roca attorneys believed or did not believe about the representation in the pre-2023 timeframe.

PLAINTIFFS' REPLY
Case 2:24-cv-00428

1    managers resigned from LT Game, Plaintiffs' Motion is limited to seeking communications that include

2    the individual Defendants at a time when they were still managers and fiduciaries of LT Game.

3        Defendants try to argue that Empire had its own separate engagement agreements with Lewis

4    Roca, but the record does not support this. Looking at Mr. Feng's Exhibit B-6, while it appears that there

5    was an attempt by 2023 to clean things up with new formal engagement agreements, the pre-2023

6    documents going back to 2017 are not truly engagement agreements but rather mere addendums to a pre-

7    existing master engagement agreement. Each of these addendums note Mr. Feng's LT Game/Paradise

8    email address (Plaintiffs' "@hk1180.com" email domain) and the shared physical address of LT

9    Game/Empire (6295 Harrison Drive, #29, Las Vegas, NV 89118). Defendants contend that Empire (then

10   called "LT Game International") originally engaged Lewis Roca in 2013 (ECF No. 90-2, ℙ 12) but have

11   produced no separate agreement evidencing this, and have failed to explain why. The earliest true

12   engagement agreement that Plaintiffs have found is a December 2011 agreement directed to LT Game

13   Ltd. that likewise notes Mr. Feng's LT Game/Paradise email address and the physical address of Paradise

14   in Hong Kong. (ECF No. 55-2, at 33-37). What Defendants are calling "Empire engagement agreements"

15   thereafter appear to be no more than addendums to this original LT Game Ltd. agreement, consisting of a

16   few sentences that simply memorialize that Lewis Roca is "opening a new matter" for Mr. Feng. In this

17   context, it hardly matters whether Empire and LT Game executed a joint engagement agreement: it is clear

18   from the timeline that they were being treated as two sides of the same coin, both under Mr. Feng's control.

19   Whether Lewis Roca observed a routine formality of essentially assigning a different billing code for

20   Empire tasks does not alter the underlying relationship between the parties.

21       Defendants also point to the fact that Mr. Feng executed conflict waivers as between LT Game

22   and Empire, but there are several problems with this. First, Defendants claim that multiple waivers were

23   executed but only attach one example regarding a loan between the companies in 2018. Since Defendants

24   bear the burden on the privilege claim, they cannot rely on undisclosed records. Second, Mr. Feng

25   executed the same waiver in his capacity as both the manager of LT Game and Empire simultaneously,

26   rendering the exercise a meaningless, circular gesture. If there were truly some separate "LT Game" entity

27   involved in the transaction whose interests were being guarded as against Empire, there should have been

28   a separate signature from some other manager of LT Game besides Mr. Feng. The fact that Mr. Feng was

Case 2:24-cv-00428-JCM-BNW   Document 98   Filed 06/27/25   Page 6 of 11

1 on both sides of the same conflict waiver only demonstrates that Lewis Roca did not understand the true

2 conflict of interest that was happening in view of Defendants' deception of Plaintiffs. Defendants cannot

3 hide behind purported secret conflict waivers executed by Mr. Feng unilaterally for both companies in

4 service of a fraud.

**C.    *Bevill* Is the Appropriate Test to Apply, and Plaintiffs Have Satisfied It.**

6 Defendants' reliance on *Hall* is misplaced because the parties in that case – Hall CA-NC, LLC and

7 Ladera Development, LLC – were nothing more than two unrelated companies without any common

8 management or employees. *Hall CA-NV, Ltd. Liab. Co. v. Ladera Dev., Ltd. Liab. Co*., No. 3:18-cv-

9 00124-RCJ-WGC, 2019 U.S. Dist. LEXIS 183967, at \*6 (D. Nev. Oct. 24, 2019). For that matter, all of

10 Defendants' cited cases in their Opposition can be distinguished on these same grounds. *Bevill* is a better

11 framework for the present analysis because it addresses the situation where a company's managers (here,

12 the individual Defendants as managers of LT Game) consulted with the company's own lawyer (here,

13 Lewis Roca). Defendants argue that *Bevill* is distinguishable because the individual Defendants were

14 consulting with Lewis Roca to seek legal advice for Empire as opposed to themselves individually, but

15 *Bevill* does not draw any distinction about whether the manager sought advice for a company. What is

16 relevant is that the President of LT Game – Mr. Feng – was seeking advice from LT Game's lawyer

17 affecting LT Game's business.

