1
2
3
4                    UNITED STATES DISTRICT COURT
5                          DISTRICT OF NEVADA
6                                  * * *
7   PARADISE ENTERTAINMENT LIMITED,        Case No.2:24-CV-428  JCM (BNW)
    et al.,
8
                              Plaintiff(s),              ORDER
9
         v.
10
    EMPIRE TECHNOLOGICAL GROUP
11  LIMITED, et al.,
12                            Defendant(s).
13
14        Presently before the court is defendant Yi Zhao's motion to dismiss.  (ECF No. 77).
15  Plaintiffs Paradise Entertainment Limited, ("Paradise"), LT Game, Inc. ("LT Game"), and LT
16  Game Ltd. ("LTG Limited") (collectively "plaintiffs") filed a response (ECF No. 78), to which
17  defendant replied (ECF No. 81).
18
19  **I.    Background**
20        This is an action for state and federal claims of misappropriation of trade secrets, copyright
21  infringement, fraud, constructive fraud, conspiracy, racketeering, breach of fiduciary duty, aiding
22  and abetting, and breach of contract.  (ECF No. 69 ¶ 1).
23        Plaintiff Paradise is a global supplier of electronic gaming equipment and systems.
24  (*Id.* ¶ 2).  It was incorporated in Bermuda in 1996 and has been listed on the main board of the
25  stock exchange of Hong Kong Limited since 1997.  (*Id.*)  Plaintiff Paradise is the parent company
26  of plaintiffs LT Game and LTG Limited.  (*Id.* ¶ 2).  Plaintiff LT Game is a Nevada corporation
27  with its principal place of business in Nevada, and LT Game Limited is a British Virgin Islands
28

Corporation with its principal place of business in Macau, China. (*Id.* ¶¶ 3–4).

As a contender in the highly competitive electronic gaming equipment and systems business, plaintiffs explain that they have developed highly confidential and proprietary business information and trade secrets. (*Id.* ¶¶ 17–19).

In 2008, Dr. Jay Chun, controlling shareholder, executive and managing director, and chairman of plaintiff Paradise, hired his brother-in-law, Mr. Feng as the North American Representative of Paradise. (*Id.* ¶¶ 22–25). Mr. Feng became the president, secretary, and sole director of LT Game, and was placed in charge of Empire Technological Group in 2015. (*Id.* ¶¶ 27, 32). Plaintiffs claim that Empire was intended to be the long-term exclusive distributor for Paradise and its subsidiaries and supported it with this goal in mind. (*Id.* ¶ 35). However, plaintiffs allege that Mr. Feng induced other Paradise employees, including Ms. Zhao, to assist him with a scheme to transform Empire into a direct competitor of Paradise and its subsidiaries. (*Id.* at 38).

Defendant Zhao is a resident of Macau, China, where she has lived since 2007. (*Id.* ¶ 10; ECF No. 77 at 5). She began working for Paradise in 2007 and was promoted to chief operating officer in 2012. (ECF No. 69 ¶ 69). Ms. Zhao resigned from her position at Paradise in October 2023 and began working for Empire as its senior vice president of international operations about one month later. (*Id.* ¶ 99). According to Ms. Zhao, she is "responsible for Empire's operations in Macau, China." (ECF No. 77-1 ¶ 49).

. . .

. . .

. . .

. . .

1
2
3
4
5
6

At all relevant times, she has maintained a physical office in Macau, China; she has never had an office in the United States.  (*Id.* ¶¶ 20–22, 40–42, 50–52).  Ms. Zhao states that she visited Las Vegas for business purposes on four occasions: twice while she worked for Paradise, and twice as an employee of Empire.  (*Id.* ¶¶ 40–42, 54).  She denies any wrongful conduct during such trips.  (*Id.* ¶ 44).

7
8
9
10
11
12

Plaintiffs filed a complaint against Empire, Mr. Feng, and the other defendants in this case on March 1, 2024.  (ECF No. 1).  They later filed an amended complaint, adding Ms. Zhao as a defendant in the action.  (ECF No. 69).  Defendant Zhao contests this court's personal jurisdiction over her and accordingly moves this court to dismiss her from this action under Federal Rule of Civil Procedure 12(b)(2).  (ECF No. 77).

13

**II.    Legal Standard**

14
15
16
17
18
19
20

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  To avoid dismissal under Rule 12(b)(2), a plaintiff bears the burden of demonstrating that its allegations establish a *prima facie* case for personal jurisdiction.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Allegations in the complaint must be taken as true, and factual disputes should be construed in the plaintiff's favor.  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

21
22
23
24
25
26
27
28

Personal jurisdiction is a two-prong analysis.  First, an assertion of personal jurisdiction must comport with due process.  *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012).  Next, "[w]hen no federal statute governs personal jurisdiction, the district court applies the law of the forum state."  *Boschetto*, 539 F.3d at 1015; *see also Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  However, Nevada's "long-arm" statute applies to the full extent permitted by the due process clause, so the inquiry is the same, and the

court need only address federal due process standards.  *See Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 122 Nev. 509, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065); *see also Boschetto*, 539 F.3d at 1015.

