Oliver J. Pancheri, Esq. (Nevada Bar No. 7476)
Jessica M. Lujan, Esq. (Nevada Bar No. 14913)
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3400
Fax: (702) 938-8648
Email: opancheri@spencerfane.com
          jlujan@spencerfane.com

Robert T. Stewart, Esq. (Nevada Bar No. 13770)
Stewart Ray Nelson, Esq. (*pro hac vice*)
   Utah Bar No. 17286
Hannah L. Andrews, Esq. (*pro hac vice*)
   Utah Bar No. 18157
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, Utah 84111
Tel.: (801) 401-8900
Email: rtstewart@foley.com
          srnelson@foley.com
          handrews@foley.com

Jean-Paul Ciardullo, Esq. (*pro hac vice*)
   California Bar No. 284170
**FOLEY & LARDNER LLP**
555 Flower Street, Suite 3300
Los Angeles, California 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
Email: jciardullo@foley.com

Dariush Keyhani *(pro hac vice)*
**KEYHANI LLC**
1050 30th Street NW
Washington, DC 20007
Tel: (202) 748-8950
Email: dkeyhani@keyhanillc.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PARADISE ENTERTAINMENT LIMITED, a Bermuda corporation; and LT GAME, INC., a Nevada corporation, and LT GAME LIMITED, a British Virgin Islands Corporation,<br><br>                *Plaintiffs, Counterdefendants*,<br><br>                vs.<br><br>EMPIRE TECHNOLOGICAL GROUP LIMITED, a Nevada corporation; GAMING SPECIALIZED LOGISTICS LLC, a Nevada limited liability company; LINYI FENG, an individual; ROY KELCEY ALLISON, an individual; and DARYN KIELY, an individual; and YI ZHAO, an individual,<br><br>                *Defendants, Counterclaimants*. | Case No. 2:24-cv-00428-JCM-BNW<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(c) MOTION**<br><br>[ORAL ARGUMENT REQUESTED] |

4904-8075-7643.3

# CONTENTS

I.  INTRODUCTION .................................................................................................. 1

II.  BACKGROUND ................................................................................................... 2

III.  DEFENDANTS' MOTION SHOULD BE DENIED AS UNTIMELY .................................. 3

IV.  PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR CLAIMS ......................................... 6

    A.  APPLICABLE LAW AS TO RULE 12(C) AND PURPORTED GROUP PLEADING .......................................................................................... 6

    B.  PLAINTIFFS SUFFICIENTLY PLEAD THEIR TRADE SECRET CLAIMS ............. 6

        1.  Plaintiffs Sufficiently Identify Their Trade Secrets ........................... 7

        2.  Plaintiffs Properly Allege Wrongful Misappropriation ..................... 8

        3.  If Amendment Were Necessary, It Would Not Be Futile .................... 9

    C.  PLAINTIFFS SUFFICIENTLY PLEAD THEIR COPYRIGHT INFRINGEMENT CLAIM ........................................................................ 9

        1.  Paradise Has Standing to Sue for the Alleged Infringement ............. 9

        2.  Plaintiffs Plead Plausible Facts Showing Each Defendants' Role ............... 10

        3.  If Amendment Were Necessary, It Would Not Be Futile .................. 10

    D.  PLAINTIFFS SUFFICIENTLY PLEAD THEIR FRAUD AND CONSTRUCTIVE FRAUD CLAIMS ............................................................ 11

        1.  Applicable Law Under Rule 9(b) ...................................................... 11

        2.  The Complaint Pleads A Sweeping Years-Long Fraudulent Concealment ....................................................................................... 12

        3.  The Complaint Alleges Specific Acts Of Fraud As To Each Defendant ............................................................................................ 13

        4.  The Facts Alleged Also Support A Plausible Claim For Constructive Fraud ............................................................................ 15

        5.  If Amendment Were Necessary, It Would Not Be Futile .................. 16

    E.  PLAINTIFFS SUFFICIENTLY PLEAD THEIR CONSPIRACY CLAIM. ............... 16

        1.  Plaintiffs Plead Plausible Facts Showing Defendants Acted Together ............................................................................................... 16

        2.  The Intracorporate Conspiracy Doctrine Does Not Apply Because Defendants Cannot Use The Corporate Form To Shield Intentional Torts .................................................................. 17

        3.  The Intracorporate Conspiracy Doctrine Also Does Not Apply

PLAINTIFFS' OPP. TO 12(c) MOTION
Case No. 2:24-cv-00428-JCM-BNW

4904-8075-7643.3

Because Defendants Acted Outside The Scope Of Their
Employment At Empire ................................................................... 19

4.      If Amendment Is Necessary, It Will Not Be Futile ........................................ 19

F.      PLAINTIFFS SUFFICIENTLY PLEAD THEIR RICO CLAIM ................................ 20

1.      The Factual Allegations Of The Complaint Make Clear That
Plaintiffs Allege Violations of 18 U.S.C. § 1962(c)–(d) ............................... 20

2.      The Factual Allegations of the Complaint Plausibly Allege
Predicate Acts of Trade Secret Misappropriation, Copyright
Infringement, and Wire Fraud ........................................................ 20

3.      The Predicate Acts That Plaintiffs Allege Are Sufficiently
Related And Continuous To Constitute A Pattern Of Racketeering
Activity ................................................................................. 21

4.      If Amendment Were Necessary, It Would Not Be Futile ............................... 22

G.      DEFENDANTS' OTHER CLAIMS ARE PROPERLY PLED ................................... 22

V.    IN THE ALTERNATIVE, PLAINTIFFS REQUEST LEAVE TO AMEND ........................ 23

VI.   CONCLUSION ................................................................................. 24

4904-8075-7643.3

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*ADYB Engineered for Life, Inc. v. Edan Admin. Servs.*, 2022 U.S. Dist. LEXIS 56085 (S.D.N.Y. Mar. 28, 2022) ................................................................................................................................ 4

*Aristocrat Tech., Inc. v. Light & Wonder, Inc.*, 2024 WL 3104806 (D. Nev. June 24, 2024) .................. 7

*Banq, Inc. v. Purcell*, No. 2:22-cv-00773, 2025 WL 2163327 (D. Nev. July 29, 2025) ..................... 6, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 6

*Biniaris v. Hansel Union Consulting, PLLC*, 382 F. Supp. 3d 467 (E.D. Va. 2019) ............................... 4

*C.M. v. Jara*, 2023 WL 2955709 (D. Nev. Apr. 14, 2023) ................................................................ 23

*Choi v. 8th Bridge Capital, Inc.*, 2019 U.S. Dist. LEXIS 174857 (C.D. Cal. Oct. 7, 2019) ............... 4

*Corbrus, LLC v. 8th Bridge Capital, Inc.*, No. 2:19-cv-10182-CAS(AFMx), 2021 U.S. Dist. LEXIS 71516 (C.D. Cal. Apr. 12, 2021) ............................................................................................. 24

*Desertrain v. City of L.A.*, 754 F.3d 1147 (9th Cir. 2014) .............................................................. 5

*Deutsche Bank Nat'l Tr. Co. v. SFR Invs. Pool 1, LLC*, No. 2:18-CV-597, 2019 WL 4738005 (D. Nev. Sept. 27, 2019) (Mahan, J.) .................................................................................................... 6

*Donovan v. Flamingo Palms Villas, LLC*, No. 2:08-cv-01675, 2009 WL 10693913 (D. Nev. June 23, 2009) ............................................................................................................................ 12

Dow Chem. Co. v. Mahlum, 114 Nev. 1468 (1998) ........................................................................ 13

*Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188 (9th Cir. 1989) ......................................................... 6

*Est. of Rodriguez v. City of Long Beach*, 2020 WL 292179 (C.D. Cal. Jan. 21, 2020) ..................... 4, 23

*Est. of Rodriguez v. City of Long Beach*, No. 2:18-cv-07522, 2020 WL 292179 (C.D. Cal. Jan. 21, 2020) ............................................................................................................................ 24

*Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101 (D. Nev. 2020) ................................................. 23

*Gamble v. Synchrony Bank*, 2020 WL 4258646 (C.D. Cal. Apr. 30, 2020) ...................................... 24

*Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40 (1st Cir. 2012) .................................................... 4

*Grayiel v. AIO Holdings, LLC*, 648 F. Supp. 3d 812 (W.D. Ky. 2022) ............................................. 18

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) ..................................................................... 21

*H.M. v. Smith Cty.*, 2024 U.S. Dist. LEXIS 127611 (S.D. Miss. July 19, 2024) ................................. 4

*Harrison v. Portfolio Grp. Mgmt.*, 2021 U.S. Dist. LEXIS 116561 (E.D. Cal. June 21, 2021)............... 18

*Horn v. Med. Marijuana, Inc.*, 383 F. Supp. 3d 114 (W.D.N.Y. 2019) ................................................. 4

*In re "Santa Barbara Like It Is Today" Copyright Infringement Lit.*, 94 F.R.D. 105 (D. Nev. 1982) .... 10

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020)............................................ 7

*Jones v. Town of Quartzsite*, 2014 WL 12617038 (D. Ariz. Feb. 24, 2014) ..................................... 4, 23

*Leonard v. Clark*, 12 F.3d 885 (9th Cir. 1993)............................................................................... 22

*Liang v. City of New York*, 2014 WL 4966074 (E.D.N.Y. Oct. 3, 2014) ................................................ 4

*Long v. Towne*, 639 P.2d 528 (Nev. 1982) ..................................................................................... 15

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008)...................................... 6

*Matsugishi v. Chen*, 790 F. Supp. 3d 1007 (D. Nev. 2025)................................................................ 11, 12

