PATRICK J. REILLY, ESQ.
**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, 16th Floor
Las Vegas, Nevada  89106
Telephone:     (702) 382-2101
Facsimile:      (702) 382-8135
preilly@bhfs.com

MARK T. OAKES, ESQ. (*pro hac vice*)
ZACHARY P. MCHENRY, ESQ. (*pro hac vice*)
ETHAN GLENN, ESQ. (*pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Blvd., Suite 1100
Austin, Texas  78701-4255
Telephone:     (512) 474-5201
Facsimile:      (512) 536-4598
mark.oakes@nortonrosefulbright.com
zach.mchenry@nortonrosefulbright.com
ethan.glenn@nortonrosefulbright.com

BRIAN W. STOLARZ, ESQ. (*pro hac vice pending*)
**NORTON ROSE FULBRIGHT US LLP**
799 9th Street NW, Suite 1000
Washington, DC  20001-4501
Telephone:     (202) 662-0309
Facsimile:      (202) 662-4643
brian.stolarz@nortonrosefulbright.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PARADISE ENTERTAINMENT LIMITED, a Bermuda corporation; LT GAME, INC., a Nevada corporation; and LT GAME LIMITED, a British Virgin Islands corporation, | Case No. 2:24-cv-00428-JCM-BNW |
| *Plaintiffs*, | |
| v. | **REPLY IN SUPPORT OF RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS** |
| EMPIRE TECHNOLOGICAL GROUP LIMITED, a Nevada corporation; GAMING SPECIALIZED LOGISTICS LLC, a Nevada limited liability company; LINYI FENG, an individual; ROY KELCEY ALLISON, an individual; DARYN KIELY, an individual, | |
| *Defendants*. | |

### TABLE OF CONTENTS

I.        INTRODUCTION ............................................................................................... 1

II.       LEGAL STANDARDS....................................................................................... 1

III.      LEGAL ARGUMENT ....................................................................................... 2

   a)      Defendants' Motion is Timely and the Court Should Resolve it on the Merits............. 2

   b)      Plaintiffs' Pleaded Claims are Not Facially Plausible and Should be Dismissed.......... 4

      i.     Counts 1 and 2: Federal and State Trade Secret Misappropriation.............................. 5

      ii.    Count 3: Copyright Infringement................................................................. 6

      iii.   Counts 4 and 5: Fraud and Constructive Fraud............................................ 7

      iv.    Count 6: Conspiracy................................................................................... 8

      v.     Count 7: Conversion.................................................................................. 8

      vi.    Count 8: RICO ........................................................................................... 9

      vii.   Count 9: Unjust Enrichment....................................................................... 10

      viii.  Count 10: Breach of Fiduciary Duty.......................................................... 10

      ix.    Count 11: Aiding and Abetting ................................................................... 11

      x.     Counts 12 and 13: Breach of Contract and Tortious Interference ............................. 11

   c)      The Court Should Deny Plaintiffs' Motion for Leave to Amend. ............................... 12

IV.       CONCLUSION ................................................................................................ 12

CERTIFICATE OF SERVICE .................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adherence v. CVS Pharmacy, Inc.*,
  No. 2:24-CV-1590, 2025 WL 1798883 (D. Nev. June 25, 2025) (Mahan, J.) ........................ 6

*Amer. Fire & Cas. Co. v. Unforgettable Coatings, Inc.*,
  No. 2:21-CV-1555, 2023 WL 2930042 (D. Nev. Apr. 13, 2023) (Mahan, J.) ............. 4, 11, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 2

*Backman v. Goggin*,
  No. 2:16-CV-1108, 2017 WL 1015008 (D. Nev. Mar. 15, 2017) (Mahan, J.) ...................... 10

*C.C. v. Jamal F. Rashid, et al.*,
  No. 2:23-CV-02056, 2026 WL 252548 (D. Nev. Jan. 29, 2026) (Navarro, J.) ...................... 9

*Carmen v. San Francisco Unified Sch. Dist.*,
  982 F. Supp. 1396 (N.D. Cal. 1997) ..................................................................................... 12

*Catholic League for Religious & Civ. Rts. v. City & Cnty. of San Francisco*,
  624 F.3d 1043 (9th Cir. 2010) ................................................................................................. 2

*Daisey Tr. by & through Haddad v. Fed. Hous. Fin. Agency*,
  No. 24-6433, 2026 WL 17252 (9th Cir. Jan. 2, 2026) ........................................................... 2

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) ................................................................................................... 2

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ................................................................................................... 2

*Foman v. Davis*,
  371 U.S. 178 (1962) ............................................................................................................... 12

*Gopher Media LLC v. Melone*,
  No. 3:21-CV-01909, 2023 WL 8790266 (S.D. Cal. Dec. 19, 2023) ....................................... 4

*Jaeger v. Howmedica Osteonics Corp.*,
  No. 15-CV-00164, 2016 WL 520985 (N.D. Cal. Feb. 10, 2016) ........................................... 3

*Leigh v. Jewell*,
  No. 3:11-CV-00608, 2014 WL 31675 (D. Nev. Jan. 3, 2014) (McKibben, J.) ................... 3, 4

