PATRICK J. REILLY, ESQ.
**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, 16th Floor
Las Vegas, Nevada 89106
Telephone: (702) 382-2101
Facsimile: (702) 382-8135
preilly@bhfs.com

MARK T. OAKES, ESQ. (*pro hac vice*)
ZACHARY P. MCHENRY, ESQ. (*pro hac vice*)
ETHAN GLENN, ESQ. (*pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701-4255
Telephone: (512) 474-5201
Facsimile: (512) 536-4598
mark.oakes@nortonrosefulbright.com
zach.mchenry@nortonrosefulbright.com
ethan.glenn@nortonrosefulbright.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

PARADISE ENTERTAINMENT LIMITED, a Bermuda corporation; LT GAME, INC., a Nevada corporation; and LT GAME LIMITED, a British Virgin Islands corporation,

*Plaintiffs*,

v.

EMPIRE TECHNOLOGICAL GROUP LIMITED, a Nevada corporation; GAMING SPECIALIZED LOGISTICS LLC, a Nevada limited liability company; LINYI FENG, an individual; ROY KELCEY ALLISON, an individual; DARYN KIELY, an individual,

*Defendants.*

Case No. 2:24-cv-00428-JCM-BNW

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF PLAINTIFFS' DAMAGES EXPERT CLARKE B. NELSON**

Defendants Empire Technological Group Limited ("Empire"), Gaming Specialized Logistics, LLC, Linyi "Frank" Feng, Roy Kelcey Allison, and Daryn Kiely (collectively "Defendants") move pursuant to Rule 702 of the Federal Rules of Evidence to exclude the following testimony and opinions of Plaintiffs' Paradise Entertainment Limited ("Paradise"), LT Game, Inc. ("LT Game"), and LT Game Limited ("LT Ltd.") (collectively "Plaintiffs'") damages expert Clarke B. Nelson: (i) that Plaintiffs supposedly lost approximately $[redacted] from monies, spare parts, and machines transferred directly to LT Game or to vendors on behalf of LT Game and/or Empire; (ii) that $[redacted] of that amount was "specifically attributable to Empire"; and (iii) that the same $[redacted] simultaneously measures Plaintiffs' "losses" and Defendants' "unjust enrichment."

This Motion is made pursuant to LR II 7-2 and is based on the following Memorandum of Points and Authorities, the accompanying exhibits attached hereto, the papers and pleadings on file in this action, and any oral argument this Court may allow.

DATED: June 25, 2026

*/s/ Patrick J. Reilly*
Patrick J. Reilly
**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, 16th Floor
Las Vegas, Nevada 89106

Mark Oakes (*pro hac vice*)
Zach McHenry (*pro hac vice*)
Ethan Glenn (*pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................ 1
FACTUAL BACKGROUND ........................................ 2
A. The Lawsuit ........................................ 2
B. Plaintiffs' Experts and the Challenged Opinion ........................................ 2
C. Nelson's Opinion and How He Calculated The Figure ........................................ 3
STANDARD OF REVIEW ........................................ 5
LEGAL ARGUMENT ........................................ 5
A. Nelson Did Not Analyze Damages—He Measured "Spending" and Called It "Loss" . 5
B. The "Specifically Attributable to Empire" Subset Suffers From the Same and Additional Methodological Failures ........................................ 7
C. Nelson's Opinion Is Independently Unreliable Because It Conflates "Losses" and "Unjust Enrichment" Without Measuring Either Properly ........................................ 9
D. Other Courts Have Rejected Nelson Opinions For Materially Similar Reasons ........... 9
CONCLUSION ........................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) ........ 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ........ 5

*LeGrand v. Abbott Lab'ys*,
No. 22-CV-05815-TSH, 2025 WL 2323352 (N.D. Cal. Aug. 12, 2025) ........ 7

*Lust v. Merrell Dow Pharm., Inc.*,
89 F.3d 594 (9th Cir. 1996) ........ 5

*Miller v. Fuhu Inc.*,
No. 2:14-CV-06119-CAS-AS, 2015 WL 7776794 (C.D. Cal. Dec. 1, 2015) ........ 7

