Oliver J. Pancheri, Esq. (Nevada Bar No. 7476)
Jessica M. Lujan, Esq. (Nevada Bar No. 14913)
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3400
Fax: (702) 938-8648
Email: opancheri@spencerfane.com
        jlujan@spencerfane.com

Robert T. Stewart, Esq. (Nevada Bar No. 13770)
Stewart Ray Nelson, Esq. (*pro hac vice*)
  Utah Bar No. 17286
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, Utah 84111
Tel.: (801) 401-8900
Email: rtstewart@foley.com
        srnelson@foley.com

Jean-Paul Ciardullo, Esq. (*pro hac vice*)
  California Bar No. 284170
**FOLEY & LARDNER LLP**
555 Flower Street, Suite 3300
Los Angeles, California 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
Email: jciardullo@foley.com

Dariush Keyhani (*pro hac vice*)
**KEYHANI LLC**
1050 30th Street NW
Washington, DC 20007
Tel: (202) 748-8950
Email: dkeyhani@keyhanillc.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PARADISE ENTERTAINMENT LIMITED, a Bermuda corporation; and LT GAME, INC., a Nevada corporation, and LT GAME LIMITED, a British Virgin Islands Corporation, <br><br> *Plaintiffs, Counterdefendants*, <br><br> vs. <br><br> EMPIRE TECHNOLOGICAL GROUP LIMITED, a Nevada corporation; GAMING SPECIALIZED LOGISTICS LLC, a Nevada limited liability company; LINYI FENG, an individual; ROY KELCEY ALLISON, an individual; and DARYN KIELY, an individual; and YI ZHAO, an individual, <br><br> *Defendants, Counterclaimants*. | Case No. 2:24-cv-00428-JCM-BNW <br><br> **PLAINTIFFS' *DAUBERT* MOTION TO LIMIT TESTIMONY OF RICHARD BALDWIN** <br><br> [ORAL ARGUMENT REQUESTED] |

**Contents**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND .....................................................................................................1

        A.      Plaintiffs' Liability And Damages Theories ................................................1

        B.      Plaintiffs' Relevant Expert Reports .............................................................4

        C.      Mr. Baldwin's Rebuttal Report ...................................................................6

III.    APPLICABLE LAW ..............................................................................................6

IV.     ARGUMENT...........................................................................................................7

        A.      Mr. Baldwin Does Not Know The Facts Of The Case Or Plaintiffs' Damages
                Theories, And Is Thus Not Qualified To Give Any Damages-Related Opinions ...........7

        B.      Section V Of Mr. Baldwin's Rebuttal Report Comprises Unfounded And
                Prejudicial Damages Opinions....................................................................10

                1.      Mr. Baldwin's "Plaintiffs Should Have Been Doing Everything"
                        Foundational Premise Is Misleading And Confusing ....................................10

                2.      Mr. Baldwin Lacks A Basis For His Opinions In Section V.A .....................13

                3.      Mr. Baldwin Lacks A Basis For His Opinions In Section V.B .....................14

                4.      Mr. Baldwin Lacks A Basis For His Opinions In Section V.C .....................15

        C.      Sections III.E – III.H Of Mr. Baldwin's Rebuttal Report Should Also Be
                Excluded .....................................................................................................15

V.      CONLCUSION......................................................................................................16

**TABLE OF AUTHORITIES**

**Cases**

*Bank of Am., N.A. v. Bear Stearns Asset Mgmt.*, 969 F. Supp. 2d 339 (S.D.N.Y. 2013) ........................ 10

*Bigelow v. RKO Radio Pictures*, 327 U.S. 251 (1946) ................................................................... 12

*Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-cv-08787-TSH, 2024 WL 5483606 (N.D. Cal. Oct. 22, 2024) .............................................................................................................. 7, 9

*Cooper v. Brown*, 510 F.3d 870 (9th Cir. 2007) ...................................................................... 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .................................................... 1, 6

*Davis v. Carroll*, 937 F. Supp. 2d 390 (S.D.N.Y. 2013) ............................................................... 10

*Flagstone Dev., LLC v. Joyner*, No. CV-08-100-BLG-RFC, 2011 WL 5040663 (D. Mont. Oct. 24, 2011), *aff'd*, 545 F. App'x 602 (9th Cir. 2013) ............................................................................. 9

*Graystone Funding Co., LLC v. Network Funding, L.P.*, 598 F. Supp. 3d 1228 (D. Utah 2022) ............ 12

*Hess v. Biomet, Inc.*, No. 3:16-cv-208, 2019 WL 5965172 (N.D. Ind. Nov. 13, 2019) ............................. 7

*In re Eachpole, Inc.*, No. 20-10956-ABL, 2025 WL 351823 (Bankr. D. Nev. Jan. 24, 2025)................... 9

*Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018)................................... 11

*Nephron Pharms. Corp. v. Hulsey*, No. 6:18-cv-1573, 2021 WL 1110907 (M.D. Fla. Jan. 11, 2021)...... 7

*Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*, 371 F. App'x 719 (9th Cir. 2010) .............. 7

*Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010) .................................................................... 7

*Spearman v. Broker Sols., Inc.*, No. 1:20-CV-4981-CAP, 2023 WL 3919752 (N.D. Ga. Feb. 16, 2023) 12

*Stewart v. Estate of Sugar Hill Music Pub. Ltd.*, No. 10-cv-2632, 2013 WL 1405422 (S.D.N.Y. Apr. 8, 2013).................................................................................................................................. 10

*Taddeo v. American Invsco Corp.*, No. 2:12–cv–01110, 2015 WL 4416490 (D. Nev. July 20, 2015).... 11

*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) .......................................................... 7

**Rules**

Fed. R. Evid. 702 .............................................................................................................. 7

## I.    INTRODUCTION

Plaintiffs respectfully move pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) for an order excluding unsupported and prejudicial damages testimony from Defendants' gaming industry expert witness, Richard Baldwin, whose anticipated testimony is reflected in his Rebuttal Report that Defendants served in February 2026. (Ex. 1-A, Baldwin Rebuttal Report.) Plaintiffs do not contest that Mr. Baldwin is knowledgeable regarding the Nevada gaming industry, but the testimony he offers relating to damages is highly flawed. Mr. Balwin failed to assume liability (as he was required to do), and his deposition revealed he has little understanding of the case, and thus no basis to opine on whether or not Defendants harmed Plaintiffs.

