PATRICK J. REILLY, ESQ.
Nevada Bar No. 6103
**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, 16th Floor
Las Vegas, Nevada  89106
Telephone:    (702) 382-2101
Facsimile:    (702) 382-8135
preilly@bhfs.com

MARK T. OAKES, ESQ. (*pro hac vice*)
ZACHARY P. MCHENRY, ESQ. (*pro hac vice*)
ETHAN GLENN, ESQ. (*pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Blvd., Suite 1100
Austin, Texas  78701-4255
Telephone:    (512) 474-5201
Facsimile:    (512) 536-4598
mark.oakes@nortonrosefulbright.com
zach.mchenry@nortonrosefulbright.com
ethan.glenn@nortonrosefulbright.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PARADISE ENTERTAINMENT LIMITED, a Bermuda corporation; LT GAME, INC., a Nevada corporation; and LT GAME LIMITED, a British Virgin Islands corporation, <br><br> *Plaintiffs*, <br> v. <br><br> EMPIRE TECHNOLOGICAL GROUP LIMITED, a Nevada corporation; GAMING SPECIALIZED LOGISTICS LLC, a Nevada limited liability company; LINYI FENG, an individual; ROY KELCEY ALLISON, an individual; DARYN KIELY, an individual, <br><br> *Defendants.* | Case No. 2:24-cv-00428-JCM-BNW <br><br><br> **DEFENDANTS' OPPOSITION TO MOTION TO LIMIT TESTIMONY OF RICHARD BALDWIN** |

**Table of Contents**

Page

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD.......................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

I. Baldwin Is Qualified to Offer Gaming-Industry Expert Testimony ....................... 4

II. Baldwin's Opinions Are Reliable and Grounded in Sufficient Facts and Data....... 5

  A. Baldwin Reviewed an Extensive Body of Case Materials........................... 5

  B. Baldwin's Methodology Is Grounded in 30 Years of Industry Experience. 5

  C. Baldwin Did Not Assume Plaintiffs' Allegations Were True—and That Is a Strength, Not a Flaw .................................................................................... 6

  D. Baldwin's Specific Factual Bases Are Documented.................................... 7

III. Baldwin's Opinions Fit the Issues In This Case and Will Assist the Trier of Fact.. 8

IV. Plaintiffs' Specific Challenges to Baldwin's Opinions in Section V Fail ............... 9

  A. Section V.A – "Plaintiffs Received Value and Benefits" ........................... 9

  B. Section V.B – "Defendants' Alleged Actions Are Not Why Plaintiffs Failed".................................................................................................... 10

  C. Section V.C – Competition in U.S. Gaming Markets.............................. 10

V. Plaintiffs' Challenge to Baldwin's Opinions in Sections III.E Through III.H Fails ................................................................................................................... 11

VI. Any Remaining Disagreements Go to Weight, Not Admissibility ........................ 12

CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
    738 F.3d 960 (9th Cir. 2013)......................................................................................... 10

*ATLP by & through Taylor v. CoreCivic, Inc.*,
    No. 2:21-CV-2072 JCM (EJY), 2025 WL 752878 (D. Nev. Mar. 7, 2025) ........................... 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)..................................................................................................... 1, 3

*Freteluco v. Smith's Food & Drug Ctrs.*,
    336 F.R.D. 198 (D. Nev. 2020)........................................................................................ 7

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)......................................................................................................... 6

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010).......................................................................................... 3

*Smilovits v. First Solar, Inc.*,
    No. CV12-00555-PHX-DGC, 2019 WL 6875492 (D. Ariz. Dec. 17, 2019)........................... 7

*Thomas v. Newton Int'l Enters.*,
    42 F.3d 1266 (9th Cir. 1994)....................................................................................... 4, 5

**Rules and Statutes**

Fed. R. Evid. 702 ................................................................................. 1, 3, 4, 6, 8, 10

Fed. R. Evid. 702(a) ......................................................................................................... 8

ii

Defendants Empire Technological Group Limited ("Empire"), Gaming Specialized Logistics, LLC, Linyi "Frank" Feng, Roy Kelcey Allison, and Daryn Kiely (collectively "Defendants") respectfully submit this opposition to Plaintiffs' *Daubert* Motion to Limit Testimony of Richard Baldwin, ECF No. 190 ("Mot.").[1]

