PATRICK J. REILLY, ESQ.
Nevada Bar No. 6103
**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, 16th Floor
Las Vegas, Nevada  89106
Telephone:    (702) 382-2101
Facsimile:    (702) 382-8135
preilly@bhfs.com

MARK T. OAKES, ESQ. (*pro hac vice*)
ZACHARY P. MCHENRY, ESQ. (*pro hac vice*)
ETHAN GLENN, ESQ. (*pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Blvd., Suite 1100
Austin, Texas  78701-4255
Telephone:    (512) 474-5201
Facsimile:    (512) 536-4598
mark.oakes@nortonrosefulbright.com
zach.mchenry@nortonrosefulbright.com
ethan.glenn@nortonrosefulbright.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PARADISE ENTERTAINMENT LIMITED, a Bermuda corporation; LT GAME, INC., a Nevada corporation; and LT GAME LIMITED, a British Virgin Islands corporation, <br><br> *Plaintiffs*, <br><br> v. <br><br> EMPIRE TECHNOLOGICAL GROUP LIMITED, a Nevada corporation; GAMING SPECIALIZED LOGISTICS LLC, a Nevada limited liability company; LINYI FENG, an individual; ROY KELCEY ALLISON, an individual; DARYN KIELY, an individual, <br><br> *Defendants*. | Case No. 2:24-cv-00428-JCM-BNW <br><br><br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' *DAUBERT* MOTION TO PRECLUDE TESTIMONY OF PETER BERNHARD** |

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

    I.    Mr. Bernhard's Testimony Rests on a Reliable Application of His Regulatory Experience to the Record, Which Is All Rule 702 Requires ........................................... 7

    II.    A Rebuttal Expert Need Not Independently Conclude That the Opposing Party Could Not Have Been Licensed to Reliably Critique the Adequacy of Another Expert's Methodology ........................................................................................................................ 8

    III.    Mr. Bernhard Does Not Opine on the Legal Burden of Proof; He Opines on Regulatory Practice and Realistic Timelines, Which Are Factual Matters Within His Expertise ........................................................................................................................... 9

    IV.    Mr. Bernhard's Opinions Remain Relevant Regardless of Any Position on Moral or Financial Fitness .............................................................................................................. 10

    V.    Plaintiffs' Prejudice Argument Is a Rule 403 Argument to Be Addressed Through Cross-Examination and Instruction, Not Exclusion Under Rule 702 .......................... 11

CONCLUSION ................................................................................................................. 12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Blockchain Innovation, LLC v. Franklin Res., Inc.*,
   No. 21-cv-08787-TSH, 2024 WL 5483606 (N.D. Cal. Oct. 22, 2024).....................................9

*Bourelle v. Crown Equip. Corp.*,
   220 F.3d 532 (7th Cir. 2000)....................................................................................11

*Braun v. Medtronic Sofamor Danek, Inc.*,
   719 F. App'x 782 (10th Cir. 2017) ........................................................................7, 9

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)...................................................................................1, 6, 7, 11

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010)..............................................................................6, 8, 10

*Townsend v. Monster Beverage Corp.*,
   303 F. Supp. 3d 1010 (C.D. Cal. 2018) ........................................................................9

*United States v. Hanna*,
   293 F.3d 1080 (9th Cir. 2002)....................................................................................11

*United States v. Saini*,
   23 F.4th 1155 (9th Cir. 2022) ....................................................................................11

**Rules and Statutes**

Fed. R. Evid. 403 ...........................................................................................2, 11

Fed. R. Evid. 702 ...................................................................................2, 6, 7, 8, 11

NRS 463.170(3)(b)................................................................................................5

Defendants Empire Technological Group Limited ("Empire"), Gaming Specialized Logistics, LLC, Linyi "Frank" Feng, Roy Kelcey Allison, and Daryn Kiely (collectively "Defendants") respectfully submit this opposition to Plaintiffs' *Daubert* Motion to Preclude Testimony of Peter Bernhard, ECF No. 191 ("Bernhard Mot.").[1]

**INTRODUCTION**

Plaintiffs' expert, Thomas Doyle, seeks to tell the jury that Plaintiffs "can expect to be successfully licensed," even though he did not perform anything resembling the investigation Nevada regulators would actually perform. Mr. Bernhard's rebuttal makes the entirely proper point that the materials Mr. Doyle reviewed cannot bear the weight of that affirmative conclusion.

