# Exhibit A-1

# Deposition of Paul Peterson

# Mar. 13, 2026

Videotaped Deposition of

# Paul Peterson

March 13, 2026

Paradise Entertainment Limited

vs.

Empire Technological Group Limited



www.aptusCR.com | 866.999.8310

Case 2:24-cv-00428-JCM-BNW    Document 197-2    Filed 07/31/26    Page 3 of 8

Paradise Entertainment Limited vs.
Empire Technological Group Limited

Paul Peterson

**Page 1**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

- - - - - - - - - - - - - - - X

PARADISE ENTERTAINMENT      :

LIMITED, a Bermuda          :

corporation; and LT GAME,   :

INC., a Nevada corporation, :

and LT GAME LIMITED, a      :

British Virgin Islands      :

Corporation,                : Case No.

    Plaintiffs and         : 2:24-cv-00428-JCM

    Counterdefendants,     : -BNW

    v.                     :

EMPIRE TECHNOLOGICAL GROUP   :

LIMITED, a Nevada           :

corporation; GAMING         :

SPECIALIZED LOGISTICS, LLC, a :

Nevada limited liability    :

company; LINYI FENG, an     :

individual; and DARYN KIELY, :

an individual; and YI ZHAO, :

an individual,              :

    Defendants and         :

    Counterclaimants.      :

- - - - - - - - - - - - - - - X

**Page 2**

Deposition of

PAUL PETERSON

Videotaped Deposition of PAUL PETERSON, taken on behalf of defendants, held at Foley & Lardner, 3000 K Street, NW, Washington, DC, commencing at 10:03 a.m., on Friday, March 13, 2026, before Desirae S. Jura, RPR, CSR No. 14661.

Job No. 10185178

**Page 3**

APPEARANCES:

Attorneys for Plaintiffs:

    DARIUS KEYHANI, ESQ.

    SCOTT DRAFFIN, ESQ.

    FRANCES STEPHENSON

    KEYHANI, LLC

    1050 30th Street, NW

    Washington, DC 20007

    (202) 748-8950

    dkeyhani@keyhanillc.com

    -and-

    JEAN-PAUL CIARDULLO, ESQ. (Via Zoom)

    FOLEY & LARDNER, LLP

    555 South Flower Street, Suite 3300

    Los Angeles, California 90071

    (213) 972-4500

    jciardullo@foley.com

**Page 4**

APPEARANCES (Continued):

Attorneys for Defendants:

    BRIAN STOLARZ, ESQ.

    NORTON ROSE FULBRIGHT

    799 9th Street NW

    Suite 1000

    Washington, DC 20001

    (202) 662-0200

    brian.stolarz@nortonrosefulbright.com

ALSO PRESENT:

    BRADLEY LOY, Videographer

    C. NELSON (Via Zoom)

Case 2:24-cv-00428-JCM-BNW Document 197-2 Filed 07/31/26 Page 4 of 8

Paul Peterson

Paradise Entertainment Limited vs.
Empire Technological Group Limited

Page 5

C O N T E N T S

PAUL PETERSON                                    EXAMINATION

   BY MR. KEYHANI                                7, 143

   BY MR. STOLARZ                                137


              E X H I B I T S

PETERSON EXHIBIT NO.                             PAGE

Exhibit 1 - Expert Rebuttal Report of Paul

            Peterson CPA, CFE, CFF, CIA,

            February 6, 2026                     14

Exhibit 2 - Attachment 3, First Amended

            Complaint                            31

Exhibit 3 - Letter dated June 13, 2023,

            from Lewis Roca, Re: N18-0483,

            Empire Technological Group

            Limited, with attachment,

            Bates commencing

            ETG_00000205774                      118

Exhibit 4 - Continued Videotaped

            Interpreted Deposition of

            Linyi "Frank" Feng                   149

Page 7

THE VIDEOGRAPHER: The court reporter today is Desirae Jura, and she may now swear in the witness.

Whereupon,

PAUL PETERSON,

having been duly sworn by the Notary Public, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR PLAINTIFFS

BY MR. KEYHANI:

Q. Good morning.

A. Good morning.

Q. Could you state your full name for the record?

A. Paul Peterson.

Q. And what is your current address?

A. My current address for work is 799 Ninth Street in Washington, DC.

Q. And your residential address?

A. 509 Cameron Street, Alexandria, Virginia.

Q. Thank you. Have you been deposed before?

A. No.

Q. Have you provided testimony in any kind of proceeding before?

A. No.

Q. So we'll go over some ground rules, basic

Page 6

P R O C E E D I N G S

THE VIDEOGRAPHER: We are now on the record. Today's date is March 11th -- or March 13th, 2026. The time on the video monitor is 10:03.

