# Exhibit A-4

# Deposition of Frank Feng

# Oct. 21 & 22, 2025

CONFIDENTIAL - Linyi "Frank" Feng, Vol. I  -  10/21/2025
Case 2:24-cv-00428-JCM-BNW    Document 197-5    Filed 07/31/26    Page 2 of 11
Paradise Entertainment Limited, et al. vs. Empire Technological Group Limited

CONFIDENTIAL ATTORNEYS' EYES ONLY

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Case No. 2:24-cv-00428-JCM-BNW

PARADISE ENTERTAINMENT LIMITED,
a Bermuda corporation; LT GAME,
INC., a Nevada corporation; and
LT GAME LIMITED, a British Virgin
Islands Corporation,

Plaintiffs/Counter-Defendants,

v.

EMPIRE TECHNOLOGICAL GROUP LIMITED,
a Nevada corporation; GAMING
SPECIALIZED LOGISTICS LLC, a Nevada
limited liability company;
LINYI FENG, an individual;
ROY KELCEY ALLISON, an individual;
DARYN KIELY, an individual; and
YI ZHAO, an individual,

Defendants/Counter-Claimants.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

VIDEOTAPED INTERPRETED DEPOSITION OF
LINYI "FRANK" FENG

Volume 1 (Pages:  1-89)

Tuesday, October 21, 2025
11:14 AM - 5:29 PM

STENOGRAPHICALLY REPORTED BY:
Tamra K. Piderit, FPR, FPR-C, RPR, RMR, RDR, CRR
Nevada CCR #1009
Certified Realtime Reporter

Job No. 65985



CONFIDENTIAL - Linyi "Frank" Feng, Vol. I - 10/21/2025
Case 2:24-cv-00428-JCM-BNW Document 197-5 Filed 07/31/26 Page 3 of 11
Paradise Entertainment Limited, et al. vs. Empire Technological Group Limited

APPEARANCES:


ON BEHALF OF THE PLAINTIFFS:

            KEYHANI LLC
            1050 30th Street Northwest
            Washington, DC 200007
            202.748.8950
            BY:  Darius Keyhani, Esquire
            dkeyhani@keyhanillc.com
            BY:  Frances Stephenson, Esquire
            fstephenson@keyhanillc.com
            BY:  Scott Draffin, Esquire (Via Zoom)
            sdraffin@keyhanillc.com


            FOLEY & LARDNER LLP (Via Zoom)
            555 Flower Street
            Suite 3300
            Los Angeles, California 90071
            213.972.4500
            BY:  Jean-Paul Ciardullo, Esquire
            jciardullo@foley.com


            FOLEY & LARDNER LLP (Via Zoom)
            95 South State Street
            Suite 2500
            Salt Lake City, Utah 84111
            801.401.8900
            BY:  Robert T. Stewart, Esquire
            rtstewart@foley.com


ON BEHALF OF THE DEFENDANTS:

            NORTON ROSE FULBRIGHT US LLP
            98 San Jacinto Boulevard
            Suite 1100
            Austin, Texas 78701
            512.536.5221
            BY: Mark Oakes, Esquire
            mark.oakes@nortonrosefulbright.com


ALSO PRESENT:

Nick Nardiello, Videographer
Mark Hettinger, Corporate Counsel and President, Aruze
Fei Allen, Mandarin Interpreter

CONFIDENTIAL - Linyi "Frank" Feng, Vol. I - 10/21/2025
Case 2:24-cv-00428-JCM-BNW   Document 197-5   Filed 07/31/26   Page 4 of 11
Paradise Entertainment Limited, et al. vs. Empire Technological Group Limited

I N D E X

WITNESS:

Linyi "Frank" Feng

Direct Examination By Mr. Keyhani          6
Errata Sheet                              88
Certificate of Reporter                   89

EXHIBITS

NO.                    DESCRIPTION                    PAGE

Exhibit 1    01/22/23 email to Jay Chun from          56
             Frank Feng; Subject:  Commerce
             card shoe removal notification
             ETG_00000164322 - 164324

