# Exhibit A-5

# Deposition of Jay Chun

# Oct. 30, 2025

# In the Matter Of:

*Paradise Entertainment Limited v*

*Empire Technological Group Limited*

## *JAY CHUN*

## *October 30, 2025*



1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

_____

PARADISE ENTERTAINMENT LIMITED,    )
a Bermuda corporation; and LT      )
GAME, Inc., a Nevada              )
corporation; and LT GAME          )
LIMITED, a British Virgin         )
Islands Corporation,              )
                                  )
                                  )
          Plaintiffs,             )
                                  )
v.                                )    Case No.
                                  )
EMPIRE TECHNOLOGICAL GROUP        )    2:24-cv-00428-JCM-BNW
LIMITED, a Nevada corporation;    )
GAMING SPECIALIZED LOGISTICS      )
LLC, a Nevada limited liability   )
company; LINYI FENG, an           )
individual; ROY KELCEY ALLISON,   )
an individual, DARYN KIELY, an    )
individual; and YI ZHAO, an       )
individual,                       )
                                  )
          Defendants.             )
_____ )

CONTAINS HIGHLY CONFIDENTIAL

ATTORNEYS' EYES ONLY INFORMATION

Videotaped Deposition of JAY CHUN

Los Angeles, California

Thursday, October 30, 2025

Reported Stenographically by

Michael P. Hensley, RDR, CSR No. 14114

Paradise Entertainment Limited
Empire Technological Group Limited

Case 2:24-cv-00428-JCM-BNW   Document 197-6   Filed 07/31/26   Page 4 of 9

Attorneys Eyes Only

Jay Chun
October 30, 2025

Page 2

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

_____

PARADISE ENTERTAINMENT LIMITED,   )
a Bermuda corporation; and        )
LT GAME, Inc., a Nevada           )
corporation; and LT GAME          )
LIMITED, a British Virgin         )
Islands Corporation,              )
                                  )
                                  )
         Plaintiffs,              )    Case No.
                                  )
v.                                )    2:24-cv-00428-JCM-BNW
                                  )
EMPIRE TECHNOLOGICAL GROUP        )
LIMITED, a Nevada corporation;    )
GAMING SPECIALIZED LOGISTICS      )
LLC, a Nevada limited liability   )
company; LINYI FENG, an           )
individual; ROY KELCEY ALLISON,   )
an individual, DARYN KIELY, an    )
individual; and YI ZHAO, an       )
individual,                       )
                                  )
         Defendants.              )
_____)

     Videotaped Deposition of JAY CHUN, commencing at the hour of 9:22 AM and concluding at the hour of 4:38 PM on Thursday, October 30, 2025, at the location of 555 Flower Street, Suite 3300, Los Angeles, California 90071, before Michael Hensley, Registered Diplomate Reporter, Certified Shorthand Reporter No. 14114, in and for the State of California.

Page 3

APPEARANCES:

For Plaintiffs:

        KEYHANI LLC
        By:  DARIUS KEYHANI, ESQ.
        1050 30th Street NW
        Washington, DC 20007
        202.903.0326
        dkeyhani@keyhanillc.com

        FOLEY & LARDNER LLP
        BY:  JEAN-PAUL CIARDULLO, ESQ.
        555 South Flower Street
        Suite 3300
        Los Angeles, California 90071
        213.972.4544
        jciardullo@foley.com

For Defendants:

        NORTON ROSE FULBRIGHT US LLP
        By:  MARK T. OAKES, ESQ.
        98 San Jacinto Boulevard
        Suite 1100
        Austin, Texas 78701
        512.474.5201
        mark.oakes@nortonrosefullbright.com
        NORTON ROSE FULBRIGHT US LLP
        BY:  BRIAN STOLARZ, ESQ.
        799 9th Street NW
        Washington, DC 20001
        202.662.0309
        brian.stolarz@nortonrosefulbright.com

Also Present:

        QIANG BJORNBAK, Mandarin Interpreter #301293
        MIGUEL ESPANA, Videographer
        (REMOTELY) MARK HETTENGER, ESQ.
        (REMOTELY) MIGUEL CONCEPCION, AV TECHNICIAN

Page 4

INDEX

EXAMINATIONS

WITNESS:  JAY CHUN                                   Page
BY ATTORNEY OAKES                                     10
BY ATTORNEY CIARDULLO                                164

EXHIBITS

No.          Description                             Page
333   Paradise Entertainment Limited               45
      Annual Report 2024

334   (Confidential) Bates Number                  73
      ETG_00000167656:  Email from Leo
      Chan 2/23/22

