Oliver J. Pancheri, Esq. (Nevada Bar No. 7476)
Jessica M. Lujan, Esq. (Nevada Bar No. 14913)
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3400
Fax: (702) 938-8648
Email: opancheri@spencerfane.com
jlujan@spencerfane.com

Jean-Paul Ciardullo, Esq. (*pro hac vice*)
California Bar No. 284170
**FOLEY & LARDNER LLP**
555 Flower Street, Suite 3300
Los Angeles, California 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
Email: jciardullo@foley.com

Robert T. Stewart, Esq. (Nevada Bar No. 13770)
Stewart Ray Nelson, Esq. (*pro hac vice*)
Utah Bar No. 17286
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, Utah 84111
Tel.: (801) 401-8900
Email: rtstewart@foley.com
srnelson@foley.com

Dariush Keyhani *(pro hac vice)*
**KEYHANI LLC**
1050 30th Street NW
Washington, DC 20007
Tel: (202) 748-8950
Email: dkeyhani@keyhanillc.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

PARADISE ENTERTAINMENT LIMITED, a Bermuda corporation; and LT GAME, INC., a Nevada corporation, and LT GAME LIMITED, a British Virgin Islands Corporation,

*Plaintiffs, Counterdefendants,*

vs.

EMPIRE TECHNOLOGICAL GROUP LIMITED, a Nevada corporation; GAMING SPECIALIZED LOGISTICS LLC, a Nevada limited liability company; LINYI FENG, an individual; ROY KELCEY ALLISON, an individual; and DARYN KIELY, an individual; and YI ZHAO, an individual,

*Defendants, Counterclaimants.*

Case No. 2:24-cv-00428-JCM-BNW

**REPLY IN SUPPORT OF PLAINTIFFS' *DAUBERT* MOTION TO LIMIT TESTIMONY OF RICHARD BALDWIN**

[ORAL ARGUMENT REQUESTED]

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Defendants Mischaracterize Plaintiffs' Liability and Damages Theories .......... 1

B. A Purported Causation Expert Should Assume Liability, Yet Defendants Concede That Mr. Baldwin Did Not Take Into Account Defendants' Misconduct .......... 2

C. Mr. Baldwin's Opinions are Neither Reliable Nor Grounded in Facts and Data .......... 3

1. Mr. Baldwin's Access to and Review of the Record and General Industry Experience Do Not Cure the Methodological Defects in His Opinions .......... 3

2. Mr. Baldwin Cannot Rebut Plaintiffs' Damages Opinions by Rejecting Liability and Offering His Own Causation Opinions .......... 5

3. Merely Citing the Record Does not Fix Mr. Baldwin's Methodology Defects .......... 6

D. Plaintiffs Properly Challenged Mr. Baldwin's Opinions in Section V of his Rebuttal Report .......... 6

1. Mr. Baldwin's Opinions That Plaintiffs Received Some "Value and Benefit" Does Not Rebut Mr. Nelson's Damages Opinions .......... 6

2. Labeling Mr. Baldwin's Opinions "Alternative Explanations" Cannot Cure His Failure to Consider Case-Specific Facts .......... 7

3. Mr. Baldwin Mischaracterizes Plaintiffs' Damages Theory and Mr. Doyle's Opinions .......... 8

4. Sections III.E–III.H Should Also Be Excluded Because Mr. Baldwin's Causation Opinion Lacks a Sufficient Factual Foundation .......... 8

E. Defendants Cannot Recast 702 Deficiencies as Matters of Weight .......... 10

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blockchain Innovation, LLC v. Franklin Res., Inc.*,
No. 21-cv-08787-TSH, 2024 WL 5483606 (N.D. Cal. Oct. 22, 2024) .......... 4

*Charm Hosp. LLC v. Javed*,
No. 2:25-CV-00282-RFB-BNW, 2026 WL 1694896 (D. Nev. June 11, 2026) .......... 3

*Crawford-Brunt v. Kruskall*,
489 F. Supp. 3d 4 (D. Mass. 2020) .......... 8, 9

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) .......... 9

*Freteluco v. Smith's Food & Drug Centers, Inc.*,
336 F.R.D. 198 (D. Nev. 2020) .......... 5, 6

*Gopalratnam v. Hewlett-Packard Co.*,
877 F.3d 771 (7th Cir. 2017) .......... 3

*Graystone Funding Co., LLC v. Network Funding, L.P.*,
598 F. Supp. 3d 1228 (D. Utah 2022) .......... 5