18 In Section IV.A.2 of their Opposition, Defendants argue that they should prevail even under *Bevill*,

19 but their arguments fail.

20 As to the second *Bevill* factor, the burden is on Defendants to have shown that it was clear at the

21 time that legal advice was being offered that it was not being sought – even in part – in their capacity as

22 managers of LT Game. (ECF No. 87, at 13.) Defendants' declarations only provide conclusory *ex post*

23 statements about their supposed subjective beliefs, which are insufficient to meet the burden. (*Id*.,

24 collecting legal authority.) Defendants point to the fact that Empire had separate agreements with Lewis

25 Roca, but as discussed in Section II.B, *supra*, these agreements do not support the conclusions that

26 Defendants advance them for. As further discussed in Section II.B, it is apparent that Lewis Roca deemed

27 Mr. Feng to be their de facto client and were necessarily aware that in speaking to him, they were speaking

28 to a manager of LT Game with fiduciary duties to LT Game such that there could not have been any

PLAINTIFFS' REPLY
Case 2:24-cv-00428

1   expectation of confidentiality as to matters that would have affected LT Game's business.

2      As to the third *Bevill* factor, as discussed in the Motion and in Section II.B, the record is consistent

3   with Lewis Roca lacking an understanding as to the fraud that Defendants were committing on Plaintiffs,

4   and thus any purported approval by Lewis Roca of the representation would not have been an informed

5   one. Certainly Defendants' Opposition contains no sworn statement to the contrary. The very fact that

6   Lewis Roca apparently thought it was sufficient to have Mr. Feng waive conflicts as to LT Game and

7   Empire simultaneously without involving an independent representative of LT Game supports the

8   conclusion that Lewis Roca simply did not know what was going on. More to the point, if Lewis Roca

9   had truly perceived what was happening they hopefully would have withdrawn from the representation

10  rather than actively aid one client to usurp the other.

11     As to the fourth *Bevill* factor, because there is no evidence that Lewis Roca understood any need

12  to maintain secrecy as against LT Game, and because LT Game's own fiduciaries and employees were

13  being included in communications, it is not plausible that confidentiality was intended as against LT

14  Game. This is not a situation in which the party claiming privilege was an unrelated company: LT Game

15  and Empire overlapped to such a degree that any attempt to segregate information would have first

16  required actual segregation of the companies themselves.

17     As to the fifth *Bevill* factor, Defendants fail to meaningfully respond to the obvious proposition

18  that Lewis Roca could not have been providing advice for Empire's benefit within the gaming industry

19  without it necessarily "concern[ing] matters within [] the general affairs of" LT Game, which was not only

20  involved in that same industry, but was indeed operating under the very same roof as Empire with the very

21  same personnel. *United States v. Graf*, 610 F.3d 1148, 1159-60 (9th Cir. 2010). As the party claiming

22  privilege, Defendants had the burden on this issue yet failed to adduce evidence or argument that would

23  demonstrate how the legal advice being given to Empire did not necessarily implicate LT Game's

24  business. Indeed, even as they dispute whether Empire was an exclusive distributor, Defendants concede

25  that Empire was acting as LT Game's sole distributor and accepting hundreds of thousands of dollars of

26  LT Game's money to pay Lewis Roca's legal fees for Empire's gaming licenses.[2] There is no advice that

27

28  [2] Defendants cite caselaw for the proposition that paying for legal fees alone does not entitle the payor to access to privileged communications. Plaintiffs do not rest their Motion exclusively on the fact that they paid large sums to Lewis Roca on Empire's behalf, but it is obviously a relevant factor in the present

1   Lewis Roca could have given Empire about how to advance in the gaming industry without that advice

2   necessarily affecting LT Game's ability to advance in the gaming industry.