Two categories of personal jurisdiction exist: (1) general jurisdiction and (2) specific jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-15, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *see also LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

**III.    Discussion**

A.  General Jurisdiction

A court may assert general jurisdiction over a defendant when the plaintiff shows that "the defendant has sufficient contacts that approximate physical presence."  *In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1131 (D. Nev. 2009) (internal quotation marks and citations omitted).  In other words, the defendant's affiliations with the forum state must be so "continuous and systematic" so as to render the defendant essentially "at home" in that forum.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014).  General jurisdiction is appropriate even if the defendant's continuous and systematic ties to the forum state are unrelated to the litigation.  *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414–16).

Plaintiffs fail to establish that this court has general jurisdiction over Ms. Zhao.[1]  *See Boschetto*, 539 F.3d at 1015.  Ms. Zhao is a citizen of Macau, works from Macau, and has visited Nevada only on a few occasions for business purposes for approximately a week each time.  (ECF No. 67 ¶ 10; ECF No. 77 at 5; ECF No. 77-1 ¶¶ 20–22, 24, 40–42, 50–52, 54).  Her presence and

---

[1] Plaintiffs do not discuss general jurisdiction in their response.

connection to Nevada are not so continuous and systematic to render her "at home" there.  *See Daimler*, 571 U.S. at 137.

B.  Specific Jurisdiction

The Ninth Circuit has established a three-prong test for analyzing an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Plaintiffs argue that this court has specific jurisdiction over the defendant because Ms. Zhao "has a contract with Empire, a Nevada corporation, to work as an employee of Empire, has traveled to Nevada to do business on behalf of Empire, and receives direction from and works closely with individuals located in and operating out of Nevada[.]"  (ECF No. 69 ¶ 12).

*1.  Purposeful direction/purposeful availment*

Under the first prong of the Ninth Circuit's specific jurisdiction test, plaintiffs must establish that Ms. Zhao either purposefully availed herself of the privilege of conducting activities in Nevada, or purposefully directed her activities toward Nevada.  Purposeful availment and purposeful direction are two distinct concepts.  Purposeful availment is most often used in suits sounding in contract, while purposeful direction is most often used in suits sounding in tort.  *Schwarzenegger*, 374 F.3d at 802.  Plaintiffs' claims largely sound in tort, with nine of plaintiffs' claims sounding in tort and only one sounding in contract.  (*See* ECF No. 69 at 33–53).

### i.   Purposeful direction

Demonstrating purposeful direction usually requires evidence of the defendant's actions outside the forum state that are directed at the forum.  *Schwarzenegger*, 374 F.3d at 802.  Courts in the Ninth Circuit apply the *Calder* effects test, which requires that the defendant have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.  *Id.* at 805.  The defendant need not have physical contact with the forum state.  *Id.* at 802 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Although the parties dispute a number of facts surrounding the nature of Ms. Zhao's departure from Paradise, plaintiffs sufficiently allege that Ms. Zhao acted with intention.  In the amended complaint, plaintiffs claim that Ms. Zhao performed substantive work for Empire "in furtherance of Mr. Feng's plan to supplant [plaintiffs] at a time when" Ms. Zhao was still working for plaintiffs.  (ECF No. 69 ¶ 111).

The following facts are uncontroverted: Ms. Zhao had access to confidential or trade secret information as part of her job at plaintiff Paradise.  (ECF No. 81-2 ¶ 29).  Ms. Zhao had an oral contract with Paradise during her tenure there.  (ECF No. 69 ¶ 305).  She began working for Empire only two months after resigning in September 2023.  (*Id.* ¶¶ 97–99).  The data on Ms. Zhao's hard drive was removed or erased, leading plaintiffs to believe Ms. Zhao had done so with ill intention.  (*See id.* ¶ 100).  Ms. Zhao disputes altering the drive and claims she handed in hard copies of her files.  (ECF No. 81-2 ¶ 15).

Ms. Zhao refutes attempting to be part of Empire management while at Paradise, but there are other ways that she could contribute substantively to Empire's alleged plans to break off and become a competitor of Paradise Group.  (*See* ECF No. 77-1 ¶ 57; ECF No. 81-2 ¶¶ 22, 31).  She

also disputes making promises regarding her future employment, contractual or otherwise.  (ECF No. 81-2 ¶¶ 25, 26).  Even if this is true, Ms. Zhao should have known that her swift re-employment by a competitor was poor form and might look suspicious in such a highly competitive industry. After considering the uncontroverted facts, and construing the disputed facts in favor of plaintiffs, the court finds that plaintiffs satisfied this element.  *See Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018).