*Mecinas v. Hobbs*, 30 F.4th 890 (9th Cir. 2022).............................................................................. 22

*Morella Consultants, LLC v. RCMP Enters., LLC*, 2011 U.S. Dist. LEXIS 101793 (M.D. Pa. Sep. 9, 2011) ......................................................................................................................................... 17

*Nevada State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665 (Nev. 2021) ................................ 11

*Nev-Tex Oil & Gas v. Precision Rolled Prods.*, 105 Nev. 685 (1989) ................................................. 18

*Perez v. Oak Grove Cinemas, Inc.*, 2014 WL 1796674 (D. Or. May 5, 2014)...................................... 4, 23

*Perrin v. Goodrich*, 2012 U.S. Dist. LEXIS 193046 (C.D. Cal. Mar. 6, 2012) ...................................... 18

*Pharmaplast S.A.E. v. Zeus Med. Holdings, LLC*, 2017 U.S. Dist. LEXIS 36227 (D. Nev. Mar. 14, 2017) .......................................................................................................................................... 18

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081 (9th Cir. 2025)................................ 7

*Rashdan v. Geissberger*, 2011 U.S. Dist. LEXIS 3073 (N.D. Cal. Jan. 12, 2011)................................ 18

*Reflex Media, Inc. v. Successfulmatch.Com*, No. 20-cv-06393-JD, 2024 U.S. Dist. LEXIS 8068 (N.D. Cal. Jan. 16, 2024) ...................................................................................................................... 3

*Semenza v. Caughlin Crafted Homes*, 111 Nev. 1089 (1995) ............................................................ 17

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020)................. 10

*So. Nev. Fire Protection Inc. v. Clark County*, 2022 WL 19795807 (D. Nev. Dec. 19, 2022) (Mahan, J.) ......................................................................................................................................... 6, 17

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007)......................................................................... 12

*Tech. Licensing Corp. v. Technicolor USA, Inc.*, 2010 U.S. Dist. LEXIS 113292 (E.D. Cal. Oct. 15, 2010) ............................................................................................................................ 24

*Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433 (2017) ........................................ 22

*U.S. v. Jinian*, 725 F.3d 954 (9th Cir. 2013) ........................................................................ 21

*United States v. Benny*, 786 F.2d 1410 (9th Cir.) ................................................................ 18

*United States v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016) .......................... 6

*Webster v. Omnitrition Int'l*, 79 F.3d 776 (9th Cir. 1996) ..................................................... 18

**STATUTES**

18 U.S.C. § 1832 ................................................................................................................ 21

18 U.S.C. § 1839(5)(B)(ii)(II)–(III) ...................................................................................... 9

18 U.S.C. § 1961(1) ........................................................................................................... 20

18 U.S.C. § 1961(5) ........................................................................................................... 21

18 U.S.C. § 1962(c) ........................................................................................................... 20

18 U.S.C. § 1962(d) ........................................................................................................... 20

18 U.S.C. § 2319 ............................................................................................................... 21

18 U.S.C. §1839(5)(B)(ii) ..................................................................................................... 9

N.R.S. 600A.030(2)(c)(2)(II)–(III) ........................................................................................ 9

**RULES**

Fed. R. Civ. P. 8(a) ............................................................................................................ 6

Fed. R. Civ. P. 9(b) ............................................................................................................ 6

**TREATISES**

10 Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, *American Law of Torts* § 32:11 (2025)..... 15

4904-8075-7643.3

## I.    __INTRODUCTION__

Defendants' Rule 12(c) Motion ("Motion," ECF No. 136) should be denied. By filing an untimely Rule 12 motion after the close of a year and a half of exhaustive fact discovery, Defendants improperly seek dispositive relief before the Court can hear the evidence that has now proven the merits of Plaintiffs' Amended Complaint ("Complaint," ECF No. 69). Contrary to Defendants' mischaracterizations, Plaintiffs' detailed 320-paragraph Complaint contains specific factual allegations that support the plausibility of Plaintiffs' claims. Although the Complaint at times references Defendants collectively (particularly where Defendants acted together to commit the same misconduct), Plaintiffs direct specific factual allegations at each individual Defendant. Additionally, while the Complaint alleges that Defendants made express misrepresentations to Plaintiffs Macau-based managers (Dr. Jay Chun and Leo Chan), Defendants' Motion fails to acknowledge how much of their years-long fraud was one of malicious concealment in the face of their fiduciary duties (as alleged in the Complaint). Discovery has now revealed copious private communications among the Defendants that expose their knowing and coordinated deception. Even as they made continual progress reports to Dr. Chun and Mr. Chan about Defendants' supposed loyal advancement of Plaintiffs' business interests in the North American market, Defendants concealed that they were actually in active *competition* with Plaintiffs so as to induce Plaintiffs to continue providing money and resources that were used to fuel Plaintiffs' own usurpation in the market.

Courts across the country have regularly denied Rule 12(c) motions as untimely under the same circumstances presented here. At this point in the case, where discovery has been completed, Defendants should raise their issues in the context of their already-planned summary judgment motion on March 27, 2026 rather than a belated Rule 12 motion. This is highlighted by the relief that Defendants now request, which asks the Court to parse fact-intensive matters in an evidentiary vacuum. Such issues are properly resolved through a Rule 56 motion, where Defendants must contend with the evidence that has been developed in discovery, and Plaintiffs can likewise call upon that evidence in opposing.

Even if the Court were to conclude that any part of Defendants' Motion is meritorious, the proper remedy under the circumstances would be to grant Plaintiffs leave to amend so that they may incorporate into their pleadings additional facts and evidence uncovered during discovery that support each of their claims. Having waited 22 months to make their Motion, Defendants cannot be heard to argue otherwise.

## II. <u>BACKGROUND</u>

Plaintiffs filed their Original Complaint on March 1, 2024 (ECF No. 1). Contrary to Defendants' distorted framing of Plaintiffs' allegation in their Motion (p.3), Defendants are not employees of Empire Technological Group, Ltd. ("Empire") who happened to previously work at Plaintiff LT Game, Inc. ("LT Game," the subsidiary of the other two Plaintiffs). Rather, as alleged throughout the Complaint, Defendants were the senior management team of LT Game with fiducial duties and contractual obligations to Plaintiffs that they knowingly breached for many years in order to misappropriate money, resources, and trade secrets from Plaintiffs to build a competing business under Empire to usurp LT Game in the market, leaving it now a shell. This betrayal was all the more severe given that Defendant Feng is the brother-in-law of Paradise Entertainment Chairman Dr. Jay Chun, who had generously entrusted Mr. Feng with expanding Plaintiffs' business interests into the North American market. (ECF No. 69, ⁋ 24-35.) Each of Mr. Feng, Mr. Kiely, and Mr. Allison made their fraudulent representations directly to Dr. Chun and Plaintiffs' CFO, Leo Chan, over the course of years of progress meetings, emails, and text messages, falsely claiming to be advancing Plaintiffs' business interests while concealing that they were actually usurping LT Game. (*Id.*, ⁋ 33, 75, 85, 86, 109, 221-237.)

Defendants never previously raised any challenge to the sufficiency of the pleadings. On February 27, 2025, Defendants even stipulated to *not oppose* Plaintiffs' request for leave to file the operative Amended Complaint (*see* ECF No. 63 at page 1, noting non-opposition), which is substantially identical to Plaintiffs' Original Complaint except mainly in that it added Yi Zhao as a co-defendant. After the Amended Complaint was filed, Defendants still did not make any challenge to the sufficiency of the pleadings, and discovery continued unabated, including the subsequent depositions of all major witnesses, the production of thousands more documents, and Plaintiffs' provision of more interrogatory responses directed to the same issues raised in Defendants' Motion. (*See* Declaration of Jean-Paul Ciardullo, ⁋ 3.)

Vast resources were expended on fact discovery, which closed in December 2025 (ECF No. 103). This has included over 20 depositions, many of which occurred in Hong Kong; well over 1 million documents collected and reviewed; multiple discovery motions, including Plaintiffs' opening of a Miscellaneous Action in the Central District of California to successfully compel documents from Defendants' business partners; hundreds of hours of attorney time spent conferring and resolving

1   discovery disputes; and hundreds of pages of written discovery responses. (Ciardullo Dec., ¶ 2.) Despite

2   all this time and effort, at no time in the past 22 months of this litigation have Defendants ever raised a

3   challenge to the sufficiency of the pleadings despite ample opportunity to do so. As of January 9, 2026,

4   Plaintiffs also served three expert reports, including a lengthy damages report detailing Plaintiffs' damages

5   theories and seeking tens of millions of dollars in recovery. (Ciardullo Dec., ¶ 5.)

6   **III.    DEFENDANTS' MOTION SHOULD BE DENIED AS UNTIMELY**

7           Defendants' Motion – which was filed on Christmas Eve after the close of fact discovery in the

8   absence of any prior pleadings challenge – has thrown a procedural monkey wrench into the case schedule

9   and should be denied as untimely without prejudice to Defendants raising their arguments under Rule 56

10  in their already-planned Summary Judgment Motion due March 27, 2026. Unless the Court rushes to

11  resolve the 12(c) Motion before the March 27 Summary Judgment filing, Defendants' Rule 12(c) Motion

12  will have amounted to unwarranted double briefing on summary judgment that improperly hamstrings the

13  Court (and Plaintiffs in opposing) to disregard all the evidence from discovery. Even if the Court were to

14  grant any portion of the Rule 12(c) Motion prior to March 27, leave should be granted to amend the

15  Complaint (Section V, *infra*), which would confuse the case schedule on the eve of summary judgment,

16  making it unclear which claims were in the case or not. Either way, Plaintiffs would be unduly prejudiced

17  and trial would be delayed, whether due to any attendant scheduling changes, or due to the Court having

18  to take longer to adjudicate Defendants' untimely and confusing 12(c) Motion. By instead sensibly

19  proceeding with a single Rule 56 motion, Defendants will be properly forced to contend with all the

20  evidence developed in discovery, and Plaintiffs will be properly able to call upon all that evidence in

21  opposition. The Court can then make a single, unconfused ruling with full knowledge of the facts.