*Levy Ad Grp., Inc. v. Chubb Corp.*,
  519 F.Supp.3d 832 (D. Nev. 2021) (Dorsey, J.) ................................................................... 12

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) (en banc).............................................................................. 12

iv

*Miller v. Rykoff-Sexton, Inc.*,
    845 F.2d 209 (9th Cir. 1988)..................................................................................... 12

*Morgan v. Twitter, Inc.*,
    No. 2:22-CV-00122-MKD, 2023 WL 3271147 (E.D. Wash. May 5, 2023) ........................... 2

*MyKey Tech., Inc. v. Intelligent Computer Sols., Inc*.,
    No. 2:13-ML-02461, 2016 WL 11783845 (C.D. Cal. Sept. 26, 2016) ................................... 3

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993)........................................................................................ 7

*New England Life Ins. Co. v. Lee*,
    No. 2:14-CV-1797, 2015 WL 1413391 (D. Nev. Mar. 27, 2015) (Mahan, J.) ............ 8, 10, 11

*Perez v. Wells Fargo & Co.*,
    75 F.Supp.3d 1184 (N.D. Cal. 2014) ........................................................................ 3

*Richardson v. Reliance Nat. Indem. Co.*,
    No. C 99-2952, 2000 WL 284211 (N.D. Cal. Mar. 9, 2000) ........................................ 10

*Riser v. Cent. Portfolio Control Inc*.,
    No. 3:21-CV-05238-LK, 2022 WL 815850 (W.D. Wash. Mar. 17, 2022)............................. 3

*Stillwagon v. City of Delaware*,
    175 F.Supp.3d 874 (S.D. Ohio 2016).......................................................................... 4

*TCutima, Inc. v. Bua Grp., LLC*,
    No. 2:24-CV-1130, 2025 WL 587041 (D. Nev. Feb. 24, 2025) (Mahan, J.)........................... 5

*U.S. v. Liu*,
    731 F.3d 982 (9th Cir. 2013)..................................................................................... 9

*Vail v. City of New York*,
    68 F.Supp.3d 412 (S.D.N.Y. 2014)............................................................................. 3

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)............................................................................... 7, 8

*Wisdom v. U.S.*,
    No. 3:06-CV-00094, 2010 WL 3981712 (D. Nev. Oct. 8, 2010) (Pro, J.) ............................ 8

**Rules and Statutes**

18 U.S.C. § 1832 ................................................................................................... 9

18 U.S.C. § 1961 ................................................................................................... 9

FED. R. CIV. P. 15 .................................................................................................. 12

Local Rule 15-1..................................................................................................... 12

N.R.S. 600A.030 ................................................................................................... 9

1

2

## I.    INTRODUCTION

3

Defendants moved for judgment under Rule 12(c) (ECF No. 136, "Motion") to narrow the

4

issues for summary judgment and trial.  Contrary to Plaintiffs' Response's (ECF No. 149,

5

"Response") histrionic attempts to paint the Motion as a last-ditch effort to avoid evidentiary

6

scrutiny, the Motion will not end this case if granted.  If the Court grants Defendants' motion

7

in full, Plaintiffs' core claims will survive, this case will continue, and all the discovery Plaintiffs

8

point to will not have been in vain.  Instead, this motion simply eliminates Plaintiffs' legally

9

deficient claims that clutter this litigation.  And that de-cluttering is necessary—Plaintiffs' live

10

complaint is a hodge-podge of "Defendants-unlawfully-harmed-me" claims that do not pass

muster and do not meet the standards required of federal pleadings.

11

In response to the Motion, Plaintiffs impermissibly point to unsupported contentions about

12

"discovery" and "evidence" to distract from the issues at hand.    In doing so,

13

Plaintiffs fundamentally misunderstand the distinction between Rule 12 and Rule 56 analyses and

14

invite the Court to overlook their deficient pleadings based on promises that discovery has

15

vindicated their claims.   But opposition briefs are for defending complaints, not re-writing

16

them, and proper pleadings must precede merits.  If Plaintiffs wanted to cure their pleading

17

deficiencies, they could have attached a proposed amended complaint to their Response.  They

18

did not.  Because they did not, their request for leave does not adhere to the local rules and

19

they are stuck defending their operative pleading.   The question before this Court is

20

straightforward: does the First Amended Complaint state plausible claims for relief?  It does not,

21

and no amount of impermissible references to matters outside the pleadings can obscure that.

22

Defendants' motion should be granted.