*San Diego Comic Convention v. Dan Farr Prods.*,
No. 14-CV-1865 AJB (JMA), 2017 WL 4227000 (S.D. Cal. Sept. 22, 2017),
*aff'd*, 807 F. App'x 674 (9th Cir. 2020) ........ 10

*San Diego Comic Convention v. Dan Farr Prods.*,
No. 14-CV-1865 AJB (JMA), 2017 WL 4869152 (S.D. Cal. Oct. 27, 2017) ........ 10

*Strategic Diversity, Inc. v. Alchemix Corp.*,
666 F.3d 1197 (9th Cir. 2012) ........ 7

**Rules and Statutes**

Rule 702 ........ 2, 5, 6, 10

## INTRODUCTION

The challenged opinions of Plaintiffs' damages expert, Clarke B. Nelson, should be excluded because they are not the product of a reliable damages methodology. He proposes to take Paradise's funding of its own subsidiary, LT Game, over more than six years, subtract LT Game's revenue, ignore the value Plaintiffs received from the products, certifications, operations, and assets those expenditures generated, and present the remainder as $[redacted] in recoverable damages. He then uses the same figure to measure Defendants' supposed unjust enrichment. From there, he claims, through a counsel-selected subset of expenses, that $[redacted] was "specifically attributable to Empire."

Nelson's proffered analysis is a conclusory wish list, not a damages analysis. Nelson admitted the $[redacted] is simply Paradise's net "investment" and that he did not analyze value received, benefit to Plaintiffs, or apportionment of mixed-use costs. A reliable damages analysis would ask two basic questions: what Plaintiffs actually lost, and what Defendants actually gained. Nelson did neither. He simply added Plaintiffs' transfers to LT Game, subtracted LT Game revenue, and called the resulting amount both "losses" and "unjust enrichment." He never analyzed whether those expenditures created assets, supported ongoing operations, enabled product sales, or otherwise returned value to Plaintiffs.

That omission is dispositive because LT Game used the referenced expenditures for two distinctly proprietary benefits. One was to develop slot products and other technologies which Plaintiffs have continued selling to this day in the United States and abroad. The other was to help build Plaintiffs' operations outside of North America, including developing and obtaining certifications for games that Plaintiffs have sold and continue to sell to this day. In fact, LT Game's own Accounting Manager testified unequivocally that *all* of the amounts Plaintiffs expended on LT Game were for *Plaintiffs'* business, not Empire-related expenses. Yet Nelson's analysis asserts the opposite—that not a single dollar spent by Plaintiffs on their own subsidiary to develop and sell their own products benefitted Plaintiffs, and that every one of those dollars somehow constitutes both "loss" to Plaintiffs and "unjust enrichment" to Empire.

The $[redacted] "specifically attributable to Empire" subset only confirms the same defect: Nelson relied on counsel-selected categories and administrative labels. He did not analyze who actually benefited from the spending or in what amount. Worse, the actual substance of the invoices and records shows that these expenditures were expressly for Plaintiffs, not Empire, and thus cannot be "specifically attributable to Empire."

Rule 702 does not permit an expert to relabel gross expenditures as damages by assuming away value received, refusing to apportion mixed-use costs, and presenting the same number as both "losses" and "unjust enrichment." The challenged opinions should be excluded.

## FACTUAL BACKGROUND

### A. The Lawsuit

This dispute arose in 2023 when Paradise learned that Empire had acquired the assets of a slot machine company called "Aruze Gaming America" through a public bankruptcy sale. Paradise claimed, in writing, that Empire was its *de facto* subsidiary and demanded that Mr. Feng transfer ownership of Empire to Paradise. Although Paradise later abandoned its ownership claim after Empire filed suit in state court, the claims in this suit rest on a similar theory—that Mr. Feng allegedly agreed to operate Empire for the exclusive benefit of the Paradise Group, and that Empire's sole purpose was to serve as a long-term exclusive distributor for Plaintiffs.[1]