Other than perhaps providing nominal background testimony about the Nevada gaming industry, Mr. Baldwin should not be allowed to testify as either a full-fledged or quasi damages expert. Defendants already have a damages expert: Paul Peterson. Section III of Mr. Baldwin's Rebuttal Report sets forth background about the gaming industry and explains how it can be hard for new companies to enter that market, but Mr. Baldwin fails to acknowledge Plaintiffs' damages theories, which concern out of pocket loss induced by fraud, breach of fiduciary duty, and intellectual property infringement. The rest of Mr. Baldwin's Rebuttal Report (Sections II, IV, and V) comprise improper damages testimony based on erroneous and illogical analysis that does not actually rebut Plaintiffs' theories.

Plaintiffs therefore seek an order precluding Mr. Balwin's planned rebuttal testimony reflected in Sections II, IV, and V of his Rebuttal Report, as well as Sections III.E – III.H concerning supposed barriers to succeeding in the gaming industry.

## II.    BACKGROUND

### A.    Plaintiffs' Liability And Damages Theories

As argued in Plaintiffs' Opposition to Defendants' Summary Judgment Motion, Defendants have proceeded from inaccurate assumptions about Plaintiffs' damages theories. In particular, Defendants' briefing and Mr. Balwin's Rebuttal Report seem to falsely assume that Plaintiffs are seeking lost future profits that could have been made but for the alleged misconduct, or that Plaintiffs have made their recovery contingent on having been able to be independently licensed as their own gaming equipment distributor (rather than using Empire as LT Game's distributor, as LT Game did). Neither of these premises

properly reflects Plaintiffs' damages theories, which were set forth in the damages expert report of Clarke Nelson and Plaintiffs' discovery responses. (*See generally*, ECF No. 183-4 at 0726 [Nelson Report]; ECF No. 183-5 at 0868 [Feb. 22, 2026 Paradise ROG Resp. at ROGs 8, 26–28]; ECF No. 183-5, at 0938 [Feb. 22, 2026 LT Game ROG Resp. at ROGs 1, 5, 8, 14, 19–20, 22].) To summarize, Plaintiffs are seeking the following forms of remedies:

**(Category 1) $25 million out of pocket spending loss on LT Game and Empire from 2016–2023 during Defendants' fraud and usurpation.** Plaintiffs claim this as an actual out of pocket loss on what they spent on the combined LT Game and Empire business operations in Las Vegas at a time when Defendants were actively running LT Game into the ground by undermining and usurping its corporate opportunities, which was money that Plaintiffs never would have spent on Defendants if they had known the truth of what Defendants were doing. To be clear, while Plaintiffs do contend that LT Game's demise was caused by Defendants' misconduct and usurpation, Plaintiffs' first line argument is that they simply never would have spent the money on Defendants in the first place if they had known Defendants were defrauding them. Plaintiffs also claim the $25 million as ill-gotten gains/unjust enrichment from Defendants having defrauded Plaintiffs into unwittingly supporting the launch of Empire. The unjust enrichment theory is independent from the actual out-of-pocket loss theory.

**(Category 2) $6.6 million disgorgement of Empire's profits from non-LT Game equipment sales that used Plaintiffs' IP.** In addition to resulting from fraud, these profits correspond to the trade secret and copyright remedies for Empire having sold technology derived from Plaintiffs. This remedy is independent from the $25 million out of pocket loss caused by Defendants' fraud and usurpation, which Plaintiffs would seek even if Empire had never used Plaintiffs' IP to sell equipment. Plaintiffs also seek this as unjust enrichment.

**(Category 3) $127 million in F2's profits.** Plaintiffs claim F2 as a usurped business opportunity. In the alternative, Plaintiffs seek this as unjust enrichment from Mr. Feng having stolen the necessary $1 million seed money for F2, and otherwise having

secured the opportunity through Plaintiffs.

**(Category 4) $1 million for the fraudulent sale to Solution Gaming at below market price.**

Mr. Baldwin has already conceded in his deposition that he has not done any assessment of damages theories (3)[1] and (4), so those are not relevant to his testimony or this Motion. (Ex. 1-B, Baldwin Tr. at 42:10–14, 43:10–16.) Additionally, Mr. Baldwin has admitted not having done any assessment of unjust enrichment, and seemed unfamiliar with the concept. (*Id.* at 50:8–24.) Thus, the remaining damages theories that Mr. Baldwin's testimony should be judged against are Categories 1 and 2 as forms of actual injury (as distinguished from unjust enrichment).