## **INTRODUCTION**

Plaintiffs' motion rests on a mischaracterization of Baldwin's role. Richard Baldwin is not offered as a damages expert, and his report does not calculate damages, offer legal conclusions, or purport to decide liability. He is a 30-year gaming-industry executive, Nevada-licensed CPA, and recognized industry advisor retained to answer the opinions Plaintiffs' own experts put at the center of this case: what it takes to enter and compete in the Nevada and U.S. gaming markets, whether Plaintiffs' funding and staffing decisions were consistent with a serious market-entry effort, and whether structural market realities—rather than Defendants' alleged conduct—better explain Plaintiffs' failure to gain traction in the U.S. market.

Baldwin's three opinions stay squarely within that assignment. He opines that: (1) Plaintiffs received value and benefits from their investment; (2) Defendants' alleged conduct is not why Plaintiffs failed to break into the U.S. slot market and did not give Empire a head start; and (3) Defendants' alleged conduct is not why Plaintiffs will struggle to compete in U.S. gaming markets going forward. Those opinions directly rebut the core assumptions in Nelson's and Doyle's report about causation and market entry.

What Plaintiffs really seek is to exclude a highly experienced industry witness because he did not adopt Plaintiffs' narrative, "admitted" he is not a damages expert, did not offer the damages opinions they would prefer, and identified record evidence that cuts against their experts' assumptions. That is not a Rule 702 problem. It is an ordinary dispute with a rebuttal expert's conclusions. The record—Baldwin's rebuttal report and deposition testimony—shows a qualified industry expert offering narrow, experience-based opinions grounded in record evidence that satisfy every requirement of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The motion should be denied in its entirety.

---

[1] The Parties agreed to file their respective *Daubert* opposition briefs on July 31, 2026.

**BACKGROUND**

*Baldwin's Qualifications*

Baldwin has worked "pretty much on an exclusive basis" in the gaming industry for approximately 30 years, beginning in public accounting in Las Vegas with clients spanning both casino operations and gaming technology, and later holding senior finance and operating roles at gaming technology companies and serving as CFO for casino operators, including Tropicana Entertainment and Herbst Gaming. Ex. A-1 (Expert Rebuttal Report of Richard Baldwin, Feb. 13, 2026 ("Baldwin Rep.")) at ¶¶ 5-10; Ex. A-2 (Deposition of Richard Baldwin, Apr. 3, 2026 ("Baldwin Dep.")) at 9:25-11:20. His career includes CFO roles at Shuffle Master Gaming and Tropicana, corporate finance leadership at IGT and Anchor Gaming, board service at Galaxy Gaming, and leadership roles at Union Gaming and GGHM—each a gaming-focused advisory and investment banking firm. Ex. A-1 (Baldwin Rep.) at ¶¶ 5-10.

He also served on the board of Galaxy Gaming, spent roughly eight years as a managing director at Union Gaming, a global gaming advisory and consulting firm, and for approximately the past six years has been a partner at GGHM, a firm focused exclusively on the gaming industry. *Id.* He holds a B.S. in Accounting, an MBA, is a licensed Nevada CPA, and has held key-employee gaming licenses in multiple jurisdictions. *Id.*

Baldwin expressly characterized himself as a "gaming expert," not a litigation "damages expert." Ex. A-2 (Baldwin Dep.) at 37:24-38:21. Defendants do not offer him as one.

*Baldwin's Assignment and Opinions*

Baldwin was retained to review and rebut the opinions of Plaintiffs' experts Nelson and Doyle regarding the Nevada and U.S. gaming markets, market entry, Plaintiffs' attempts to enter those markets, and related matters. Ex. A-1 (Baldwin Rep.) at ¶¶ 1-2. He summarized three rebuttal opinions: (1) Plaintiffs received value and benefits from their investment; (2) Defendants' alleged actions are not why Plaintiffs failed to break into the U.S. slot market and did not give Empire a head start; and (3) Defendants' alleged actions are not why it will be difficult for Plaintiffs to compete in U.S. gaming markets. *Id.* ¶ 20.