Plaintiffs do not, and cannot, dispute that Mr. Bernhard is exceptionally qualified. He is a Nevada attorney of over fifty years, chaired the Nevada Gaming Commission for thirteen years, reviewed thousands of licensing investigations, and has continued to advise gaming licensees on suitability and compliance. Unable to challenge those credentials, Plaintiffs try to convert the limited scope of his rebuttal into a supposed methodological flaw. Plaintiffs seek to exclude Mr. Bernhard's opinions on four grounds, all of which fail.

First, Plaintiffs argue that Mr. Bernhard "expressly admits" he did not independently determine whether Plaintiffs could have been licensed. But that was never his assignment. He was *not* retained to perform a hypothetical licensing investigation from scratch and render an ultimate suitability verdict. He was retained to do precisely what rebuttal experts do: test whether the opposing expert's affirmative opinion rests on the kind of information and reasoning the field actually requires, and to identify the record evidence Mr. Doyle overlooked. A rebuttal expert need not conduct the very investigation he is critiquing as incomplete in order to reliably opine that the critiqued opinion rests on an inadequate foundation. That is not a gap in reliability; it is the nature of rebuttal analysis, and courts routinely admit exactly this kind of testimony.

Second, Plaintiffs mischaracterize Mr. Bernhard's opinions as an improper legal conclusion about the burden of proof. He offers no such opinion. His report addresses the factual elements of a Nevada gaming investigation and the realistic time such an investigation would take

---

[1] The Parties agreed to file their respective *Daubert* opposition briefs on July 31, 2026.

for an applicant with Plaintiffs' particular corporate structure and history—subjects at the core of his decades of regulatory experience, not questions of law reserved for the Court.

Third, Plaintiffs seem to suggest Mr. Bernhard's testimony is irrelevant because their damages are not contingent on being able to obtain a license. If Mr. Bernhard's opinions are not relevant, Plaintiffs have an easy remedy—they can withdraw their proffered expert testimony on licensing issues and Mr. Bernhard will have nothing to rebut. Tellingly, they are not doing so, and seek only to exclude the rebuttal to that testimony.

Finally, Plaintiffs' remaining complaint—that Mr. Bernhard's stature as a former Commissioner risks giving Defendants an unearned "tacit endorsement"—is, at most, an argument under Federal Rule of Evidence 403 about how the testimony should be presented and cross-examined at trial, not a basis to exclude reliable, relevant expert testimony under Rule 702.

If Plaintiffs are permitted to present Mr. Doyle's affirmative opinion that they "can expect to be successfully licensed," Defendants are entitled to answer with a rebuttal witness who explains why that conclusion cannot reliably be drawn from the record Mr. Doyle chose to review. Rule 702 permits that straightforward rebuttal. Plaintiffs are fully equipped to cross-examine Mr. Bernhard on the scope of his assignment and the limits of his opinions. That is the traditional and appropriate tool for testing admissible expert testimony—not exclusion. Plaintiffs' motion should be denied in its entirety.

## **BACKGROUND**

### *Mr. Bernhard's Qualifications and the Scope of His Assignment*

Mr. Bernhard has been a licensed Nevada attorney since 1975. Ex. A-1 (Expert Rebuttal Report of Peter Bernhard, Feb. 6, 2026 ("Bernhard Rep.")) at ¶ 5. After clerking for the Honorable Roger D. Foley, former United States District Judge for the District of Nevada, he spent over two decades representing gaming licensees in Nevada before, in 1998, being appointed to the Nevada Commission on Ethics and, in 2001, to chair the Nevada Gaming Commission ("NGC")—a position he held for thirteen years, through June 2014. *Id*. ¶¶ 4–7. As Chair, Mr. Bernhard's responsibilities included reviewing thousands of investigative reports on applicants seeking licensing and other gaming approvals and presiding over monthly NGC meetings that routinely