This is the video deposition of Paul Peterson, being taken for the matter of Paradise Entertainment Limited versus Empire Technological Group Limited, pending in the United States District Court, District of Nevada, Case Number 2:24-CV-00428-JCM-BNW.

We are at 3000 K Street, Northwest, Washington, DC. My name is Bradley Loy of Aptus Court Reporting, located at 1 Embarcadero Street, Suite 1060, San Francisco, California, 94111.

Will counsel please identify yourselves, and state whom you represent?

MR. KEYHANI: Darius Keyhani, and my partner, Frances Stevenson, and associate, Scott Draffin, on behalf of the plaintiffs. We're with Keyhani, LLC.

MR. CIARDULLO: This is Jean-Paul Ciardullo from Foley & Lardner, on behalf of the plaintiffs. I'll be listening in today.

MR. STOLARZ: Brian Stolarz, Norton Rose Fulbright, on behalf of the defendants.

Page 8

rules, just so you're familiar with the process, and our court reporter can readily and easily transcribe what she needs to transcribe.

So I'll be asking questions, and you'll be answering questions, obviously. Your counsel may object from time to time. And unless he tells you not to answer a question on the basis of privilege, or some other basis, you should answer the questions to the best of your ability.

I'm going to do my best not to interrupt you. If you could also wait until I finish the question before you answer. Also, you may want to give your counsel time to object, if he needs to put in an objection. So it kind of -- it may be a little less natural, the process. We've got to wait a little bit. Normally, in conversation, we might -- you know, but just give everybody a little time to object. And that also allows for our court reporter to get everything transcribed. Does that make sense?

A. It does.

Q. And if you need to use the bathroom or anything like that, just finish your answer, and then we can go. This is not an interrogation. It's just a deposition, and so you can go. Of course, the lunch break, we'll take when everybody is comfortable

Case 2:24-cv-00428-JCM-BNW    Document 197-2    Filed 07/31/26    Page 5 of 8

Paradise Entertainment Limited vs.
Empire Technological Group Limited

Paul Peterson

Page 13

the main person doing the report, and you were collaborating?

A. Yes.

Q. What kind of cases were they -- subject matter of the cases?

A. Well --

Q. At a high level. I'm not getting into the details, but, like, just the topics.

MR. STOLARZ: Object to form. Any -- anything you're -- confidential, you shouldn't. But otherwise, please answer the question.

THE WITNESS: Yeah, my career spans 28 years, over 28 years. And so quite a number of cases. Generally speaking, I've been involved in assisting with developing methodologies and assumptions to determine damage calculations.

And generally speaking, I've assisted on cases in which the company had issues, in which management misappropriated assets. And there were damages involved in that misappropriation. And I was part of the team to come up with the calculations and the damage estimates as part of the -- as part of the litigation.

Q. So you were part of the team that did a damages analysis -- assessment of how much damages

Page 14

were incurred or suffered?

A. Yes.

Q. About how many of these type of reports did you work on?

A. Well, spanning over the 28 years of my career --

Q. Right.

A. -- I would say I've worked on hundreds, in excess of hundreds -- of a hundred cases in which this type of procedures and the nature of my work involved damage calculations.

Q. And you worked with a group on these reports?

A. Yes.

Q. On these various reports? Okay.

I'm going to give you what will be marked as Plaintiffs' Exhibit 1. This is your expert rebuttal report. Put that in front of you.

MR. KEYHANI: If we could get this marked as Number 1.

(Peterson Exhibit No. 1 was identified for the record.)

BY MR. KEYHANI:

Q. Maybe we can put the marked one in front of you, and I'll take this one.

Page 15

MR. STOLARZ: Darius, are we sequentially numbering from the last deposition, or what did you number this one?

MR. KEYHANI: I just made this 1.

MR. STOLARZ: Peterson 1?

MR. KEYHANI: Peterson, yeah.

MR. STOLARZ: That's fine. I just wanted to know what you're doing.

MR. KEYHANI: Yeah.

BY MR. KEYHANI:

Q. If you could take a moment to look at this. I want to note that this does not include all of your exhibits, because that was -- we broke it up. But this is your report. It should include the list of your references at the back of it, and your CV.

But maybe just take a moment, and make sure that -- there's 513 references, it appears, identified. But this is -- at least with respect to what it's supposed to be, it is there. And then we could go on from there.

A. Okay.

Q. Okay? Does this look familiar?

A. It does.

Q. Is this your expert report?

A. It is.

Page 16

Q. Missing some --

A. It appears to be.

Q. Okay. Missing some further attachments, the complaint and other stuff. Is that fair?

A. Yes.

Q. Okay. If you could go to your CV -- yeah, at the back of it. I just want to walk through some of your background, if that's okay with you.