Exhibit 2    04/27/23 WeChat conversation          64
             ETG_00000201583 - 2015834

Exhibit 3    PowerPoint                            70
             ETG_00000198731 - 198758



CONFIDENTIAL - Linyi "Frank" Feng, Vol. I - 10/21/2025
Case 2:24-cv-00428-JCM-BNW Document 197-5 Filed 07/31/26 Page 5 of 11
Paradise Entertainment Limited, et al. vs. Empire Technological Group Limited

THE VIDEOTAPED INTERPRETED DEPOSITION OF FRANK FENG was taken on Tuesday, October 21, 2025, at 11:14 AM at Brownstein Hyatt Farber Schreck, 100 North City Parkway, Suite 1600, Las Vegas, Nevada, before Tamra K. Piderit, FPR, FPR-C, RPR, RMR, RDR, CRR, Nevada Certified Court Reporter No. 1009.

~ ~ ~ ~ ~

THE VIDEOGRAPHER: We are now on the record. Today's date is October 21, 2025, and the time is 11:14 AM.

This is the video deposition of Frank Feng being taken in the matter of Paradise Entertainment Limited, et al., v. Empire Technological Group Limited, et al., on behalf of the plaintiffs, pending in the court, U.S. District, District of Nevada, Case Number 2:24-CV-00428.

This deposition is taking place at 100 North City Parkway, Suite 1600, Las Vegas, Nevada 89106.

My name is Nick Nardiello with Aptus Court Reporting.

Will counsel please identify yourselves and state whom you represent.

MR. KEYHANI: Darius Keyhani, with my partner Frances Stephenson, at Keyhani LLC, and we represent the plaintiffs.

MR. OAKES: Mark Oakes with Norton Rose Fulbright representing the defendants.

MR. CIARDULLO: Jean-Paul Ciardullo from Foley & Lardner appearing remotely for the plaintiffs.

THE VIDEOGRAPHER: Anybody else?

MR. DRAFFIN: Also on the call for plaintiffs is Scott Draffin, associate with Keyhanni LLC.

THE VIDEOGRAPHER: Thank you.

Fei Allen is our interpreter. The court reporter today is Tamra Piderit, and she may now swear in the witness.

THE CERTIFIED STENOGRAPHER: Do you solemnly swear or affirm that the testimony you are about to interpret in the matter before you will be to the best of your ability?

THE INTERPRETER: Yes, I do.

Thereupon,

FEI ALLEN, was sworn to truly and correctly translate English into Mandarin and Mandarin into English the following proceedings:

THE STENOGRAPHER: Will you raise your right hand, please.

Do you solemnly swear or affirm that the testimony you are about to give in the matter before you will be

the truth, the whole truth, and nothing but the truth?

THE WITNESS: Yes, I do swear.

Thereupon,

LINYI "FRANK" FENG, having been duly sworn through the interpreter, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. KEYHANI:

Q. Thank you.

Good morning.

A. Good morning.

Q. Mr. Feng, could you state your full name for the record, please?

A. My name is Linyi Feng, L-I-N-Y-I, F-E-N-G. They also call me Frank.

Q. Is it okay throughout this deposition, not to be disrespectful, but can I just call you Frank in this deposition instead of Mr. Feng?

A. No problem.

Q. Thank you.

From time to time I may say Mr. Feng or Frank and go back and forth, but same thing, if that's okay.

A. No problem at all.

Q. Mr. Feng, can you provide your complete address?

THE INTERPRETER: Clarification.

(Interpreter speaking to witness in Mandarin.)

A. My home address is 1432 Iron Hill Lane, 89134, Las Vegas.

BY MR. KEYHANI:

Q. I would like to get a little bit of maybe background on how all this started. Maybe we can go back to when you first met Jay Chun, if you could share a little bit about that.

A. Would you please be more specific? What do you mean by the first time -- when I first met him? You mean when I -- what do you mean?

Q. How did you first meet Jay Chun, let's say.

A. He is my brother-in-law. He is my brother-in-law, and I'm not sure how we met first, but he was dating with my older sister. But I don't remember exactly how we met the first time.