335   (Confidential) Bates Number                  75
      ETG_00000057383 - 00000057386:
      Email exchange, top message from
      Frank Feng 2/6/17

336   (Confidential) Bates Number                  75
      ETG_00000115443 - 00000115450:
      Research and Development Agreement

337   (Confidential) Bates Number Paradise         79
      00003675:  Addendum No. 1 to the
      Research and Development Agreement
      Between LT Game Limited and LT Game
      (Canada) Limited

338   Declaration Certifying Translation          109
      of Document and attached documents

339   Declaration Certifying Translation          115
      of Document and attached documents

340   Declaration Certifying Translation          124
      of Document and attached documents

Page 5

EXHIBITS (CONTINUED)

No.          Description                             Page
341   Declaration Certifying Translation          126
      of Document and attached documents

342   (Confidential) Bates Number                 152
      ETG_00000319795:  Letter titled
      "Dear Valued Customers"

343   (Confidential) Bates Number Paradise        159
      00013729:  Email from Takahiro Usui
      8/6/19

Paradise Entertainment Limited
Empire Technological Group Limited

Case 2:24-cv-00428-JCM-BNW     Document 197-6     Filed 07/31/26     Page 5 of 9

Attorneys Eyes Only

Jay Chun
October 30, 2025

## Page 6

PREVIOUSLY MARKED EXHIBITS

| No. | Description | Page |
|---|---|---|
| 89 | (Confidential) Bates Number ETG_00000057702 - 00000057707: Paradise Entertainment Limited Continuing Connected Transaction Distributorship Framework Agreement | 98 |
| 196 | LT Game Canada Loans | 139 |
| 212 | (Confidential) Bates Number Paradise 00021744 - 00021754: Paradise Entertainment Limited and Linyi Feng Distributorship Framework Agreement | 99 |
| 230 | (Confidential) Bates Number ETG_00000124400 - 00000124408: Email exchange, top message from Frank Feng 2/18/20 | 65 |
| 234 | Declaration Certifying Translation of Document and translated documents | 69 |
| 275 | (Confidential) Bates Number ETG_00000162969 - 00000162973: Email exchange, top message from Jay Chun 1/5/22 | 138 |

## Page 7

ATTORNEYS' EYES ONLY PORTIONS

| BEGIN | END |
|---|---|
| 22:15 | 24:23 |
| 163:4 | 168:11 |

## Page 8

Via Videoconference

Thursday, October 30, 2025

9:22 AM - 4:38 PM

-o0o-

THE VIDEOGRAPHER: We are now on the record. My name is Miguel España. I'm the videographer representing Lexitas. This is the video deposition for the United States District Court, District of Nevada. Today's date is October 30th, 2025, and the time is 9:22 AM Pacific Time zone.

This deposition is being held at 555 Flower Street, Los Angeles, California 90071 in the matter of Paradise Entertainment Limited, et al., versus Empire Technological Group Limited, et al., Case Number 2:24-cv-004288-JCM-BNW.

The deponent is Jay Chun.

Would all counsel please identify themselves.

ATTORNEY KEYHANI: Darius Keyhani of Keyhani LLC, Washington, D.C., and my colleague --

ATTORNEY CIARDULLO: Jean-Paul Ciardullo from Foley Lardner.

ATTORNEY KEYHANI: -- on behalf of the plaintiffs and Dr. Chun.

## Page 9

ATTORNEY OAKES: Mark Oakes and Brian Stolarz from Norton Rose Fulbright on behalf of the defendants. And also on the Zoom call is Mark Hettenger, who is the general counsel for defendant Empire Technological Group.

THE VIDEOGRAPHER: Would the court reporter please introduce themselves and swear in the interpreter and the witness.

THE COURT REPORTER: Good morning. My name is Mike Hensley. I am a California Certified Shorthand Reporter, CSR #14114. Today's proceedings are being captured by stenographic means.

QIANG BJORNBAK, interpreter herein, after having been duly sworn to translate the Mandarin language into the English language and the English language into the Mandarin language, to the best of their ability, interpreted the following:

(Witness sworn.)

ATTORNEY OAKES: Good morning.

ATTORNEY KEYHANI: I'm sorry. Before we start, I just wanted to designate as a default the record will be confidential and that, to the extent applicable, we'll designate sections that are attorneys' eyes only.

Case 2:24-cv-08280-JCM-BNW   Document 197-6   Filed 07/31/26   Page 6 of 9

Paradise Entertainment Limited
Empire Technological Group Limited

Attorneys Eyes Only

Jay Chun
October 30, 2025

Page 138

We did the -- we give them sufficient resources to do it.

ATTORNEY OAKES: I'm going to hand you what's been previously marked as Exhibit 275.