*Mahaska Bottling Co. v. PepsiCo, Inc.*,
441 F. Supp. 3d 745 (S.D. Iowa 2019) .......... 2

*Nephron Pharms. Corp. v. Hulsey*,
No. 6:18-cv-1573, 2021 WL 1110907 (M.D. Fla. Jan. 11, 2021) .......... 5

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
20 F.4th 466 (9th Cir. 2021) .......... 4, 6

*Sys. Dev. Integration, LLC v. Computer Scis. Corp.*,
886 F. Supp. 2d 873 (N.D. Ill. 2012) .......... 2

*United States v. Hudak*,
156 F.4th 405 (4th Cir. 2025) .......... 7

*United States v. Nacchio*,
608 F. Supp. 2d 1237 (D. Colo. 2009) .......... 3

**Rules**

Fed. R. Civ. P. 26(a)(2)(D)(ii) .......... 11

Fed. R. Evid. 702 .......... passim

Fed. R. Evid. 702(b) ........ 11
Fed. R. Evid. 702(b)–(c) ........ 12

## I. <u>INTRODUCTION</u>

Plaintiffs moved this Court, (ECF No. 190, "Motion"), for an order excluding unsupported and prejudicial damages testimony from Defendants' gaming industry expert witness, Richard Baldwin, whose anticipated testimony is reflected in his February 2026 Rebuttal Report. Defendants filed an opposition to Plaintiffs' Daubert Motion on July 31, 2026, (ECF No. 195). Plaintiffs respectfully submit this Reply.

As Plaintiffs have argued in their Motion, the problem with Mr. Baldwin's opinions is that he ventures beyond merely providing information about the gaming industry within his expertise (which Plaintiffs do not object to), and instead goes much further by affirmatively opining that Defendants did not cause LT Game to fail. This is problematic for the simple reason that, as Defendants concede in their Opposition, Mr. Baldwin failed to consider or account for the harms Defendants cause to Plaintiffs, and is thus not competent to opine whether Defendants caused LT Game to fail or not.

While Defendants insist that Baldwin is merely a "gaming expert," not a damages expert, Baldwin nevertheless opines—in a rebuttal report—that Plaintiffs received value for the approximately $25 million they expended, that Defendants' conduct did not cause LT Game's failure to enter the U.S. market, that Defendants obtained no competitive "head start," and that Defendants' conduct did not cause Plaintiffs' inability to compete going forward. Rule 702 does not permit Defendants to use Baldwin's gaming-industry experience—which Plaintiffs do not challenge—to backdoor opinions far outside that expertise. Though Baldwin may arguably opine on the gaming industry generally, he may not convert that expertise into undisclosed and unsupported opinions about whether Plaintiffs suffered damages or whether Defendants caused those losses. For these reasons and further reasons addressed below, Plaintiffs respectfully request that Mr. Baldwin's testimony be excluded.

## II. <u>ARGUMENT</u>

### A. <u>Defendants Mischaracterize Plaintiffs' Liability and Damages Theories</u>

Defendants summarize the substance of Plaintiffs' theory of harm as being nothing more than "diversion of Defendants' time and labor." (ECF No. 195 at 10.) That is a gross understatement. Plaintiffs respectfully refer the Court to their Opposition to Defendants' Daubert Motion to exclude certain testimony of Plaintiffs' damages expert Clarke Nelson, (ECF No. 198), in which Plaintiffs discuss in detail the logic of their theory of harm and causation in the face of Defendants' mischaracterizations of the same.

Plaintiffs do not merely allege that Defendants stole a few resources from an otherwise legitimately run business operation. Rather, Plaintiffs allege that Defendants operated LT Game as a sham business and deliberately undermined it so completely that they caused it to fail, usurping all of LT Game's good business opportunities, and diverting the vast majority of its resources and employee time to Empire without Plaintiffs' knowledge. (*Id.* at 15–20.) Plaintiffs have characterized it as Defendants having pointed the Titanic at the iceberg. Defendants may dispute this, but they cannot put forward an expert witness who purports to opine on causation while ignoring everything Defendants are accused of having done to harm LT Game.

As shown in the opening Motion and conceded by Defendants, Mr. Baldwin did not take into account Defendants' misconduct in forming his causation opinions. As discussed below, that renders him incompetent to opine that Defendants did not cause LT Game to fail.