3          **D.    Alternatively, Plaintiffs Have Satisfied the Test for Joint Privilege Under *Hall*.**

4          While Plaintiffs contend that *Bevill* provides the appropriate legal test, to the extent that the Court

5   disagrees, then Plaintiffs alternatively argued in their Motion that they should prevail on a theory of joint

6   client privilege, relying on *Hall*. Defendants' various arguments about the supposed separate nature of

7   Empire and LT Game are rebutted *supra*: the record is clear that these were overlapping entities that Lewis

8   Roca would have perceived as two arms of Mr. Feng's joint operation. In consideration of the multitude

9   of factors in *Hall* to assess whether a joint representation existed, several stand out, including "any

10  fiduciary or other special obligations that existed between them," "the extent and character of any interests

11  the two alleged joint parties may have had in common, and the relationship between common interests

12  and communications with the alleged joint counsel," and "actual and potential conflicts of interest between

13  the two parties, especially as they might relate to matters with respect to which there appeared to be some

14  commonality of interest between the parties." *Hall*, 2019 U.S. Dist. LEXIS 183967, at *31-33. All of these

15  factors, and others, support the conclusion that LT Game and Empire comprised a joint engagement during

16  the relevant time period.

17         **E.    Communications with Known LT Game Employees Destroy Privilege.**

18         Defendants argue that "it cannot be the case that employees with second jobs automatically destroy

19  corporate attorney-client privilege," (Opp., p.17) but this is not Plaintiffs' position. Rather, where the

20  employees in question were known to be working for the very same company that Defendants now contend

21  it was critical to keep secrets from, and which company shared the same legal counsel, it is inappropriate

22  for Defendants to claim privilege over communications shared with those employees. This is a problem

23  of Defendants' own creation: they could have hired employees who worked exclusively for Empire but

24  instead chose to take advantage of the talents of people on LT Game's payroll. Having taken this shortcut,

25  Defendants cannot now maintain privilege over communications between LT Game's own employees and

26  LT Game's own lawyers on matters that necessarily had implications for LT Game's own business.

27  ───────────────

28  analysis, particularly as it demonstrates Plaintiffs' understanding of the relationship among the parties and
Lewis Roca, and also as it demonstrates why Defendants should have expected Plaintiffs to believe they
were entitled to relevant attorney-client communications.

1  Defendants have supplied no evidence that these employees were aware of Defendants' schemes and knew

2  to not share information with LT Game, so Defendants have failed to meet their burden to show that the

3  employees could have been expected to maintain an informational wall. This scenario is essentially the

4  same as when privilege is destroyed by sending emails to the moving party company's email accounts.

5  *See Flannery Assocs., LLC v. Barnes Fam. Ranch Assocs., LLC*, No. 2:23-CV-0927 TLN AC, 2024 WL

6  5111885, at *4 (E.D. Cal. Dec. 13, 2024).

7      **F.      Alternatively, *In Camera* Review Is Appropriate to Prevent a Fraud from Being**

8          **Perpetrated.**

9  Without actually refuting any of Plaintiffs' evidence that Defendants were engaged in a fraudulent

10 scheme against Plaintiffs, Defendants simply dismiss the evidence as insufficient to make out a threshold

11 showing. However, Defendants' failure to rebut Plaintiffs' sworn allegations of fact says more than their

12 argument of counsel. Plaintiffs have supplied ample evidence via their Motion and supporting declarations

13 to demonstrate that Defendants were improperly and covertly leveraging Plaintiffs' money and personnel

14 to build up a competing business to supplant LT Game, which facts stand as independently wrongful

15 regardless of whether one accepts that Empire was intended to be an exclusive distributor or not.