Plaintiffs do not allege sufficient facts to satisfy the second element of the Calder effects test, which focuses on Ms. Zhao's contacts with Nevada.  *See Schwarzenegger*, 374 F.3d at 802. The amended complaint does not allege that Ms. Zhao expressly aimed her conduct at Nevada. The allegations against her could easily apply to her duties in Macau.

In fact, the only direction on the face of the complaint expressly tied to her conduct is Macau.  (ECF No. 69 ¶¶ 151, 156).  Plaintiffs allege that Ms. Zhao failed to report her colleague Mr. Wu's concern that "Mr. Feng may be using Empire to develop competing products…in Macau."  (*Id.* ¶ 151; *see generally* ECF No. 79-4).  Furthermore, plaintiffs express their concern that Ms. Zhao "failed to disclose her involvement in Mr. Feng's plans to compete…in the Macau market" and that Empire set up a branch "in Macau."[2]  (ECF No. 69 ¶ 156).  There is no mention of Nevada.

In their response to the motion to dismiss, plaintiffs argue that Ms. Zhao's conduct would nevertheless amount to express aiming because she "was a director of LT Game, [which] is a Nevada corporation."  (ECF No. 78 at 15).  But plaintiffs do not allege in their complaint that Ms. Zhao was a director of LT Game.  They state, and Ms. Zhao agrees, that she was the chief operating

---

[2] Again, in Mr. Leo Chan's declaration, he specifically indicates that Ms. Zhao was "poised to manage Empire's expansion into Macau to compete directly with Paradise there" and does not allege any particular activity directed at Nevada by Ms. Zhao.  (ECF No. 79-2 ¶ 12).

officer of LTG Limited and Paradise Group, neither of which is a Nevada corporation.  (ECF No. 69 ¶ 69).

Although Mr. Chan's declaration clarifies that Ms. Zhao was assigned the director role in March of 2022 after Mr. Feng's departure, plaintiffs do not explain how this role changed Ms. Zhao's substantive duties, if at all.  (ECF No. 79-2 ¶ 8).  To the contrary, Ms. Zhao declares that she did not have authority to make business decisions in this role and was not involved in day-to-day operations of LT Game.  (ECF No. 81-2 ¶¶ 6, 10).  Furthermore, plaintiffs submit no specific acts that Ms. Zhao supposedly committed as director of LT Game that would have or could have caused the company harm in Nevada.

The final element of the *Calder* effects test requires that Ms. Zhao knew harm was likely to result in Nevada from her conduct.  *See Schwarzenegger*, 374 F.3d at 802.  Plaintiffs argue that this element is satisfied because Ms. Zhao knew that LT Game is in Las Vegas.  (ECF No. 78 at 15).  This is unpersuasive.  LT Game cannot be the only link between Ms. Zhao and Nevada—Ms. Zhao's relationship to the state must arise out of the contacts that she created with the state.  *See Walden v. Fiore*, 571 U.S. 277, 287–88 (2014).  Because plaintiffs fail to plead facts alleging that Ms. Zhao's conduct was directed at Nevada, *see supra*, it is unlikely that she would know harm would likely result there.

### ii. Purposeful availment

Purposeful availment requires the plaintiff to provide evidence of defendant's actions in the forum, e.g., executing or performing a contract; "by taking such actions, a defendant 'purposefully avails [herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L.Ed. 2d 1283, 78 S. Ct. 1228 (1958)).

Plaintiffs allege one contract claim—breach of contract—against Ms. Zhao, which stems from the same set of facts as the tort-based claims.  Plaintiffs do not point to any conduct by defendant Zhao in Nevada related to the purposeful availment analysis.  (*See* ECF No. 78 at 10).  Although courts generally "must have in personam jurisdiction with respect to each claim," the Ninth Circuit also recognizes the theory of pendent personal jurisdiction.  *Data Disc, Inc. v. Sys. Tech. Assocs.*, Inc. 557 F.2d 1280, 1289 (9th Cir. 1977); *see Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).  Under this doctrine,

> a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction.

*Action Embroidery Corp.*, 368 F.3d at 1180.

The court reserves judgment on this issue.  As provided later in this order, plaintiffs will be given an opportunity to amend the complaint.