22  Defendants will also suffer no prejudice, having been fully heard on all issues.

23          "[C]ourts in our circuit have [] concluded that a Rule 12(c) motion should be denied when

24  discovery is substantially complete." *Reflex Media, Inc. v. Successfulmatch.Com*, No. 20-cv-06393-JD,

25  2024 U.S. Dist. LEXIS 8068, at *3-4 (N.D. Cal. Jan. 16, 2024) (denying as untimely a post-discovery

26  Rule 12(c) motion filed shortly before summary judgment that would call for a pleadings amendment if

27  granted). This echoes the First Circuit's assessment in *Grajales v. Puerto Rico Ports Auth.*, which has

28  been relied upon by many other courts cited herein: "Ignoring the entire panoply of facts developed during

1    discovery makes little sense. … once the parties have invested substantial resources in discovery, a district
2    court should hesitate to entertain a Rule 12(c) motion that asserts a complaint's failure to satisfy the
3    plausibility requirement. 682 F.3d 40, 46 (1st Cir. 2012).

4    There are a litany of cases reaching the same conclusions about post-discovery Rule 12(c) motions
5    on facts similar to this case. *Est. of Rodriguez v. City of Long Beach*, 2020 WL 292179, at *2 (C.D. Cal.
6    Jan. 21, 2020)) ("that matter is better decided on a motion for summary judgment, rather than a [12(c)]
7    motion"); *Choi v. 8th Bridge Capital, Inc.*, 2019 U.S. Dist. LEXIS 174857, at *6-8 (C.D. Cal. Oct. 7,
8    2019) (same holding even before discovery closed); *Christian Heritage Sch. C/O Youth with A Mission v.*
9    *Cent. Mut. Ins. Co.*, 2025 U.S. Dist. LEXIS 89327, at *4-5 (E.D. Tex. Jan. 29, 2025) (first-time Rule 12
10   challenge after close of discovery denied as untimely in favor of summary judgment motion); *Perez v.*
11   *Oak Grove Cinemas, Inc.*, 2014 WL 1796674, at *4 (D. Or. May 5, 2014) (denying Rule 12(c) motion for
12   judgment on the pleadings where discovery had already taken place); *Jones v. Town of Quartzsite*, 2014
13   WL 12617038, at *1 (D. Ariz. Feb. 24, 2014) (denying Rule 12(c) motion and citing *Grajales*); *Horn v.*
14   *Med. Marijuana, Inc.*, 383 F. Supp. 3d 114, 124 n.7 (W.D.N.Y. 2019) (despite trial date not having yet
15   been set, denying long-delayed Rule 12 motion as untimely and disruptive); *H.M. v. Smith Cty.*, No. 3:23-
16   CV-542-KHJ-MTP, 2024 U.S. Dist. LEXIS 127611, at *2-3 (S.D. Miss. July 19, 2024) (denying belated
17   Rule 12(c) motion as untimely); *Biniaris v. Hansel Union Consulting, PLLC*, 382 F. Supp. 3d 467, 471,
18   474 (E.D. Va. 2019) (defendant could "not utilize a Rule 12(c) Motion at this late stage in the proceedings
19   as a substitute for a motion for summary judgment"); *ADYB Engineered for Life, Inc. v. Edan Admin.*
20   *Servs.*, 2022 U.S. Dist. LEXIS 56085, at *26-27 (S.D.N.Y. Mar. 28, 2022) (post-discovery Rule 12(c)
21   motion was untimely) (citing 5C Wright & Miller, Federal Practice and Procedure § 1367); *Liang v. City*
22   *of New York*, 2014 WL 4966074, at *2 (E.D.N.Y. Oct. 3, 2014) ("If a party engages in excessive delay
23   before moving under Rule 12(c), the district court may refuse to hear the motion on the ground that its
24   consideration will delay or interfere with the commencement of the trial.").

25   Defendants have previously tried to quibble with the foregoing cases (ECF No. 143, pp. 9-12), but
26   the Court can see for itself that the principles set forth in them are sound and applicable to the present
27   facts. Plaintiffs also addressed Defendants' arguments in their prior brief. (ECF No. 144, pp. 7-9.)
28   Defendants have also previously attempted to cite cases supporting the filing of post-discovery Rule 12(c)

PLAINTIFFS' OPP. TO 12(c) MOTION
Case No. 2:24-cv-00428-JCM-BNW

1
2
3

motions (ECF No. 143, pp. 9-12), and Plaintiffs also previously distinguished those cases (ECF No. 144, pp. 9-10). In particular, Defendants cannot properly rely on cases in which amendment would have been futile given that Plaintiffs in the present case could simply amend to add more facts from discovery.

4
5
6
7
8
9
10
11
12
13

Defendants have also made various other arguments, none of which are supported. First, Defendants argued that they could not have filed their Motion sooner because the pleadings were "in flux" until December 12, 2025. That is incorrect. The only unresolved pleadings issue as of December 12, 2025 was whether Plaintiffs would seek to keep Yi Zhao in the case under the narrow scope of leave afforded them by the Court's Order. (ECF No. 134.) Second, Defendants argued that Plaintiffs in some way waived their timeliness arguments by not raising them by Noon on December 26 when counsel was boarding a plane. In fact, counsel raised concerns that same afternoon and had researched and fully articulated Plaintiffs' objections by Sunday, December 28. (Ciardullo Dec., ¶ 6.) Third, Defendants surprised Plaintiffs with a new argument that the case schedule would have to be extended due to discovery issues, but Plaintiffs are not aware of any basis for such an extension. (*Id.*, ¶ 7-8.)

14
15
16
17
18
19
20
21
22
23
24
25
26

Finally, Defendants argued that Plaintiffs seek only to postpone Defendants' Rule 12 arguments because Plaintiffs fear losing on the merits. None of that is right. Plaintiffs welcome any challenge Defendants want to attempt, but maintain that Defendants' challenges – which are premised on factual plausibility – must at this point be made under Rule 56 so as to take account of the extensive record from discovery. Should the Court conclude on summary judgment that facts exist to support a claim, but that the Complaint does not sufficiently recite them, then the Court can direct Plaintiffs to make a running amendment to the pleadings to conform to those facts, and the case can continue on without delay.[1] *See, e.g., Desertrain v. City of L.A.*, 754 F.3d 1147, 1154-55 (9th Cir. 2014) (abuse of discretion to not allow amendment to conform to evidence when summary judgment demonstrated claim was proper); *Deutsche Bank Nat'l Tr. Co. v. SFR Invs. Pool 1, LLC*, No. 2:18-CV-597, 2019 WL 4738005, at *5-6 (D. Nev. Sept. 27, 2019) (Mahan, J.) (granting plaintiff leave to amend complaint to conform to the evidence when plaintiff relied during summary judgment on a fact not alleged in its complaint). A single straightforward summary judgment motion is clearly the best way to proceed at this late stage of the case.

27
28

---

[1] If the Court concluded that no set of facts presented on summary judgment could support a given claim, the Court is of course empowered to dismiss that claim under Rule 56, but at least would be doing so based upon the evidence instead of in a factual vacuum as Defendants' Motion proposes.

## IV.   PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR CLAIMS

### A.   Applicable Law As To Rule 12(c) And Purported Group Pleading

A Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, and thus the same standard of review applies. *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). For purposes of ruling on a Rule 12(c) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleading in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Typically, the court "may not consider matters outside the pleadings on a Rule 12(c) motion lest the motion be treated as one for summary judgment." *So. Nev. Fire Protection Inc. v. Clark County*, 2022 WL 19795807, at *1–2 (D. Nev. Dec. 19, 2022) (Mahan, J.). A properly pled complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). For fraud claims, Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Factual allegations that "nudge[]…claims across the line from conceivable to plausible" should not be dismissed—even if the court believes "that the plaintiff will fail to find evidentiary support for [the] allegations or prove [the] claim to the satisfaction of the factfinder." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8, 570 (2007).

Many of Defendants' challenges are to purported group pleading of Defendants' misconduct, but "[t]here is no flaw in a pleading…where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct," particularly where the pleading "allege[s] particular details of the scheme as applied to [each defendant]." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016).

### B.   Plaintiffs Sufficiently Plead Their Trade Secret Claims

Plaintiffs plead plausible federal and state trade secret claims (Counts 1 and 2) under the Defend Trade Secrets Act ("DTSA") and the Nevada Uniform Trade Secrets Act ("NUTSA"). Courts typically analyze federal and state trade secret claims together where both statutes share substantively similar elements. *See Banq, Inc. v. Purcell*, No. 2:22-cv-00773, 2025 WL 2163327, at *2 (D. Nev. July 29, 2025). To state a claim for trade secret misappropriation, plaintiffs must plausibly allege: "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings,*

1    *Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020).