23

## II.    LEGAL STANDARDS

24

As a general matter, Plaintiffs contend that Defendants' Motion should be denied because

25

it allegedly turns on "factual plausibility" and jurisdictional standing.  *See, e.g.*, Resp. at 11.  On

26

that basis, Plaintiffs ask the Court to allow their deficient claims to survive until summary

27

judgment.  This misses the point: Defendants challenge the ***facial***, not the factual, plausibility of

28

Plaintiffs' claims.  The Court should not be distracted by Plaintiffs' hand-waving; facial plausibility

falls squarely under Rule 12.  To survive a motion to dismiss, "a complaint must contain sufficient

1

1   factual matter, accepted as true, to state a claim to relief that is ***plausible*** on its ***face***." *Ashcroft v.*
2   *Iqbal*, 556 U.S. 662, 678, (2009) (cleaned up, emphasis added).  Facial plausibility only exists if
3   Plaintiffs plead sufficient facts so as to allow the Court to draw a reasonable inference that
4   Defendants are liable for the alleged misconduct.  *See Twombly*, 550 U.S. at 555.  This analysis is
5   properly conducted under Rule 12, not Rule 56.

6       The Court should also dismiss any deficiently-pleaded claims regardless of whether
7   Plaintiffs collectively have standing to assert the claim.  As the Ninth Circuit has explained,
8   "standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, [cannot]
9   be used to disguise merits analysis, which determines whether a claim is one for which relief can
10  be granted if factually true." *Catholic League for Religious & Civ. Rts. v. City & Cnty. of San*
11  *Francisco*, 624 F.3d 1043, 1049 (9th Cir. 2010); *see also Daisey Tr. by & through Haddad v. Fed.*
12  *Hous. Fin. Agency*, No. 24-6433, 2026 WL 17252, at *7 (9th Cir. Jan. 2, 2026) (affirming lower
13  court's finding of standing ***and*** dismissal for failure to state that claim).  "Whether a claim can
14  survive under Rule 12(b)(6) is an ***entirely separate inquiry*** from the standing inquiry." *Morgan v.*
15  *Twitter, Inc.*, No. 2:22-CV-00122-MKD, 2023 WL 3271147, at *11 (E.D. Wash. May 5, 2023)
16  (emphasis added).  "Accordingly, a district court can conclude that the requirements of Article III
17  standing are satisfied prior to dismissing claims in the same case under Rule 12(b)(6)." *Id.* (citing
18  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 611 (9th Cir. 2020) (finding that the
19  plaintiffs had standing but affirming dismissal of some claims under Rule 12(b)(6)).[1]  Under this
20  standard, it is proper for the Court to parse and dismiss claims that lack necessary elements.

21                          **III.    LEGAL ARGUMENT**
22  **a)  Defendants' Motion is Timely and the Court Should Resolve it on the Merits.**

23      The Court has already solicited briefing on the Motion's timeliness and declined to deny it
24  on those grounds.  *See* ECF No. 146.  Plaintiffs have re-raised the issue in their Response.  *See*
25  Resp. at 10.  To avoid repeating briefing, Defendants incorporate and reference their prior
26  arguments and evidence regarding timeliness here.  *See* ECF No. 143.  To summarize:  as the Court

27  _____
    [1] *See also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) (finding standing but
28  affirming dismissal of the claim under Rule 12(b)(6)).

                                        2

has already recognized, the primary issue is whether to deny the Motion *"**without prejudice**."* ECF No. 142 at 4 (emphasis added); *see also* Resp. at 9. Plaintiffs' argument rests on the faulty premise that a pre-expert discovery, pre-summary-judgment Rule 12(c) motion is categorically untimely. The Federal Rules and relevant caselaw say otherwise.

Rule 12(c) specifically authorizes a motion "after the pleadings are closed," subject to the sole qualification that it be filed "early enough not to delay trial." FED. R. CIV. P. 12(C). Here, no trial date has been set, and dispositive motions are not due until March 27, 2026. *See* ECF No. 103. With no trial to delay, the motion will be fully briefed and ripe for decision well before any trial could occur. As this Court has previously recognized, "a Rule 12(c) motion may be filed at any time as long as it does not **unduly** delay proceedings." *Leigh v. Jewell*, No. 3:11-CV-00608, 2014 WL 31675, at *6 (D. Nev. Jan. 3, 2014) (McKibben, J.). Other courts facing similar circumstances have refused to deny Rule 12(c) motions as untimely, even if filed after the close of discovery.[2]

Rule 12(c)'s text makes clear that timeliness turns on whether trial would be delayed, not on whether discovery has closed or summary judgment approaches. Plaintiffs' suggestion that Defendants' motion is untimely because it was filed after the close of fact discovery is incorrect (Plaintiffs produced over two hundred documents **today**) and is a red herring that courts have rejected. *See, e.g.*, *Perez v. Wells Fargo & Co.*, 75 F.Supp.3d 1184, 1190 (N.D. Cal. 2014) (noting that the idea that a Rule 12(c) motion cannot be proper after substantial discovery has taken place "**does not appear to be supported by Rule 12(c)**" (emphasis added)).[3]