### B. Plaintiffs' Experts and the Challenged Opinion

Plaintiffs designated four experts in this case, including damages expert Clarke B. Nelson. Nelson proposes to offer opinions on four categories of alleged damages: (1) monies, spare parts, and machines Plaintiffs expended on Plaintiffs' own US subsidiary, LT Game, and/or Empire ($[redacted] (2) operating profit earned by non-party F2 TPS, LLC on the grounds that the business of F2 TPS, LLC represents a usurped corporate opportunity ($[redacted]); (3) all profit earned by Empire separate and apart from its business with Plaintiffs—on the grounds that this profit comes from usurped corporate opportunities or is derived from Plaintiffs' copyrights and

---

[1] *See* Second Amended Complaint (Dkt. 161) ¶¶ 32 ("Empire's role was to be a long-term exclusive distributor for the Paradise Group."), 34 ("Empire was intended to be—and was operated as—the long-term exclusive distributor for the Paradise Group."), 44-45 (alleging payments to BMM Testlabs by Plaintiffs were premised on "the understanding that Empire was being built up to be the Paradise Group's long-term exclusive distributor.").

unidentified trade secrets ($[redacted]); and (4) lost profits on the sale of certain slot machines ($[redacted]). *See* Ex. A-1 (Expert Report of Clarke B. Nelson, dated Jan. 9, 2026 ("Nelson Rep.")) at 24–44 & Schedule 21; *see also* Ex. A-2 (Supplemental Report of Clarke B. Nelson, dated Mar. 26, 2026 ("Nelson Supp. Rep.")) at Schedule 24 (chart purporting to set forth Clarke's four damages categories).

This motion seeks to exclude only Nelson's first opinion: that Plaintiffs lost $[redacted] from monies, spare parts, and machines transferred directly to LT Game or to vendors on behalf of LT Game and/or Empire. *See* Ex. A-1 (Nelson Rep.) at pgs. 25-27. Nelson describes this $[redacted] as both Plaintiffs' "losses" **and** Defendants' "unjust enrichment." *Id.* at ¶ 10. As a subset of that category, Nelson initially opined that $[redacted] was "specifically attributable to Empire," though he later reduced that subset to $[redacted] after reviewing Defendants' rebuttal expert report. *See* Ex. A-1 (Nelson Rep.) at pgs. 27-28; Ex. A-2 (Nelson Supp. Rep.) at ¶ 8.

**C. Nelson's Opinion and How He Calculated The Figure**

Nelson calculated the $[redacted] purported "losses" figure by analyzing LT Game payment vouchers and requisition forms from January 2017 through June 2023. Ex. A-1 (Nelson Rep.) at ¶ 34. He states he corroborated approved requisition amounts with LT Game bank records and/or Paradise/LT Ltd. remittance records and concluded that $[redacted] in LT Game budget and expenditures was approved, with $[redacted] funded by Paradise/LT Ltd. transfers to LT Game, $[redacted] funded by Paradise/LT Ltd. transfers to a third-party game tester called BMM Test Labs ("BMM"), and $[redacted] funded by LT Game. *Id.* at ¶ 34–36. Nelson then adds $[redacted] for spare parts and machines allegedly supplied by Paradise/LT Ltd. *Id.* at ¶ 37. Finally, Nelson subtracts $[redacted] of LT Game sales revenue as an "offset," yielding his total of $[redacted]. *Id.* at ¶ 37–39.

At deposition, Nelson explained that the $[redacted] was simply Paradise's "total investment" and agreed that he had not undertaken any analysis of whether any of that money had benefited Plaintiffs. Ex. A-3 (Deposition of Clarke B. Nelson, dated Feb. 25, 2026 ("Nelson Dep.")) at 51:4-52:12. When asked whether the same $[redacted] was also his unjust-enrichment measure, he answered that "from an unjust enrichment calculation standpoint," it was. *Id.* at 50:11-17. Stated

simply, Nelson undertook a process to merely identify every dollar Plaintiffs spent on their own subsidiary, LT Game, for a six-and-a-half-year period, subtracted the revenue during that same period, and called the resulting amount "Plaintiffs' losses/Defendants' unjust enrichment."