As Plaintiffs have set forth in their discovery responses, and in Mr. Nelson's expert report, and as is otherwise apparent from the pleadings in this case and Plaintiffs' Opposition to Defendants' Summary Judgment Motion (ECF No. 183), the premise of Category 1 is that Plaintiffs were fraudulently induced to continue spending millions of dollars on joint LT Game-Empire business operations from 2016–2023 under false pretenses, unaware that Defendants were in fact usurping LT Game opportunities for Empire in order to launch Empire as a separate competing business. Defendants were not employees of their own separate company engaged in fair competition with LT Game. Rather, Defendants have all admitted under oath that during the relevant time period they were *fiduciary employees* of LT Game and Paradise. (ECF No. 183 at Section V.1.) Plaintiffs' claims are premised on Defendants' violation of their fiduciary and contractual duties by running LT Game into the ground as they devoted most of their time and efforts to this secret launch of Empire and usurping LT Game's corporate opportunities, which ultimately resulted in Empire eclipsing and replacing LT Game. (*Id.* at Section V.) Empire went on to be successful, while LT Game was left a shell. (*Id.* at Sections III–V.) While Plaintiffs do allege that Defendants' misconduct

---

[1] Category 3 is implicated by the separate testimony of the parties' California gaming regulation attorneys: Jarhett Blonien for Defendants, and Tiffany Lichtig for Defendants, who discuss the question of whether California regulations permitted Plaintiffs from benefiting from the F2 opportunity. To avoid burdening the Court with additional briefing, and because – in Plaintiffs' view at least – these witnesses' testimony is more akin to legal argument that will be exclusively heard by the Court rather than expert witness testimony for the Jury, the Parties reached a stipulation to not make *Daubert* challenges against these witnesses. However, Plaintiffs' agreement to not file a *Daubert* motion with respect to Ms. Lichtig should not be construed as agreement with any of her testimony. Plaintiffs dispute Ms. Lichtig's conclusions for reasons set forth in Mr. Blonien's Declaration (ECF No. 183-9, 1844 [Blonien Decl.]) and the Opposition to the Summary Judgment Motion (ECF No. 183 at Section VI).

and usurpation was the cause of LT Game's failure, Plaintiffs' first line argument is that they simply never would have continued to spend the millions of dollars that they did if they had known Defendants were defrauding them. At any point from 2016 onward (when the fraud began), if Plaintiffs had known of Defendants' ongoing misconduct, Plaintiffs would have pulled the plug. (ECF No. 183-6 at 1242 [Chun Decl. ¶42]; ECF No. 183-8 at 1662 [Chan Decl. ¶44].)

Regarding Category 2, Plaintiffs seek disgorgement of Empires' profits from secret past sales of non-LT Game equipment in the 2016–2023 timeframe. These sales represent not only the fruits of Defendants' fraud and breaches of their fiduciary and contractual duties, but also are recoverable under theories of trade secret misappropriation and copyright infringement because Plaintiffs allege that the non-LT Game equipment incorporated technology that belonged to Plaintiffs. (ECF No. 183 at Sections VIII–IX.) This $6.6 million profits disgorgement for past sales of non-LT Game equipment is separate and distinct from the $25 million out of pocket spending loss on LT Game-Empire operations, though Defendants have tried to blur the line between them. For example, Defendants have argued that the $25 million out of pocket loss is premised on trade secret misappropriation, yet it is not. (*Id.* at Section VIII.)

Substantial evidence supporting all the foregoing arguments was included with Plaintiffs' co-pending Opposition to Defendants' Summary Judgment Motion.

Understanding and addressing Plaintiffs' damages theories under Categories 1 and 2 necessarily requires two things: (1) being familiar with at least the basics of Plaintiffs' liability theories, including fraud, breach of fiduciary duty, breach of contract, trade secret misappropriation, and copyright infringement; and (2) assuming that Defendants are liable for those wrongs when assessing recoverable damages. Mr. Baldwin fails on both points.

### B.    Plaintiffs' Relevant Expert Reports

Defendants did not serve any affirmative expert reports, and instead only served purported rebuttals to Plaintiffs' January 9, 2026 opening expert reports. Mr. Baldwin purports to rebut two of Plaintiffs' experts: Clarke Nelson (Plaintiffs' damages expert) and Tom Doyle (Plaintiffs' gaming industry expert).

Mr. Nelson reviewed extensive financial records from Plaintiffs and Defendants to calculate damages under Categories 1-4 identified above in Section II.A. To do this, he necessarily and properly

assumed that Defendants would be found liable under Plaintiffs' claims. Mr. Nelson was familiar with Plaintiffs' legal theories and included discussion of them in his report, explaining which of his calculations corresponded to which liability theory. Regarding Category 1, Mr. Nelson calculated Plaintiffs' total spending on LT Game and Empire operations from 2016–2023, which was the time period when Defendants were engaged in the accused fraud and misconduct. He deducted from that the comparatively modest revenue that was generated for LT Game and arrived at a $25 million net loss on the spending that went to LT Game and Empire. This was money that Plaintiffs would not have spent on Defendants if Plaintiffs had known they were being defrauded, and that was ultimately wasted as Defendants prioritized making Empire succeed instead of LT Game in violation of their fiduciary duties.

Regarding Plaintiffs' industry expert, Mr. Doyle, the primary reason that Plaintiffs engaged him was to provide a simple and neutral explanation of various basic gaming industry concepts that are foundational to understanding Plaintiffs' claims. A copy of his report is included as Ex. 1-C hereto. As can be seen, the bulk of the report, Sections I-III, comprises basic background about gaming equipment distribution and licensing necessary to understand, for example, why LT Game relied on Empire to obtain licenses and distribute products. (*Id.*, ¶¶1–31.) Section V is not relevant to Mr. Baldwin's Rebuttal Report – it concerns LT Game's capacity to be licensed on moral and financial fitness grounds, which Plaintiffs included because their understanding as of the time the report was served was that Defendants might have intended to challenge such fitness. (*Id.*, ¶¶37–42.) The only section of Mr. Doyle's report that Mr. Baldwin purports to rebut is Section IV, "Competition in the Gaming Equipment Distribution Market," which comprises only 5 short paragraphs, 32–36. (Ex. 1-A, Baldwin Rebuttal Report; Ex. 1-C, Doyle Report.) In Section IV, Mr. Doyle makes the uncontroversial point that because Empire is now effectively 10 years ahead of LT Game, and LT Game is only a shell, it will be hard for LT Game to catch up. (Ex. 1-C, Doyle Report, ¶¶32–36.)