***Baldwin's Methodology***

Baldwin applied principles and analytical tools from his education and experience, used commonly applied methods of analysis and research, consulted industry publications, market data, financial reports, and other publicly available materials, and relied on documents identified in a report appendix. *Id.* ¶¶ 17-19 and Appx. A. He had unrestricted access to a produced-document database of 92,675 documents, conducted his own searches, reviewed a large volume of documents, and tracked those he relied upon. *Id.* ¶ 17. He estimated spending roughly 40 to 50 hours of his own time preparing the report, in addition to approximately 15 to 20 hours of work by colleagues. Ex. A-2 (Baldwin Dep.) at 28:17-29:6.

## LEGAL STANDARD

Federal Rule of Evidence 702 permits expert testimony where: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. *Daubert* tasks the district court with acting as a "gatekeeper" to ensure that expert testimony is both relevant and reliable. 509 U.S. at 597.

The trial court's gatekeeping function under *Daubert* is designed to screen out junk science and untethered speculation—not to resolve legitimate disputes between competing expert opinions. Where challenges implicate the weight and credibility of an expert's opinion rather than its admissibility, exclusion is inappropriate. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."); *ATLP by & through Taylor v. CoreCivic, Inc.*, No. 2:21-CV-2072 JCM (EJY), 2025 WL 752878, at *2 (D. Nev. Mar. 7, 2025) (citation omitted) ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").

Here, Plaintiffs seek to exclude testimony that directly refutes two of their own experts, arguing in essence that Baldwin should have accepted Plaintiffs' allegations as true rather than relying on the actual evidence. The motion should be denied.

**ARGUMENT**

**I.      Baldwin Is Qualified to Offer Gaming-Industry Expert Testimony**

Rule 702 requires that an expert be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The qualification inquiry is broad: a witness may be an expert by virtue of practical experience alone. *See Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994) (holding that expert testimony based solely on practical experience should not have been excluded).

Plaintiffs do not—and cannot—genuinely challenge Baldwin's qualifications with respect to the Nevada and U.S. gaming markets. Plaintiffs themselves concede that Baldwin is knowledgeable about the Nevada gaming industry. Mot. at 1. That concession resolves the qualifications inquiry for the core opinions Plaintiffs seek to exclude, all of which concern market entry, competitive dynamics, distribution economics, and the causes of Plaintiffs' failure to break into the U.S. gaming market.

Baldwin has spent approximately 30 years working almost exclusively in the gaming industry, holding senior executive, finance, operating, and advisory roles across gaming technology companies and casino operators. He spent eight years as a managing director at Union Gaming—a global gaming advisory firm—and has been a partner at GGHM, an exclusively gaming-focused firm, for approximately the past six years. His career spans CFO positions at Shuffle Master Gaming and Tropicana, corporate finance leadership at IGT and Anchor Gaming, and board service at Galaxy Gaming. Ex. A-1 (Baldwin Rep.) at ¶¶ 5-10; Ex. A-2 (Baldwin Dep.) at 9:25-11:20.

He is a licensed Nevada CPA with an undergraduate degree in accounting and an MBA. Ex. A-1 (Baldwin Rep.) at ¶¶ 5-10. His accounting and financial credentials further qualify him to assess whether the financial evidence supports Plaintiffs' experts' causation assumptions—including whether investment levels, revenue streams, and spending patterns are consistent with the market-entry narrative Nelson and Doyle present. This record of qualification is more than

4

sufficient. *See, e.g.*, *Thomas*, 42 F.3d at 1269 (holding that expert testimony based solely on practical experience should not have been excluded).

## II.    Baldwin's Opinions Are Reliable and Grounded in Sufficient Facts and Data

Plaintiffs argue that Baldwin's opinions rest on false assumptions and lack foundation. The record demonstrates otherwise.

### A.    Baldwin Reviewed an Extensive Body of Case Materials

Baldwin had unrestricted access to a produced-document database containing 92,675 documents, ran his own searches, reviewed a large volume of those documents, and maintained a record of those he relied upon.  Ex. A-1 (Baldwin Rep.) at ¶ 17. Baldwin confirmed at deposition that Appendix A of his report accurately identifies the materials he reviewed and relied upon, and that he relied on no additional materials after submitting his report. Ex. A-2 (Baldwin Dep.) at 35:17-36:13. That is a sound evidentiary foundation.