2

acted on more than forty licensing, disciplinary, and regulatory items. *Id*. ¶ 7. Since leaving the NGC, he has continued to advise gaming licensees on suitability and compliance, including as the required independent member of licensee compliance committees responsible for evaluating the suitability of persons and entities with whom those licensees do business. *Id*. ¶¶ 5, 8. Plaintiffs do not dispute any of this. Mot. at 7 ("Plaintiffs do not dispute that he is well-credentialed.").

Mr. Bernhard's assignment was to review the expert report of Plaintiffs' witness Thomas Doyle and to determine, among other things, whether Mr. Doyle considered and applied the elements of a gaming regulatory investigation that Nevada and other jurisdictions actually require, whether the record presented issues or areas of concern that Plaintiffs would need to address in any such investigation, and whether Mr. Doyle's conclusions in paragraph 42 of his report were supportable on the materials Mr. Doyle actually reviewed. Ex. A-1 (Bernhard Rep.) at ¶ 2. Mr. Bernhard was also asked to evaluate the licensing-related assumptions underlying the damages opinions of Plaintiffs' expert Clarke Nelson. *Id*.

### *Mr. Doyle's "Basic Assessment" and Limited Foundation of His Report*

Mr. Doyle did not perform anything resembling the licensing investigation Nevada regulators actually conduct. He expressly described his work as only "a basic assessment" and acknowledged that a real licensing investigation would be significantly more involved. Ex. A-2 (Expert Report of Thomas Doyle, Jan. 9, 2026 ("Doyle Rep.")) at ¶¶ 38, 42 ("it would be impractical to conduct a full-blown licensing investigation—a process that often takes a year or longer and a staff of multiple people."). His report relied on a limited set of materials: (i) the First Amended Complaint; (ii) Paradise's annual and interim reports from 2019 through the available periods; (iii) two depositions (Jay Chun and Leo Chan); (iv) a single Macau criminal-record certificate issued for purposes of forming a commercial company, not for gaming licensure; (v) six foreign government business-registration or permission documents; and (vi) internet research. *Id*. at pg. 15 (list of materials considered).

That limited review is especially glaring because Mr. Doyle himself identified the categories of information regulators ordinarily require—including corporate documents, financial information (including bank statements, loan and other financial obligation documents, and tax

3

returns), regulatory history documents, background checks, related party information, and inquiry into managers and associates. *See id*. at ¶¶ 29-30, 39.  Yet at deposition he admitted that he did not review detailed financial records such as general ledgers, bank statements, loans, profit-and-loss statements, or tax returns; did not review operating agreements or broader corporate records; did not conduct employee interviews; did not undertake criminal history reviews; and, did not look at key family members.[2] Ex. A-3 (Deposition of Thomas Doyle, Feb. 27, 2026 ("Doyle Dep.")) at 127:25-133:3. More telling, he did not review, and there is no indication Plaintiffs ever completed, any of the detailed application forms (*e.g*., NGCB Forms 1, 1A, 2, 3, 4, 6, 7, 7A) that Nevada requires of every applicant and that form the actual starting point of any real investigation. Ex. A-1 (Bernhard Rep.) at ¶¶ 33–36, 42–43.

Based on his limited review, Mr. Doyle concluded that "there are no indications that LT Game would not have been able to be licensed to distribute gaming products in the US, including in Nevada," and "LT Game can expect to be successfully licensed."  Ex. A-2 (Doyle Rep.) at ¶ 42.