A. Yes.

Q. So currently, who do you work for?

A. I work for BDO USA.

Q. And what is BDO USA?

A. BDO is a global public accounting firm that specializes in audit, tax, and advisory services.

Q. How many people work for this firm?

A. Globally, there are 120,000 professionals within BDO.

Q. It has offices all over the world, presumably?

A. Yeah, BDO is located, and has offices in 162 countries, with over 1,000 offices. In the U.S., we have over 60 offices, and over 10,000 professionals.

Q. How many work with you in the DC office?

Paul Peterson

Paradise Entertainment Limited vs.
Empire Technological Group Limited

Page 81

of the damages. And that's the basis of my opinion, is Nelson's report.

Q. You understand that Mr. Nelson assumed the facts in the complaint to be true when doing his accounting. Did you know that?

MR. STOLARZ: Object to form.

THE WITNESS: I can't -- I can't say what he assumed. In his report, he lays out a background about allegations. But his opinions are about the damages, and not what he assumed -- whether the validity of the claims or not.

BY MR. KEYHANI:

Q. So as you sit here today, you don't know if Mr. Nelson assumed the facts in the lawsuit being alleged, the 13 claims, to be true or not?

MR. STOLARZ: Objection, mischaracterizes the prior answer. You can answer, if you can. No, it does. It does.

MR. KEYHANI: It doesn't mischaracterize -- I'm asking him --

MR. STOLARZ: Yes, it does.

MS. KEYHANI: -- if he understands -- what he understands.

Do you want to restate the question, Ms. Jura? I'm sorry.

Page 82

(Reporter read back as follows:

"Question: You understand that Mr. Nelson assumed the facts in the complaint to be true in doing his accounting. Did you know that?")

MR. STOLARZ: The same objection.

THE WITNESS: Yeah, I wouldn't be able to say what he assumed. What I can say is he put forward opinions about the damage calculation. If he assumed that those -- those frauds were actually incurred or not, you know, that -- he was engaged by the plaintiffs to come up with a damages amount. I'm assessing that. I don't want to state what he may have assumed, what he did not assume, in terms of all 13 counts of -- that are listed in the complaint.

BY MR. KEYHANI:

Q. So you don't have an understanding as to whether he did or didn't assume those facts, is what I'm asking you?

MR. STOLARZ: Object to form.

THE WITNESS: That's correct.

BY MR. KEYHANI:

Q. Category 2 on paragraph 32, loss category 2, you state the Nelson report -- this is on page 10 for your assistance.

A. Yeah, okay.

Page 83

Q. "The Nelson report incorrectly assumes that plaintiffs either as a primary license holder or an affiliate party could meet the legal requirements to obtain a TPPPS license in California, and would have been able to participate in the F2 business."

Are you familiar with the legal requirements to obtain a TPPPS license, yourself?

A. I would categorize it as somewhat, based off of discussion with Tiffany Lichtig's -- a discussion with her, and her expert report.

Q. You have no expertise -- I'm sorry, go ahead.

A. Yeah, but I'm not an expert with the licensing around TPPPS, and the requirements around that. But based off of my discussion with Tiffany and her report, I do have a general understanding of that.

Q. You're not a lawyer, right, by education?

A. No.

Q. You have no expertise in law, do you?

MR. STOLARZ: Object to form.

THE WITNESS: There are some legal concepts that I know, but I'm no -- I have no expertise in law. I'm not educated or trained formally on the law.

Page 84

BY MR. KEYHANI:

Q. You're not an expert in California gaming law?

A. Correct, I'm not.

Q. You have no independent knowledge of California gaming law, other than what you've --

A. Correct.

Q. -- heard from the other expert? So is it correct to say that your critique or rebuttal for this category 2, relating to the F2 business, is all reliant on the other expert, Ms. Lichtig's, opinion about what California law is, and what it does or does not permit?

A. Yeah, so I do rely on Tiffany Lichtig. And if you look at paragraph 85 and 86 on page 24, this is where I state that I understand that no company -- in paragraph 86, I understand that under California law, no company can operate TPPPS without a license. And that I understand that none of the plaintiffs had TPPPS licenses at the time, and none of the plaintiffs could have obtained a TPPPS license that was required to secure the F2 TPPPS opportunity.

And my reference, and my citation is to a discussion with Tiffany Lichtig. So I relied on her for that sentence that speaks to the requirement of

Paul Peterson

Page 85

the license.

Q.   You don't have any independent knowledge about any of this, other than you're relying on the other expert, Ms. Lichtig, correct, of California gaming law, and what it does and does not require with respect to the TPPPS?

A.   There was some research that I did, but it's -- it's primarily based off of Tiffany's assessment, in terms of the license. But in general, the California law, I'm not an expert on. And I don't have a strong grasp of, under California law, what's required for a TPPPS license.

Q.   Can you go to paragraph 18 of your report? Take a look at that paragraph. Did you read the transcript of Marcos Medero?