Q. Approximately what year was this?

A. I don't quite remember. It's been a long time.

Q. Would it have been early 2000s maybe?

A. I don't think so.

THE INTERPRETER: Clarification.

(Interpreter speaking to witness in Mandarin.)

A. I don't think so because their kid is over 30 years old.

CONFIDENTIAL - Linyi "Frank" Feng, Vol. I - 10/21/2025
Case 2:24-cv-00428-JCM-BNW Document 197-5 Filed 07/31/26 Page 6 of 11
Paradise Entertainment Limited, et al. vs. Empire Technological Group Limited

then invested into F2 TPS company. And also all those funds were being returned -- or all those funds were returned to LT Game Canada within just a few days or weeks.

BY MR. KEYHANI:

Q. Did you get permission from the management and Jay Chun to take this money from LT Game Canada and use it for the purposes that you were using it?

A. Well, here was the situation: LT Game Canada and Empire were both very small companies. It was quite common for them to advance payments to each other. For us it was quite common for us to advance payments to each other. Not only did LT Game Canada advance payments to Empire, Empire also advanced cash back to LT Game Canada. So this back-and-forth happened frequently, so there was never a need to go through upper management for approval.

Even when they asked to borrow money from me, it didn't have to be approved by higher management. That's just how our companies operated. Small companies working closely together approving things among ourselves.

Q. Empire really operated as just an arm of LT Game Canada?

A. Ask the question again.

MR. KEYHANI: Read the question again.

(Question read.)

A. It was completely wrong. Empire has always been

Page 76

an independent company. It was just Empire had a business corporation with Paradise. That was all.

BY MR. KEYHANI:

Q. Empire and Paradise and LT Game Canada would regularly advance each other over a million dollars?

A. As for this $1 million, it wasn't advanced over one time. It was accumulated -- it was an aggregated number. I remember at most it was about $450,000. And there were also times when Empire advanced over $600,000 to them.

Q. Without this advance that was provided from LT Game Canada to Empire, the deal, the F2 deal, would have fallen through, correct?

A. Wrong. At that time I had already signed -- secured -- I had already secured a loan agreement with another company called PDS, and PDS had approved a loan of $3 million for me. So because I knew the funds from PDS were coming, I requested to advance about $450,000 from LT Game Canada's payment to Empire since I already knew that money was secured. It was just -- it was just a timing matter.

Q. To be clear, the amount advanced from LT Game Canada, was it not a million, a little over a million, for this deal?

A. I said it was accumulated. It was aggregated up

Page 77

to over $1 million. So the total accumulated funds amounted to a little over $1 million, and I can provide him with a detailed list if he needs it.

Q. Accumulated over what period of time?

A. I'm not quite sure. Perhaps over a month or two. I don't remember exactly, but I can give you the exact time and details.

Q. Did Empire pay LT Game Canada interest for the money that it advanced?

A. No. And also LT Game Canada doesn't pay an interest to Empire. It was just those small advances.

Q. Was Jay Chun made aware of this aggregated, as you put it, over-a-million-dollar advance that was made by LT Game Canada to Empire?

A. I didn't report this directly to Jay Chun. However, the financial reports of LT Game Canada, including -- just the financial reports of LT Game Canada were all reported directly by our finance department to the CFO of Paradise.

Q. This was a lucrative business opportunity, right, Frank?

A. It depends. It depends on the time period. It depends on when you look at it and how you look at it, whether you are looking at it after the pandemic or during the pandemic.

Page 78

Why do I say that? Because when the business first started, it was during the pandemic. And then once I invested in it, then my operations got shut down and then got reopened and then shut down again. We couldn't operate for nearly nine or ten months during that time. So if you look at it then, it was a losing business.

But, for example, we were lucky. After the pandemic, there was a huge rebound. Of course, it made us a lot of money. It just depends on how you look at it.