(Exhibit 275 was previously marked for identification.)

BY ATTORNEY OAKES:

Q. Dr. Chun, do you see in Exhibit 275 --

A. Yes.

Q. -- you wrote an email on January 5th, 2022, where you stated:

[As Read] My contract signed we will provide four game pack, six games each, to Royal Game during period of three years.

A. Yes.

Q. Okay.

And LT Game was supposed to develop these games over a period of three years; correct?

A. Okay.

We make the payments by installment.

They -- they order hundreds of machines, about 800 machines.

I remember the general idea of the contract. Let's say I give you 200 machine, I'll give you four games.

Page 139

Okay.

You know you pay the full amount of 200 machines, and I'll give you four games. And then I give you two more hundred -- it's -- it's like installment payment arrangement.

We stopped supplying the machines because they stopped payment.

Q. And they stopped payment because the machines weren't working; correct?

A. Oh, the CTO's responsibility to -- it's the CTO's responsibility --

It's --

I cannot write the coding.

Q. Did -- did you ever use LT Game funds for personal expenses?

A. No. Doesn't exist.

ATTORNEY OAKES: Okay.

I'm going to show you what was previously marked as Exhibit 196.

(Exhibit 196 was previously marked for identification.)

BY ATTORNEY OAKES:

Q. And if you look at the top left of Exhibit 196, there's a line that says "Director Loan: Jay/Jenny."

Page 140

Do you see that?

A. Yes.

Q. And is Jenny your wife?

A. Yes.

Q. And were these loans to you for personal expenses?

A. Okay.

Okay.

Let's say if I have the personal loan from the company. It can't be -- it's possible the loan you mentioned is the money I spend in the United States. If the money was spent on my personal purposes --

Okay.

So the Macau company --

Okay.

All the -- okay.

The headquarter will pay back to the --

THE INTERPRETER: No, I didn't get it; so let me get it.

(Interpreter-Witness conversation.)

THE WITNESS: So let's say -- let's say if I take a loan from LT Games Canada for the expenses to cover of the expense of the United States and will return the money back to LT Games that is the

Page 141

parent company of the LT Games Canada.

BY ATTORNEY OAKES:

Q. Okay.

A. And that way we have internal setting off system.

Q. So the transactions reflected in Exhibit 196, are those loans from LT Game Canada for your personal expenses?

A. Let's say you have the kids and get in the visa or the passport. When I United States, we need hire somebody to do that.

In the past, I give him the checkbook and ask him -- Frank to, you know, make the payment for me.

If I need the money for the personal purposes --

Okay.

So, you know, let's say if I need to spend some money for the personal purposes, I will tell Frank to advance the money first. And then I use my check -- and use my personal check to pay back.

My personal Wells Fargo check.

Today, you show me this document. I'm very surprised. If I'm United States, I use my own cards, credit card. And now this one that shows my

## Page 142

kids applying for the passport, my wife probably want to do something family matters, want to handle family matters.

Theoretically speaking, Frank should -- Frank should use his personal assets to pay for that, and then we'll pay Frank back.

This should be the correct way to handle this -- these kind of --

If he --

If he record the financial expense like that, he need to submit this to the CFO of our company. In the Hong Kong headquarter.

Okay.

And then the headquarter from Hong Kong will tell me, "Hey, Jay, this your personal expenses," and now we'll send money back to the headquarters in Hong Kong.

I don't think it's appropriate for him --

Okay.

I don't think it's appropriate for him to use the company business account to pay for my personal expenses unless he report this transaction to the headquarters.

Q. If you look on December 14th, 2015, there's a charge "Babies R Us for Jay Chun's twins."

## Page 143

Do you have twins?

A. Yes.

Q. Okay.

And how old would they have been in 2015?

A. 10 years old.

Q. Lower down, there are purchases in July of 2017 in Southern California.

Do you see that?

THE INTERPRETER: July 17th? Where is that?

BY ATTORNEY OAKES:

Q. At the bottom half of the page, there's a series of purchases in July of 2017. It looks like they're made in Southern California.

Do you see that?

A. Yes.

Q. And were you in Southern California in July of 2017?

A. My wife is in Southern California.

It should be -- that time, you know, he was -- he was his own sister -- right? -- to spend as much -- to spend that money.

Q. Did your wife have an LT Game company credit card?

A. No. My wife has LifeTec card, not

## Page 144

LT Games card.

Q. Okay.

A. You know, if Frank is going to use the company's money to pay for the expenses, he should let the system know. He should not put this -- the personal expenses on the company records.

At that time -- and then we can prove that he is -- he was so poor at the time, he doesn't have his own -- he doesn't have his own money. He doesn't have his own pocket money. That's why he use the company's money.