**B. A Purported Causation Expert Should Assume Liability, Yet Defendants Concede That Mr. Baldwin Did Not Take Into Account Defendants' Misconduct**

As Plaintiffs argued in their Motion, it is improper for Mr. Baldwin to opine on causation without first assuming liability. Defendants reject this premise, arguing that Mr. Baldwin was free to not factor Defendants' misconduct into his analysis. (ECF No. 195 at 10.) This cannot be correct. Courts recognize that it is "entirely appropriate for a damages expert to assume liability for the purposes of his or her opinion," because "to hold otherwise would be illogical." *Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, 886 F. Supp. 2d 873, 882 (N.D. Ill. 2012). Indeed, damages experts necessarily "make assumptions about liability and the parties' legal theories in order to calculate damages." *Mahaska Bottling Co. v. PepsiCo, Inc.*, 441 F. Supp. 3d 745, 758 (S.D. Iowa 2019).

Logically, if Mr. Baldwin is going to argue that Defendants did not cause LT Game to fail, he must take the position that that is true even if Defendants engaged in the misconduct they are accused of, *i.e.*, that a superseding cause is to blame rather than Defendants' misconduct. This necessarily requires analyzing the relative impact of Defendants' misconduct as compared to the supposed external factors. If the expert does not assume that Defendants engaged in the misconduct they are accused of, then his opinion on causation reduces to contesting the threshold question of liability, which Mr. Baldwin is completely unqualified to do, and which amounts to simply telling the Jury they should not believe

Defendants are liable.

Plaintiffs showed in Section IV.A of their opening Motion that Mr. Baldwin is dramatically uninformed about the facts of the case and not only failed to take into consideration Defendants' misconduct, but was also simply unaware of it. Defendants' Opposition concedes this, taking the position instead that Mr. Baldwin need only "provide[] alternative explanations." (ECF No. 195 at 10.) This makes no sense. Mr. Baldwin is not evaluating the evidence and parsing causation as between Defendants and alternative factors: he is ignoring everything Defendants did while affirmatively opining that Defendants did not cause LT Game to fail.

But regardless of whether Mr. Baldwin needed to formally assume liability, his lack of foundation renders his testimony excludable nonetheless, as discussed further herein.

### C. <u>Mr. Baldwin's Opinions are Neither Reliable Nor Grounded in Facts and Data</u>

#### 1. Mr. Baldwin's Access to and Review of the Record and General Industry Experience Do Not Cure the Methodological Defects in His Opinions

Defendants' blanket statement that Mr. Baldwin "reviewed a large volume" of the 92,675 documents made available to him and therefore has "a sound evidentiary foundation" misunderstands the fundamental requirements of Rule 702. (ECF No. 195 at 5.) Rule 702 requires that expert testimony be based on sufficient facts or data and be reflective of a reliable application of expert methods to the facts of the case. Fed. R. Evid. 702. In determining the reliability of expert testimony under Rule 702 and Daubert, there must be a rational connection between the facts or data and the opinion. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017); *United States v. Nacchio*, 608 F. Supp. 2d 1237, 1254 (D. Colo. 2009) (explaining that an expert must "explain how that experience led to the conclusion reached, why the experience is a sufficient basis for the opinion, and how that experience *is reliably applied to the facts* in this case.") (emphasis added); *see Charm Hosp. LLC v. Javed*, No. 2:25-CV-00282-RFB-BNW, 2026 WL 1694896, at *5 (D. Nev. June 11, 2026) (striking an opinion where the expert "identifie[d] no facts underlying his 'understanding'" and the court could find no supporting facts in the report.").

Simply put, where an expert's analysis is not grounded in the actual allegations made by the Plaintiffs, those opinions are subject to exclusion for being unreliable and due to the risk of causing

prejudicial juror confusion. *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 478 (9th Cir. 2021) (affirming exclusion where the rebuttal expert did not understand the opposing expert's terminology and was unfamiliar with the data underlying the damages analysis); *Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-cv-08787-TSH, 2024 WL 5483606, at *11 (N.D. Cal. Oct. 22, 2024) (striking expert report when he "provide[d] no explanation of the factual basis for his opinion").