16 Defendants further argue that Plaintiffs have not explained how Lewis Roca was involved in the fraudulent

17 scheme, but this is simply not so. Plaintiffs have explained that Lewis Roca was advising Defendants in

18 every aspect of how to advance in the gaming industry, and that advice necessarily was to the detriment

19 of LT Game, which Empire was supplanting. As to gaming licenses, Plaintiffs have clearly explained that

20 they paid hundreds of thousands of dollars for Lewis Roca to help Empire obtain licensing on the belief

21 that such licenses were for LT Game's benefit, not aware they were being defrauded. With respect to the

22 October 2021 Agreements, Plaintiffs have explained that these were prepared by Lewis Roca at Mr. Feng's

23 direction as part of a fraudulent scheme to make it appear on paper that Empire and LT Game were separate

24 companies so that Empire could get licensed in Nevada while cutting LT Game out. Any other kind of

25 legal advice that implicated both companies – whether relating to how to handle employment matters and

26 payroll as between LT Game and Empire, or how to explain away LT Game to the Nevada Gaming Control

27 Board – would have been in furtherance of the fraud.

28 Defendants complain that their privilege log is "too big to fail," as if having a large number of

1  communications in furtherance of a multi-year fraudulent scheme rendered them immune to investigation.

2  However, any ambiguity around which communications on the privilege log to review is Defendants' own

3  doing in having made its entries too vague to be useful. Defendants had the benefit of Plaintiffs' original

4  motion to compel and knew that the log entries would be scrutinized yet still employed generalized content

5  in their entries. In any event, if an *in camera* review were authorized, the parties could supply the Court

6  with a word-searchable review platform and arrive at a smaller initial batch for the Court to review in

7  order to assess whether further review is warranted.[3]

8       Ultimately, Defendants do not refute Plaintiffs' basic premise that "it cannot be the case that LT

9  Game's own managers can have used the company's own lawyers to perpetrate a fraud on Plaintiffs and

10  now argue that Plaintiffs cannot see those communications." (Motion, p.14.) The question then reduces

11  simply to: was the advice Defendants obtained from Lewis Roca in furtherance of the fraud? Plaintiffs

12  contend the answer is already clear on the existing record, but an *in camera* review would allow the Court

13  to confirm for itself. Given that these records may constitute case dispositive evidence in a lawsuit where

14  Plaintiffs claim to have lost millions of dollars, an *in camera* review is in the interests of justice.

15  **III.    CONCLUSION**

16       Plaintiffs request that the Court grant their Motion to Compel, or conduct an *in camera* review.

17
18       DATED:  June 27, 2025                    Respectfully submitted,

19
20                                               */s/ Jessica M. Lujan*
                                                  OLIVER J. PANCHERI, ESQ.
                                                  Nevada Bar No. 7476
21                                               JESSICA M. LUJAN, ESQ.
                                                  Nevada Bar No. 14913
22                                               **SPENCER FANE LLP**
                                                  300 South Fourth Street, Suite 1600
23                                               Las Vegas, Nevada 89101
                                                  Telephone: (702) 408-3400
24                                               Fax: (702) 938-8648
25                                               Email: opancheri@spencerfane.com

26

27  _____
    [3] Plaintiffs properly seek communications with attorneys other than Lewis Roca to the extent they were
28  in furtherance of Defendants' fraud against Plaintiffs at a time when Defendants were fiduciaries of LT
    Game and seeking advice in that capacity. That Plaintiffs were not aware of these other attorneys'
    existence and the fact that Defendants' privilege log descriptions of them are vague should not result in
    Plaintiffs being barred access.

jlujan@spencerfane.com

JEAN-PAUL CIARDULLO, ESQ.  (*pro hac vice*)
California Bar No. 284170
**FOLEY & LARDNER LLP**
S555 Flower Street, Suite 3300
Los Angeles, California 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
Email: jciardullo@foley.com

ROBERT T. STEWART, ESQ.
Nevada Bar No. 13770
STEWART RAY NELSON, ESQ. (*pro hac vice*)
 Utah Bar No. 17286
HANNAH L. ANDREWS, ESQ. (*pro hac vice*)
 Utah Bar No. 18157
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, Utah 84111
Tel.: (801) 401-8900
Email: rtstewart@foley.com
        srnelson@foley.com
        handrews@foley.com