### 2.  Arises out of or relates to

Under the second prong of the specific jurisdiction test, plaintiffs must establish that their claims "arise out of or relate to the defendant's contacts with the forum."  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021).  The Ninth Circuit applies a "but for" test to determine whether a particular claim arises out of forum-related activities and therefore satisfies this requirement for specific jurisdiction.  *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

In their response to the motion to dismiss, plaintiffs claim that this prong is satisfied because all the claims arise from Ms. Zhao's "direct participation in defendants' conspiracy to undermine LT Game in Las Vegas," "aiding and abetting of co-conspirators," and her "breach of fiduciary duty to…LT Game…of which she was the sole director."  (ECF No. 78 at 16–17).  Plaintiffs fail to establish that there is a direct nexus between Ms. Zhao's contacts with the forum

and the causes of action against her because they fail to establish what contacts she had with the forum that give rise to this action. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) (internal quotation marks omitted). As previously mentioned, the complaint does not specifically set forth what actions Ms. Zhao took as director of LT Games or what actions were directed at Nevada (rather than in her capacity as an executive of LTG Limited and Paradise Group).

        *3.   Reasonableness*

       Plaintiffs fail the first two elements of the specific jurisdiction test; accordingly, the court does not have personal jurisdiction over the plaintiffs. Because it is possible for plaintiffs to cure the underlying deficiencies in those claims, the court considers the third prong of the test to determine whether it would be futile to grant leave to amend.

       At the final stage of the test for specific jurisdiction, the burden is on the defendant to present a compelling case that exercising jurisdiction would be unreasonable. *Burger King,* 471 U.S. at 477. The court considers the following factors in making this determination: (1) the extent of a defendant's purposeful availment (or direction); (2) the burden on defendant in appearing in the forum; (3) conflicts between the forum state and defendant's home state; (4) the forum's interest in the dispute; (5) judicial efficiency; (6) the plaintiff's interest in the forum; and (7) the existence of an alternate forum. *Id.*; *see Harris Rutsky & Co. Ins. Services v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003).

       The court has already addressed defendant's purposeful direction. Plaintiffs fail to specify what conduct of hers, if any, was directed at Nevada.

       Haling Ms. Zhao into court will require her physical presence only in the event that this case goes to trial. Plaintiffs indicate that they are willing to take Ms. Zhao's deposition over Zoom.

Beyond complying with her duties as a witness-defendant, there appears to be little else for her to do, as plaintiffs expect that Empire will handle most discovery tasks.  The greatest conceivable burden appears to be travel, which will occur only in the event of trial.  Perhaps Ms. Zhao will have to pay $7,500 in fees, plus room and board.  But what is the alternative?  Is it requiring Mr. Feng, Mr. Allison, and Mr. Kiely, residents of Nevada, to travel to Macau, at greater cumulative cost?  Ms. Zhao does not explain.  This factor favors plaintiffs.  *See Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (finding that the inconvenience must be "so great as to constitute a deprivation of due process").

There do not appear to be any legal conflicts between resolving this matter in Nevada versus Macau.  Nevada has a particular interest in the resolution of trade secret and related state claims as to businesses located within the state.  *See Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996).

The factors of judicial efficiency and plaintiffs' convenience favor the plaintiffs.  Plaintiffs are also interested in resolving these claims for relief in this forum, given that they have invested over a years' worth of time and money into this case.  While plaintiffs have indicated an interest in pursuing legal action in foreign jurisdictions, it is not apparent what for, what claims, or what conduct, and whether plaintiffs would be afforded the same or similar relief as against Ms. Zhao.  Naturally, with the restarting of the case in another jurisdiction, justice would be delayed.

On balance the factors weigh in favor of the plaintiffs, or could be reinforced through an appropriately amended complaint, *see infra*.

B.  Co-conspirator Jurisdiction

In the alternative, plaintiffs ask the court to adopt a co-conspirator theory of personal jurisdiction.  The Ninth Circuit has not expressly adopted this theory of jurisdiction.  To the extent

that the theory is viable, it is limited to specific jurisdiction.  *See In re Western States Wholesale Natural Gas Litig.*, 605 F. Supp. 2d. 1118, 1139 (D. Nev. 2009).

A plaintiff "must establish that the defendant purposefully availed himself of the forum." *Id.* at 1139–40.  An allegation that the defendant "caused or contributed to an effect in the forum state, by itself, is insufficient[.]"  *Id.* at 1140.  Relevant here is that the defendant, not her co-conspirators, must choose to direct her activities at the forum.  *See id.*  A co-conspirator's activity in the forum cannot constitute purposeful direction at the forum by the foreign defendant.  *Id.*

Essentially, plaintiffs rest their argument for co-conspiracy jurisdiction on the allegation that her co-conspirators purposefully directed conduct to Nevada.  Plaintiffs cannot circumvent due process in this way.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion to dismiss (ECF No. 77) be, and the same hereby is, GRANTED without prejudice.  Plaintiffs shall have twenty (20) days to file a motion for leave to amend the complaint.  They must attach a proposed second amended complaint to the motion.  In the body of the motion, they should explain what changes they made to the complaint, and why the court should exercise personal jurisdiction over Ms. Zhao in light of those changes.

DATED October 17, 2025.

_____
UNITED STATES DISTRICT JUDGE