2    **1.    Plaintiffs Sufficiently Identify Their Trade Secrets**

3    Trade secrets are alleged with sufficient particularity when they "put [Defendants] on notice of the

4    boundaries of the trade secret."[2] *See Aristocrat Tech., Inc. v. Light & Wonder, Inc.*, 2024 WL 3104806, at

5    *4 (D. Nev. June 24, 2024). "[T]he federal DTSA does not require a plaintiff to identify with particularity

6    its alleged trade secrets from the start." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th

7    1081, 1085 (9th Cir. 2025). Whether information is sufficiently particular to constitute a trade secret is "a

8    question of fact," and such disputes are "usually a matter for summary judgment or trial." *Id.* At the

9    pleadings stage, a plaintiff's burden "is only to identify at least one trade secret with sufficient particularity

10   to create a triable issue." *InteliClear, LLC*, 978 F.3d at 659. Importantly, "the definition of what may be

11   considered a 'trade secret' is broad," and it is not a fatal flaw for plaintiffs to use "hedging language" in

12   their complaints to "le[ave] open the possibility of expanding [their] identifications later." *Id.* at 657, 659.

13   Plaintiffs need not "spell out the details of the trade secret." *Aristocrat Tech., Inc.*, 2024 WL 3104806, at

14   *4. Rather, plaintiffs need only "describe the subject matter of the trade secret with sufficient particularity

15   to separate it from matters of general knowledge in the trade or of special persons who are skilled in the

16   trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.*

17   (quoting *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012)).

18   Here, as Defendants know from Plaintiffs' interrogatory responses, deposition testimony, and

19   expert reports, Plaintiffs have defined their trade secrets clearly: they correspond to the casino gaming

20   software and technology that Defendants secretly developed and sold under Empire outside of its

21   exclusive distribution arrangement with LT Game that rightfully was the property of LT Game under, for

22   example, Mr. Kiely's LT Game employment contract and pursuant to the Defendants' fiduciary duties; as

23   well as the proprietary LT Game sales and marketing knowledge that Mr. Allison/GSL and Mr. Feng

24   leveraged to sell that same misappropriated technology. The trade secrets also extend to the proprietary

25   source code and operation of the LT Game card shoes that Empire continued to operate at Commerce

26

27   ─────────────

28   [2] The timing of Defendants' belated Rule 12(c) motion further supports that Plaintiffs' Complaint is sufficiently specific. It is highly unlikely that Defendants would have waited until after the close of fact discovery to raise these issues if they were truly unaware of the boundaries of the trade secret information Plaintiffs accuse them of misappropriating.

PLAINTIFFS' OPP. TO 12(c) MOTION
Case No. 2:24-cv-00428-JCM-BNW

Casino after having misappropriated those units.

With reference to the pleadings, the Complaint tracks the foregoing definition, characterizing the trade secrets as "financial, business, technical, and engineering information including software, hardware, computer programming code, including but not limited to the Paradise Golden Frog source code and LTShoe source code, and product designs and prototypes, including those related to Smart Card Shoes." (ECF No. 69, ⁋ 168, 188.) The software in particular is identified throughout the complaint as proprietary to LT Game. (*Id.* at ¶¶ 55–56, 58–59, 141, 143, 161–62.) The Complaint also attaches Mr. Kiely's employment contract and explains how all the technology that he developed while he was LT Game's technology officer should have belonged to LT Game as his employer, thus making it a trade secret of LT Game. (*Id.*, ⁋⁋ 50-62.) The Complaint also attaches LT Game's agreements with Mr. Allison/GSL and explains how Mr. Allison's trade secret knowledge of LT Game's sales and marketing could not be used to compete with LT Game. (*Id.*, ⁋ 64-68.) These pleadings define the trade secrets consistent with how Plaintiffs have defined them in fact and expert discovery, and were sufficient to provide notice.

Despite having now gone through all of discovery and knowing the details of Plaintiffs' trade secret claims, Defendants invite the Court to limit Plaintiffs' trade secrets to just source code while ignoring all the evidence from discovery. (ECF No. 136 at 8.) The Court should decline to do so. At this point in the case, where fact discovery has been completed, issues pertaining to the scope of Plaintiffs' claims and trade secret information are more appropriately resolved in a Rule 56 motion. *See Quintara Biosciences, Inc.*, at 1085; *see also* cases cited in Section III, *supra*.

### 2.    Plaintiffs Properly Allege Wrongful Misappropriation

Defendants argue that "[m]isappropriation requires a trade secret be acquired through improper means," attempting to distinguish the fact that Plaintiffs allowed Defendants access to Plaintiffs' trade secrets. (ECF No. 136 at 6.) This argument is at best misleading. Defendants cannot be said to have used "proper means" to acquire the trade secrets since their access to them was predicated on perpetuating a fraud on Plaintiffs, as alleged throughout the Complaint. The DTSA and Nevada statute defines misappropriation to include "(B) disclosure or use of a trade secret of another without express or implied consent by a person who…(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was…(II) acquired under circumstances giving rise to a duty to maintain

the secrecy of the trade secret or limit the use of the trade secret; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(II)–(III); *see also* N.R.S. 600A.030(2)(c)(2)(II)–(III). Here, Defendants' acquisition and use of the trade secrets through fraud, breach of their employment contracts, and related misconduct gives rise to an actionable claim.

Plaintiffs plausibly allege that Mr. Feng (as president and sole director of LT Game), Mr. Kiely (as chief technology officer of LT Game and the Paradise Group), and Mr. Allison (as senior vice president of operations and business development of LT Game) were given access to and permitted to use Plaintiffs' trade secrets to the extent necessary to perform their duties. (ECF No. 69 at ¶¶ 25–28, 50–53, 63–66.) These Defendants had clear fiduciary and contractual duties to maintain the secrecy of Plaintiffs' trade secrets and to limit their use. (*Id.*) Likewise, GSL (as a consultant and agent of LT Game and a company solely owned and operated by Mr. Allison) was given access to and permitted to use Plaintiffs' trade secrets to the extent necessary to provide its consulting services. (ECF No. 69 at ¶¶ 67–68.) Empire and GSL derived Plaintiffs' trade secrets at least through Mr. Feng, Mr. Allison, and Mr. Kiely. (ECF No. 69 at ¶¶ 88, 90, 93, 95, 171, 190.) Defendants' subsequent use of Plaintiffs' trade secrets, such as the alleged use of Plaintiffs' trade secrets in Empire's card shoe and Golden Frog Baccarat products, therefore constitutes, for example, misappropriation under 18 U.S.C. §1839(5)(B)(ii) and N.R.S. 600A.030(2)(c)(2). (ECF No. 69 at ¶¶ 143, 161.)

### 3.    If Amendment Were Necessary, It Would Not Be Futile

If necessary, Plaintiffs ask to be allowed to file a motion for leave to further amend to add evidence uncovered during discovery, including at least the following: specific Empire products that are copied and derived from specific Paradise Group products; specific Empire products that use the Paradise Group's proprietary gaming platform; more facts concerning Mr. Kiely's development of the relevant technology and why it should have been assigned to Plaintiffs, including Defendants' secret use of a collaborator software engineer working for a Paradise subsidiary in China; specific Empire games that use Paradise Group game designs and development; and specific instances of Defendants copying of source code.

### C.    Plaintiffs Sufficiently Plead Their Copyright Infringement Claim

### 1.    Paradise Has Standing to Sue for the Alleged Infringement

PLAINTIFFS' OPP. TO 12(c) MOTION
Case No. 2:24-cv-00428-JCM-BNW

4904-8075-7643.3

1
2
3
4
5
6
7
8

To state a claim for copyright infringement, a plaintiff must allege ownership of a valid copyright and copying of the copyrighted work. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). Here, Plaintiffs' Complaint clearly alleges that "Paradise is the owner of all rights, title, and interest in and to" the copyrights at issue and "LTG Limited assigned all rights, title, and interest in and to" the copyrights to Paradise. (ECF No. 69 at ¶¶ 57, 60.) Those allegations describe a complete copyright assignment, transferring full rights of ownership and enforcement rights that are typically transferred in an assignment of that nature. Nothing in the Complaint suggests that any rights were retained or limited, so Paradise has the right to sue for past infringement.

9

### 2. Plaintiffs Plead Plausible Facts Showing Each Defendants' Role

10
11
12
13
14
15
16

Plaintiffs sufficiently plead each Defendant's involvement in their collective infringement of Plaintiffs' copyrights. Defendants argue that the Complaint fails to "differentiate among the Defendants," likening it to *In re "Santa Barbara Like It Is Today" Copyright Infringement Lit.*, 94 F.R.D. 105 (D. Nev. 1982). (ECF No. 136 at 10.) But that comparison is unfounded. Unlike *Santa Barbara*, where the court confronted a pro se plaintiff's complaint asserting claims against over 200 defendants, Plaintiffs' Complaint alleges Defendants' various roles and relationships to one another as well as Defendants' copying, use, distribution, and ongoing use of infringing products.

17
18
19
20
21
22
23
24
25
26

For example, Plaintiffs allege that Mr. Feng, Mr. Allison, and Mr. Kiely shared ownership of a company called Playful Interactive Inc. that developed a mobile application that allegedly infringes Plaintiffs' Paradise Golden Frog copyright. (ECF No. 69 at ¶¶ 116, 126–28.) Plaintiffs also allege that Empire, where Mr. Feng, Mr. Allison, and Mr. Kiely served as president, senior vice president of sales and marketing, and chief technology officer, provided Golden Frog Baccarat electronic table games and related equipment, including card shoes, that allegedly infringes Plaintiffs' Paradise Golden Frog and/or LTShoe copyrights. (ECF No. 69 at ¶¶ 87, 89, 92, 143, 161.) GSL, solely owned and operated by Mr. Allison, provided sales consulting services to Empire, which sold and distributed infringing Empire products. (ECF No. 69 at ¶¶ 39, 41, 209–211.) These allegations support the plausibility of Defendants' collective infringement.