---

[2] *See, e.g.*, *MyKey Tech., Inc. v. Intelligent Computer Sols., Inc.*, No. 2:13-ML-02461, 2016 WL 11783845, at *3 (C.D. Cal. Sept. 26, 2016) (reasoning that, because "trial [was] not scheduled to commence until next year," defendant's motion would not "result in a delay of trial and [was] therefore timely."); *Vail v. City of New York*, 68 F.Supp.3d 412, 422–23 (S.D.N.Y. 2014) (rejecting timeliness argument, reasoning that "expert discovery had not yet occurred[] and a trial date had not yet been set," and thus "Defendant's Motion will have no perceptible effect on any yet-to-be-scheduled trial"); *see also Jaeger v. Howmedica Osteonics Corp.*, No. 15-CV-00164, 2016 WL 520985, at *6 (N.D. Cal. Feb. 10, 2016) (finding Rule 12(c) motion timely where trial date was over seven months away: "[m]ost importantly, trial is not scheduled to occur in this matter until September 26, 2016. Dkt. No. 58. Consideration of this motion under Rule 12(c) does not risk delaying the trial, *which is the only stated basis to facially reject a motion for judgment on the pleadings*." (emphasis added))

[3] *See also Riser v. Cent. Portfolio Control Inc.*, No. 3:21-CV-05238-LK, 2022 WL 815850, at *4 (W.D. Wash. Mar. 17, 2022) (finding motion to dismiss was timely even though it was filed seven

Plaintiffs' contention that the motion is untimely because the dispositive motion deadline is months away is equally unfounded.  This Court has previously rejected such reasoning, finding a Rule 12(c) motion that was filed less than one month prior to summary judgment was still timely. *See Leigh v. Jewell*, No. 3:11-CV-00608, 2014 WL 31675, at *6 (D. Nev. Jan. 3, 2014) (McKibben, J.).  In fact, courts have even found that Rule 12(c) motions filed *after* the dispositive motion deadline are timely.  *See, e.g.*, *Gopher Media LLC v. Melone*, No. 3:21-CV-01909, 2023 WL 8790266, at *6 (S.D. Cal. Dec. 19, 2023).  And even if the Court takes the status of discovery into consideration, the Court should know that discovery activity is ongoing.  Today, February 4, 2026, Plaintiffs produced 232 additional documents to Defendants.  There may be other document productions coming after that, as the Parties are still negotiating certain categories of documents.

**b) Plaintiffs' Pleaded Claims are Not Facially Plausible and Should be Dismissed.**

Plaintiffs' Response fails to remedy their pleading deficiencies.  Instead, Plaintiffs double down on conclusory allegations and formulaic recitations of elements and arguing that the progression of the case should excuse Plaintiffs from the federal pleading standards.  But this Court has recognized that discovery cannot save an improperly pleaded claim.  *Amer. Fire & Cas. Co. v. Unforgettable Coatings, Inc.*, No. 2:21-CV-1555, 2023 WL 2930042 (D. Nev. Apr. 13, 2023) (Mahan, J.) ("***No discovery changes the fact that the counterclaims, on their face, do not state a claim for relief that survives judgment on the pleadings***.") (emphasis added), *aff'd*, No. 23-15727, 2024 WL 2127032 (9th Cir. May 13, 2024).  Allowing deficient claims to survive because activity has occurred would incentivize parties to disregard Rule 8's pleading requirements, race through discovery, and then hold tight, delay, and defer all challenges to summary judgment.  The Federal Rules' pleading standards and its avenues to challenge pleadings exist to prevent exactly that.  The Court should grant Defendants' motion and dismiss the deficient claims.[4]

---

months after the last pleading was filed and around four months before the dispositive motion deadline).  Even 'extensive' discovery does not change the Court's analysis.  *See Stillwagon v. City of Delaware*, 175 F.Supp.3d 874, 891-892 (S.D. Ohio 2016) (finding that a Rule 12(c) motion filed after "extensive" discovery had taken place was still timely because the party filed it in advance of "even the dispositive motion deadline.").

[4] The claims at issue are identified in Appendix 2 to the Motion.  *See* ECF No. 136-2.

### i. Counts 1 and 2: Federal and State Trade Secret Misappropriation

Defendants moved to dismiss Plaintiffs' trade secret claims because the Complaint fails to identify what trade secrets are at issue. *See* Mot. 6-8. A necessary element of a trade secret misappropriation claim is the existence (and identification) of the trade secret. *See TCutima, Inc. v. Bua Grp., LLC*, No. 2:24-CV-1130, 2025 WL 587041, at *3 (D. Nev. Feb. 24, 2025) (Mahan, J.) (citation omitted). Plaintiffs fail to plead this element. Instead, they allege a laundry list of generic categories, making it impossible to determine the boundaries of the trade secrets at issue. Merely alleging "source code" fails to identify any specific trade secret; Plaintiffs have likely **hundreds** of games during the relevant period that contain source code. Plaintiffs' claims also fail because they rest on conclusory allegations that do not actually plead misappropriation. Instead, Plaintiffs plead only "on information and belief." *See* FAC ¶¶ 88-90. But that does not suffice under federal pleading standards. Nor does Plaintiffs' inverse allegation that it would have been "impossible" for Empire and GSL **not** to misappropriate trade secrets. Plaintiffs therefore fail to allege the necessary elements; the claim should be dismissed.