Nelson also created a subset of the $[redacted] that he said was "specifically attributable to Empire." He originally claimed that approximately $[redacted] of the larger figure was "specifically attributable to Empire," based on five categories of expenses: (i) budgeted employment costs allocated separately for Empire, (ii) BMM invoices billed to Empire, (iii) Lewis Roca (a law firm Plaintiffs used) invoices with certain matter numbers, (iv) rent for office space that LT Game and Empire shared, and (v) LT Game payroll costs for employees on LT Game's payroll. Ex. A-1 (Nelson Rep.) at pgs. 27-28. After reviewing Defendants' expert rebuttal report, however, Nelson removed the BMM-invoice category from that subset and reduced the total to $[redacted]. *See* Ex. A-2 (Nelson Supp. Rep.) at ¶ 8.

At deposition, Nelson admitted that the five subsets of categories were selected by counsel. Ex. A-3 (Nelson Dep.) at 84:23–85:8. For payroll, Nelson treated all [redacted] employees on LT Game's own payroll over the six-and-a-half-year period as specifically attributable to Empire, admitted he did not review time sheets or work product, and acknowledged that some of those employees may have performed LT Game work. *Id*. at 164:12–174:9. For BMM, Nelson relied on the invoices' "bill to entity" field, even where invoice detail reflected LT Game project codes, and admitted he did not cross-check whether the listed game titles were Plaintiffs' games. *See id*. at 109:19–111:2, 118:8–129:25. For Lewis Roca, Nelson relied only on billing matter numbers rather than a substantive analysis of what work was performed or who benefited from it. *See id*. at 131:21–144:12. And for rent, Nelson included 100% of the rent for the ***shared*** office space, did not reduce the amount for LT Game's own use of the space, nor perform any apportionment analysis. *See id*. at 152:2–163:22.[2] Defendants' rebuttal expert further showed that Nelson's rent calculation

[2] *See also* Ex. A-3 (Nelson Dep.) at 152:23–153:9 ("So just as a conceptual matter, if rent is shared by two entities, how is it only specifically attributable to Empire from your methodology, sir? A. It's simply an assumption that -- that I've been asked to make in that regard, that because it was shared by both parties, it is attributable to Empire. Q. . . . Asked to make by who? A. Counsel.").

included 31 months during which Empire was not an occupant of that office space. Ex. A-10 (Expert Rebuttal Report of Paul Peterson, dated Feb. 6, 2026 ("Peterson Rep.")) at ¶¶ 74–76.

## STANDARD OF REVIEW

Federal Rule of Evidence 702 permits expert testimony only if: (i) the expert's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or determine a fact at issue; (ii) the testimony is based on sufficient facts or data; (iii) the testimony is the product of reliable principles and methods; and (iv) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702. The district court serves as gatekeeper, charged with ensuring that expert testimony is not only relevant but reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-97 (1993). The proponent bears the burden of establishing admissibility by a preponderance of the evidence. *Id.* at 592 n.10; *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

An expert must do more than adopt a plaintiff's legal theory and dress it in numbers. Where an expert's damages calculation conflates "investment" with "loss," ignores value received, relies on untested assumptions supplied by counsel, and is contradicted by key witnesses, it must be excluded. *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("[W]hen an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.").

## LEGAL ARGUMENT

### A. Nelson Did Not Analyze Damages—He Measured "Spending" and Called It "Loss"

The fundamental flaw in Nelson's $[redacted] opinion is that it equates "spending" with "loss" and performs no analysis of value received. Nelson admitted the figure reflects Paradise's "total investment" in LT Game and that he did not analyze whether those expenditures benefited Plaintiffs, on the grounds that questions of value or benefit were outside the "framework" or premise of his calculation. Ex. A-3 (Nelson Dep.) at 51:4–52:12. That concession is fatal: Nelson took an assumption about liability and turned it into a damages number without performing the economic analysis in between.