Defendants and Mr. Baldwin seem to misconstrue Section IV as amounting to a kind of lost future profits argument, but Plaintiffs are not seeking lost future profits as a form of damages in this case. The point of Section IV of Mr. Doyle's report was to convey the gravity of the consequences of Defendants' misconduct.

C.    **Mr. Baldwin's Rebuttal Report**

Mr. Baldwin's Rebuttal Report purports to respond to Messrs. Nelson and Doyle.

Sections III.A – III.D of Mr. Baldwin's report discuss background of the kinds of casino gaming equipment that exist and how it is distributed. (Ex. 1-A, Baldwin Rebuttal Report, ¶¶21–41.)

Sections III.E – III.H go on at length and in effect opine that it is very difficult to become a successful gaming equipment distributor. (*Id.*, ¶¶42–75.)

Mr. Baldwin then claims to have three rebuttal opinions reflected in Section V of his report.

- Section V.A is entitled "Contrary to Plaintiffs' expert opinions, Plaintiffs did receive value and benefits as a result of their investment in LT Game, Inc." (*Id.*, ¶¶80–86.)
- Section V.B is entitled "Contrary to Plaintiffs' expert opinions, Defendants' alleged actions are not the reason that Plaintiffs failed to break into the U.S. slot machine market and did not give Empire a "head start" over Plaintiffs." (*Id.*, ¶¶87–98.)
- Section V.C is entitled "Contrary to Plaintiffs' expert opinions, Defendants and their alleged actions are not the reason it will be difficult for Plaintiffs to compete in the U.S. gaming markets." (*Id.*, ¶¶99–113.)

Section V is not merely about the gaming industry in the abstract: Mr. Baldwin is purporting to apply his expertise to the facts of the case and conclude what did or did not cause LT Game to fail. The basic question presented in the present Motion is whether Mr. Baldwin has sufficient knowledge of the case and Plaintiffs' claims and damages theories to offer such opinions. The answer is that he does not. He fails as a damages expert because of his lack of information and his failure to assume liability in assessing damages. If Defendants pivot to characterizing Mr. Baldwins' opinions in Section V as non-damages expert testimony, Mr. Baldwin simply lacks requisite foundational knowledge of the case to offer such opinions, and indeed his testimony is prejudicial because the small handful of facts that Mr. Baldwin does assume are wrong.

III.    **APPLICABLE LAW**

Expert testimony is admissible under Rule 702 if the expert is qualified and if the testimony is both relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter

of his asserted expertise. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also* Fed. R. Evid. 702. Relevance, in turn "means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") The purpose of the Court's gatekeeping role is to ensure that expert testimony is "properly ground, well-reasoned and not speculative." Fed. R. Evid. 702, Adv. Comm. Notes (2000).

In the case of a damages expert, Daubert exclusion is appropriate where the purported damages expert is unfamiliar with the allegations of the case and/or fails to assume liability for purposes of analyzing damages. *Hess v. Biomet, Inc.*, No. 3:16-cv-208, 2019 WL 5965172, at *12–13 (N.D. Ind. Nov. 13, 2019); *Nephron Pharms. Corp. v. Hulsey*, No. 6:18-cv-1573, 2021 WL 1110907, at *2 n.2 (M.D. Fla. Jan. 11, 2021). To the extent that a damages expert is effectively contesting liability, those opinions are subject to exclusion. *Hess*, 2019 WL 5965172, at *12–13 (striking damages expert's opinion when he did not assume liability and instead presented nothing more than legal conclusions and his own interpretation of the contracts at issue); *Nephron Pharms.*, 2021 WL 1110907, at *2 n.2 (striking opinions from rebuttal damages expert and finding it baffling that "Defendants would put forth a rebuttal expert who simply opines that there are no damages because, in his opinion, there is no liability"). Furthermore, where an expert's analysis is sufficiently illogical and not grounded in the actual allegations made by the Plaintiffs, those opinions are subject to exclusion both as being unreliable and out of risk of causing prejudicial juror confusion. *Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-cv-08787-TSH, 2024 WL 5483606, at *11 (N.D. Cal. Oct. 22, 2024) (striking expert report when he "provide[d] no explanation of the factual basis for his opinion"); *Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*, 371 F. App'x 719, 720–21 (9th Cir. 2010) (no abuse of discretion in striking portions of expert declarations lacking factual support and providing no explanation of methodology used).

IV.   **ARGUMENT**

A.    **Mr. Baldwin Does Not Know The Facts Of The Case Or Plaintiffs' Damages Theories, And Is Thus Not Qualified To Give Any Damages-Related Opinions**

Mr. Baldwin expressly conceded in his deposition that he is not a damages expert, and that he would not hold himself out to be one. (Ex. 1-B, Baldwin Tr. at 37:21–38:21.) Mr. Baldwin also showed

himself to be unfamiliar with basic and necessary damages expert procedure. Asked repeatedly whether he had assumed liability for purposes of forming his opinions, Mr. Baldwin said "No" (*Id.* at 40:18-21), and "I didn't make any hypothetical assumptions" (*Id.* at 113:4-114:18). Pressed again on this, "Did you assume [Plaintiffs'] allegations were true for purposes of forming you opinions?" Mr. Baldwin responded: "that would be speculating. I mean, I – I – I don't know. They're allegations, right?…I didn't – my – my – my report and opinions weren't – weren't influenced by an allegation. I – I – I was working with what I believed to be factual evidence that was [] provided to me." (*Id.* at 129:17–130:13.)