### B.    Baldwin's Methodology Is Grounded in 30 Years of Industry Experience

Baldwin's methodology was straightforward and reliable. He applied the principles, analytical tools, and market frameworks he has used over three decades in the gaming industry and which are commonly used in that industry: he reviewed industry publications, market data, financial reports, and other public materials. Ex. A-1 (Baldwin Rep.) at ¶¶ 16-19. He explained that his approach was informed by tracking gaming markets monthly, using public-domain information, prior client work, and ongoing dialogue with industry participants. Ex. A-2 (Baldwin Dep.) at 31:11-33:4.

Just as importantly, Baldwin's opinions were not abstract conclusions untethered to the record. He testified that a serious entrant needs a multiyear plan, disciplined market focus, continued reinvestment, servicing capabilities, and an expectation of losses for years before any positive cash flow. *See id*. at 83:16-86:6, 72:14-73:23. He further explained—based on his experience—that successful efforts to enter the U.S. market commonly require tens of millions of dollars and, in some situations, roughly $100 million to $200 million over time before achieving scale. *Id*. at 68:11-71:12, 89:23-91:2, 99:14-100:21 ("[W]hat I've learned from my own experience in the C-suite and what I've learned in representing and advising other companies and having access

5

to their business plans and seeing their results and the level of investment, it's those facts and those experiences upon which I'm drawing upon."). An expert who draws on decades of direct industry experience and applies established industry frameworks is using a reliable methodology for purposes of Rule 702. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (reliability inquiry applies flexibly). Baldwin employed a classic experience-based methodology permissible under Rule 702.

### C.     Baldwin Did Not Assume Plaintiffs' Allegations Were True—and That Is a Strength, Not a Flaw

Plaintiffs' primary attack—that Baldwin failed to "assume liability"—misunderstands the proper scope of a rebuttal expert. Baldwin testified that he did not make hypothetical assumptions that Plaintiffs' allegations would be proven true; his opinions were based on the evidence provided and his industry experience and knowledge. Ex. A-2 (Baldwin Dep.) at 130:1-14 ("Did you assume those allegations were true for purposes of forming your opinions? . . . So the work that I did was based upon the evidence that was presented, and the report is based on my experience and my opinions."). In fact his opinion is informed by the actual resources Plaintiffs invested into the business (and specifically the drastically declining resources).

Baldwin's opinions demonstrate that Plaintiffs faced—and face—structural market-entry barriers that explain their failure to break into the U.S. slot market, and in the midst of that Plaintiffs dramatically *reduced*, not increased, their investment in the market. That is a legitimate and powerful rebuttal to numerous claims made by Doyle and Nelson, including: (1) that "Paradise provided Frank Feng and Defendants the business support necessary to build up Empire" (ECF No. 189 at 25-160 (Expert Report of Clarke B. Nelson, dated Jan. 9, 2026) at 17);[2] (2) that Empire is somehow making it difficult for Plaintiffs to compete (Ex. A-3 (Expert Report of Thomas Doyle, Jan. 9, 2026 ("Doyle Rep.")) at ¶¶ 35-36); and (3) that Empire has "a 10 year head start on LT

---

[2] Defendants filed the Nelson Report under seal as Exhibit A-1 to their *Motion to Exclude Certain Opinions and Testimony of Plaintiffs' Damages Expert Clarke B. Nelson*. ECF No. 189 at 25-160. The parties later filed a joint motion to seal certain exhibits submitted with that motion, in which Plaintiffs requested that portions of the Nelson Report remain sealed. ECF No. 194 at 4. That motion remains pending. To avoid burdening the Court with a duplicative sealing motion as to the same document, Defendants respectfully refer the Court to the Nelson Report already filed under seal.

6

Game" and it is this head start that is "mak[ing] it meaningfully difficult for LT Game to catch up and compete" (*id.* at ¶ 36). An expert is not required to assume that the opposing party's liability theory is correct in order to rebut assumptions relied on by the expert. *See Smilovits v. First Solar, Inc.*, No. CV12-00555-PHX-DGC, 2019 WL 6875492, at *13 (D. Ariz. Dec. 17, 2019) (citation omitted) ("challenging the assumptions of an expert witness' report is a permissible topic of rebuttal testimony"); *Freteluco v. Smith's Food & Drug Ctrs.*, 336 F.R.D. 198, 204-05 (D. Nev. 2020) (internal quotes and citation omitted) ("rebuttal expert opinion is proper where it explains, repels, counteracts, or disproves evidence of the adverse party").