***Mr. Bernhard's Rebuttal Opinions***

Mr. Bernhard's report does not purport to independently conclude that Plaintiffs could not have been licensed, which he confirmed at deposition. *E.g.*, Ex. A-4 (Deposition of Peter Bernhard, Mar. 4, 2026 ("Bernhard Dep.")) at 152:3-17, 89:7-14 ("[T]hat's the main point of my rebuttal to Mr. Doyle's report. He didn't have anywhere near the basic information required to render the opinions that he did, and nor do I. So I cannot -- I did not and cannot render an opinion as to whether or not Paradise or plaintiffs would be approved, disapproved, conditioned, limited if they were to apply for a gaming license."). Plaintiffs' attack on him for not conducting an ultimate licensing investigation therefore misses the point: his rebuttal is that Mr. Doyle lacked the foundation to offer the ultimate opinion he did. *See* Mot. at 7-9.

---

[2] Plaintiffs fault Mr. Bernhard for not speaking with Mr. Feng or Ms. Zhao (Mot. at 8)—yet Mr. Doyle admitted that he did not review either the Feng or Zhao transcripts and instead relied on counsel's characterization of those depositions. Ex. A-3 (Doyle Dep.) at 129:15-25, 133:4-24; *see also* id*.* at 127:25-128:8 (admitting he did not review any of the other lawsuits that Plaintiffs have been involved with: "No, I did not review any of the lot. No, I think the -- there was an IGT lawsuit, something that was mentioned at some point in time. But I didn't place any reliance on that. I didn't know any details about that.").

4

Instead, Mr. Bernhard's report methodically identifies the categories of information Nevada regulators require—personal history and character, personal and business financial history, business experience and suitability, familiarity with legal and regulatory requirements, and social responsibility—and explains why Mr. Doyle's six sources do not supply that information. Ex. A-1 (Bernhard Rep.) at ¶¶ 37–42. Mr. Doyle conceded that Mr. Bernhard's discussion of the information and categories ordinarily examined in a Nevada gaming investigation "looks pretty accurate." Ex. A-3 (Doyle Dep.) at 204:8-14.

Mr. Bernhard then identifies specific, document-supported issues that any actual investigation would need to address, including:

- Paradise's casino-management relationship, through Casino Kam Pek Paradise, with concessionaire SJM Resorts, S.A.—a relationship with a documented history traceable to the late Stanley Ho—and the fact that this relationship recently ended, eliminating a casino that generated 66.2% of Paradise's total 2024 revenue and, by the first half of 2025, 75% of revenue and 80.5% of EBITDA.[3] *Id*. ¶¶ 45–49, 53. Mr. Doyle's report, based on financial data through 2024–2025, does not address the impact of this closure on Plaintiffs' financial suitability—a statutory criterion under NRS 463.170(3)(b) that Mr. Doyle's own report identifies as material. Ex. A-2 (Doyle Rep.) at ¶ 28.

- The presence of junket-room operations common to Macau satellite casinos, an area of long-documented regulatory concern given the criminal prosecutions of major Macau junket operators. Ex. A-1 (Bernhard Rep.) at ¶ 54 ("These junket operations have been of concern to Nevada regulators for various reasons, including oversight of games, methods used by junket representatives to collect debts from customers, money laundering concerns, and involvement of unsuitable persons."). As Mr. Bernhard observed, "Mr. Doyle's report does not reflect any information or inquiries that he made into Paradise's junket rooms and operators." *Id*.

- The complexity of Plaintiffs' corporate structure—more than fifty affiliated entities spanning at least seven jurisdictions—which, by Mr. Doyle's own account, correlates with the time and difficulty of licensing. *Id*. ¶¶ 55–59; Ex. A-2 (Doyle Rep.) at ¶¶ 29–30 (stating that regulators commonly require applications to provide "corporate or similar founding and structure documents," "related party information," and materials from "parent organizations"), ¶ 31 ("If a company seeking to be licensed does not put forward a related company or person in the licensing process, that means that the company seeking to be licensed is effectively telling the regulators that the other entities are not involved in the management or operation of the business."); *see also id*. at ¶ 23 ("license costs vary based on complexity of the entity").