A.   Yes.

Q.   The deposition transcript?

A.   Yes.

Q.   All of it?

A.   Yes.

Q.   Is Mr. Medero an accountant, to your understanding?

A.   Yes.

Q.   Do you find his testimony regarding his accounting practices to be reliable?

Page 86

MR. STOLARZ: Object to form.

THE WITNESS: I can't speak to the reliability of his accounting practices, as that's a very broad question. So I wouldn't be able to say if it's reliable or not.

BY MR. KEYHANI:

Q.   Is it professional, his testimony, in your review, as a CPA and a fraud expert?

MR. STOLARZ: Object to form. Thank you.

THE WITNESS: It appears that Medero was quite knowledgeable about accounting principles, and that he was familiar with how to review expenses, familiar with supporting documents, and what was needed to complete and substantiate a transaction. So he seemed to be knowledgeable on the topic of accounting.

BY MR. KEYHANI:

Q.   What is your understanding about how Mr. Medero would apportion costs for LTGC versus Empire?

MR. STOLARZ: Just let me note an objection that Mr. Peterson is not being proffered to rebut Mr. Medero or his processes. He's being proffered to rebut Mr. Nelson. You may answer.

THE WITNESS: Yeah, my understanding is

Page 87

that he looked at a super-detailed level -- as he stated, quote/unquote, super-detailed. He would send the invoices along with the requisition, and he would review invoices and make determinations of which ones should be excluded from the package that was essentially solely for LTGC's responsibility versus Empire.

And he made, in accordance with his deposition, a strong approach to separating out, what would LTGC expenses versus what was Empire's expenses. And he stated that, when asked if there were any Empire expenses that were reimbursed, he testified as, quote/unquote, zero.

BY MR. KEYHANI:

Q.   Do you recall Mr. Feng testifying to, as well as Mr. Medero, that Mr. Feng took a million dollars from LTGC and put it into F2 business?

A.   I do recall a discussion around a million dollars that was, from what I understand, a short-term borrowing that was paid back within a month to LTGC.

And in addition to that, I did recall seeing discussions in which it was normal course of business to have these short-term loans between LTGC and Empire. And then the other way around. And so I

Page 88

do understand that there was a $1 million short-term borrowing that occurred, and that was discussed between those two.

Q.   The characterization of Mr. Feng taking a million dollars from LTGC as a loan, where did that come from?

A.   It's --

Q.   Whose perspective is that?

MR. STOLARZ: Object to form. You can answer.

THE WITNESS: Yeah, my reference to short-term loan was the -- I guess the nature maybe of the transaction, that it was repaid within a -- within 30 days.

And so that leads me to believe that it's a short-term loan. But my understanding is, generally, from a normal course, there were other sort of borrowings, maybe -- borrowings would be maybe more appropriate. A loan sounds like it's an extended period of time -- more extended period of time.

But nonetheless, there was a back and forth that I understand, based on discussions, that the 1 million wasn't sort of isolated.

BY MR. KEYHANI:

**Paul Peterson**

**Page 161**

I think this deposition is over. Turn it over to you, if you have additional questions.

MR. STOLARZ: Take a five-minute break.

MR. KEYHANI: No, we're done.

THE VIDEOGRAPHER: We are off the record at 14:56.

(Recess.)

MR. STOLARZ: Nothing further. Read and sign.

(The deposition concluded at 3:01 p.m.)

**Page 162**

CERTIFICATE OF REPORTER

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings were duly sworn; that a record of the proceedings was made by me using machine shorthand and transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a federal case, before completion of the proceedings, review of the transcript [ X ] was [ ] was not requested.

I further certify I'm neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: March 27th, 2026

_____

Desirae S. Jura

RPR, CSR No. 14661

**Page 163**

DECLARATION UNDER PENALTY OF PERJURY

Case Name: Paradise Entertainment Limited
        vs. Empire Technological Group Limited

Date of Deposition: 03/13/2026

Job No.: 10185178


I, PAUL PETERSON, hereby certify under penalty of perjury under the laws of the State of _____ that the foregoing is true and correct.

Executed this _____ day of _____, 2026, at _____.



_____

PAUL PETERSON


NOTARIZATION (If Required)

State of _____

County of _____

Subscribed and sworn to (or affirmed) before me on this _____ day of _____, 20__,

by_____,     proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____ (Seal)

**Page 164**

DEPOSITION ERRATA SHEET

Case Name: Paradise Entertainment Limited
        vs. Empire Technological Group Limited

Name of Witness: Paul Peterson

Date of Deposition: 03/13/2026
Job No.: 10185178

Reason Codes:  1. To clarify the record.
               2. To conform to the facts.
               3. To correct transcription errors.

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

Page _____ Line _____ Reason _____

From _____ to _____

**Page 161..164**