Q. How much revenue did F2 bring in since you started in 2020?

A. A lot. I don't quite remember, but our average -- but on average our annual revenue was about 60 to $70 million.

Q. In 2020 when you --

MR. OAKES: Can we go off the record?

THE VIDEOGRAPHER: Off the record at 4:59 PM.

(Discussion held off the record.)

THE VIDEOGRAPHER: The time is 5 PM. We are back on the record.

BY MR. KEYHANI:

Q. Mr. Feng, did you have any background in third-party proposition player services before this opportunity?

A. I had never worked in this industry before, but

Page 79



CONFIDENTIAL - Linyi "Frank" Feng, Vol. II - 10/22/2025
Paradise Entertainment Limited, et al. vs. Empire Technological Group Limited

Case 2:24-cv-00428-JCM-BNW   Document 197-5   Filed 07/31/26   Page 7 of 11

CONFIDENTIAL ATTORNEYS' EYES ONLY


UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Case No. 2:24-cv-00428-JCM-BNW


PARADISE ENTERTAINMENT LIMITED,
a Bermuda corporation; LT GAME,
INC., a Nevada corporation; and
LT GAME LIMITED, a British Virgin
Islands Corporation,

                 Plaintiffs/Counter-Defendants,
        v.

EMPIRE TECHNOLOGICAL GROUP LIMITED,
a Nevada corporation; GAMING
SPECIALIZED LOGISTICS LLC, a Nevada
limited liability company;
LINYI FENG, an individual;
ROY KELCEY ALLISON, an individual;
DARYN KIELY, an individual; and
YI ZHAO, an individual,

                 Defendants/Counter-Claimants.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

        CONTINUED VIDEOTAPED INTERPRETED DEPOSITION OF
                    LINYI "FRANK" FENG




              Volume 2 (Pages:  90-190)




              Wednesday, October 22, 2025
                  10:38 AM - 5:11 PM




              STENOGRAPHICALLY REPORTED BY:
        Tamra K. Piderit, FPR, FPR-C, RPR, RMR, RDR, CRR
                  Nevada CCR #1009
                Certified Realtime Reporter


Job No. 65986



CONFIDENTIAL - Linyi "Frank" Feng, Vol. II - 10/22/2025
Case 2:24-cv-00428-JCM-BNW Document 197-5 Filed 07/31/26 Page 8 of 11
Paradise Entertainment Limited, et al. vs. Empire Technological Group Limited

APPEARANCES:

ON BEHALF OF THE PLAINTIFFS:

          KEYHANI LLC
          1050 30th Street Northwest
          Washington, DC 200007
          202.748.8950
          BY:  Darius Keyhani, Esquire
          dkeyhani@keyhanillc.com
          BY:  Frances Stephenson, Esquire
          fstephenson@keyhanillc.com
          BY:  Scott Draffin, Esquire (Via Zoom)
          sdraffin@keyhanillc.com

          FOLEY & LARDNER LLP (Via Zoom)
          555 Flower Street
          Suite 3300
          Los Angeles, California 90071
          213.972.4500
          BY:  Jean-Paul Ciardullo, Esquire
          jciardullo@foley.com


ON BEHALF OF THE DEFENDANTS:

          NORTON ROSE FULBRIGHT US LLP
          98 San Jacinto Boulevard
          Suite 1100
          Austin, Texas 78701
          512.536.5221
          BY: Mark Oakes, Esquire
          mark.oakes@nortonrosefulbright.com


ALSO PRESENT:

Nick Nardiello, Videographer
Mark Hettinger, Corporate Counsel and President, Aruze
Fei Allen, Mandarin Interpreter



CONFIDENTIAL - Linyi "Frank" Feng, Vol. II - 10/22/2025
Case 2:24-cv-00428-JCM-BNW Document 197-5 Filed 07/31/26 Page 9 of 11
Paradise Entertainment Limited, et al. vs. Empire Technological Group Limited

I N D E X

WITNESS:

Linyi "Frank" Feng

Continued Direct Examination By Mr. Keyhani        94
Continued Direct Examination By Mr. Ciardullo     121
Cross-Examination By Mr. Oakes                    171
Redirect Examination By Mr. Keyhani              179
Errata Sheet                                      189
Certificate of Reporter                           190

EXHIBITS

NO.                    DESCRIPTION                       PAGE

Exhibit 4    01/01/21 Shared Services Agreement      112
             ETG_00000322349 - 322354

Exhibit 5    Notice of Deposition                    122

Exhibit 6    Game Development Agreement              172
             ETG_00000159328 - 159343

Exhibit 7    11/11/21 email to Frank Feng from       176
             Jaime Johnson; Subject:  Empire -
             LT Game Agreements
             ETG_00000282472 - 282478



CONFIDENTIAL - Linyi "Frank" Feng, Vol. II - 10/22/2025
Case 2:24-cv-00428-JCM-BNW Document 197-5 Filed 07/31/26 Page 10 of 11
Paradise Entertainment Limited, et al. vs. Empire Technological Group Limited

BY MR. CIARDULLO:

Q. My original question was intended to ask about Daryn's departure from Empire.

A. Oh, he resigned on his own.

Q. Did he give a reason?

A. Because I wanted to make adjustment on his job, and he disagreed with me.

Q. Mr. Kent Barlow had relatively recently departed Empire. Did you ask him to leave, or did he quit on his own?

A. I asked him to leave.

Q. What was the reason?

A. Well, back then -- at that time, he was our VP of finance, and I believed his skills and knowledge didn't meet our requirement. Of course, he is still my personal tax advisor.

Q. A different topic. I would like to ask you some questions about what information you have communicated to Paradise management over the years.

A. Okay.

Q. And if for any of my questions you may want to specify that you gave certain information to a particular person but not to another person, you may do so.

A. Okay.

Q. Prior to the start of the current legal dispute,

Page 149

you had never told Paradise about F2, correct?

A. Correct.

Q. And you also did not tell Paradise about the money from LT Game that was used for the investment in F2, correct?

A. I didn't say that in a personal capacity. I never personally communicated to them about that.

Q. Mr. Medero has testified that you asked him to not put those transactions in the LT Game books; is that correct?

A. Not correct.

Q. Can you clarify?

A. Because at that time Marcos Medero was also the person in charge of all my other companies, so he had visibility into all of my businesses. But I told Marcos Medero that I didn't want him to share information about my personal business affairs that had nothing to do with my businesses.

Q. So you asked Mr. Medero to not tell Paradise about F2, correct?

A. I told Medero that do not share information about my personal business affairs with anyone else, not just F2.

Q. You also did not inform Paradise that Mr. Kelcey Allison was being paid by your other companies, correct?

A. Correct. For any Empire-related business that had

Page 150

nothing to do with Paradise, I had no obligation to inform anyone.

Q. And so the same question for Mr. Daryn Kiely, you did not inform Paradise that you were separately paying Mr. Kiely from your other companies, correct?

A. Correct. I didn't -- my answer is the same as above.

Q. You also did not inform Paradise about patent applications on gaming technology that you and Empire had applied for, correct?

A. Correct. I didn't tell them.

Q. And you did not inform Paradise of the lawsuit that Empire brought against Light & Wonder?

A. I didn't. I didn't tell them.

Q. You did not inform Paradise about the existence of Akkadian, correct?

A. Correct, I didn't tell them.

Q. You did not inform Paradise about the acquisition of the Synergy Blue assets, correct?

A. Correct, I didn't tell them.

Q. You did not tell Paradise about Empire adopting the brand name Play Synergy, correct?

A. I personally didn't inform them.

Q. You did not tell Paradise about Empire's deal with Sockeye Software, correct?

Page 151

A. I didn't tell them.

Q. And it's also true that Empire had acquired additional office space at various points, but you did not tell Paradise about that, correct?

A. I want to clarify. When you are referring to acquiring, purchasing, or leasing additional offices -- office space?

Q. Well, let's say either way.

A. When Empire was leasing the old offices, I told Jay Chun, and Jay even visited when I -- Jay even visited those offices. But when I bought the new office, it was I who purchased the new office, not Empire, so I didn't inform Paradise about it.