This is a basic concept.

Q. Somebody used a credit card in Southern California in July of 2017; right?

A. Although, it should not be the credit card. If somebody is going to use the --

My wife and I did not have the American credit card at that time; so if somebody going to use the credit card, it got be Frank.

Q. Mr. Feng wasn't in Southern California in July of 2017, was he?

A. You know what time? I cannot see the time.

Q. It looks like July 13th, 12th, 15th, that time range.

## Page 145

A. July 14th.

Q. It looks like the 12th through the 15th.

A. Oh, July 14th to --

Which card?

Q. Well, if you look --

A. Whose -- you know, the card is under whose name?

Q. I don't know. It just has a number.

If you look on the second page, around November 30th, 2017, there's something called "Zamanta IV deposit."

Do you know what that is?

A. Zamanta deposit either can be Frank's wife.

Q. What is a Zamanta IV, if you know?

A. Frank's has a twins, and then they have -- you know, they -- they got the -- you know, they got the kids through surrogacy mother.

How much? That is about 10 grand; right?

Q. Looks like it.

A. You can ask Frank whether the expenses was -- was for his wife.

Q. If you look at December 21st, 2017, it just says "Jay Chun" and there's a negative $20,000.

Would that be where you write a check to

Paradise Entertainment Limited
Empire Technological Group Limited

Case 2:24-cv-05128-JCM-BNW   Document 197-6   Filed 07/31/26   Page 8 of 9

Attorneys Eyes Only

Jay Chun
October 30, 2025

---

**Page 166**

at this Exhibit 212.

Do you remember this document?

THE WITNESS (In English): Yeah, I'm not sure.

(Court reporter clarification.)

BY ATTORNEY CIARDULLO:

Q. My first question is just do you remember the document?

A. Yes.

Q. And do you personally know, one way or the other, who was responsible for creating this agreement?

A. I'm not sure. Maybe the document was prepared by the legal department.

Legal department was in charge of this document.

Q. Okay. Different topic.

A short while ago you testified that you thought Aruze was cursed.

Why did you say that?

A. But Mr. Okada used to own Aruze company.

And he -- he was so kind. He give his share to his sons and daughters.

And the son get the -- you know, get hold of the company and remove the father from the

---

**Page 167**

company.

Q. Might you have perceived any value in any of Aruze's assets?

ATTORNEY OAKES: Objection. Form.

THE WITNESS: Aruze has good IP projects.

(Court reporter clarification.)

THE WITNESS: They have IP products.

Good IP products.

BY ATTORNEY CIARDULLO:

Q. I'll ask the question in a slightly different way.

Can you tell us whether you perceive any value or would've perceived any value in Aruze assets?

ATTORNEY OAKES: Objection. Form.

THE WITNESS: Yes.

BY ATTORNEY CIARDULLO:

Q. Can you expand.

A. Like a crap table.

They have that copyright products.

These products have values.

Q. As of the time of -- at the time that Aruze went bankrupt, did you know about what all of their assets were at that time?

A. At that time, I didn't know. When

---

**Page 168**

somebody -- until the people asked me whether I purchased Aruze, then I knew.

ATTORNEY CIARDULLO: All right.

I didn't have any other questions.

ATTORNEY OAKES: Nothing further from us.

ATTORNEY CIARDULLO: We just request 30 days to read and sign for the witness.

THE VIDEOGRAPHER: This concludes the deposition of Dr. Jay Chun. We're going off the record at 4:38 PM.

(Deposition concluded at 4:38 PM)

---

**Page 169**

TRANSCRIPT ORDERS

ATTORNEY OAKES: No rough.

ATTORNEY KEYHANI: Yes, copy. No rough.

Follow up with office for expedite.

---

Page 170

ACKNOWLEDGMENT OF DEPONENT

I, JAY CHUN, do hereby declare under penalty of perjury under the laws of the State of NEVADA that the foregoing transcript; that I have made such corrections as noted therein, in ink, initialed by me, or attached hereto; that my testimony as contained herein, as correct, is true and correct.

Executed this _____ day of _____, ____, at _____, NEVADA.

_____
Jay Chun

Page 171

CERTIFICATE OF SHORTHAND REPORTER

I, Michael P. Hensley, Registered Diplomate Reporter for the State of California, CSR No. 14114, the officer before whom the foregoing deposition was taken, do hereby certify that the foregoing transcript is a true and correct record of the testimony given; that said testimony was taken by me stenographically and thereafter reduced to typewriting under my direction; that reading and signing was requested; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

_____
Michael P. Hensley, CSR, RDR