Mr. Baldwin's deposition demonstrated both a lack of knowledge regarding the facts of this case and a lack of analytical reasoning. When asked for his general understanding as to the basis of Plaintiffs' claims in this case, Mr. Baldwin replied, "My general understanding? Well, I think I comment on that in my report here somewhere … and I – I recall there was a number of allegations – but I – I can't recall exactly every single one of them." (ECF No. 190-4 at 24 [Baldwin Tr. at 113:4–17].) Mr. Baldwin admitted to not speaking directly with any of the Defendants in preparing his report. (*Id.* at 10 [Baldwin Tr. at 41:2–12].) Mr. Baldwin did not audit, verify, or perform any analysis of the financial records and accounting of the litigants. (Ex. 1-1, Baldwin Tr. at 35:7–16.) Moreover, despite Mr. Baldwin's use of the phrase "unjust enrichment" in his report, he admitted that he was unaware of unjust enrichment as a legal remedy. (ECF No. 190-4 at 15 [Baldwin Tr. at 50:15–24].)

Additionally, Mr. Baldwin was not aware of any contractual duties that any of the Defendants owed to Plaintiffs, such as under the employment contracts of Defendants Kiely and Allison that Plaintiffs allege were breached. (ECF No. 190-4 at 33 [Baldwin Tr. at 122:2–9].) Mr. Baldwin was also unaware of the undisputed fiduciary duties Defendants owed Plaintiffs and admitted that he performed no analysis of all the ways in which Defendants undermined LT Game's business in violation of their fiduciary duties, conceding that he does not know, and made no inquiry into, "how much time and effort and energy [Defendants] spent" when working for LT Game. (*Id.* at 33–38 [Baldwin Tr. at 122:10–127:22].) And, notably, Mr. Baldwin did not take into account Plaintiffs' allegations of Defendants usurping Plaintiffs' business opportunities. (*Id.* at 40–41 [Baldwin Tr. at 129:17–130:13].)

Defendants' reliance on the sheer volume of documents made available to Mr. Baldwin cannot substitute for the analysis Rule 702 requires. Mr. Baldwin's access to and purported review of 92,675 case documents is not, by itself, a "sound evidentiary foundation." It is reliable only if he actually engaged with those documents. Mr. Baldwin's testimony establishes that he neither understood the substance of

the materials made available to him nor performed any analysis connecting them to his opinions. An expert who cannot explain what those documents established, let alone how they informed his conclusions, has not applied a reliable methodology to sufficient facts or data as required by Rule 702 and *Daubert*.

**2. Mr. Baldwin Cannot Rebut Plaintiffs' Damages Opinions by Rejecting Liability and Offering His Own Causation Opinions**

To rebut Plaintiffs' damages calculations, Mr. Baldwin was required to analyze damages under the hypothetical in which liability is established. He did not. The role of a damages expert is to calculate hypothetical damages given an assumed set of facts; "so long as those assumed facts are reasonably based on the evidence in the record, such assumptions are permissible." *See Graystone Funding Co., LLC v. Network Funding, L.P.*, 598 F. Supp. 3d 1228, 1236 (D. Utah 2022). An expert cannot substitute an opinion that the defendant did not cause the plaintiff's harm for an analysis of damages assuming the alleged wrongdoing occurred. *See id.* at 1248 (excluding rebuttal expert's opinion that there was an insufficient causal nexus between defendants' alleged wrongful conduct and plaintiff's damages because it came impermissibly close to "usurping the province of the jury by telling it what result should be reached"). That is precisely what Mr. Baldwin did. When asked whether he assumed Plaintiffs' allegations to be true for purposes of his opinions, Mr. Baldwin testified: "Yeah, that would be speculating … I didn't—my—my—my report and opinions weren't—weren't influenced by an allegation." (ECF No. 190-4 at 41 [Baldwin Tr. at 130:1–13].) Rather than assess Plaintiffs' damages under the assumption that Defendants committed the alleged misconduct, Mr. Baldwin affirmatively concluded that "Defendants['] alleged actions are not the sole, or even a significantly meaningful, reason that it will be difficult for Plaintiffs to compete in the U.S. gaming markets." (ECF No. 190-3 at 23 [Baldwin Rebuttal Report, ¶¶98–99].) That opinion both misunderstands Plaintiffs' damages theories and crosses into an affirmative opinion on causation. *See Nephron Pharms. Corp. v. Hulsey*, No. 6:18-cv-1573, 2021 WL 1110907, at *2, n.2 (M.D. Fla. Jan. 11, 2021) (striking rebuttal damages opinions and finding it "baffling" that defendants offered an expert who "simply opines that there are no damages because, in his opinion, there is no liability"); *Graystone*, 598 F. Supp. 3d at 1248.