27
28

### 3. If Amendment Were Necessary, It Would Not Be Futile

If necessary, Plaintiffs ask to be allowed to file a motion for leave to further amend to add evidence

PLAINTIFFS' OPP. TO 12(c) MOTION
Case No. 2:24-cv-00428-JCM-BNW

uncovered during discovery, including at least the following: the verbatim language of the copyright assignment agreement; the specific Golden Frog product that infringes the Paradise Golden Frog source code, including when Defendants offered the product for sale, where it was distributed, and its submission to gaming regulators; and Defendants continuous unauthorized use of the LTShoe source code from 2022 to the present at least at Commerce Casino.

### D. Plaintiffs Sufficiently Plead Their Fraud and Constructive Fraud Claims

#### 1. Applicable Law Under Rule 9(b)

Plaintiffs' Complaint complies with Rule 9(b), as it provides Defendants "notice of the particular conduct" at issue so that they can defend against Plaintiffs' accusations "and not just deny that they have done anything wrong."[3] *Banq, Inc.*, 2025 WL 2163327, at *1 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir 2001)). In the present case, Plaintiffs not only alleges numerous specific instances of express misrepresentations by Defendants, but also overarching campaign of deliberate fraudulent concealment that they perpetuated for at least seven years in order to maintain the flow of money and resources from Plaintiffs even as Defendants still held the trusted roles of senior managers of LT Game.

To state a fraud claim, plaintiffs must plausibly allege: "(1) a false representation, (2) the defendant's knowledge or belief that the representation is false, (3) the defendant's intention to induce the plaintiff's reliance, (4) the plaintiff's justifiable reliance, and (5) damages." *Nevada State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 675 (Nev. 2021). Fraudulent misrepresentation includes representations that are misleading because they partially suppress or conceal information. *Matsugishi v. Chen*, 790 F. Supp. 3d 1007, 1020 (D. Nev. 2025). To state a claim for fraudulent *concealment*, plaintiffs must plausibly allege: "(1) the defendant concealed or suppressed a material fact, (2) the defendant was under a duty to disclose the fact to the plaintiff, (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff was unaware of the fact and would not have acted as he did had he known of the concealed or suppressed fact, and (5) the plaintiff sustained damages as a result of the concealment or suppression of the fact." *Donovan v. Flamingo Palms Villas, LLC*, No. 2:08-cv-01675, 2009 WL 10693913, at *12 (D. Nev. June 23, 2009) (citing *Dow Chemical Co. v. Mahlum*,

---

[3] Again, the timing of Defendants' belated Rule 12(c) motion further supports that Plaintiffs' Complaint is sufficiently specific. It is unlikely that Defendants would have waited until after the close of fact discovery to raise these issues if they were unaware of the fraudulent conduct Plaintiffs accuse them of.

970 P.2d 98, 110 (Nev. 1998)). Because fraudulent concealment may be based on omissions, making it "more difficult to identify the time, place, or content of the omissions," plaintiffs should "plead with particularity the circumstances surrounding the concealment and state facts showing [their] due diligence in trying to uncover the facts." *Id.* (quoting *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978)).

Importantly, "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify *false statements* made by each and every defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). "Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result." *Id.* (quoting *Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980)). "A plaintiff need only identify the role of each defendant in the scheme." *Matsugishi v. Chen*, 790 F. Supp. 3d 1007, 1019 (D. Nev. 2025) (emphasis added). The Complaint does that and more.

### 2. The Complaint Pleads A Sweeping Years-Long Fraudulent Concealment

As an overarching point, the Complaint alleges that each of the Defendants conspired to maintain a perpetual campaign of secrecy about their true business activities from approximately 2017-2023 in order to procure Plaintiffs' continued funding, resources, and non-interference. (ECF No. 69, ¶¶ 33, 75, 85, 86, 109, 221-237.) The Complaint alleges that this was done when Defendants were bound by fiduciary duties of disclosure as LT Game's managers. (*Id.*) As has now been proven up in discovery, this fraudulent concealment played out over the course of years of progress meetings and correspondence in which each of Defendants purported to tell Dr. Chun and Mr. Chan that they were loyally working to advance LT Game when in fact they were actively undermining it, selling millions of dollars of competing casino equipment into LT Game's sales channels, and usurping business opportunities worth tens of millions of dollars. In fact, Plaintiffs will go a step further and argue that when Defendants repeatedly reported "business as usual" to Plaintiffs in recurring progress meetings and correspondences, that was more than just concealment of their secret competing enterprise: Defendants were making express misrepresentations about what was really happening in Las Vegas.

Furthermore, Defendants cannot be heard to claim that Mr. Feng ceased having a duty to disclose

to Plaintiffs (indeed, to *his own brother-in-law*, Dr. Chun) after he resigned from LT Game in 2022. As the Nevada Supreme Court recognized in *Dow Chem. Co. v. Mahlum*, a duty to disclose "may also arise where the parties enjoy a 'special relationship,' that is, where a party reasonably imparts special confidence in the defendant and the defendant would reasonably know of this confidence…Even when the parties are dealing at arm's length, a duty to disclose may arise from "the existence of material facts peculiarly within the knowledge of the party sought to be charged and not within the fair and reasonable reach of the other party." 114 Nev. 1468, 1486 (1998). Here, the Complaint alleges facts that support a finding of such a "special relationship" even apart from Defendants' roles as fiduciaries of LT Game.

### 3.    The Complaint Alleges Specific Acts Of Fraud As To Each Defendant

Beyond Defendants' ongoing concealment, the Complaint alleges other specific instances of fraud as to each Defendant. Beginning with Mr. Kiely, the Complaint alleges (among other things) that Mr. Kiely worked for Empire in furtherance of Mr. Feng's plan to supplant Plaintiffs while concurrently serving as Plaintiffs' chief technology officer beginning in 2019. (ECF No. 69 at ¶¶ 50, 89, 111.) Further, the Complaint alleges that in August 2017, he and Mr. Feng attempted to have LT Game contract with a fake company purportedly located at a residence belonging to Mr. Feng. (ECF No. 69 at ¶¶ 112–15, 236.) Mr. Kiely was the person who presented Paradise with the draft contract between LT Game and this fake company, which, had Paradise not investigated the company's name and address, would have been paid by Plaintiffs for slot game development. *Id.* And although Mr. Kiely and Mr. Feng abandoned this attempt to fraudulently siphon money from Plaintiffs, Mr. Kiely later caused LT Game to enter into a contract for slot game development with Akkadian Enterprises—a company owned by Mr. Kiely, Mr. Feng, and Mr. Allison that Defendants used as a covert vehicle to usurp business opportunities from Plaintiffs, such as the purchase of intellectual property assets from a company called Synergy Blue LLC in 2021. (ECF No. 69 at ¶¶ 129–33.) Mr. Kiely, who was a fiduciary of Plaintiffs at that time, as well as Mr. Feng and Mr. Allison, deliberately failed to inform Plaintiffs that he, Mr. Feng, and Mr. Allison each owned Akkadian, fraudulently concealing this self-dealing. (ECF No. 69 at ¶¶ 129–33, 233–34.)

Regarding Mr. Allison, the Complaint alleges (among other things) that Mr. Allison, while providing sales consulting services to Empire around 2018, began conspiring with Mr. Feng to leverage Plaintiffs' resources to pursue independent business opportunities while intentionally misleading Plaintiffs

into believing that Empire was acting as the Paradise Group's long-term exclusive distributor. (ECF No. 69 at ¶¶ 39–42.) Mr. Allison worked for Empire in furtherance of Mr. Feng's plan to supplant Plaintiffs while concurrently serving as Plaintiffs' senior vice president of operations and business development and Plaintiffs' consultant. (ECF No. 69 at ¶¶ 63, 67, 92, 111.) In June 2022, Mr. Allison persuaded Paradise to sell at a very small margin a substantial amount of LT Game equipment to Solution Gaming Technologies—a company owned by Mr. Feng of which Mr. Allison was an employee. (ECF No. 69 at ¶ 144.) Mr. Allison misrepresented that the sale was worthwhile and in Plaintiffs' interest, deliberately failing to inform Plaintiffs of Mr. Allison's and Mr. Feng's involvement with Solution Gaming and fraudulently inducing Paradise to sell the equipment at the low price. *Id.* Later, when Solution Gaming withheld payment and Paradise asked Mr. Allison why, Mr. Allison again failed to reveal that Mr. Feng owned Solution Gaming or that he himself was an employee of the company, instead stating only that the customer had an issue with the equipment. (ECF No. 69 at ¶ 145.)

Notably, Mr. Allison persuaded Plaintiffs to execute this deal with Solution Gaming at a time when GSL—rather than Mr. Allison in his individual capacity—was under contract with LT Game to provide consulting services to Plaintiffs. (*See* ECF No. 69 at ¶ 67.) At all times, Mr. Allison was the sole owner and operator of GSL, and per the terms of the consulting agreement between GSL and LT Game, Mr. Allison retained ultimate responsibility for and control of the services performed by GSL. (ECF No. 69 at ¶¶ 39, 67.) Thus, the Complaint alleges that Mr. Allison committed various misconduct both in his individual capacity (for example, when he, Mr. Feng, and Mr. Kiely set up the company Playful Interactive to develop the allegedly misappropriated, infringing "Golden Frog Casino—Baccarat" mobile application) and on behalf of GSL (for example, when he deliberately dodged Paradise's inquiry about whether to purchase any Aruze assets out of bankruptcy, refusing to advise Paradise and failing to disclose that Mr. Feng and Empire planned to purchase those assets). (ECF No. 69 at ¶¶ 103–05, 116, 125–28.)