Plaintiffs' response goes from bad to worse, claiming that they sufficiently defined their trade secrets as "the casino gaming software and technology . . . [and] the proprietary source code and operation of the LT Game card shoes . . ." Resp. at 13. Plaintiffs also assert that "Defendants know" what the trade secrets are, yet fail to identify for the Court what Defendants allegedly know. *Id*. at 14. Plaintiffs catalog grievances that track their claims but ultimately still fail to identify the trade secrets at issue. The only time Plaintiffs get close to alleging a specific trade secret is when they make non-specific references to (1) the LTShoe source code and (2) the Paradise Golden Frog slot machine source code.[5] No other trade secrets are actually identified.

Plaintiffs also fail to plead misappropriation adequately. While they point to allegations about how each Defendant accessed trade secrets, they revert to impermissible group pleading when discussing misappropriation, arguing that "**Defendants'** subsequent use of Plaintiffs' trade secrets, such as the alleged use of Plaintiffs' trade secrets in **Empire's** card shoe and Golden Frog Baccarat

---

[5] To the extent Plaintiffs' trade secret claims survive dismissal, they should be limited to the source code from these two products.

products," constitutes misappropriation.  Resp. at 15 (emphasis added).  The deficiency is clear: Plaintiffs seek to hold all Defendants liable for the acts of one Defendant (Empire).  It is entirely unclear how, for instance, GSL—a separate *consulting* company—could plausibly have used Plaintiffs' trade secrets in *Empire's* products.  The claim should be dismissed.

### ii.    Count 3: Copyright Infringement

Defendants moved to dismiss LT Game, Inc.'s copyright infringement claim because, by Plaintiffs' own allegations, LT Game, Inc. has *never* held an interest in the copyrights at issue.  *See* FAC ¶¶ 57, 60, 208; *see also* Mot. at 9.  A necessary element of a claim for copyright infringement is that the party asserting the claim must have ownership of the copyright.  *See Adherence v. CVS Pharmacy, Inc.*, No. 2:24-CV-1590, 2025 WL 1798883, at *2 (D. Nev. June 25, 2025) (Mahan, J.) (citation omitted).  Because LT Game, Inc. never owned the copyrights, its claim lacks a necessary element and is facially implausible.  Defendants also moved to dismiss Paradise's and LT Game Ltd.'s claims because Plaintiffs failed to allege which party owned the copyrights at which time.  In response, Plaintiffs argue that Paradise owns "all rights" in the copyrights and "has the right to sue for past infringement."  Resp. at 10.  By this logic, if Paradise has the right to sue for past infringement, then LT Game Ltd. does *not*.  Its claim thus lacks an essential element, is facially implausible, and should be dismissed.

Rather than denying Defendants' arguments, Plaintiffs embrace their improper group pleading argument, arguing their Complaint establishes "Defendants' collective infringement."  *See* Resp. at 16.  But "collective" is just another word for "group," and Plaintiffs cannot cobble together a single copyright claim from separate allegations against separate Defendants.  For example, Plaintiffs argue that GSL is liable for copyright infringement because it "provided consulting services to Empire," which sold and distributed allegedly infringing products.  Resp. at 16.  According to Plaintiffs, providing consulting services makes GSL liable for *Empire's* alleged infringement.  This theory is not facially plausible; Plaintiffs must allege that GSL copied the protected expression itself, not just that it was involved with a company that did.  *See Adherence*, 2025 WL 1798883 at *2.  The claim is deficient and should be dismissed.

### iii.    Counts 4 and 5: Fraud and Constructive Fraud

All Defendants except Mr. Feng moved to dismiss Plaintiffs' fraud and constructive fraud claims.  Mot. at 10-13.  Claims that sound in fraud—which include both fraud and constructive fraud—must be pleaded in accordance with Rule 9(b)'s heightened pleading standard.  *See Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).  To meet that standard, "[a]verments of fraud must be accompanied by "the *who*, *what*, *when*, *where*, and *how*" of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis added).  Plaintiffs' claims fail to meet this standard and impermissibly treat Defendants as a single unit, attributing individual acts to the group as a whole.  If Plaintiffs do not make specific allegations against each Defendant, the claim should be dismissed.

Plaintiffs' response summarizes their fraud claims but fail to identify specific fraudulent statements as Rule 9(b) requires.  Instead, Plaintiffs assert—without citation to their complaint—that "each of Defendants purported to tell Dr. Chun and Mr. Chan" certain alleged misrepresentations and that Defendants reported "business as usual." Resp. at 18.  Along with not being pleaded in the Complaint, these assertions undermine Plaintiffs' claim that they could not plead the ""who, what, when, where, and how" required under Rule 9(b).  The fact that Plaintiffs did not plead those allegations is revealing.   Plaintiffs also argue that Mr. Feng's familial relationship with Dr. Jay Chun created a fiduciary relationship, but cite no authority for this proposition.  Plaintiffs cite authority recognizing fiduciary duties in "special relationship[s]," but step on a rake when they do.  Plaintiffs acknowledge that such relationships arise only from "the existence of *material* facts within the knowledge of [Mr. Feng] and *not* within the fair and reasonable reach of Plaintiffs."  Resp. at 19 (emphasis added).  But Plaintiffs fail to identify what material facts would form such a relationship or explain how those facts were beyond Plaintiffs' reach.[6]  In short, they don't connect their argument to their allegations, exposing their claims as deficient.