The missing analysis matters because LT Game indisputably benefited Plaintiffs beyond the sales revenue Nelson deducted. During the six-and-a-half-year period Nelson used, LT Game helped create Paradise products, including games and other technology, and Plaintiffs have continued selling those products in the United States and abroad to this day. *See* Ex. A-4 (Deposition of Jay Chun, dated Oct. 30, 2025 ("Chun Dep.")) at 77:10–78:4, 114:21–115:4; Ex. A-5 (ETG_00000167486); Ex. A-6 (Deposition of David So, dated Oct. 28, 2025 ("So Dep.")) at 34:13–37:14 (explaining that Ex. A-5 reflects games developed by the United States "development studio," which was led by Daryn Kiely); Ex. A-7 (Deposition of Eddie Au, dated Oct. 21, 2025 ("Au Dep.")) at 15:23–16:9, 24:19–21, 42:2–7, 48:1–22.[3] LT Game also worked directly on Paradise's non-U.S. operations, including Macau-related projects needed for sales in foreign jurisdictions. *See* Ex. A-8 (ETG_TRANSLATION_00000000055 (PARADISE 00000765)) (LT Game's funding "does [not] include additional US Office R&D requested by the Group such as the [redacted] project"); Ex. A-6 (So Dep.) at 36:5–24; Ex. A-9 (Deposition of Leo Chan, Vol. II, dated Oct. 15, 2025) at 237:8–22, 239:21–240:2 (Mr. Keily was responsible for the R&D for the entire Paradise group). And beyond the games themselves, LT Game obtained product certifications from BMM, including for Macau and other non-United States jurisdictions—a necessary component of selling gaming products that demonstrates to regulators that the products comply with applicable regulations. *See* Ex. A-3 (Nelson Dep.) at 111:22–115:24, 137:22–138:9; Ex. A-10 (Peterson Rep.) at ¶¶ 56–64.

Nelson did not merely overlook a few possible offsets. He affirmatively chose not to measure whether any of the challenged costs benefited Plaintiffs. Rule 702 requires more. Experts may assume liability-related facts, but they still must apply a reliable methodology to translate those assumptions into a damages measure. Nelson did not do that. He assumed Paradise would not have made the expenditures absent wrongdoing and then treated that assumption itself as the damages model by calling the net figure a "loss."

Courts reject that kind of model because it assumes away the very issue a damages expert must measure. In *In re POM Wonderful LLC*, for example, the court rejected a "full refund" model

[3] *See also* Ex. A-4 (Chun Dep.) at 113:21–114:20, 125:25–126:17 (testifying that LT Game made "good products").

that assumed consumers would not have purchased the product absent the alleged misrepresentation because the model "fail[ed] to account for any value consumers received." No. ML 10-02199 DDP RZX, 2014 WL 1225184, at *2-3 (C.D. Cal. Mar. 25, 2014). The same rule applies here. Nelson assumes Plaintiffs would not have made the expenditures absent wrongdoing, but he never accounts for the value Plaintiffs received from those expenditures. *See also LeGrand v. Abbott Lab'ys*, No. 22-cv-05815-TSH, 2025 WL 2323352, at *10 (N.D. Cal. Aug. 12, 2025) (rejecting full-refund model that failed to account for value received); *Miller v. Fuhu Inc.*, No. 2:14-CV-06119-CAS-AS, 2015 WL 7776794, at *19 (C.D. Cal. Dec. 1, 2015) (same); *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1208 (9th Cir. 2012) (rescissionary damages must account for "any benefits received" from the retained investment). Nelson's opinion should be excluded.

**B. The "Specifically Attributable to Empire" Subset Suffers From the Same and Additional Methodological Failures**

Perhaps recognizing the enormity of the request—claiming as damages every dollar spent on their own subsidiary over a more than six-year period to develop and sell their own products—Plaintiffs and Nelson offer a subset of that category, $[redacted] they describe as expenses "specifically attributable to Empire." Ex. A-1 (Nelson Rep.) at ¶ 40 & Schedule 10; Ex. A-2 (Nelson Supp. Rep.) at ¶ 8 & Schedule 10 Supp. Even if the Court were inclined to accept the broader $[redacted] number, the "Empire-attributable" subset should still be excluded because it is not the product of any reliable principle or method.