Apart from not being aware that he should have assumed the allegations of the Complaint to have been true, more fundamentally, Mr. Baldwin showed that he does not understand what those allegations are in the first place, nor does he know much of anything about the facts of the case.

When asked what the present lawsuit was about, Mr. Baldwin was not able to formulate an answer. (*Id*. at 112:14–114:18.) Mr. Baldwin admitted to not speaking directly with any of the Defendants in preparing his report. (*Id.* at 41:2–12.) Mr. Baldwin also did not understand the overlapping employment between LT Game and Empire that is essential to Plaintiffs' claims, and falsely believed that the Defendants did not simultaneously work for LT Game and Empire. (*Id*. at 117:3–119:7.) Mr. Baldwin was unaware that Defendants owed any fiduciary duties to Plaintiffs and admitted he did not consider that for his report. (*Id*. at 122:10–123:23.) Mr. Baldwin was also unaware of any contractual duties that any of the Defendants owed to Plaintiffs, such as under the employment contracts of Defendants Kiely and Allison that Plaintiffs allege were breached and that also form part of the basis for Plaintiffs' trade secret claims. (*Id*. at 122:2–9.) Mr. Baldwin assumed for purposes of his analysis that Empire was a non-exclusive distributor of LT Game instead of assuming that Plaintiffs would prove that Empire's sales of non-LT Game equipment would give rise to liability. (*Id*. at 107:18–110:18.) Mr. Baldwin was unaware of Plaintiffs' trade secret claims and did not consider those for his report. (*Id*. at 147:9–18.) Mr. Baldwin was unaware of Plaintiffs' allegations that Defendants used LT Game employees to operate Empire, and that they devoted most of their own time to Empire despite having been obliged to work for LT Game. (*Id*. at 127:4–22, 129:1–16, 130:17–131:2.) Mr. Baldwin did not take into account Plaintiffs' allegations of Defendants usurping Plaintiffs' business opportunities, which is one of the most critical allegations in the case. (*Id*. at 129:17–130:13.) With respect to the non-LT Game equipment secretly sold by Empire,

Mr. Baldwin assumed that this was developed entirely independent of LT Game, unaware that Mr. Kiely was the full-time CTO of LT Game when he developed that equipment, that much of it incorporated LT Game intellectual property, and that Mr. Kiely owed contractual duties to have assigned such technology to LT Game. (*Id*. at 131:3–133:3.) Mr. Baldwin admitted never considering the non-LT Game equipment as having been a usurped business opportunity, much less a matter of trade secret theft. (*Id.*)

In sum, it is apparent that Mr. Baldwin knows very little about the case or Plaintiffs' claims, and thus necessarily is unfit to opine on damages-related topics. *Flagstone Dev., LLC v. Joyner*, No. CV-08-100-BLG-RFC, 2011 WL 5040663 (D. Mont. Oct. 24, 2011), *aff'd*, 545 F. App'x 602 (9th Cir. 2013) ("It is well-settled that an expert's testimony should be excluded where it is based on subjective belief or unsupported speculation which amounts to no more than a bald conclusion (sometimes called an 'ipse dixit' opinion) or guesswork."); *Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-CV-08787-TSH, 2024 WL 5483606 (N.D. Cal. Oct. 22, 2024) (striking expert's opinion where expert "fail[ed] to identify any methodology he employed in reaching his valuation opinions and the basis for any inputs or weighting in his valuation"); *In re Eachpole, Inc.*, No. 20-10956-ABL, 2025 WL 351823, at *83 (Bankr. D. Nev. Jan. 24, 2025) ("[E]xpert testimony should be excluded from the Court's decision making process when it is 'speculative or conjectural' or 'is connected to existing data only by the ipse dixit of the expert.' In cases where a trial court has been presented with only an expert's qualifications, conclusions, and assurances of reliability, the reliability standard is not met.").

In fact, it is worse than that because the handful of assumptions that Mr. Baldwin did make are undisputably false. Specifically, it is apparent that Mr. Baldwin assumed that Empire and the individual Defendants were completely disconnected from LT Game at the time of the misconduct, falsely believing that Defendants had already left LT Game by that point. From his point of view, Defendants owed no fiduciary or contractual duties to Plaintiffs outside of serving in what he believed to be a non-exclusive distributor role, which ignores the fact that all the Defendants have admitted that they owed fiduciary duties to Plaintiffs at the time of the misconduct, and Messrs. Kiely and Allison unambiguously had employment contracts with LT Game. Mr. Baldwin falsely assumed that Empire made products independently from LT Game, and had no understanding that Empire's products were being made by LT Game employees (including LT Game's CTO, Daryn Kiely). This caused Mr. Baldwin to falsely assume

that LT Game would not have had the ability to make the same products that Empire did.

Where an expert not only fails to assume liability but also actively makes <u>false</u> assumptions about matters that are critical to the analysis, that expert's testimony is subject to *Daubert* exclusion. *Bank of Am., N.A. v. Bear Stearns Asset Mgmt.*, 969 F. Supp. 2d 339, 358 (S.D.N.Y. 2013) (finding expert's opinion on the allocation of damages was based on an unfounded assumption with no factual support in the record); *Davis v. Carroll*, 937 F. Supp. 2d 390, 418–19 (S.D.N.Y. 2013) (expert opinion excluded as unreliable because it was based on assumptions that "lack any basis in the record"); *Stewart v. Estate of Sugar Hill Music Pub. Ltd.*, No. 10-cv-2632, 2013 WL 1405422, at *1 (S.D.N.Y. Apr. 8, 2013) (Daubert challenge granted and testimony excluded in part because the expert's testimony was based on an "unexplained assumption").