### D.    Baldwin's Specific Factual Bases Are Documented

 Baldwin's opinions are not conclusory. They are grounded in specific record evidence:

- *Value and benefits received:* Citing Nelson's own data, Baldwin notes Plaintiffs received almost $5 million in distribution revenue from Empire between 2017 and 2023, and opines it is not unusual for a new entrant in gaming to spend more than it earns for years without becoming cash-flow positive. Ex. A-1 (Baldwin Rep.) at ¶ 81.

- *Alternative causes of Plaintiffs' failure*: Baldwin cites a February 10, 2022, email from Mr. Feng to Dr. Chun describing layoffs and expense cuts—and warning that further cuts would weaken competitiveness—as evidence Plaintiffs underfunded LT Game's U.S. push. *Id.* at ¶ 88. He also cites testimony that LT Game let go its entire U.S. slot machine team in early 2022, which he opines would hinder success in the U.S. market. *Id.* at ¶ 94.

- *Investment and R&D trajectory*: Baldwin cites evidence— Plaintiffs' own financial data— that Paradise's R&D funding fell sharply after 2020 and declined to near-zero by 2023— undermining any but-for theory premised on consistent R&D spending. *Id.* at ¶ 89 ("Paradise was continuously decreasing its annual investment in LT Game despite LT Game's revenue increasing during much of this period. For Plaintiffs' but-for causation theory to be plausible, there would need to be poor revenue/performance despite sufficient R&D spend. However, the opposite occurred here . . . ."). To illustrate the decline in funding, Baldwin's report included the following graph:



7

*Id*. at pg. 21. Further, Baldwin testified that he reviewed evidence that demonstrated Paradise—not Empire—controlled those funding decisions. Ex. A-2 (Baldwin Dep.) at 135:21-136:18. Baldwin then cited internal admissions of pricing errors and engineering leadership's criticism that management misunderstood the slot business and expected a "build once, sell forever" model. Ex. A-1 (Baldwin Rep.) at ¶ 90.

- *Market-exit signals*: Baldwin cites evidence that Plaintiffs unsuccessfully tried to sell LT Game or attract investment, and that they wanted to leave the U.S. to focus on China and Macau. *Id*. at ¶¶ 91-92.

These are concrete, record-based reasons supporting Baldwin's rebuttal opinions. Plaintiffs may disagree with his conclusions—but that disagreement is properly addressed through cross-examination, not exclusion.

## III.   Baldwin's Opinions Fit the Issues In This Case and Will Assist the Trier of Fact

Rule 702 requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Baldwin's opinions satisfy this requirement directly.

Plaintiffs' damages model asks the jury to accept that (1) Plaintiffs' investment spending constitutes losses caused by Defendants, (2) those losses would not have occurred but for Defendants' alleged conduct, and (3) Empire gained a "head start" from that conduct that will harm Plaintiffs' future competitive position. Each of those premises rests on contested assumptions about gaming-market economics that fall squarely within Baldwin's expertise:

- Whether it is unusual—or, in fact, typical—for a market entrant in gaming to spend more than it earns for years without becoming cash-flow positive;

- Whether the difficulties Plaintiffs face in entering the U.S. slot market are attributable to alleged misconduct or to structural market forces and Plaintiffs' own business decisions; and

- Whether the gaming-licensing regime, capital intensity, competitive dynamics, and servicing requirements of the U.S. slot market independently explain Plaintiffs' failure to succeed.

Baldwin also explains that gaming licensure is a time- and resource-intensive hurdle that can take years with no guarantee of success, and that Plaintiffs have never attempted to obtain U.S. licensure. Ex. A-1 (Baldwin Rep.) at ¶¶ 100-101. He also explains that the U.S. slot market is dominated by major manufacturers with large R&D budgets and entrenched advantages, and that these market forces—not Empire—are the more likely drivers of any difficulty Plaintiffs face

8

competing in the U.S. *Id.* at ¶¶ 103-104. A lay jury will benefit from a 30-year gaming-industry expert explaining these dynamics. Baldwin's testimony is highly relevant.