Based on his thirteen years presiding over NGC licensing decisions, Mr. Bernhard opines that an investigation of an applicant with Plaintiffs' complexity would take at least a year, and

---

[3] There was nothing improper about Mr. Bernhard's testimony concerning Stanley Ho. *See* Mot. at 9. When asked why an association with Mr. Ho would raise red flags to regulators, Mr. Bernhard explained that much of the information informing his concern arose from confidential investigative materials he encountered during his prior regulatory service and therefore could not publicly disclose in detail. Ex. A-4 (Bernhard Dep.) at 69:15-70:17.

5

likely longer, drawing a direct comparison to the multi-year investigation that Empire itself underwent. Ex. A-1 (Bernhard Rep.) at ¶ 27. He further opines that Mr. Nelson's damages assumptions—which presuppose that Plaintiffs could have timely captured corporate opportunities—are not supportable in light of these realistic timing considerations. *Id*. ¶ 61.

### *Mr. Bernhard's Testimony Is Relevant*

Plaintiffs' Motion emphasizes that Defendants "do not currently plan to challenge Plaintiffs' moral and financial fitness for licensing." Mot. at 10. But Plaintiffs' own Motion confirms that two categories of their damages—seeking tens of millions for alleged usurped corporate opportunities—and their broader theory that Defendants' conduct left Plaintiffs "ten years behind Empire in the market" and delayed "any attempt Plaintiffs might have otherwise made to get licensed on their own," remain squarely at issue. *Id.* at 2, 4. Mr. Bernhard's opinions concerning the realistic time required to complete a licensing investigation of an entity with Plaintiffs' history and structure bear directly on those live damages issues—independent of, and unaffected by, any question of moral or financial disqualification. Mr. Doyle's opinions also go beyond the ability to obtain a license and timing. Plaintiffs, for example, would have Mr. Doyle testify that Empire's existing distributor license "makes it meaningfully harder for LT Game to enter the same market," while excluding Bernhard's rebuttal that Nevada is an "open market" jurisdiction that does not limit the number of licenses. Ex. A-2 (Doyle Rep.) at ¶ 34; Ex. A-1 (Bernhard Rep.) at ¶ 21.

### **LEGAL STANDARD**

Expert testimony is admissible under Federal Rule of Evidence 702 if the witness is qualified and the testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–95 (1993). The inquiry is a flexible one focused on principles and methodology, not on whether the Court agrees with an expert's ultimate conclusions. *Id.* at 594–95. Relevance means only that the testimony will assist the trier of fact in understanding or determining a fact in issue. *Primiano v. Cook*, 598 F.3d 558, 563-64 (9th Cir. 2010). The Ninth Circuit has repeatedly emphasized that Rule 702 contemplates a broad conception of expert qualifications, and that the trial court's gatekeeping role is not meant to supplant the jury's role in weighing conflicting,

6

reliable expert opinions. Where the challenge goes to the completeness of the record an expert reviewed, the strength of an expert's methodology, or the persuasiveness of an expert's conclusions, the remedy is cross-examination and competing evidence—not exclusion. *See e.g.*, *id.* As the Supreme Court explained in *Daubert* itself, "vigorous cross-examination, presentation of contrary evidence, and careful jury instruction on the burden of proof"—rather than wholesale exclusion— "are the traditional and appropriate means of testing shaky but admissible evidence." 509 U.S. at 596.

This standard applies with particular force to rebuttal experts, whose function is inherently comparative and critical: to identify what a testifying expert's methodology omitted or got wrong. A rebuttal expert who reliably applies his own field's accepted standards to identify such gaps offers admissible testimony even where he does not, and need not, independently complete the analysis the opposing expert should have performed. *See Braun v. Medtronic Sofamor Danek, Inc.*, 719 F. App'x 782, 792 (10th Cir. 2017) (rejecting the argument that an expert must prove in detail every step of a hypothetical process never actually undertaken).