Q. And you did not inform Paradise that LT Game employees were working at those new office spaces, correct?

A. Say it again.

(Interpreter speaking to witness in Mandarin.)

A. I didn't inform them. And also when we moved -- when Empire --

(Interpreter speaking to witness in Mandarin.)

A. And also when Empire moved to the new office space, I asked them since they were doing work for both sides where they preferred to work, and they chose. It wasn't me that made the decision. They made the decision.

Page 152



CONFIDENTIAL - Linyi "Frank" Feng, Vol. II - 10/22/2025
Case 2:24-cv-00428-JCM-BNW Document 197-5 Filed 07/31/26 Page 11 of 11
Paradise Entertainment Limited, et al. vs. Empire Technological Group Limited

their independent decision.

Q. I wasn't asking about Empire. My question was whether you, Frank Feng, as the president and fiduciary to LT Game Canada, advised Jay Chun on entering into this agreement that now, according to you, Mr. Feng, transferred all intellectual property for all gaming products that Paradise Entertainment and LT Game Canada ever designed or invented, all of that, over to Empire permanently; is that correct?

A. I will answer his question in two parts.

So as me as the president of LT Game Canada, I had advised Jay Chun on what actions to take or not to take before entering into this agreement with Empire. I clearly explained to Jay Chun and Paradise all the necessary contract terms, legal, and regulatory requirements. It was their own decision whether to proceed or not.

Secondly, I never said it was for all products ever developed or all intellectual property. What I said was that for a portion of Paradise products that Empire distributed in the North American market, the intellectual property rights or any related ownership. For those products must belong to Empire, and it was required by law if they want to sell their products to the market.

Q. And you believe that asking or demanding or encouraging Empire [verbatim] to turn over all their

Page 185

intellectual property for any products distributed by LT Game -- strike that -- distributed by Empire and giving them to Empire, which effectively was giving it to you, Mr. Feng, was you acting in the best interest and meeting your fiduciary duty to LT Game Canada; is that right?

A. Correct.

Q. And in Exhibit 2 when you and Daryn Kiely gave directions to employees at LT Game Canada and Paradise to, quote, "We need to make sure we have the source code, math documents, and raw art and sounds for all LT-developed games," you said "all LT-developed games." You didn't narrow that in any way either, did you?

A. All of our colleagues understood that I was referring to all the products that were distributed by us. And also it referred only to the product we were distributing, not everything -- not everything. So all of my colleagues were aware of that.

Please have him take a look at what Daryn Kiely said. He specifically used the phrase "in the field."

Q. Nowhere in this exhibit or these communications does it narrow it to products distributed by Empire or any particular time period. It just says "in the field," correct?

A. That is correct, but we all knew what those products were.

Page 186

Q. Have you ever used -- actually used intellectual property to service equipment in the field?

A. Yes.

Q. When?

A. All the time, including -- I want to make a correction. Well, all the time. However, I can't list them all. All the equipment or all the machines sold to Puerto Rico and DGS, they had ongoing issues. There were too many issues, so this kind of situation just kept happening.

MR. KEYHANI: Pass the witness.

MR. OAKES: Nothing further from us.

MR. KEYHANI: I think we are all set.

THE VIDEOGRAPHER: This concludes the deposition of Frank Feng, Volume 2, on October 22, 2025. The time is 5:10 PM. We are off the record.

THE CERTIFIED STENOGRAPHER: Mark, did you need a copy of the transcript?

MR. OAKES: Sure.

THE CERTIFIED STENOGRAPHER: Regular delivery, Darius?

MR. KEYHANI: We get expedited.

THE CERTIFIED STENOGRAPHER: When do you need it?

MR. KEYHANI: Can you do by Friday?

THE CERTIFIED STENOGRAPHER: I can do by Friday.

Page 187

Thank you, everyone. Have a great evening.

(Thereupon, the proceedings were concluded at 5:11 PM.)

Page 188