Defendants' reliance on *Freteluco v. Smith's Food & Drug Centers, Inc.*, 336 F.R.D. 198 (D. Nev. 2020), undercuts their position. (ECF No. 195 at 7.) *Freteluco* recognizes that rebuttal testimony may

"explain[], repel[], counteract[], or disprove[] evidence of the adverse party." *Id.* at 204–05 (citation omitted). But Mr. Baldwin's opinion that Defendants' conduct was not a "significantly meaningful" cause of Plaintiffs' competitive difficulties does not explain, repel, counteract, or disprove Mr. Doyle's or Mr. Nelson's facts or methodology. It advances an affirmative theory that Plaintiffs' losses and competitive difficulties resulted from causes other than Defendants' alleged misconduct. Mr. Baldwin thus did not merely disagree with an input to Plaintiffs' damages calculations; he supplied his own conclusion that Defendants did not meaningfully cause Plaintiffs' alleged harm. That is an opinion on liability and causation that Mr. Baldwin is not qualified to offer and should be excluded.

#### 3. Merely Citing the Record Does not Fix Mr. Baldwin's Methodological Defects

Defendants' identification of "record evidence" does not cure the defects in Mr. Baldwin's methodology. Evidence of Plaintiffs' funding difficulties, layoffs, management decisions, or barriers to market entry does not, without a reliable causal analysis, establish that those circumstances—rather than Defendants' alleged misconduct—caused Plaintiffs' losses or competitive difficulties. Rule 702 requires a reliable methodology connecting the facts to the opinion, not merely a collection of facts consistent with it. Mr. Baldwin nevertheless relies on those circumstances to conclude that Defendants' alleged conduct was not "the sole, or even a significantly meaningful, reason" for Plaintiffs' competitive difficulties. (ECF No. 190-3 at 23 [Baldwin Rebuttal Report, ¶¶98–99].) Yet he identifies no methodology for weighing competing causes or determining their relative significance. His gaming-industry experience cannot fill that gap. *See Optronic Techs., Inc.*, 20 F.4th at 481–82 (9th Cir. 2021) (affirming exclusion of industry expert's opinions concerning economic methodology outside his expertise). Defendants cannot cure the absence of a reliable causal analysis simply by showing that Mr. Baldwin reviewed an extensive record.

### D. <u>Plaintiffs Properly Challenged Mr. Baldwin's Opinions in Section V</u>

#### 1. Mr. Baldwin's Opinions That Plaintiffs Received Some "Value and Benefit" Does Not Rebut Mr. Nelson's Damages Opinions

As set out in Plaintiffs' Motion, Mr. Baldwin's opinions in this section relate to damages and causation—not general gaming industry knowledge—and are thus outside the scope of his knowledge and improper. Mr. Baldwin did not, as would be required by a damages expert, perform any analysis

quantifying the purported "value and benefits" Plaintiffs received nor did he compare that value against Plaintiffs' claimed losses. As discussed in Plaintiffs' co-pending briefing on Mr. Nelson, the premise of their allegations is that Defendants had put LT Game on an inevitable trajectory to fail, and thus cannot claim to have "benefited" LT Game along the way. (ECF No. 198 at 14.) Mr. Baldwin's conclusory opinions with respect to this issue fall woefully short of his obligations under Rule 702. Plaintiffs seek, among other relief, damages for expenditures allegedly rendered wasted or otherwise lost as a result of Defendants' misconduct. Mr. Baldwin's lack of knowledge as to Plaintiffs' allegations make him unfit to opine on these issues.

#### 2. Labeling Mr. Baldwin's Opinions "Alternative Explanations" Cannot Cure His Failure to Consider Case-Specific Facts

Even if it were true that Mr. Baldwin was "provid[ing] alternative explanations—grounded in record evidence" as Defendants contend, he still fails as an expert because his lack of factual knowledge undermines the reliability of his testimony and methodology. (ECF No. 195 at 10.) Mr. Baldwin offers explanations as to why Plaintiffs failed to break into the U.S. gaming market, but he did so without considering the usurpation of corporate opportunities, fiduciary and contractual obligations of key LT Game employees, and diversion of time and labor of employees, which are central allegation to the analysis that Mr. Baldwin purports to rebut.