Finally, Defendants argue that Plaintiffs fail to allege that Empire made any specific misrepresentations yet concede Plaintiffs sufficiently allege that Mr. Feng—who manages and leads Empire as its president—lied to Plaintiffs about the card shoes deployed at Commerce Casino through Empire. (ECF No. 136 at 12.) "Fraud claims against corporate or business entities require allegations that specifically identify names of individuals who made the misrepresentation, that they had authority to speak

1    for the corporation, and what was said or written and when." *Gage v. Cox Commc'ns Inc.*, No. 2:16-CV-

2    02708, 2017 WL 1536219, at *2 (D. Nev. Apr. 27, 2017). Plaintiffs' Complaint includes such allegations,

3    detailing the lease agreement between Empire and Commerce Casino for Plaintiffs' card shoes, Empire's

4    fraudulent misrepresentation made by its president Mr. Feng regarding the termination of that agreement,

5    Empire's conversion of Plaintiffs' card shoes and lease income, and Empire's rebranding of the unlawfully

6    retained equipment. (ECF No. 69 at ¶¶ 80–84, 140–43.)

7         Moreover, Defendants disregard the Complaint's allegations that Mr. Feng, on behalf of Empire,

8    actively ensured that Plaintiffs would believe that Empire was operating as the exclusive distributor of the

9    Paradise Group. (*See* ECF No. 69 at ¶¶ 33–37, 42–47, 62, 74–79.) To support these allegations, the

10   Complaint describes the curated and incomplete information Mr. Feng fed to Plaintiffs about Empire; how

11   he sought approval to engage in corporate actions for Empire (putting on a show that Plaintiffs had control

12   over Empire); and how he requested financial support for Empire and provided updates on Empire

13   activities consistent with Empire acting as the exclusive distributor. (ECF No. 69 at ¶¶ 33–34.) The

14   Complaint details how, in reliance on Mr. Feng's well-acted charade of Empire being LT Game's

15   exclusive distributor, Plaintiffs paid for Empire's office space and equipment, employees, testing and

16   certifications, legal fees, and licensing expenses, among other things. (ECF No. 69 at ¶¶ 44–46, 74–78.)

17   **4.    The Facts Alleged Also Support A Plausible Claim For Constructive Fraud**

18        The facts alleged in Plaintiffs' Complaint that are highlighted in the subsection above also support

19   a plausible claim for constructive fraud against Defendants. "Constructive fraud is the breach of some

20   legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its

21   tendency to deceive others or to violate confidence." *Long v. Towne*, 639 P.2d 528, 529–30 (Nev. 1982).

22   It is "characterized by a breach of duty arising out of a fiduciary or confidential relationship." *Id.* at 530.

23   In contrast to actual fraud, which "must affect the conscience and involve willful deception," constructive

24   fraud may be "committed by acts without regard to motive." 10 Stuart M. Speiser, Charles F. Krause &

25   Alfred W. Gans, *American Law of Torts* § 32:11 (2025).

26        Defendants' Motion briefly argues that Plaintiffs fail to allege the nature of each Defendants'

27   fiduciary duty or how those duties were breached, citing to one specific paragraph of the 320-paragraph

28   Complaint. (ECF No. 136 at 13 (citing ECF No. 69 at ¶ 250).) But Defendants ignore the specific

allegations detailing that Mr. Feng (the brother-in-law of Paradise's chairman and director Dr. Jay Chun), Mr. Kiely, and Mr. Allison all had individual fiduciary duties as corporate officers of Plaintiffs. (*See* ECF No. 69 at ¶¶ 25–28, 50–53, 63–68, 221, 225, 228, 232–33, 237, 283–90.) Indeed, Defendants admit that they each had a fiduciary duty to one or more Plaintiffs and that the Complaint plausibly alleges breach of these fiduciary duties. (*See* ECF No. 136-2.) Given Mr. Feng's position as president of Empire and Mr. Kiely's position as sole owner and operator of GSL, these entities breached a duty of confidence in their dealings with Plaintiffs. Moreover, the Complaint pleads facts supporting a finding that each of the Defendants had a "special relationship" giving rise to a duty to disclose even apart from Defendants' status as corporate fiduciaries. *Dow Chem,* 114 Nev. at 1486.

**5.    If Amendment Were Necessary, It Would Not Be Futile**

If necessary, Plaintiffs ask to be allowed to file a motion for leave to further amend to add evidence uncovered during discovery, including at least the following: (a) more specific discussion of the roles of the individual Defendants in the fraud, with Mr. Feng being at the center of it, and Mr. Kiely and Mr. Allison knowingly assisting him in numerous respects; (b) more discussion of specific acts and communications of each Defendant in furtherance of the fraud as have been revealed in discovery; (c) Mr. Feng, Mr. Allison, and Mr. Kiely all conceded in their depositions that they had failed to ever inform Plaintiffs of their elaborate competitive activities under Empire, asserting, for example, that they did not think it was important to mention; (d) Mr. Feng directed Mr. Allison and Mr. Kiely to lie to Plaintiffs about Commerce Casino's purported card shoe removal; (e) Mr. Feng directed Mr. Allison to conceal Empire's plans to acquire Aruze's assets; (f) Mr. Feng's false representations relating to an "LT Hub" opportunity; (g) Mr. Feng and Mr. Kiely's efforts to conceal "Empire" products from Plaintiffs despite Mr. Kiely being contractually bound to assign his innovations to LT Game; and (h) Mr. Feng's misrepresentations that caused at least one key LT Game employee to resign and join Empire.

**E.    Plaintiffs Sufficiently Plead Their Conspiracy Claim.**

**1.    Plaintiffs Plead Plausible Facts Showing Defendants Acted Together**

Plaintiffs plausibly allege that Defendants coordinated with one another and acted together to effect the fraudulent scheme detailed in the Complaint. To state a claim for conspiracy, plaintiffs must plausibly allege: "(1) two or more defendants acted in concert with the intent to accomplish an unlawful

objective for the purpose of harming another, and (2) damage resulted from the concerted acts." *So. Nev. Fire Protection Inc.*, 2022 WL 19795807, at \*2. Defendants again argue that the Complaint impermissibly groups Defendants together and that Plaintiffs' fraud claims (which form the basis of the alleged conspiracy) are insufficient. But again, Defendants ignore the specific allegations directed at each individual Defendant's involvement in the conspiracy, (*see* ECF No. 69 at ¶¶ 38, 42, 48, 69) and as discussed in Section IV.D, the Complaint alleges plausible fraud claims against all Defendants and provides specific factual allegations of each Defendant's involvement in the fraudulent scheme.

### 2.    The Intracorporate Conspiracy Doctrine Does Not Apply Because Defendants Cannot Use The Corporate Form To Shield Intentional Torts

The law is clear that a corporate manager can be held personally liable for their own intentional torts regardless of having acted within the corporate form. *Semenza v. Caughlin Crafted Homes*, 111 Nev. 1089, 1098 (1995) ("An officer of a corporation may be individually liable for any tort which he commits"). Despite this widely accepted principle, Defendants invoke the intracorporate conspiracy doctrine to make the paradoxical argument that they are immunized from conspiracy liability by virtue of having incorporated themselves. Yet, in the context of Plaintiffs' intentional tort claims such as fraud, Defendants have already conceded (as they must under the law) that Defendants can be personally liable for their own tortious conduct irrespective of having acted within the corporate form. This concept was invoked to override the intracorproate conspiracy doctrine in *Morella Consultants, LLC v. RCMP Enters., LLC*, 2011 U.S. Dist. LEXIS 101793, at \*35-36 (M.D. Pa. Sep. 9, 2011), wherein the court explained that "[s]ince the court has determined that plaintiffs have properly alleged that the corporate veil should be pierced, the individual defendants may be liable for corporate actions and any distinction created by the intra-corporate doctrine does not exist. Moreover, plaintiffs have alleged that the defendants engaged in fraudulent and negligent misrepresentation, as well as a number of violations of the RICO act, and that the individual defendants acted in combination and as part of a scheme to commit these violations. Plaintiffs have therefore stated a claim for civil conspiracy." Plaintiffs' conspiracy claim should likewise survive because the underlying torts are properly alleged against the individual Defendants irrespective of their participation in the corporate form (and without needing to engage in veil piercing analysis).[4]

---

[4] While the corporate veil could be pierced in this case on account of Defendants using Empire to commit

1
2
3
4
5
6
7
8
9
10

While some courts have indiscriminately applied the intracorporate conspiracy doctrine, others have declined to extend the intracorporate conspiracy doctrine where it would insulate obviously unlawful conduct. Notably, in *Webster v. Omnitrition Int'l*, 79 F.3d 776, 787 (9th Cir. 1996), the Ninth Circuit framed the intracorporate conspiracy doctrine as an offshoot of antitrust law whose applicability in other contexts must be assessed in view of the purpose of the law being asserted. As to the RICO conspiracy claims at issue in *Webster,* the court explained that "intracorporate conspiracies do threaten RICO's goals of preventing the infiltration of legitimate businesses by racketeers…We agree with the reasoning of our sister circuit, and hold that §1962(d) applies to intracorporate conspiracies. *Cf. United States v. Benny*, 786 F.2d 1410, 1416 (9th Cir.) (stating that the corporate form is the 'sort of legal shield for illegal activity that Congress intended RICO to pierce')."

11
12
13
14
15
16
17
18

In *Perrin v. Goodrich*, 2012 U.S. Dist. LEXIS 193046, at *22 (C.D. Cal. Mar. 6, 2012), the court declined to extend the intracorporate conspiracy doctrine to civil rights cases, explaining that "[*Webster*] has counseled that application of the doctrine is dependent upon the type of conduct the statute at issue is intended to proscribe." *See also Rashdan v. Geissberger*, 2011 U.S. Dist. LEXIS 3073, at *16 (N.D. Cal. Jan. 12, 2011) (same, explaining origin and purpose of doctrine in antitrust law); *see also Wagner v. Cty. of Plumas*, 2020 U.S. Dist. LEXIS 28449, at *16 (E.D. Cal. Feb. 18, 2020) ("The Ninth Circuit has stated that application of the doctrine outside the antitrust context may be limited depending on the public interest the particular prohibition on conspiracy is intended to protect.").