---

[6] Plaintiffs also suggest that the supposed "special relationship" is between Mr. Feng and Dr. Jay Chun, who is not a party to this case.

### iv. Count 6: Conspiracy

All Defendants moved to dismiss Plaintiffs' conspiracy claims because Plaintiffs failed to allege the essential elements in a non-conclusory manner and impermissibly grouped Defendants together as well. Because fraud forms the basis of Plaintiffs' alleged conspiracy (*see* FAC ¶ 255), their pleadings must satisfy Rule 9(b)'s heightened standard. *See Wisdom v. U.S.*, No. 3:06-CV-00094, 2010 WL 3981712, at *7 (D. Nev. Oct. 8, 2010) (Pro, J.). In other words, Plaintiffs' conspiracy claims must also allege the "who, what, when, where, and how" required of fraud claims. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis added). Plaintiffs fail to do so, and the claims should be dismissed.

In response, Plaintiffs misapply the intracorporate conspiracy doctrine, cite out-of-circuit authority, and rely on a veil-piercing case—a theory not alleged here—to argue their conspiracy claim should survive. Yet they do not address the core of Defendants' challenge: their allegations are conclusory. And even if Plaintiffs could pursue individual fraud claims against each Defendant, that does not automatically permit a conspiracy claim to be pleaded on top of that. Plaintiffs' arguments also impermissibly attempt to introduce unsupported factual contentions and allegations of "unclean hands." If Plaintiffs wanted to make that argument, they could and should have attached a proposed amended complaint. They did not, and must defend the Complaint they filed.

### v. Count 7: Conversion

Empire and Mr. Feng moved to dismiss Paradise's and LT Game Ltd.'s conversion claims relating to the LTShoe products because, according to Plaintiffs' own allegations, only LT Game, Inc. owned those products. *See* FAC ¶ 81. A necessary element of a conversion claim is that it must involve personal property. *See New England Life Ins. Co. v. Lee*, No. 2:14-CV-1797, 2015 WL 1413391, at *8 (D. Nev. Mar. 27, 2015) (Mahan, J.) (citation omitted). Because only LT Game, Inc. owns the LTShoes, only LT Game, Inc. can assert a conversion claim. Paradise's and LT Game Ltd.'s claims thus lack an essential element, are facially implausible, and should be dismissed.

### vi. **Count 8: RICO**

Defendants moved to dismiss Plaintiffs' RICO claim because Plaintiffs failed to specify which RICO subsection they invoke, did not identify proper predicate acts, and did not adequately allege a pattern of racketeering activity. *See* Mot. at 16. The deficiencies begin with the basics. Plaintiffs' Complaint cites only "18 U.S.C. § 1961, et seq" without specifying which of the four substantive RICO subsections applies. *See* Resp. at 20; FAC at 47 (Count Eight). Courts routinely dismiss RICO claims that fail to identify which subsection forms the basis of the claim. *See* Mot. at 16. It is black-letter law that a plaintiff may not amend its Complaint through opposition briefing. *E.g., C.C. v. Jamal F. Rashid, et al.*, No. 2:23-CV-02056, 2026 WL 252548, at *7, n.7 (D. Nev. Jan. 29, 2026) (Navarro, J.). Nor can Plaintiffs expand the universe of predicate acts through opposition briefing; Plaintiffs' Response now asserts that the RICO claim rests on three categories of predicate acts: (i) trade secret misappropriation; (ii) copyright infringement; and (iii) wire fraud. Resp. at 22. Again, the Complaint tells a different story, alleging only that "the RICO Defendants committed multiple predicate acts, *i.e.*, crimes, listed in 18 U.S.C. § 1961(1), including but not limited to wire fraud" (FAC ¶ 271), with the substantive allegations focusing on ""misrepresentations, half-truths, and material omissions." *See id*. ¶¶ 270-73. Plaintiffs' RICO claim thus rises or falls on the wire fraud predicate acts actually pleaded in the Complaint.

But even if the Court considered trade secret misappropriation and copyright infringement as predicate acts, Plaintiffs' newly-minted theory would still fail because the criminal statutes Plaintiffs invoke require elements the Complaint does not establish. Criminal trade secret misappropriation requires proof that the defendant intended to injure the trade secret's owner. *See* 18 U.S.C. § 1832(a) (requiring defendant acted "intending or knowing that the offense will, injure any owner of that trade secret"). In contrast, the civil trade secret claims require only misappropriation through "improper means." *See* N.R.S. 600A.030(2). The gap between civil and criminal copyright infringement is even wider; civil copyright infringement is essentially a strict liability offense, whereas criminal copyright requires "proof of the defendant's specific intent to violate someone's copyright." *See U.S. v. Liu*, 731 F.3d 982, 988–90 (9th Cir. 2013).