The subset inherits the same foundational defect as the larger figure because Nelson still did not analyze whether those expenditures benefited Plaintiffs or in what amount. And it fails for an additional reason: the method Nelson used to identify what was supposedly "specifically attributable to Empire" is itself unreliable—in fact, it is clearly wrong.

Nelson admitted that counsel dictated the five categories that made up the original subset. Ex. A-3 (Nelson Dep.) at 84:23–85:8. For the BMM category, he relied on the "bill to entity" field; for Lewis Roca, he relied on a billing matter number [redacted]; for rent, he included the full amount because Empire had a temporary presence there, even though the space was shared; and, for payroll, he assumed every minute of every LT Game employee's time was attributable to Empire, even

when Nelson himself recognizes that LT Game generated nearly $[redacted] in sales revenue. *See supra*, Background § C. Those are administrative labels, not a reliable methodology to analyze the economic question of who actually benefited from the spending.

Further, examining the actual substance of the invoices and records shows that Nelson's labels are clearly incorrect—because these expenditures were for Plaintiffs, not Empire. A few examples illustrate this point:

- Nelson concluded that of $[redacted] paid to BMM Test Labs for game testing and certification, $[redacted] is specifically attributable to Empire. Ex. A-1 (Nelson Rep.) at Schedule 10. A review of the actual invoices, however, shows that at least $[redacted] of the approximate $[redacted] attributed to Empire relates to obtaining certifications ***explicitly for Plaintiffs' games***. *See* Ex. A-10 (Peterson Rep.) at ¶¶ 62–64; Ex. A-3 (Nelson Dep.) at 109:20–129:25.

- Nelson assumed that all Lewis Roca invoices with a specific matter number were "generally billed to Empire" and therefore "specifically attributable to Empire." Ex. A-1 (Nelson Rep.) at Schedule 10 & Schedule 12. Of the $[redacted] billed under this matter number, however, $[redacted] was actually billed to Plaintiffs, not Empire. Ex. A-10 (Peterson Rep.) at ¶ 67. Further, $[redacted] of the $[redacted] actually "billed to" Empire was related to obtaining gaming licenses—work Plaintiffs agreed to pay for so that Empire could distribute ***Plaintiffs' products***. *Id.* at ¶¶ 68–71.

- Nelson concluded that [redacted] were Empire employee costs. Ex. A-1 (Nelson Rep.) at Schedule 10. Setting aside that Plaintiffs knew about and approved of these expenditures because the work benefited Plaintiffs, the records show that some of these employees were hired by Empire at Plaintiffs' request because Plaintiffs were contractually prohibited from hiring them directly. Ex. A-10 (Peterson Rep.) at ¶ 47.

- Remarkably, Nelson includes all $[redacted] that LT Game paid ***for its own employees*** as "specifically attributable to Empire." Ex. A-1 (Nelson Rep.) at Schedule 10 & Schedule 13. Nelson did no analysis of whether these employees were performing work that benefits Plaintiffs, Empire, or both. He simply took LT Game's payroll cost and allocated it to Empire.

Nelson's withdrawal of the BMM category underscores the problem. After reviewing Defendants' expert's critique—*that those expenses were for Plaintiffs' games*—Nelson removed roughly $[redacted] from the subset; yet he left the broader $[redacted] number unchanged because his headline opinion is untethered to any actual analysis of who benefited from the expenditures. That is confirmation that the "Empire-specific" subset and the "total investment" number are both driven by litigation theories and assumptions rather than a tested economic methodology. It bears repeating that LT Game's Accounting Manager, a witness in Plaintiffs' control who handled the requisition and payment process, testified unequivocally that *all* of the amounts expended by

Plaintiffs on LT Game were carefully reviewed and were for *Plaintiffs'* business, not Empire.[4] Ex. A-11 (Deposition of Marcos Medero, dated Sept. 26, 2025 ("Medero Dep.")) at 109:22–110:24, 112:20–25, and 139:24–140:7. Given that, it is not surprising that Plaintiffs' efforts to change reality through an expert opinion does not withstand the barest of scrutiny. Nelson's opinion that $[redacted] from monies Plaintiffs transferred to LT Game is "specifically attributable to Empire" is unreliable, demonstrably wrong, and should be excluded.