**B.      <u>Section V Of Mr. Baldwin's Rebuttal Report Comprises Unfounded And Prejudicial Damages Opinions</u>**

Following Mr. Baldwin's deposition, Defendants appear to have taken the position that Mr. Baldwin is not providing damages opinions but rather is merely commenting on gaming industry factors. Plaintiffs disagree. Mr. Baldwin's Rebuttal Report claims to be rebutting the damages opinions of Mr. Nelson, and is clearly opining about whether – in Mr. Baldwin's view – Plaintiffs suffered harm or not. Section V, in particular, overtly purports to assess causation as applied to the specific facts of the case, rather than presenting any generalized industry insight. Mr. Baldwin's opinions on harm to the Plaintiffs are unfounded and improper because they fail to assume liability, fail to reflect any actual consideration of the facts of the case, and rest on false or misleading assumptions.

**1.      Mr. Baldwin's "Plaintiffs Should Have Been Doing Everything" Foundational Premise Is Misleading And Confusing**

At Paragraph 14 of his Rebuttal Report, Mr. Baldwin states a premise that forms the basis of many of the rest of his opinions: "Plaintiffs' Complaint alleges, among other things, that LT Game, Inc. was not successful in the U.S., and likely will not be successful in the near future, solely because of Defendants' actions. This allegations requires that Plaintiffs otherwise did and are doing everything necessary to enter and become a successful gaming business in the U.S. and Nevada gaming markets." (Ex. 1-A, Baldwin Rebuttal Report, ¶14.) However, because Mr. Baldwin falsely assumed that Messrs. Feng, Kiely, and

Allison had already left LT Game and were working exclusively for Empire, and because Mr. Baldwin otherwise had no understanding of those Defendants' relationship and fiduciary and contractual duties to Plaintiffs, Mr. Baldwin's Paragraph 14 sets up an illogical premise. (*See* ECF No. 183 at Section V.1.) The point of the majority of Plaintiffs' allegations in this lawsuit is that <u>Defendants</u> were the ones running Plaintiff LT Game as its officers and managers, and that it was <u>Defendants</u> who had the obligation to "do[] everything necessary [for LT Game] to [] become a successful gaming business." (Ex. 1-A, Baldwin Rebuttal Report, ¶14.) That was what Plaintiffs had hired Defendants to do, and what Defendants were obliged to do pursuant to their fiduciary and contractual duties. (ECF No. 183 at Section V.1.) Plaintiffs' allegations in this lawsuit accuse Defendants of failing in those duties. Pressed about this at his deposition, Mr. Baldwin admitted he had not considered whether Defendants had any obligations to make LT Game succeed or whether they had usurped and undermined LT Game's business opportunities. (Ex. 1-B, Baldwin Tr. at 122:2–131:2.) Having not considered any of the basic facts or allegations of the case, and having failed to assume liability for purposes of assessing harm, Mr. Baldwin's setup in Paragraph 14 is logically unsound and would only serve to confuse the Jury as to the issues in dispute.

Furthermore, in failing to assume Defendants' liability for fraud and Plaintiffs' other claims, Mr. Baldwin fails to consider whether Plaintiffs would be entitled to damages irrespective of whether they would have ultimately succeeded in the U.S. gaming market. The Category 1 damages of $25 million reflect money that Plaintiffs were induced to pay between 2016–2023 under false pretenses. If Plaintiffs had discovered that Defendants had been defrauding them, Plaintiffs would have cut them off before spending that money on them and unwittingly helping to launch Empire as a competitor. (ECF No. 183-6 at 1242 [Chun Decl. ¶42]); ECF No. 183-8 at 1662 [Chan Decl. ¶44].) It is no defense for a fraudster, having induced the victim to pay a large sum of money under false pretenses, to argue that the victim was going to have lost the money anyway, leaving the fraudster judgment proof, particularly where, as here, the Defendants were the very persons responsible for the success of the business. *See, e.g., Taddeo v. American Invsco Corp.*, No. 2:12–cv–01110, 2015 WL 4416490, at *6 (D. Nev. July 20, 2015) (evidence supported out-of-pocket damages theory on fraudulent concealment claim when plaintiffs testified that they would not have made the purchase had they known of the fraud); *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (causation satisfied by showing that the defendant

"misrepresented or omitted the *very facts* that were a substantial factor in causing the plaintiff's economic loss") (emphasis in original); *Graystone Funding Co., LLC v. Network Funding, L.P*., 598 F. Supp. 3d 1228, 1248 (D. Utah 2022) (rebuttal expert's opinion that there was insufficient causal nexus between defendants' alleged wrongful conduct and former employer's alleged damages was inadmissible); *Spearman v. Broker Sols., Inc*., No. 1:20-CV-4981-CAP, 2023 WL 3919752, at *12 (N.D. Ga. Feb. 16, 2023) (denying summary judgment on fraud claim where defendant argued plaintiff voluntarily spent the money aside from defendant's misrepresentations).

Because he lacked an understanding of Defendants' misconduct and did not assume liability, Mr. Baldwin never considered Plaintiffs' allegation that they never would have continued spending millions of dollars on Defendants if they had known of the fraud. Thus, Mr. Baldwin has no basis to argue that Plaintiffs' recovery should be contingent upon whether LT Game would have ultimately succeeded in the market. But even if one assumed that whether LT Game would have succeeded were relevant to the Category 1 out-of-pocket loss, because Mr. Baldwin was uninformed about Defendants' misconduct, he lack a basis to opine as to the extent of harm caused by Defendants versus other factors. Defendants were not – as Mr. Baldwin assumed – innocent bystanders to the decline of LT Game. Assuming liability for purposes of assessing damages, Defendants were the very people charged with running LT Game and ensuring its success who instead were actively undermining the company, diverting its employees' work hours, and usurping its corporate opportunities.