Doyle's own report underscores the fit. Doyle states that successful market entry requires licensure, equipment certification, a competitive advantage, customer relationships, and a substantial investment of money and resources. Ex. A-3 (Doyle Rep.) at ¶ 33. Baldwin's testimony is not a non sequitur; it is a direct response to the same competitive and operational realities Doyle himself identifies.

**IV.     Plaintiffs' Specific Challenges to Baldwin's Opinions in Section V Fail**

**A.     Section V.A – "Plaintiffs Received Value and Benefits"**

Plaintiffs contend that Baldwin's opinions in Section V.A of his report are conclusory and that the "value" Baldwin identifies is already deducted from Nelson's net-loss calculation. Mot. at 13. That is incorrect. Baldwin's opinion is not directed at Nelson's arithmetic—it is directed at Nelson's framing of all of Plaintiffs' spending as a "loss" caused by Defendants, which is clearly wrong. As explained in Defendants' *Motion to Exclude Certain Opinions and Testimony of Plaintiffs' Damages Expert Clarke B. Nelson* (*see* ECF No. 189), Plaintiffs seek to recover as "damages," among other things, amounts spent to develop slot products they still sell to this day in the United States and abroad, and amounts spent to obtain certifications for games Plaintiffs have sold and continue to sell. An expert cannot count all money invested in a business over more than six years as damages without doing any analysis to determine the value received from that investment—which is precisely what Plaintiffs' expert did and why Defendants moved to exclude that specific opinion. And a rebuttal expert with decades of experience in the relevant industry is clearly allowed to point out that expert's flaw in his rebuttal.

Nor does Plaintiffs' theory that they would have cut off funding sooner had they known more render Baldwin's testimony inadmissible. *See* Mot. at 11-12. Baldwin is not offering a legal opinion on the availability of fraud remedies or unjust enrichment. Rather, he is rebutting the underlying factual premise advanced by Nelson and Doyle that all of Plaintiffs' spending was wasted, that Plaintiffs' spending pattern reflects a serious and sustained market-entry effort, and that Defendants' conduct—rather than undercapitalization, shrinking investment, and entrenched

market barriers—explains the outcome. That is permissible rebuttal testimony, not an impermissible legal conclusion.

B.    Section V.B – "Defendants' Alleged Actions Are Not Why Plaintiffs Failed"

Plaintiffs argue this opinion is unsupported because Baldwin did not analyze the alleged diversion of Defendants' time and labor. Mot. at 14. That characterization inverts the burden. Baldwin's opinion is a *rebuttal opinion*. He provides alternative explanations—grounded in record evidence—for why Plaintiffs failed to break into the U.S. market: inadequate funding, the layoff of almost the entire staff, management's acknowledged misunderstanding of the slot-machine business, and internal pressure to exit the U.S. market. Ex. A-1 (Baldwin Rep.) at ¶¶ 87-98. Further, Baldwin provides an overview of the relevant gaming markets and explains that market entry for new manufacturers and distributors is inherently difficult. *Id.* at ¶¶102-108. He testified that entry commonly requires tens of millions of dollars—or more—and that the business is extremely capital-intensive and competitive. Ex. A-2 (Baldwin Dep.) at 67:12-69:18.

An expert offering a rebuttal opinion is not required to have affirmatively analyzed every theory of the opposing party. He is required to have a reliable, grounded basis for his own opinion—which Baldwin plainly does. Fed. R. Evid. 702; *see also Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."). Baldwin easily satisfies this standard. His opinions are based on his 30 years of industry experience and rest on specific factual bases. *See supra*, §§ II.B, II.D.

C.    Section V.C – Competition in U.S. Gaming Markets

Plaintiffs argue that Baldwin's opinions in Section V.C are misleading because they seek past damages, not lost future profits. Mot. at 15. Plaintiffs are focusing on Nelson's anticipated testimony and conveniently ignoring what Doyle plans to say. Doyle specifically opines that Empire has a "head start on LT Game" and that this head start "makes it meaningfully difficult for LT Game to catch up and compete." Ex. A-3 (Doyle Rep.) at ¶ 36. Baldwin's opinion that Defendants' alleged conduct is not why it will be difficult for Plaintiffs to compete going forward directly rebuts Doyle's testimony and any argument that future-competition harm was caused by

Defendants' alleged misconduct. Whether this issue is framed as "future profits" or "competitive trajectory," Baldwin's gaming-market expertise is directly relevant. Plaintiffs may cross-examine Baldwin on how his forward-looking opinion relates to backward-looking damages—but that goes to weight, not admissibility.