## ARGUMENT

**I.    Mr. Bernhard's Testimony Rests on a Reliable Application of His Regulatory Experience to the Record, Which Is All Rule 702 Requires**

Mr. Bernhard's central opinions—that Mr. Doyle's six sources do not supply the categories of information Nevada regulators actually require, and that specific, document-supported issues exist that any real investigation would need to resolve—are not speculation. They are grounded in (i) Mr. Bernhard's thirteen years personally presiding over NGC licensing decisions and reviewing thousands of investigative files, and (ii) specific documents in the case record that he cites throughout his report by Bates number, including Plaintiffs' own organizational charts, shareholder lists, annual and interim financial reports, and public disclosures regarding the closure of Casino Kam Pek Paradise. Ex. A-1 (Bernhard Rep.) at ¶¶ 5, 7, 44–49, 56–57 & n.10–16. This is precisely the kind of expert testimony Rule 702 is designed to admit: a qualified witness reliably applying the standards of his field to the facts of the case.

Plaintiffs do not seriously dispute that this is the type of information Nevada regulators require; Mr. Doyle's own report confirms it, describing similar categories of documents that Nevada investigators commonly request. Ex. A-2 (Doyle Rep.) at ¶¶ 27, 29. Plaintiffs' quarrel is instead with Mr. Bernhard's conclusion that Mr. Doyle's narrower set of sources was insufficient— a disagreement about the weight and persuasiveness of competing expert opinions, which is exactly what Rule 702 leaves for the jury to resolve, not a basis for exclusion. *See Primiano*, 598 F.3d at 564–65 (disputes about the factual basis or accuracy of an expert's conclusions go to weight, not admissibility).

**II.    A Rebuttal Expert Need Not Independently Conclude That the Opposing Party Could Not Have Been Licensed to Reliably Critique the Adequacy of Another Expert's Methodology**

Plaintiffs' lead argument—that "Mr. Bernhard expressly admits having not assessed Plaintiffs' ability to be licensed," (Mot. at 1)—mistakes the nature of his assignment for a deficiency in it. Mr. Bernhard was not retained to conduct an independent licensing investigation and render his own up-or-down suitability verdict; he was retained to assess whether Mr. Doyle's opinion that Plaintiffs "can expect to be successfully licensed" was reliably supported by the materials Mr. Doyle actually reviewed. Ex. A-2 (Doyle Rep.) at ¶ 42; Ex. A-1 (Bernhard Rep.) at ¶ 2. It was not, for the reasons detailed in his report: a civil complaint's allegations, a company's own annual reports, deposition testimony taken for purposes unrelated to licensing, a criminal-record certificate issued for company formation rather than gaming licensure, foreign business-registration certificates, and a marketing website do not constitute the kind of independently verified information on which any actual regulator would rely. Ex. A-1 (Bernhard Rep.) at ¶¶ 42–43.

Requiring a rebuttal expert to complete the very investigation he identifies as never having been performed—before he may testify that the opposing expert's conclusion lacks foundation— would effectively immunize any expert opinion from rebuttal so long as the expert acknowledges, as Mr. Doyle candidly does, that he not only failed to perform the assessment that Nevada regulators themselves would do, but only sought to undertake a "basic assessment" of the issue. Ex. A-2

(Doyle Rep.) at ¶¶ 38, 42 (conceding that a full-blown licensing investigation would take a year or longer and a staff of multiple people). That is not the law. An expert may reliably testify that another expert's opinion is unsupported by identifying what was missing and why it matters, without independently performing the omitted work. *Braun*, 719 F. App'x 782, 791-92 (rejecting a comparable argument that a defense expert needed to replicate an FDA approval process never undertaken).

Plaintiffs' reliance on *Blockchain Innovation* and *Townsend* is misplaced. Those cases excluded experts who offered conclusions with no explanation of the factual basis for their opinions, or who opined outside the scope of their demonstrated expertise altogether. *See Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-cv-08787-TSH, 2024 WL 5483606, at *11 (N.D. Cal. Oct. 22, 2024); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1031–32 (C.D. Cal. 2018). Mr. Bernhard's report is the opposite: it methodically walks through the categories of information Nevada regulators require, cites the specific case documents on which his opinions rely, and explains—by reference to his thirteen years chairing the agency responsible for these very decisions—why those categories matter and why the record here would generate scrutiny. That is a textbook explained factual basis, not the unsupported *ipse dixit Blockchain Innovation* and *Townsend* addressed.