Expert testimony may be excluded where there is too great an analytical gap between the facts considered (or not considered) and the conclusion offered. *United States v. Hudak*, 156 F.4th 405, 409 (4th Cir. 2025). That is the problem here. Mr. Baldwin was simply unaware of and did not address key facts necessary to assessing this issue. (*See, e.g.*, ECF No. 198-27 at 7 [Leda Tr. at 47:1–8] (lack of knowledge regarding employees hired to work for LT Game later told by Empire personnel that "you now work for Empire"); ECF No. 190-4 at 33–34 [Baldwin Tr. at 122:10–123:23] (lack of knowledge of Defendants' fiduciary/contractual obligations and employment status with LT Game), 40–41 [Baldwin Tr. at 129:17–130:13] (lack of knowledge of usurped corporate opportunities), 38–42 [Baldwin Tr. at 127:4–22, 129:1–16, 130:17–131:2] (lack of knowledge regarding Defendants diverting LT Game employees to work for Empire).) Mr. Baldwin's opinion therefore does not provide a reliable alternative explanation, but an alternative narrative that is untethered from the facts of this case.

Because Mr. Baldwin lacks the necessary knowledge to assess whether Defendants were responsible for LT Game's failure, he is unfit to opine on what may or may not have contributed to Plaintiffs' injuries. Moreover, an opinion about why Plaintiffs failed in the U.S. market cannot reliably assist the jury if it does not grapple with the case-specific facts that caused Plaintiffs to bring this case.

#### 3. Mr. Baldwin Mischaracterizes Plaintiffs' Damages Theory and Mr. Doyle's Opinions

Section V.C of Mr. Baldwin's report is irrelevant and misleading because it attacks a future-damages theory Plaintiffs do not advance. Plaintiffs' Categories 1 and 2 seek **past damages**, recoverable irrespective of LT Game's future success. Yet Mr. Baldwin asserts that Mr. Doyle "blames all of Plaintiffs' future business troubles on Defendants" and that his "head start" opinion assumes Defendants caused Plaintiffs to be unsuccessful in the United States. (ECF No. 190-3 at 20, 23 [Baldwin Rebuttal Report, ¶¶87, 99].) Mr. Doyle said neither of those things. He merely observed that LT Game faces a difficult path forward because it is essentially starting over. (ECF No. 190-5 at 8–9 [Doyle Report, ¶36].)

More importantly, Mr. Baldwin ignores the substance of the very paragraph he purports to rebut: Mr. Doyle's opinion that, "[a]s of the end of 2023, LT Game had been left a shell with essentially no business operations or employees left." (*Id.*) Rather than address that existing harm or the alleged diversion of LT Game's resources or usurped market opportunities, Mr. Baldwin identifies reasons LT Game may face future difficulties, such as licensing obstacles and market conditions. (ECF No. 190-3 at 23–26 [Baldwin Rebuttal Report, ¶¶99–113].) Those opinions do not rebut Plaintiffs' claimed damages or Mr. Doyle's opinions concerning losses already sustained.

Rule 26 permits rebuttal evidence "solely to contradict or rebut evidence on the same subject matter" identified by the opposing expert. Fed. R. Civ. P. 26(a)(2)(D)(ii); *Crawford-Brunt v. Kruskall*, 489 F. Supp. 3d 4, 7 (D. Mass. 2020). Mr. Baldwin cannot cherry-pick a brief forward-looking observation and transform it into a speculative future damages theory that Plaintiffs do not advance. Because Section V.C fails to address the actual substance of Mr. Doyle's opinions, it will only confuse the issues and mislead the jury and should be excluded.

#### 4. Sections III.E – III.H Should Also Be Excluded Because Mr. Baldwin's Causation Opinion Lacks a Sufficient Factual Foundation

Generalized industry commentary that is untethered from the case-specific allegations is not a reliable foundation, and Mr. Baldwin's opinions in Sections V.B and V.C are especially unreliable because Mr. Baldwin does not know or understand the operative facts of this case, including the full range of ways in which Defendants harmed Plaintiffs. (ECF No. 190-4 at 33–34, 38, 40–42 [Baldwin Tr. at 122:10–123:23, 127:4–22, 129:1–131:2].)