19
20
21
22
23
24
25
26

In declining to reject a claim that company officers conspired to commit fraud, the court in *Grayiel v. AIO Holdings, LLC*, 648 F. Supp. 3d 812, 873 n.15 (W.D. Ky. 2022) characterized the intracorporate conspiracy doctrine as a facet of antitrust law, and explained that "[defendants] point to no authority supporting the idea that the intracorporate conspiracy doctrine would bar [conspiracy to commit fraud] claims when the existence of the company itself serves to further the conspiracy to defraud." So to in the present case, Defendants conspiring to play-act that Empire was faithfully serving as LT Game's exclusive distributor was the very thing that induced Plaintiffs' reliance. For the reasons articulated in the foregoing

27
28

fraud, Plaintiffs need not pierce the corporate veil to hold the individual Defendants liable for their own tortious acts. *Nev-Tex Oil & Gas v. Precision Rolled Prods*., 105 Nev. 685, 686 (1989); *Pharmaplast S.A.E. v. Zeus Med. Holdings, LLC*, 2017 U.S. Dist. LEXIS 36227, at *11 (D. Nev. Mar. 14, 2017); *Harrison v. Portfolio Grp. Mgmt*., 2021 U.S. Dist. LEXIS 116561, at *11-12 (E.D. Cal. June 21, 2021).

PLAINTIFFS' OPP. TO 12(c) MOTION
Case No. 2:24-cv-00428-JCM-BNW

4904-8075-7643.3

cases – and because the individual Defendants are otherwise personally liable under the tort claims irrespective of the corporate form - the intracorporate conspiracy doctrine should not apply in this case.

### 3. The Intracorporate Conspiracy Doctrine Also Does Not Apply Because Defendants Acted Outside The Scope Of Their Employment At Empire

A further exception exists to the intracorproate conspiracy doctrine wherein the individuals were not acting within the scope of their employment at the company in question. *See Seibel v. PHWLV, LLC*, 2023 Nev. Dist. LEXIS 200, *12-13 (Nev. 8th Jud. Dist., Mar. 22, 2023). Here, the individual Defendants were not acting in the capacity of Empire employees when they engaged in their conspiracy: these were **LT Game managers** conspiring outside the scope of their employment with LT Game to usurp LT Game. Furthermore, discovery has shown that Mr. Allison was not even employed by Empire until 2022 (and even then appears to have not had any employment contract), while Mr. Kiely's role at Empire was kept scrupulously hidden from Plaintiffs as he was quietly paid under the table by another of Mr. Feng's companies, Solution Gaming. In light of these facts and unclean hands, Defendants cannot now retreat behind the premise that their actions stemmed from open and honest employment at Empire.

The Complaint also alleges other facts about Defendants' misconduct happening outside the scope of their capacities as Empire employees. The Complaint details misconduct by Mr. Kiely and Mr. Allison prior to joining Empire. (*See* ECF No. 69 at ¶¶ 38–42, 112–15.) Plaintiffs also allege that Defendants' misconduct involves entities beyond that of just Empire and GSL, for example, that Mr. Feng (through F2 TPS, LLC) utilized $1,005,000 of LT Game's funds without permission, that Mr. Feng and Mr. Allison (through Solution Gaming) fraudulently induced Paradise to sell LT Game equipment for a small margin, that Mr. Feng, Mr. Allison, and Mr. Kiely (through Playful Interactive) infringed and misappropriated Plaintiffs' Paradise Golden Frog source code, and that Mr. Feng, Mr. Allison, and Mr. Kiely (through Akkadian) usurped Plaintiffs' business opportunities and engaged in self-dealing. (ECF No. 69 at ¶¶ 116, 118–22, 125–33, 144–45.) Because Defendants engaged in this misconduct outside of their roles at Empire and for their own individual benefit, the intracorporate conspiracy doctrine does not apply.

### 4. If Amendment Is Necessary, It Will Not Be Futile

If necessary, Plaintiffs ask to be allowed to file a motion for leave to further amend to add evidence uncovered during discovery, including at least specific communications that relate to the fraudulent acts

1    referenced in Section IV.D, *supra,* which also make clear the role of each Defendant in the conspiracy;

2    and facts regarding the unclear status of Messrs. Kiely and Allison with respect to Empire prior to 2023.

3          **F.**    **Plaintiffs Sufficiently Plead Their RICO Claim**

4          **1.**    **The Factual Allegations Of The Complaint Make Clear That Plaintiffs Allege**

5                **Violations of 18 U.S.C. § 1962(c)–(d)**

6          Plaintiffs' Complaint alleges violations of 18 U.S.C. § 1962(c)–(d). Subsection (c) provides that

7    "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the

8    activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly,

9    in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of

10   unlawful debt." 18 U.S.C. § 1962(c) (emphasis added). Subsection (d) provides that "[i]t shall be unlawful

11   for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18

12   U.S.C. § 1962(d) (emphasis added).

13         The Complaint alleges (among other things) that the RICO Defendants "conducted or participated

14   in the conduct of the enterprise's affairs [i.e., Empire's affairs] and were employed by or affiliated with

15   the enterprise." FAC ¶ 271 (emphasis added). Further, the RICO Defendants "committed multiple

16   predicate acts…in furtherance of their scheme and in a manner that constitutes a pattern of racketeering

17   in violation of the RICO Act." *Id.* (emphasis added). This paragraph unambiguously alleges a violation

18   of 18 U.S.C. § 1962(c). And because Plaintiffs allege that all Defendants conspired together to effect their

19   fraudulent scheme, *see* FAC ¶¶ 254–60, the Complaint clearly alleges a violation 18 U.S.C. § 1962(d).

20   For these reasons, Defendants argument fails. But should the Court find otherwise, Plaintiffs respectfully

21   request leave to amend; this issue is readily curable.

22         **2.**    **The Factual Allegations of the Complaint Plausibly Allege Predicate Acts of**

23               **Trade Secret Misappropriation, Copyright Infringement, and Wire Fraud**

24         Plaintiffs' Complaint sufficiently alleges that the RICO Defendants carried out at least three of the

25   predicate acts listed as "racketeering activity" in 18 U.S.C. § 1961(1). While Defendants argue that "[t]he

26   only RICO predicate that Plaintiffs potentially invoke is wire fraud," Defendants fail to recognize that

27   trade secret misappropriation and copyright infringement are also predicate acts enumerated by the statute.

28   *See* 18 U.S.C. § 1961(1), defining "racketeering activity" as including any act which is indictable under

18 U.S.C. § 1832 (relating to trade secrets) and 18 U.S.C. § 2319 (relating to copyright).

Plaintiffs' Complaint also alleges predicate acts of wire fraud, which are listed as "racketeering activity" in 18 U.S.C. § 1961(1), which lists 18 U.S.C. § 1343, "relating to wire fraud." To allege wire fraud, Plaintiffs must plead "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud." *U.S. v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013). Defendants again argue that Plaintiffs fraud claims are insufficient under Rule 9(b), but as discussed in Section IV.D, the Complaint alleges plausible fraud claims against all Defendants, including the RICO Defendants, and provides specific factual allegations of each Defendant's involvement in the fraudulent scheme. And because the RICO Defendants are based in Nevada, (*see* ECF No. 69 at ¶¶ 6–9) while Paradise and LTG Limited are headquartered in Hong Kong and Macau respectively, (*see* ECF No. 69 at ¶¶ 2, 4) their communications effecting their fraudulent scheme would necessarily be made by interstate and/or foreign wire. (*See* ECF No. 69 at ¶¶ 33, 35, 75, 84, 109, 144.) Likewise, all transfers of funds that were fraudulently induced from Plaintiffs in China were necessarily made by interstate and/or foreign wire. (*See* ECF No. 69 at ¶¶ 35, 43, 46, 76.)

### 3.   The Predicate Acts That Plaintiffs Allege Are Sufficiently Related And Continuous To Constitute A Pattern Of Racketeering Activity

To constitute a pattern of racketeering activity, the RICO Act requires at a minimum that the defendants commit at least two predicate acts within a ten-year period. 18 U.S.C. § 1961(5). Plaintiffs must show that these acts are related and that they amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Plaintiffs sufficiently allege that the RICO Defendant's predicate acts of trade secret misappropriation, copyright infringement, and wire fraud were all related to and in furtherance of an overarching, fraudulent scheme to build up Empire to Plaintiffs' detriment using Plaintiffs' resources. These predicate acts amount to continued criminal activity, as the Complaint alleges misconduct ranging at least from 2017 to 2023—a seven-year fraudulent scheme. (*See, e.g.*, ECF No. 69 at ¶¶ 112–15, 153–55.) Again, Defendants unjustifiably disregard the Complaint's numerous allegations of fraudulent communications to Plaintiffs in China over a seven-year period. (*See supra,* Section IV.D.) Plaintiffs also allege the threat of continued trade secret misappropriation and copyright infringement, pointing to the ongoing deployment of Plaintiffs' card shoes at Commerce Casino.

(ECF No. 69 at ¶¶ 140–43, 183–84, 202–03, 216.)