Plaintiffs' claim that their RICO allegations establish continuity because they allege a "seven-year fraudulent scheme" is similarly misleading. *See* Resp. at 23. RICO requires a pattern of ***predicate*** acts—not merely a long-running business dispute where the alleged predicate acts are actually clustered within a fraction of that time.[7] *See* Mot. at 19-20 (Plaintiffs' specified predicate acts span approximately seven months). Plaintiffs' vague invocation of "recurring progress meetings" where Defendants allegedly reported "business as usual" also cannot rescue their pattern theory, particularly because they were not alleged in the Complaint. In short, Plaintiffs' claim is a commercial dispute dressed in RICO clothing. It should be dismissed.

### vii.    Count 9: Unjust Enrichment

Empire and Mr. Feng moved to dismiss LT Game Ltd.'s unjust enrichment claim because, by Plaintiffs' own allegations, only Paradise and LT Game, Inc. transferred funds to these Defendants. *See* FAC ¶ 277; *see* Mot. at 20. A necessary element of an unjust enrichment claim is that LT Game Ltd. must have conferred a benefit on the Defendants. *See Backman v. Goggin*, No. 2:16-CV-1108, 2017 WL 1015008, at *4 (D. Nev. Mar. 15, 2017) (Mahan, J.) (citation omitted). The Complaint contains ***no*** allegation that LT Game Ltd. transferred any funds to either Defendant; because it didn't, the claim is missing an essential element and is facially implausible.

### viii.    Count 10: Breach of Fiduciary Duty

Mr. Feng, Mr. Allison, and Mr. Kiely moved to dismiss certain breach of fiduciary duty claims because Plaintiffs admit these individuals did not work for certain Plaintiffs. *See* Mot. at 21; *see also* FAC ¶¶ 27, 50, 65. A necessary element of a breach of a fiduciary duty claim is the existence of the duty. *See New England Life Ins. Co. v. Lee*, No. 2:14-CV-1797, 2015 WL 1413391, at *6 (D. Nev. Mar. 27, 2015) (Mahan, J.) (citation omitted). A fiduciary duty arises from a

---

[7] Plaintiffs' fallback argument that "open-ended" continuity exists because of "the threat of continued trade secret misappropriation and copyright infringement" is also meritless. *See* Resp. at 21. First, this depends on trade secret and copyright claims that were never pleaded as RICO predicates and that, in any event, fail to satisfy the criminal mens rea requirements discussed above. Second, the "continued deployment" of card shoes at Commerce Casino is not a new predicate act—it is, at most, the ongoing effect of past conduct. RICO's open-ended continuity requirement demands a threat of future criminal acts, not lingering consequences of old ones. *Richardson v. Reliance Nat. Indem. Co.*, No. C 99-2952, 2000 WL 284211, at *8 (N.D. Cal. Mar. 9, 2000).

fiduciary relationship. Without allegations that a Defendant held a position creating a fiduciary duty to a particular Plaintiff, no such duty exists. Because the allegations admit that certain Defendants did not work for certain Plaintiffs or have a "special relationship" with them, there is no plausible argument that they owed a fiduciary duty. Those claims should be dismissed.

### ix. Count 11: Aiding and Abetting

Mr. Feng, Mr. Allison, and Mr. Kiely moved to dismiss Plaintiffs' aiding and abetting claims because it rests entirely on conclusory allegations. *See* Mot. at 22. Plaintiffs do not attempt even a line-by-line recitation of the necessary elements. Instead, they merely allege, without support, that the three Defendants "knowingly and actively abetted each other . . ." FAC ¶ 297. But this does not satisfy federal pleading standards. *See Twombly*, 550 U.S. at 555 (finding that "the-defendant-unlawfully-harmed-me" allegations are conclusory and do not meet federal pleading standards). Plaintiffs' Response does not cure this deficiency; it argues that they have pleaded duties based on Defendants' "trusted and special relationships" (Resp. at 29), but does not address a necessary element. Specifically, to state an aiding and abetting claim, Plaintiffs must allege that a fiduciary breached a duty ***and*** that a third party knowingly participated in that breach. *See New England Life Ins. Co. v. Lee*, No. 2:14-CV-1797, 2015 WL 1413391, at *7 (D. Nev. Mar. 27, 2015) (Mahan, J.). Plaintiffs' Complaint does not identify which Defendant aided which other Defendant's breach, or how they knowingly participated. The claims should be dismissed.

### x. Counts 12 and 13: Breach of Contract and Tortious Interference

Defendants moved to dismiss Paradise's and LT Game Ltd.'s breach of contract and tortious interference claims because, by Plaintiffs' own allegations, neither party had a contract with the relevant Defendants. *See* Mot. at 22-23; *see also* FAC ¶ 304. A necessary, foundational element of both a breach of contract claim and a tortious interference claim is the existence a contract. *See Amer. Fire and Casualty Co*., No. 2:21-CV-1555, 2023 WL 2930042, at *2 (D. Nev. Apr. 13, 2023) (Mahan, J.) (citation omitted); *see also New England Life Ins. Co. v. Lee*, No. 2:14-CV-1797, 2015 WL 1413391, at *9 (D. Nev. Mar. 27, 2015) (citation omitted). The logic easily follows; because neither Plaintiff was party to the alleged contracts, there was no contract to breach, and no contract with which to interfere. Paradise's and LT Game Ltd.'s claims are thus facially implausible.