**C. Nelson's Opinion Is Independently Unreliable Because It Conflates "Losses" and "Unjust Enrichment" Without Measuring Either Properly**

Nelson's use of the same $[redacted] figure as both losses to Plaintiffs and unjust enrichment to Defendants is independently disqualifying. *See, e.g.*, Ex. A-3 (Nelson Dep.) at 50:11–17. This conflates distinct remedies. Actual loss and unjust enrichment are separate legal concepts requiring separate calculations. Actual loss measures what a plaintiff gave up; unjust enrichment measures what a defendant gained. Nelson's $[redacted] figure is neither: rather, it is the amount Plaintiffs spent to fund an operating entity (LT Game), reduced by that entity's revenues. It does not measure the net amount Plaintiffs lost, nor does it measure what Defendants actually profited. Nelson used the same net-investment figure for both remedies because his framework begins and ends with Plaintiffs' gross spend. Presenting this aggregation interchangeably as both "loss" and "unjust enrichment" is incoherent and is not a reliable measure of either remedy.

**D. Other Courts Have Rejected Nelson Opinions For Materially Similar Reasons**

The defects in Nelson's opinions are not unique to this case. Other courts have rejected his testimony where he offered a bottom-line conclusion without a discernable methodology linking the underlying information to the opinion.

Most notably, the Southern District of California excluded Nelson because his leap from a set of qualitative considerations to a specific percentage was "fundamentally lacking in any

---

[4] When asked how much of Paradise's reimbursements to LT Game were actually used for Empire-related expenses, Mr. Medero testified "zero." Ex. A-11 (Medero Dep.) at 139:24–140:7. While Mr. Medero noted that it was "possible" that some requisition items may have been for Empire's expenses, he stated that this would have been "unlikely" because Paradise "wouldn't approve" reimbursement for expenses pertaining to "work done just for Empire." *Id.* at 181:25–182:7; *see also id.* at 177:25–178:6 (testifying that it was possible Paradise may have "indirectly" covered some of Empire's expenses "here and there a little bit," but it would have been "nothing substantial").

explanation as to what methodology, principles, or calculation he used." *San Diego Comic Convention v. Dan Farr Prods*., No. 14-cv-1865 AJB (JMA), 2017 WL 4227000, at *8 (S.D. Cal. Sept. 22, 2017), *aff'd*, 807 F. App'x 674 (9th Cir. 2020). The court emphasized that Nelson did not present a damages model with a few missing variables—"[r]ather, Mr. Nelson provides no damages model at all." *Id*. at *9. That is the same problem here. Nelson starts with raw spending data, adds counsel-selected carve-outs, and ends with sweeping conclusions about "loss," "unjust enrichment," and amounts "specifically attributable to Empire," but he never identifies the economic method that transforms those figures into a reliable measure of ***damages***.

The same court reinforced that point on reconsideration. Although it explained that certain underlying accounting data might be admissible as factual material if properly authenticated, it held that Nelson's own opinions remained inadmissible because they were "essentially pure argument without any methodology to support his conclusions." *San Diego Comic Convention v. Dan Farr Prods*., No. 14-cv-1865 AJB (JMA), 2017 WL 4869152, at *2–4 (S.D. Cal. Oct. 27, 2017). That distinction is important here. The existence of accounting records does not validate Nelson's unsupported leap from those records to "loss," "unjust enrichment," and "specifically attributable to Empire."