As observed by the U.S. Supreme Court in *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265 (1946), "[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." Being unfamiliar with Defendants' wrongs, Mr. Baldwin cannot lay blame on Plaintiffs. Indeed, Mr. Baldwin fails to even acknowledge one of the most obvious relevant facts: Empire actually did succeed in breaking into the U.S. gaming market. Mr. Baldwin's opinions are not worth much if he fails to consider how LT Game would have fared if Defendants had directed all the corporate opportunities they found to LT Game instead of redirecting them to Empire.

Separately, the Category 2 damages seek disgorgement of Empire's profits on non-LT Game equipment that Plaintiffs allege should have been sold by Plaintiffs rather than Empire. Plaintiffs also

allege that Empire's equipment misappropriated Plaintiffs' intellectual property. None of these recoveries is contingent on whether LT Game could have ultimately succeeded in the U.S. gaming industry.

By failing to assume liability, and failing to understand Plaintiffs' liability and damages theories, Mr. Baldwin has failed to address or even acknowledge that Plaintiffs have grounds to seek damages recovery under Categories 1 and 2 irrespective of whether Plaintiffs could prove that they otherwise would have succeeded in the U.S. gaming market. This renders Mr. Baldwin's opinions in Paragraph 14 and throughout Section V of his Rebuttal Report misleading.

### 2.    Mr. Baldwin Lacks A Basis For His Opinions In Section V.A

Mr. Baldwin opines in Section V.A of his Rebuttal Report that "contrary to Plaintiffs' expert opinions, Plaintiffs did receive value and benefits as a result of their investment in LT Game, Inc." (Ex. 1-A, Baldwin Rebuttal Report, ¶¶80–86.) Mr. Baldwin conducted no analysis and has no knowledge from which he could form such an opinion. Mr. Baldwin merely states in conclusory manner that because Empire distributed some LT Game equipment, LT Game received some benefit. Mr. Baldwin is unaware of and performed no analysis of all the ways in which Defendants usurped and undermined LT Game's business in violation of their fiduciary and contractual duties. Pressed in his deposition on whether he had considered any of this he conceded he had not. *Supra* Section IV.B.1. Mr. Baldwin also appears unaware that Mr. Nelson already deducted the relatively modest revenue that LT Game generated to calculate the Category 1 $25 million net loss figure.

Mr. Baldwin's observation that "it's unclear whether Plaintiffs and Defendants ever were, or are, actually competing against each other" because Empire sold certain kinds of table games that LT Game did not (Ex. 1-A, Baldwin Rebuttal Report, ¶83) again ignores the allegations of the case that Empire's non-LT Game equipment sales constituted usurped business opportunities of LT Game. As a damages expert, Mr. Baldwin has failed to assume this liability. (Ex. 1-B, Baldwin Tr. at 113:21–114:18.) If presented as a liability expert, then Mr. Baldwin is woefully uninformed, and has admitted being unaware of the reasons why Plaintiffs contend that Empire's table game sales should have belonged to LT Game, and why they incorporated LT Game intellectual property. (*Id.* at 114:20–131:2.)

Even Mr. Baldwin's observation about Empire's purported low commission reveals a lack of information about the case. (Ex. 1-A, Baldwin Rebuttal Report, ¶¶85–86.) The commission was set merely

as an extra sales incentive for Mr. Feng pursuant to the Framework Agreement with Paradise Entertainment; Mr. Feng's core compensation was his income as President of LT Game. (ECF No. 183 at Section II.A.)

Being uninformed of how Defendants harmed LT Game, and failing to assume liability as required of a damages expert, Mr. Baldwin's opinion in Section V.A has no probative value and instead is highly prejudicial. Any lay person with no knowledge of the case could opine that a company benefits another company by distributing its products, but that is not the pertinent analysis here, and such an uninformed conclusory opinion is not expert testimony.

### 3.    Mr. Baldwin Lacks A Basis For His Opinions In Section V.B

Mr. Baldwin opines in Section V.B of his Rebuttal Report that "[c]ontrary to Plaintiffs' expert opinions, Defendants' alleged actions are not the reason that Plaintiffs failed to break into the U.S. slot machine market and did not give Empire a 'head start' over Plaintiffs." (Ex. 1-A, Baldwin Rebuttal Report, ¶¶87–98.) This opinion is unsupported. Mr. Baldwin has performed no analysis and lacks knowledge from which to assess whether Defendants were responsible for LT Game's failure. Indeed, Mr. Baldwin knew nothing of Defendants' fiduciary and contractual obligations, or even their employment status with LT Game. (Ex. 1-B, Baldwin Tr. at 122:10–123:23.)(Section IV.A, *supra*.) He admitted not considering if Defendants had usurped LT Game corporate opportunities. (*Id.* at 129:17–130:13.) He also admitted not considering whether Defendants diverted their own working hours or those of LT Game employees to work for Empire. (*Id.* at 127:4–22, 129:1–16, 130:17–131:2.) Because of his false assumptions, Mr. Baldwin assigned no responsibility to Defendants for ensuring the success of LT Game, and no blame for its failure. (*Id.* at 125:8–127:3, 129:10–16.) It is ironic that Mr. Baldwin complains of LT Game not doing enough to succeed when it was the Defendants themselves who were the fiduciary managers of LT Game entrusted with making it succeed. (ECF No. 183 at Section V.A.) Being unaware of this, Mr. Baldwin admitted to having made no assessment of Defendants' role in undermining LT Game. (Ex. 1-B, Baldwin Tr. at 130:15–131:2.)