Baldwin also specifically rebuts a foundational flaw in Doyle's analysis. Baldwin notes that Doyle's "Commerce Casino" point—apparently offered as evidence of Defendants' advantage—is undermined by the fact that Commerce is a California cardroom prohibited from operating slot machines, such that a relationship with Commerce would not affect entry into other U.S. markets like Nevada. Ex. A-1 (Baldwin Rep.) at ¶¶ 106-108; Ex. A-2 (Baldwin Dep.) at 148:5-150:12 (testifying that casino loyalty to any one manufacturer or supplier "only goes so far," that casinos change equipment and vendors all the time, and that a relationship at one property such as Commerce does not foreclose the broader "sea of opportunity" across hundreds of casinos nationwide"). That is classic, admissible rebuttal testimony.

**V.      Plaintiffs' Challenge to Baldwin's Opinions in Sections III.E Through III.H Fails**

Plaintiffs argue that Sections III.E through III.H should be excluded because they implicitly blame market forces for LT Game's failure and serve as the foundation for Section V. Mot. at 15-16. That argument is backwards. The fact that Sections III.E through III.H provide the factual foundation for Section V's causation rebuttal is a reason to admit them, not exclude them. Background market-structure opinions that explain the competitive dynamics of the U.S. gaming industry are directly relevant to whether Defendants' alleged conduct—as opposed to market forces—caused Plaintiffs' losses.

Baldwin testified it is difficult for new manufacturers and distributors to break into the gaming industry and that entrants often require tens of millions of dollars in investment over time. Ex. A-2 (Baldwin Dep.) at 89:19-91:2. He further opined that a serious market entrant should have a disciplined multiyear business plan and strategy—such as focusing on one market or region and ensuring servicing capabilities—rather than an ad hoc approach. *Id.* at 83:16-86:7. These opinions directly inform the jury's assessment of whether Plaintiffs' failure was the product of alleged wrongdoing or of their own strategic and financial choices.

**VI.    Any Remaining Disagreements Go to Weight, Not Admissibility**

Plaintiffs raise a litany of criticisms that are, at bottom, factual disagreements with Baldwin's conclusions. They contend he did not speak with any Defendants, that he made incorrect assumptions about whether Defendants worked simultaneously for LT Game and Empire, and that he was unfamiliar with certain legal theories. Mot. at 8-9. None of these arguments justify exclusion.

First, with respect to scope: Baldwin testified that he was not retained to opine on fiduciary responsibilities, contractual breaches, or the legal validity of Plaintiffs' theories. *See* Ex. A-2 (Baldwin Dep.) at 123:6-23 (explaining he was asked to focus on Nelson and Doyle's reports, not on "fiduciary responsibilities of any of the parties"). He did not opine on whether Empire's sales constituted a "usurped business opportunity" of LT Game, *id*. at 132:5-9, and he confirmed that his report does not assess the effects of any alleged trade secret misappropriation, *id*. at 147:9-13. This same point answers Plaintiffs' separate criticism of paragraph 14 in Baldwin's report, which they mischaracterize as Baldwin's "foundational premise." Mot. at 10. Baldwin testified that paragraph 14 was included only as background reflecting his understanding of the pleadings, not as a substantive opinion of his own. Ex. A-2 (Baldwin Dep.) at 44:18-45:10, 125:24-126:13. His operative opinions are the three rebuttal opinions identified in paragraph 20 and developed in Section V. Ex. A-1 (Baldwin Rep.) at ¶ 20, § V. Baldwin further testified that, even assuming Plaintiffs' allegations were true, his opinions about what it takes to enter and compete in the U.S. and Nevada gaming markets would not change. Ex. A-2 (Baldwin Dep.) at 159:4-11. He likewise testified that the exact dates of any overlap between LT Game and Empire personnel would not change his view of what Paradise needed to do for LT Game to succeed. *Id*. at 159:21-160:11; *see also id*. at 129:17-130:13. These are not admissions of ignorance. They are appropriate limits on a properly scoped rebuttal assignment, and they directly undercut Plaintiffs' effort to portray every dispute about overlap, timing, or alleged disloyalty as a basis to exclude Baldwin's market-entry opinions wholesale

Second, with respect to legal opinions: Defendants did not disclose Baldwin to interpret the legal meaning of contractual terms, and Baldwin confirmed he is not a legal expert. *Id.* at

110:16-18. He confirmed he is not offering expert accounting opinions, did not audit or verify figures, and did not perform accounting work on the parties' financial numbers. *Id.* at 35:3-16. His report contains only a single reference to "unjust enrichment," and he confirmed he performed no analysis of unjust enrichment beyond that mention. *Id.* at 50:20-24.