### III.    Mr. Bernhard Does Not Opine on the Legal Burden of Proof; He Opines on Regulatory Practice and Realistic Timelines, Which Are Factual Matters Within His Expertise

Plaintiffs next argue that Mr. Bernhard's testimony "impermissibly intrudes on the Court's role in setting evidentiary standards" by supposedly urging that Plaintiffs be held to a standard beyond preponderance of the evidence. Mot. at 11. Nothing in Mr. Bernhard's report discusses the burden of proof, the standard of proof, or any other legal standard applicable to this civil case. He likewise testified that he was not offering any opinion about federal evidentiary burdens or what proof would satisfy Plaintiffs' burden at trial. Ex. A-4 (Bernhard Dep.) at 122:13-124:7.

His report addresses two factual subjects: (i) the categories of information Nevada gaming regulators actually require and verify during a licensing investigation, and (ii) the realistic time such an investigation would take given the complexity of Plaintiffs' operations and corporate

9

structure. Ex. A-1 (Bernhard Rep.) at ¶¶ 19, 27, 42–43. Those are quintessential questions of regulatory practice—the very subject Mr. Bernhard spent thirteen years administering as NGC Chair—not legal conclusions about litigation burdens.

More fundamentally, Plaintiffs' burden-of-proof argument attacks an opinion Mr. Bernhard did not give. He is not opining that Plaintiffs necessarily would have been denied a license. He is opining that Mr. Doyle did not undertake enough investigation to support the affirmative opinion that Plaintiffs "can expect to be successfully licensed." Ex. A-2 (Doyle Rep.) at ¶ 42.

That Plaintiffs might prefer a jury to accept Mr. Doyle's more truncated review as sufficient does not transform Mr. Bernhard's contrary, experience-based opinion into a legal argument about evidentiary standards. Both experts' opinions concern the same factual question—what investigation would have occurred had Plaintiffs applied for Nevada gaming approvals—and the existence of two competing, reliable expert opinions on that factual question is a reason for the jury to hear both, not a basis to strike one. *See Primiano*, 598 F.3d at 564–65 (explaining that a trial judge is to screen the jury from unreliable, nonsensical opinions, not exclude an opinion merely because it is impeachable).

**IV.    Mr. Bernhard's Opinions Remain Relevant Regardless of Any Position on Moral or Financial Fitness**

Plaintiffs' third argument—that Defendants' recent clarification that they do not presently intend to challenge Plaintiffs' moral or financial fitness for licensing moots Mr. Bernhard's testimony (Mot. at 10)—conflates two distinct subjects in Mr. Bernhard's report. Sections V.A and V.B address whether Mr. Doyle had a sufficient basis to opine on suitability. Sections V.C and V.D address a separate and independently important question: how long a Nevada investigation of an applicant with Plaintiffs' documented complexity would actually take, and what that timing means for the damages theories advanced through Mr. Nelson. *See* Ex. A-1 (Bernhard Rep.) at ¶¶ 53–61. All of these issues remain relevant, not least because Plaintiffs still seek to introduce their testimony on these subjects, and because Plaintiffs seek millions of dollars for various alleged usurped

corporate opportunities on damages theories that assume that Plaintiffs were licensed, or could have been timely licensed, to pursue the alleged opportunities.