While Sections III.E – III.H do not mention Plaintiffs by name, they are clearly directed at Plaintiffs and seek to establish that market entry is expensive and difficult. (*See generally* ECF No. 190-3 [Baldwin Rebuttal Report].) Mr. Baldwin then carries these generic industry premises directly into Sections V.B and V.C, where he argues that Plaintiffs' own strategic and financial choices, not Defendants' misconduct, explain Plaintiffs' failure. (*Id.* at 20–22 [Baldwin Rebuttal Report, ¶¶86–92].) However, Mr. Baldwin is not competent to draw that inference here because he lacks a reliable grasp of the actual facts and allegations of this case. (ECF No. 190-4 at 24 [Baldwin Tr. at 113:4–17].) Rule 702 requires that expert testimony be "based on sufficient facts or data," and an expert who is unfamiliar with the record cannot reliably apply even accurate industry generalities to the specific circumstances of the case without engaging in speculation. Fed. R. Evid. 702(b).

Mr. Baldwin's Section V opinion rests on an incomplete and one-sided framing of the facts of this case. Mr. Baldwin's causation narrative in Sections V.B and V.C attributes LT Game's failure to market forces and self-inflicted strategic choices, but that narrative wholly ignores all the ways that Empire has harmed LT Game. (ECF No. 190-4 at 33–34, 38, 40–42 [Baldwin Tr. at 122:10–123:23, 127:4–22, 129:1–131:2].) *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (expert testimony must reflect "a valid … connection to the pertinent inquiry"); *see also* Fed. R. Evid. 702(b)–(c) (opinion must be based on sufficient facts or data and reflect reliable application of principles to the facts). Mr. Baldwin's unfamiliarity with the operative facts of the case means that Sections III.E – III.H function not as a genuine foundation for expert analysis but as a substitute for the case-specific analysis Mr. Baldwin was not equipped to perform.

Defendants cannot save Sections III.E – III.H by arguing that they provide the factual foundation for Mr. Baldwin's causation opinions in Sections V.B and V.C. Because Defendants defend Sections III.E – III.H solely as support for the unreliable causation opinions in Sections V.B and V.C, the sections fall

together.

**E. Defendants Cannot Recast 702 Deficiencies as Matters of Weight**

Defendants' arguments that Mr. Baldwin's testimony will "assist the jury" and that Plaintiffs' objections go merely to weight ignore the central defects identified in Plaintiffs' Motion. Mr. Baldwin addresses a damages theory Plaintiffs do not advance, disregards key facts in reaching his causation opinions, and offers opinions beyond his gaming industry expertise. These are threshold defects of fit, reliability, and qualification under Rule 702. And while cross examination may expose weaknesses in otherwise admissible expert testimony, it cannot make irrelevant analysis relevant, supply a missing methodology or factual foundation, or qualify an expert to offer opinions outside his expertise. Accordingly, Mr. Baldwin's testimony should be excluded.

## III. CONCLUSION

For the foregoing reasons and those stated in their Motion, Plaintiffs respectfully request that Mr. Baldwin's testimony reflected in Sections II, IV, and V of his Rebuttal Report, as well as Sections III.E – III.H be excluded.

DATED: August 21, 2026

Respectfully submitted,

/s/ *Jessica M. Lujan*

OLIVER J. PANCHERI, ESQ.
Nevada Bar No. 7476
JESSICA M. LUJAN, ESQ.
Nevada Bar No. 14913
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3400
Fax: (702) 938-8648
Email: opancheri@spencerfane.com
jlujan@spencerfane.com

JEAN-PAUL CIARDULLO, ESQ. (*pro hac vice*)
California Bar No. 284170
**FOLEY & LARDNER LLP**
555 Flower Street, Suite 3300
Los Angeles, California 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
Email: jciardullo@foley.com

ROBERT T. STEWART, ESQ.
Nevada Bar No. 13770
STEWART RAY NELSON, ESQ. (*pro hac vice*)
Utah Bar No. 17286
**FOLEY & LARDNER LLP**
95 South State Street, Suite 2500
Salt Lake City, Utah 84111
Tel.: (801) 401-8900
Email: rtstewart@foley.com
srnelson@foley.com

Dariush Keyhani *(pro hac vice)*
**KEYHANI LLC**
1050 30th Street NW
Washington, DC 20007
Tel: (202) 748-8950
Email: dkeyhani@keyhanillc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of August, 2026, a true and correct copy of **REPLY IN SUPPORT OF PLAINTIFFS' DAUBERT MOTION TO LIMIT TESTIMONY OF RICHARD BALDWIN** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

*/s/ Adam Miller*
An employee of Spencer Fane LLP

**INDEX OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Declaration of Jean-Paul Ciardullo |
| 1-1 | Deposition Transcript of Richard Baldwin |