### 4.    If Amendment Were Necessary, It Would Not Be Futile

If necessary, Plaintiffs ask to be allowed to file a motion for leave to further amend to add evidence uncovered during discovery, including at least the following: the facts and evidence supporting Plaintiffs' trade secret, copyright, fraud, and conspiracy claims referenced *supra*, and specific details regarding Plaintiffs' payments made to and on behalf of Defendants by wire. Indeed, all of Plaintiffs international wire payments have now been analyzed in great detail in Plaintiffs' damages expert report.

### G.    Defendants' Other Claims Are Properly Pled

Defendants concede that Plaintiffs plead plausible claims of conversion (Count 7), unjust enrichment (Count 9), breach of fiduciary duty (Count 10), breach of contract (Count 12), and tortious interference with contract (Count 13). (*See* ECF No. 136-2.) However, Defendants' Motion asks that the Court parse out which particular Plaintiff has standing to seek relief for each specific claim. (*See id.*)  This exercise is unnecessary, as Defendants concede that at least one of the three Plaintiffs has standing to seek the requested relief for each of these claims. (*See id.*) When there are multiple plaintiffs, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017); *see also Mecinas v. Hobbs*, 30 F.4th 890, 897 (9th Cir. 2022). "The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others." *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993).

Defendants admit that each Plaintiff may seek relief for funds wrongfully converted by Empire and Mr. Feng but argue that only LT Game may recover for the Smart Card Shoes fraudulently retained by Empire. (*See* ECF No. 136 at 14–15.) Defendants oddly claim no wrongful dominion over the card shoes, ignoring the allegation (now proven) that they refused to return them when asked. (ECF No. 69, ¶ 88.) Defendants further admit that LT Game and Paradise have plausibly alleged unjust enrichment but argue that LTG Limited has not alleged that it conferred any benefit on Empire and Mr. Feng.[5] (*See* ECF

---

[5] The Complaint sufficiently alleges that LTG Limited conferred a benefit on Empire and Mr. Feng. *See, e.g.*, FAC ¶¶ 16, 74–75, 277 (alleging LTG Limited's involvement in engaging and paying legal counsel for services that benefitted Empire and Mr. Feng). Defendants concede that LTG Limited has plausibly pled a claim against Empire and Mr. Feng for conversion of funds yet inconsistently argue that LTG Limited has not conferred any benefit on Empire or Mr. Feng. (*See* ECF No. 136-2.)

1    No. 136 at 20–21.) They admit that the Complaint sufficiently pleads that Mr. Feng owed a fiduciary duty

2    to Paradise, Mr. Kiely owed a fiduciary duty to LTG Limited, and all three individuals owed a fiduciary

3    duty to LT Game. (*See* ECF No. 136 at 21.) Defendants also admit that LT Game has standing to bring

4    breach of contract and tortious interference with contract claims, arguing only that Paradise and LTG

5    Limited lack standing for such claims. (*See* ECF No. 136 at 22–23.)

6         Defendants ask the Court to begin making decisions that affect the scope of Plaintiffs' claims and

7    damages based solely on the pleadings. But at the pleadings stage, Plaintiffs have done more than enough

8    to sufficiently allege that at least Paradise, LT Game, or LTG Limited have standing to bring these claims.

9    Particularly here, where fact discovery is complete and summary judgment motions are forthcoming, the

10   issues Defendants attempt to raise here are more appropriately resolved in a Rule 56 motion—where the

11   Court may consider the facts and evidence developed during discovery. *See Est. of Rodriguez*, 2020 WL

12   292179, at *2; *Perez*, 2014 WL 1796674, at *4; *Jones*, 2014 WL 12617038, at *1.

13        Defendants also challenge the aiding and abetting claim (Count 11) saying it does not specify the

14   Defendants' respective fiduciary duties. Yet, Defendants concede the sufficiency of Plaintiffs' claim for

15   breach of fiduciary duty, as discussed above (ECF No. 136 at 22), and Plaintiffs have otherwise pled duties

16   based on Defendants' trusted and special relationships (*supra*, Section IV.D.2). If needed, Plaintiffs could

17   add that each Defendant expressly admitted owing fiduciary duties in their depositions.

18   **V.    IN THE ALTERNATIVE, PLAINTIFFS REQUEST LEAVE TO AMEND**

19        If the Court were inclined to grant any part of Defendants' Motion, Plaintiffs respectfully ask to

20   be allowed to file a motion for leave to amend proposing a further amended complaint that will conform

21   the pleadings to the new facts learned in discovery. "Courts have discretion to grant leave to amend in

22   conjunction with 12(c) motions." *C.M. v. Jara*, 2023 WL 2955709, at *2 (D. Nev. Apr. 14, 2023). Courts

23   should "freely give leave to amend when there is no undue delay, bad faith, dilatory motive on the part of

24   the movant, undue prejudice to the opposing party by virtue of the amendment, or futility of the

25   amendment." *Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1118–19 (D. Nev. 2020) (cleaned up).

26        Without citing any statute or legal authority, Defendant disingenuously argue that dismissal should

27   be with prejudice because Plaintiffs "have already amended once with the benefit of extensive discovery."

28   (Motion, p.2.) Defendants' position is inappropriate. First, Defendants never previously raised any

challenges to pleadings in 22 months of litigation, waiting until after the close of discovery to file their Motion. Second, Plaintiffs' prior amendment to the complaint was only a narrow one, principally to try to include Yi Zhao as a co-defendant. Third, discovery proceeded for another 10 months after Plaintiff's Amended Complaint was filed, and included significant further document production and the critical depositions and admissions of all the major witnesses in case, all of which now further support the claims in the wake of the February 2025 amendment. (Ciardullo Dec. ⁋ 3.)

This is not a case in which the plaintiff delayed in seeking an amendment to add new allegations against defendant, causing prejudice. Indeed, Plaintiffs aver that no amendment is necessary, and if leave were granted, Plaintiffs would only be seeking to conform the existing claims to additional facts developed during discovery. Under these circumstances, "[a] dismissal without affording plaintiff an opportunity to amend to conform the allegations of the complaint to post[-]filing developments and evidence obtained during discovery may constitute an abuse of discretion." *Est. of Rodriguez v. City of Long Beach*, No. 2:18-cv-07522, 2020 WL 292179, at *2 (C.D. Cal. Jan. 21, 2020) (quoting Judge Virginia A. Phillips & Judge Karen L. Stevenson, *Federal Civil Procedure Before Trial*, § 9:341.1 (The Rutter Group 2019)).

This was also the same conclusion reached in the various cases cited *supra* in Section III, as well as other cases decided under analogous circumstances. *See, e.g., Gamble v. Synchrony Bank*, 2020 WL 4258646, at *4 (C.D. Cal. Apr. 30, 2020) (granting leave to amend following Rule 12(c) motion and explaining that any delay had been caused by the defendant having waited so long to make their motion); *Corbrus, LLC v. 8th Bridge Capital, Inc*., No. 2:19-cv-10182-CAS(AFMx), 2021 U.S. Dist. LEXIS 71516, at *28-29 (C.D. Cal. Apr. 12, 2021) (allowing plaintiff to amend even when Rule 12(c) motion was granted right before trial): *Tech. Licensing Corp. v. Technicolor USA, Inc*., 2010 U.S. Dist. LEXIS 113292, at *12 (E.D. Cal. Oct. 15, 2010) ("any delay in amendment stems from defendant's decision to file a motion for judgment under Rule 12(c) after the pleadings closed").

## VI.    **CONCLUSION**

Plaintiffs respectfully request denial of Defendants' Motion, whether as untimely, or on the merits. In the alternative, Plaintiffs ask that they be allowed to file a motion for leave to amend to conform the pleadings to the evidence that has been developed in a year and half of diligent discovery.

1    DATED:  January 28, 2026                    Respectfully submitted,

2

3                                                */s/ Jessica M. Lujan*

4                                                OLIVER J. PANCHERI, ESQ.
                                                 Nevada Bar No. 7476
5                                                JESSICA M. LUJAN, ESQ.
                                                 Nevada Bar No. 14913
6                                                **SPENCER FANE LLP**
                                                 300 South Fourth Street, Suite 1600
7                                                Las Vegas, Nevada 89101
                                                 Telephone: (702) 408-3400
8                                                Fax: (702) 938-8648
                                                 Email: opancheri@spencerfane.com
9                                                          jlujan@spencerfane.com

10

11                                               JEAN-PAUL CIARDULLO, ESQ.  (*pro hac vice*)
                                                 California Bar No. 284170
12                                               **FOLEY & LARDNER LLP**
                                                 S555 Flower Street, Suite 3300
13                                               Los Angeles, California 90071
                                                 Tel: (213) 972-4500
14                                               Fax: (213) 486-0065
                                                 Email: jciardullo@foley.com
15

16                                               ROBERT T. STEWART, ESQ.
                                                 Nevada Bar No. 13770
17                                               STEWART RAY NELSON, ESQ. (*pro hac vice*)
                                                   Utah Bar No. 17286
18                                               HANNAH L. ANDREWS, ESQ. (*pro hac vice*)
                                                   Utah Bar No. 18157
19                                               **FOLEY & LARDNER LLP**
                                                 95 South State Street, Suite 2500
20                                               Salt Lake City, Utah 84111
                                                 Tel.: (801) 401-8900
21                                               Email: rtstewart@foley.com
22                                                        srnelson@foley.com
                                                          handrews@foley.com
23

24                                               Dariush Keyhani (*pro hac vice*)
                                                 **KEYHANI LLC**
25                                               1050 30th Street NW
                                                 Washington, DC 20007
26                                               Tel: (202) 748-8950
                                                 Email: dkeyhani@keyhanillc.com
27

28

PLAINTIFFS' OPP. TO 12(c) MOTION
Case No. 2:24-cv-00428-JCM-BNW

4904-8075-7643.3