11

### c) The Court Should Deny Plaintiffs' Motion for Leave to Amend.

Courts have discretion to grant or deny leave to amend in conjunction with Rule 12(c) motions. *Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997), aff'd, 237 F.3d 1026 (9th Cir. 2001) (citation omitted). However, the Court is not obligated to grant leave. *See* FED. R. CIV. P. 15(a)(2); *Amer. Fire and Casualty Co.*, 2023 WL 2930042, at *4. The court need not give leave to amend where "it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted). Thus, "leave to amend may be denied if it appears to be futile or legally insufficient." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citation omitted). Denial of leave to amend is also appropriate when a party has already had multiple attempts to cure deficient pleadings. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

In this case, Plaintiffs' deadline to move for leave to amend ran February 27, 2025 (ECF No. 44 at 4), as did their second deadline in December 2025. *See* ECF No. 131. Plaintiffs did not take advantage of either, and now "aver that no amendment is necessary . . ." Resp. at 30. Additionally, Local Rule 15-1(a) requires that a party seeking leave to amend "***must*** attach the proposed amended pleading to a motion seeking leave . . ." L.R. 15-1(a) (emphasis added); *see also Levy Ad Grp., Inc. v. Chubb Corp.*, 519 F.Supp.3d 832, 838 (D. Nev. 2021) (Dorsey, J.) (finding that leave to amend futile where plaintiff failed to "attach a proposed amended pleading when seeking leave to amend."). Plaintiffs did not attach a proposed amended complaint to their request for leave to amend, preempting the Court's opportunity to determine whether amending would be productive. Courts also deny leave to amend when a party fails to specify the facts it would allege in an amended complaint. *See id*. at 838 (finding that leave to amend was futile where plaintiffs' additional alleged facts did "nothing to remedy the fatal deficiencies identified."). Despite having over a month to respond, Plaintiffs fail to identify specific facts they would allege if permitted to amend. The Court should not be required to guess at what an amendment would contain. Leave should be denied.

### IV.  CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion.

1    Dated: February 4, 2026                    Respectfully submitted,

2                                               */s/ Patrick J. Reilly*

3                                               Patrick J. Reilly
                                                **BROWNSTEIN HYATT FARBER**
4                                               **SCHRECK, LLP**
                                                100 North City Parkway, 16th Floor
5                                               Las Vegas, Nevada 89106

6                                               Mark Oakes (*pro hac vice*)
                                                Zach McHenry (*pro hac vice*)
7                                               Ethan Glenn (*pro hac vice*)
                                                **NORTON ROSE FULBRIGHT US LLP**
8                                               98 San Jacinto Boulevard, Suite 1100
                                                Austin, Texas  78701-4255

9                                               Brian Stolarz (*pro hac vice pending*)
                                                **NORTON ROSE FULBRIGHT US LLP**
10                                              799 9th Street NW, Suite 1000
                                                Washington, DC 20001-4501
11

12                                              *Attorneys for Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

  I, Patrick J. Reilly, counsel for Defendants, hereby certify that, on February 4, 2026,

3

Defendants' *Reply in Support of Rule 12(C) Motion for Judgment on the Pleadings* and attached

4

appendices were served on the following counsel of record by electronic transmission at the email

5

addresses listed below:

6

                *s/ Patrick J. Reilly*

7

                Patrick J. Reilly

8

OLIVER J. PANCHERI, ESQ.
Nevada Bar No. 7476

9

JESSICA M. LUJAN, ESQ.
Nevada Bar No. 14913

10

**SPENCER FANE LLP**

11

300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101

12

Tel.: (702) 791-0308
Fax: (702) 791-1912

13

Email: Opancheri@spencerfane.com

14

Jlujan@spencerfane.com

15

JEAN-PAUL CIARDULLO, ESQ.
California Bar No. 284170

16

**FOLEY & LARDNER LLP**

17

555 Flower Street, Suite 3300
Los Angeles, California 90071

18

Tel: (213) 972-4500
Fax: (213) 486-0065

19

Email: jciardullo@foley.com

20

HANNAH ANDREWS, ESQ.
Nevada Bar No. 18157

21

ROBERT T. STEWART, ESQ.
Nevada Bar No. 13770

22

STEWART R. NELSON, ESQ.
Utah Bar No. 17286

23

**FOLEY & LARDNER LLP**

24

95 South State Street, Suite 2500
Salt Lake City, UT 84111

25

Tel.: (801) 401-8900

26

Email: rtstewart@foley.com

27

   srnelson@foley.com
   handrews@foley.com

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DARIUSH KEYNANI (pro hac vice)
New Jersey Bar No. 044062002
**KEYHANI LLC**
1050 30th Street NW
Washington, DC 20007
Tel: (202) 748-8950
Email: dkeyhani@keyhanillc.com

*Attorneys for Plaintiffs*