A second decision makes the same point in a different way. In *SB IP Holdings, LLC v. Vivint, Inc*., the court excluded one of Nelson's opinions in part because there was no explanation how his experience as a financial expert led to his conclusion. No. 4:20-cv-00886, 2023 WL 6601415, at *12 (E.D. Tex. Oct. 10, 2023). He does the same thing here. He does not explain why gross expenditures should be treated as loss, why mixed-use expenses should be allocated entirely to Empire, or why one net-spend figure can reliably measure both Plaintiffs' loss and Defendants' gain.

These decisions do not bind this Court, but they are instructive because they identify the same recurring flaw: Nelson offers conclusions first and methodology second, if at all. Rule 702 does not permit that.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court exclude the following testimony and opinions of Plaintiffs' damages expert Clarke B. Nelson: (i) that Plaintiffs supposedly lost approximately $[redacted] from monies, spare parts, and machines transferred directly to LT Game or to vendors on behalf of LT Game and/or Empire; (ii) that $[redacted] of that amount was "specifically attributable to Empire"; and (iii) that the same $[redacted] simultaneously measures Plaintiffs' "losses" and Defendants' "unjust enrichment."

Defendants thank the Court for its time and attention to this matter.

Dated: June 25, 2026

Respectfully submitted,

*/s/ Patrick J. Reilly*
Patrick J. Reilly
**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, 16th Floor
Las Vegas, Nevada 89106

Mark Oakes (*pro hac vice*)
Zach McHenry (*pro hac vice*)
Ethan Glenn (*pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255

*Attorneys for Defendants*

**Index of Exhibits**

Exhibit A: Declaration of Zach McHenry

Exhibit A-1: Expert Report of Clarke B. Nelson, dated Jan. 9, 2026

Exhibit A-2: Supplemental Report of Clarke B. Nelson, dated Mar. 26, 2026

Exhibit A-3: Deposition of Clarke B. Nelson, dated Feb. 25, 2026

Exhibit A-4: Deposition of Jay Chun, dated Oct. 30, 2025

Exhibit A-5: ETG_00000167486

Exhibit A-6: Deposition of David So, dated Oct. 28, 2025

Exhibit A-7: Deposition of Eddie Au, dated Oct. 21, 2025

Exhibit A-8: ETG_TRANSLATION_00000000055 (PARADISE 00000765)

Exhibit A-9: Deposition of Leo Chan, Vol. II, dated Oct. 15, 2025

Exhibit A-10: Expert Rebuttal Report of Paul Peterson, dated Feb. 6, 2026

Exhibit A-11: Deposition of Marcos Medero, dated Sept. 26, 2025

**CERTIFICATE OF SERVICE**

I, Patrick J. Reilly, counsel for Defendants, hereby certify that, on June 25, 2026, Defendants' *Motion to Exclude Certain Opinions and Testimony of Plaintiffs' Damages Expert Clarke B. Nelson* was served on the following counsel of record by electronic transmission at the email addresses listed below:

*s/ Patrick J. Reilly*
Patrick J. Reilly

OLIVER J. PANCHERI, ESQ.
Nevada Bar No. 7476
JESSICA M. LUJAN, ESQ.
Nevada Bar No. 14913
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 791-0308
Fax: (702) 791-1912
Email: Opancheri@spencerfane.com
Jlujan@spencerfane.com

JEAN-PAUL CIARDULLO, ESQ.
California Bar No. 284170
**FOLEY & LARDNER LLP**
555 Flower Street, Suite 3300
Los Angeles, California 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
Email: jciardullo@foley.com

HANNAH ANDREWS, ESQ.
Nevada Bar No. 18157
ROBERT T. STEWART, ESQ.
Nevada Bar No. 13770
STEWART R. NELSON, ESQ.
Utah Bar No. 17286
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, UT 84111
Tel.: (801) 401-8900
Email: rtstewart@foley.com
srnelson@foley.com
handrews@foley.com

DARIUSH KEYNANI (*pro hac vice*)
New Jersey Bar No. 044062002
**KEYHANI LLC**
1050 30th Street NW
Washington, DC 20007
Tel: (202) 748-8950
Email: dkeyhani@keyhanillc.com

*Attorneys for Plaintiffs*