It is axiomatic that Mr. Baldwin is unfit to opine on how Defendants did or did not harm LT Game if he knows nothing about how Defendants harmed LT Game. As a damages expert, he should have assumed liability. If he is being presented as some kind of other non-damages expert, Mr. Baldwin cannot

opine on a subject where he only knows a small percentage of the facts, and has admitted ignorance as to the lion's share of relevant information.

### 4.    Mr. Baldwin Lacks A Basis For His Opinions In Section V.C

Mr. Baldwin opines in Section V.C of his Rebuttal Report that "[c]ontrary to Plaintiffs' expert opinions, Defendants and their alleged actions are not the reason it will be difficult for Plaintiffs to compete in the U.S. gaming markets." (Ex. 1-A, Baldwin Rebuttal Report, ¶¶99–113.) Whereas Section V.B concerned the pre-suit time period 2016–2023, Section V.C looks ahead to the future. Section V.C purports to rebut Section IV of Mr. Doyle's report, which briefly opined that LT Game will have a hard road ahead given that it is starting over again essentially from scratch. Mr. Baldwin's purported opinions in Section V.C are unhelpful and misleading for several reasons.

First, as discussed *supra*, Plaintiffs would be entitled to recover under their Categories 1 and 2 of damages irrespective of whether Plaintiffs succeed in the future or not. Plaintiffs are not seeking lost future profits: they are seeking past damages. Mr. Baldwin's strawman attack confusingly makes it appear as through Plaintiffs entitlement to relief is contingent on future events. This would prejudicially mislead the Jury as to Plaintiffs' damages theories.

Second, Mr. Baldwin is not really responding to Mr. Doyle's point. It is axiomatic that LT Game is at a disadvantage starting from scratch ten years after Empire began is ascent. Mr. Doyle made this point to convey the gravity of the consequences of Defendants' misconduct, *i.e.*, that LT Game has essentially lost ten years. If one assumes liability as a damages expert must, that loss of ten years is very much Defendants' fault. But even if one does not make that assumption, the fact remains that LT Game is now ten years behind Empire and that it will be hard to catch up. Mr. Baldwin would not seem to have any basis to disagree with that basic point, making his arguments in Section V.C a kind of non-sequitur.

### C.    <u>Sections III.E – III.H Of Mr. Baldwin's Rebuttal Report Should Also Be Excluded</u>

Sections III.E – III.H of Mr. Baldwin's Rebuttal Report serve as the primary basis for Section V, and so should also be excluded. (Ex. 1-A, Baldwin Rebuttal Report, ¶¶42–75.) While on their face Sections III.E – III.H are not specifically directed to Plaintiffs, the implied opinion is clear: market forces caused LT Game to fail rather than any of Defendants' misconduct. Mr. Baldwin then leverages these conclusions from Sections III.E – III.H to argue in Sections V.B and V.C. that market forces are the cause

of Plaintiffs' injuries – not Defendants. (*Id.*, ¶¶87–113.)

This entire line of argument is untethered to the facts, allegations, and damages theories of the case. First, Mr. Baldwin was unaware of the allegations and evidence concerning all the ways that Defendants harmed LT Game, and is thus not competent to opine on whether Defendants harmed LT Game. *Supra* Section IV.B.1. Second, Plaintiffs would be able to recover under Categories 1 and 2 even if they could not prove that they otherwise would have been successful in the U.S. gaming industry. Finally, Mr. Baldwin fails to even acknowledge that Empire in fact did succeed in the U.S. gaming market after usurping LT Game's opportunities, liability for which Mr. Baldwin would have been required to assume if he were testifying as a proper damages expert.

In sum, Sections III.E – III.H only exist to serve the unsupported opinions of Sections V.A – V.C, and so should also be excluded. They would only confuse the Jury as to the issues in the case.

## V. **CONLCUSION**

For the foregoing reasons, Plaintiffs seek an order precluding Mr. Balwin's planned rebuttal testimony reflected in Sections II, IV, and V of his Rebuttal Report, as well as Sections III.E – III.H.

DATED:  June 25, 2026

Respectfully submitted,

*/s/ Jessica E. Lujan*
OLIVER J. PANCHERI, ESQ.
   Nevada Bar No. 7476
JESSICA M. LUJAN, ESQ.
   Nevada Bar No. 14913
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3400
Fax: (702) 938-8648
Email: opancheri@spencerfane.com
         jlujan@spencerfane.com

JEAN-PAUL CIARDULLO, ESQ.  (*pro hac vice*)
   California Bar No. 284170
**FOLEY & LARDNER LLP**
555 Flower Street, Suite 3300
Los Angeles, California 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
Email: jciardullo@foley.com

ROBERT T. STEWART, ESQ.
   Nevada Bar No. 13770
STEWART RAY NELSON, ESQ. (*pro hac vice*)
   Utah Bar No. 17286
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, Utah 84111
Tel.: (801) 401-8900
Email: rtstewart@foley.com
         srnelson@foley.com

Dariush Keyhani *(pro hac vice)*
**KEYHANI LLC**
1050 30th Street NW
Washington, DC 20007
Tel: (202) 748-8950
Email: dkeyhani@keyhanillc.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2026, a true and correct copy of **PLAINTIFFS'**

**DAUBERT MOTION TO LIMIT TESTIMONY OF RICHARD BALDWIN** was served via the

United States District Court CM/ECF system on all parties or persons requiring notice.

By:  */s/ Adam Miller*
Spencer Fane LLP