Third, with respect to the distribution agreement: Baldwin testified he reviewed the Distributorship Framework Agreement and the later Supply Framework Agreements and understood they contained explicit nonexclusive provisions and no terms indicating exclusivity. *Id.* at 160:12-161:15. He also testified that, in his experience, if a manufacturer-distributor relationship is exclusive, exclusivity would be explicitly stated in the agreement. *Id.* at 161:16-21. Whether Plaintiffs agree with his reading of those agreements goes to weight and can be addressed through cross-examination, not admissibility.

## CONCLUSION

Richard Baldwin is an eminently qualified 30-year gaming-industry expert who offers properly scoped, reliable, and relevant rebuttal opinions on gaming-market economics, market-entry dynamics, and the causes of Plaintiffs' failure to break into the U.S. slot market. He does not offer damages calculations, legal conclusions, or accounting opinions, and his testimony does not invade the province of the jury or the Court. He responds directly to Plaintiffs' experts based on his experience, expertise, and the actual evidence—unlike Plaintiffs' experts, who simply assumed Plaintiffs' allegations were true. Plaintiffs' disagreements with his conclusions—however vigorously expressed—are for the jury to resolve through cross-examination and contrary evidence, not through exclusion that would leave a jury with a one-sided narrative.

Defendants respectfully request that the Court deny Plaintiffs' motion in its entirety and permit Richard Baldwin to testify at trial consistent with his expert rebuttal report.

13

Dated: July 31, 2026

Respectfully submitted,

*/s/ Patrick J. Reilly*
Patrick J. Reilly
**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, 16th Floor
Las Vegas, Nevada 89106

Mark Oakes (*pro hac vice*)
Zach McHenry (*pro hac vice*)
Ethan Glenn (*pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas  78701-4255

*Attorneys for Defendants*

## INDEX OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Declaration of Zach McHenry |
| A-1 | Expert Rebuttal Report of Richard Baldwin, dated Feb. 13, 2026 |
| A-2 | Deposition of Richard Baldwin, dated Apr. 3, 2026 |
| A-3 | Expert Report of Thomas Doyle, dated Jan. 9, 2026 |

**CERTIFICATE OF SERVICE**

I, Patrick J. Reilly, counsel for Defendants, hereby certify that, on July 31, 2026, *Defendants' Opposition to Limit Testimony of Richard Baldwin* was served on the following counsel of record by electronic transmission at the email addresses listed below:

                                                    *s/ Patrick J. Reilly*
                                                    Patrick J. Reilly

OLIVER J. PANCHERI, ESQ.
Nevada Bar No. 7476
JESSICA M. LUJAN, ESQ.
Nevada Bar No. 14913
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 791-0308
Fax: (702) 791-1912
Email: Opancheri@spencerfane.com
Jlujan@spencerfane.com

JEAN-PAUL CIARDULLO, ESQ.
California Bar No. 284170
**FOLEY & LARDNER LLP**
555 Flower Street, Suite 3300
Los Angeles, California 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
Email: jciardullo@foley.com

HANNAH ANDREWS, ESQ.
Nevada Bar No. 18157
ROBERT T. STEWART, ESQ.
Nevada Bar No. 13770
STEWART R. NELSON, ESQ.
Utah Bar No. 17286
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, UT 84111
Tel.: (801) 401-8900
Email: rtstewart@foley.com
      srnelson@foley.com
      handrews@foley.com

DARIUSH KEYNANI (*pro hac vice*)
New Jersey Bar No. 044062002
**KEYHANI LLC**

15

1050 30th Street NW
Washington, DC 20007
Tel: (202) 748-8950
Email: dkeyhani@keyhanillc.com

*Attorneys for Plaintiffs*

16