**V.     Plaintiffs' Prejudice Argument Is a Rule 403 Argument to Be Addressed Through Cross-Examination and Instruction, Not Exclusion Under Rule 702**

Plaintiffs finally argue that permitting Mr. Bernhard to testify would create a prejudicial "tacit endorsement" of Defendants because of his stature as a former Commissioner. Mot. at 12. This is not a reliability argument under Rule 702 at all; it is, at best, an argument under Federal Rule of Evidence 403 that any probative value is substantially outweighed by unfair prejudice—and it fails on its own terms. Every well-credentialed expert carries some risk that a jury will weigh their opinion more heavily because of their background; that is simply what qualifications are for, and it is not a basis to exclude an otherwise reliable and relevant opinion. This is particularly true here, as Plaintiffs cite "no authority supporting that an expert's impressive qualifications alone can be unfairly prejudicial." *See United States v. Saini*, 23 F.4th 1155, 1166 (9th Cir. 2022). Both of Plaintiffs' cases are inapposite. *United States v. Hanna* concerned highly trained law enforcement officers who, as a result of that training, were "particularly unqualified to comment on what the 'reasonable person' would have foreseen," 293 F.3d 1080, 1086 (9th Cir. 2002), yet they accuse Bernhard of the opposite, serving an uninformed "endorser." Mot. at 12. *Bourelle v. Crown Equip. Corp.* is even less helpful, as it addressed the distinction between an expert's credentials and reliability of their opinion—not the risk of credentials prejudicing jurors. 220 F.3d 532, 537 n.11 (7th Cir. 2000).

Nor is there any basis to think the jury will be misled here. Plaintiffs' own expert, Doyle, also worked at the NGC. Plaintiffs' Motion demonstrates, through extensive deposition excerpts, that they are fully prepared to cross-examine Mr. Bernhard on the scope of his assignment, the materials he did and did not review, and the limits of his opinions. Mot. at 8–9. That is precisely the vigorous cross-examination and presentation of contrary evidence that *Daubert* identifies as the appropriate response to admissible expert testimony a party believes is subject to legitimate criticism—not a reason to keep the jury from hearing it at all. 509 U.S. at 596.

11

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to preclude the testimony of Peter Bernhard.

Dated: July 31, 2026

Respectfully submitted,

*/s/ Patrick J. Reilly*
Patrick J. Reilly
**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, 16th Floor
Las Vegas, Nevada 89106

Mark Oakes (*pro hac vice*)
Zach McHenry (*pro hac vice*)
Ethan Glenn (*pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas  78701-4255

*Attorneys for Defendants*

## INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | Declaration of Zach McHenry |
| A-1 | Expert Rebuttal Report of Peter Bernhard, dated February 6, 2026 |
| A-2 | Expert Report of Thomas Doyle, dated January 9, 2026 |
| A-3 | Deposition of Thomas Doyle, dated February 27, 2026 |
| A-4 | Deposition of Peter Bernhard, dated March 4, 2026 |

12

## CERTIFICATE OF SERVICE

I, Patrick J. Reilly, counsel for Defendants, hereby certify that, on July 31, 2026, Defendants' Opposition to Plaintiffs' *Daubert* Motion to Preclude Testimony of Peter Bernhard was served on the following counsel of record by electronic transmission at the email addresses listed below:

*s/ Patrick J. Reilly*
Patrick J. Reilly

OLIVER J. PANCHERI, ESQ.
Nevada Bar No. 7476
JESSICA M. LUJAN, ESQ.
Nevada Bar No. 14913
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 791-0308
Fax: (702) 791-1912
Email: Opancheri@spencerfane.com
Jlujan@spencerfane.com

JEAN-PAUL CIARDULLO, ESQ.
California Bar No. 284170
**FOLEY & LARDNER LLP**
555 Flower Street, Suite 3300
Los Angeles, California 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
Email: jciardullo@foley.com

HANNAH ANDREWS, ESQ.
Nevada Bar No. 18157
ROBERT T. STEWART, ESQ.
Nevada Bar No. 13770
STEWART R. NELSON, ESQ.
Utah Bar No. 17286
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, UT 84111
Tel.: (801) 401-8900
Email: rtstewart@foley.com
srnelson@foley.com
handrews@foley.com

DARIUSH KEYNANI (*pro hac vice*)

13

New Jersey Bar No. 044062002
**KEYHANI LLC**
1050 30th Street NW
Washington, DC 20007
Tel: (202) 748-8950
Email: dkeyhani@keyhanillc.com

*Attorneys for Plaintiffs*

14